



CLERK, U.S. BANKRUPTCY COURT
NORTHERN DISTRICT OF TEXAS

# ENTERED

THE DATE OF ENTRY IS ON
THE COURT'S DOCKET

**The following constitutes the ruling of the court and has the force and effect therein described.**

**Signed May 16, 2022**

**United States Bankruptcy Judge**

---

### IN THE UNITED STATES BANKRUPTCY COURT
### FOR THE NORTHERN DISTRICT OF TEXAS
### FORT WORTH DIVISION

|  |  |
|---|---|
| In re: | ) Chapter 11 |
|  | ) Case No. 22-40487 |
| FORE MACHINE, LLC, *et al.*,[1] | ) |
|  | ) (Jointly Administered) |
| Debtor. | ) |

---

**FINDINGS OF FACT, CONCLUSIONS OF LAW, AND ORDER (I) APPROVING AERO COMPONENT LLC'S DISCLOSURE STATEMENT ON A FINAL BASIS AND (II) CONFIRMING AERO COMPONENT LLC'S CHAPTER 11 PLAN OF REORGANIZATION**

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are: Fore Machine, LLC (1850), Fore Aero Holdings, LLC (2671), Fore Capital Holding, LLC (2920), and Aero Components, LLC (8616). The service address for Fore Aero Holdings, LLC, Fore Machine, LLC, and Fore Capital Holding, LLC is: 5933 Eden Drive, Haltom City, Texas 76117. The service address for Aero Components, LLC is 5124 Kaltenbrun Rd, Fort Worth, Texas 76119.

Aero Components, LLC ("Aero" or the "Debtor") having sought (a) confirmation the *First Amended and Restated Aero Components, LLC's Chapter 11 Plan of Reorganization* [Docket No. 329] filed on May 7, 2022, by the Debtor (together with all documents and/or supplements related thereto or contemplated thereunder, the "Plan"),[2] a copy of which is attached hereto as **Exhibit A**, in the above-captioned jointly administered but not substantively consolidated chapter 11 bankruptcy cases (the "Chapter 11 Case" or "Cases"), including the documents contained in the Debtor's *Second Amended Plan Supplement for Aero Components, LLC's* [Docket No. 381] (as may be further amended, modified or supplemented, the "Plan Supplement"), and (b) final approval of the *Aero Components, LLC's Disclosure Statement* [Docket No. 159] (the "Disclosure Statement") filed on April 1, 2022.

Having considered the Plan, the Disclosure Statement, the *Declaration of Paul Rundell in Support of Confirmation of the Debtors' Chapter 11 Plans* (the "Rundell Declaration") filed by the Liquidating Debtors on May 8, 2022, the *Declaration of Jens Verloop in Support of Confirmation of the Debtors' Chapter 11 Plans* (the "Verloop Declaration") filed by the Liquidating Debtors on May 8, 2022, the *Declaration of Hugh Browne in Support of Confirmation of the Debtors' Chapter 11 Plans* (the "Browne Declaration") filed by the Debtors on May 8, 2022, the *Declaration of Gregory W. Barger in Support of Confirmation of the Debtors' Chapter 11 Plans* [Docket No. 328] filed on May 7, 2022, the *Certification of Stretto Regarding Tabulation of Votes in Connection with The Debtors' Disclosure Statements and Chapter 11 Plans* [Docket No. 316], as amended by *Amended Certification of Stretto Regarding Tabulation of Votes in Connection with The Debtors' Disclosure Statements and Chapter 11 Plans* [Docket No. 342],

---

[2] Capitalized terms used but not defined herein shall have the meanings provided in the Plan unless otherwise noted.

(the "Ballot Certification") filed by the Debtor on May 9, 2022, and all other evidence presented at the combined hearing to consider final approval of the Disclosure Statement and confirmation of the Plan held before this Court on May 10, 2022, at 9:00 a.m. CT (the "Confirmation Hearing"); and the Debtor having timely provided all holders of Claims against or Interests in the Debtor (collectively, "Claimants") and all parties in interest with good and sufficient notice of the Plan, Disclosure Statement, Confirmation Hearing, and all applicable deadlines in accordance with the provisions of title 11 of the United States Code, 11 U.S.C. §§ 101–1532 *et seq.* (the "Bankruptcy Code"), the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"),[3] the Local Rules of this Court (the "Local Rules"), and the orders of this Court, as evidenced by the docket in this case, the Ballot Certification and the Certificates of Service filed with this Court (collectively, the "Solicitation Certificates");[4] and all objections to confirmation of the Plan or final approval of the Disclosure Statement (collectively, the "Objections") having been overruled by the Court on the record at the Confirmation Hearing and/or by terms of this order (this "Order") or resolved by the applicable parties; and upon the entire record of this Case, the record made at the Confirmation Hearing, and the arguments of counsel and all evidence adduced at the Confirmation Hearing; and the Court having determined, based upon the foregoing, and as further set forth herein, that the Plan should be confirmed and the Disclosure Statement should be approved on a final basis; and after due deliberation and good cause appearing therefor, the Court hereby.

---

[3] All references to statutory code provisions reference the Bankruptcy Code unless otherwise noted.

[4] "Solicitation Certificates," as used herein, refers collectively to (i) the *Certificate of Service* dated April 5, 2022 [Docket No. 184] evidencing the Debtors' service of the Solicitation Materials; (ii) the *Certificate of Service* dated April 26, 2022 [Docket No. 285] evidencing the Debtors' service of the Plan Supplement; and (iii) any other *Certificates of Service* Filed with the Court in connection with the Plan, Plan Documents, Disclosure Statement, Solicitation Packages, or solicitation process.

**FINDS, DETERMINES, AND CONCLUDES AS FOLLOWS:**

A.      **Findings of Fact and Conclusions of Law**. The findings and conclusions set forth herein and on the record at the Confirmation Hearing constitute the Court's findings of fact and conclusions of law pursuant to Rule 52 of the Federal Rules of Civil Procedure, made applicable to this proceeding by Bankruptcy Rule 7052, made applicable herein by Bankruptcy Rule 9014. All findings of fact and conclusions of law announced by this Court at the Confirmation Hearing in relation to confirmation of the Plan are hereby incorporated into this Order. To the extent any of the Court's findings of fact constitute conclusions of law, they are adopted as such. To the extent any of the Court's conclusions of law constitute findings of fact, they are adopted as such.

B.      **Jurisdiction. Venue. Core Proceeding**. This Court has jurisdiction over the Debtor's Chapter 11 Case pursuant to 28 U.S.C. § 1334. Confirmation of the Plan and final approval of the Disclosure Statement is a core proceeding pursuant to 28 U.S.C. §157(b)(2)(A), (B), (L) and (O), and this Court has jurisdiction to enter a final order with respect thereto. To the extent that it is later determined that the Court, absent consent of the parties, cannot enter final orders or judgments consistent with Article III of the United States Constitution, the Debtor consents to the entry of a final order by the Court in accordance with the terms set forth herein. The Debtor is eligible to be a debtor under section 109 of the Bankruptcy Code. Venue is proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409. The Debtor is the proponent of the Plan under section 1121(a) of the Bankruptcy Code.

C.      **Commencement of the Chapter 11 Case**. On Petition Date, the Debtor filed a voluntary petition for relief in this Court under Chapter 11 of the Bankruptcy Code, thereby commencing this Case. The Debtor's Case is jointly administered under Case No. 22-40487 pursuant to Bankruptcy Rules 1015(b) and Local Rule 1015-1. The Debtor is authorized to operate

4

its businesses and manage its properties as debtor in possession pursuant to sections 1107 and 1108 of the Bankruptcy Code. The Debtor commenced this Case in good faith and for appropriate purposes and have acted in good faith throughout the duration of the Cases. No official committee of creditors has been appointed in the Debtor's Case. To date, no trustee or examiner has been appointed in these Bankruptcy Cases under section 1104 of the Bankruptcy Code.

D.      **Judicial Notice**. The Court takes judicial notice of the dockets of the Debtors' Cases maintained by the Clerk of the Bankruptcy Court, including all pleadings, proofs of claim, reports, and other documents filed in this Case, all orders entered in this Case, all hearing transcripts in this Case, and all evidence and arguments made, proffered, or adduced at the hearings held before this Court during the pendency of this Case.

E.      **Burden of Proof**. Based on the record of the Debtor's Chapter 11 Case: (i) the Debtor has met its burden of proving each element of Bankruptcy Code § 1129(a) and/or (b) by a preponderance of the evidence; (ii) the Debtor has complied with all applicable provisions of the Bankruptcy Code, Bankruptcy Rules, and Local Rules with respect to the Plan and Disclosure Statement and their solicitation of votes on the Plan, including, without limitation, Bankruptcy Rule 2002; (iii) the Plan satisfies all applicable provisions of the Bankruptcy Code, Bankruptcy Rules, and Local Rules, including, without limitation, sections 1122, 1123, and 1129 of the Bankruptcy Code; and (iv) the Disclosure Statement satisfies all applicable provisions of the Bankruptcy Code, Bankruptcy Rules, and Local Rules, including, without limitation, section 1125 of the Bankruptcy Code.

F.      **Adequacy of Disclosure Statement**. The Disclosure Statement, which was timely and properly delivered to all claimants and parties-in-interest entitled to vote, contains "adequate

information," as such term is defined in section 1125(a)(1) of the Bankruptcy Code, with respect to the Debtor, the Plan, and the transactions contemplated therein.

G. **Disclosure Statement Order**. On March 25, 2022, the Court entered its *Order (i) Scheduling a Combined Hearing for Approval of the Disclosure Statements and Confirmation of the Plans, (ii) Conditionally Approving the Disclosure Statements, (iii) Approving the Solicitation Procedures and Dates, Deadlines, and Notices Related Thereto, and (iv) Granting Related Relief* [Docket No. 123] (the "Disclosure Statement Order"), which, among other things:

i. granted the Debtor's amended *Debtors' Motion for Entry of an Order (I) Scheduling a Combined Disclosure Statement Approval and Plan Confirmation Hearing; (II) Approving the Solicitation Procedures and Dates, Deadlines, and Notices Related Thereto; (III) Waiving the Requirement of Filing Statements of Financial Affairs and Schedules of Assets and Liabilities, and (IV) Granting Related Relief* [Docket No. 108] (the "Motion for Conditional Approval") filed on March 22, 2022;

ii. conditionally approved the Disclosure Statement;

iii. established April 29, 2022, at 4:00 p.m. (CDT) as the deadline for parties to object to final approval of the Disclosure Statement and/or confirmation of the Plan (the "Objection Deadline");

iv. established April 8, 2022, as the deadline for parties to submit Ballots (defined below) accepting or rejecting the Plan (the "Voting Deadline");

v. approved the form of the *Notice of (I) Conditional Approval of Disclosure Statements; (II) Establishment of Voting Record Date; (III) Combined Hearing on Final Approval of Disclosure Statements and Confirmation of Plans; (IV) Procedures for Objecting to Final Approval of Disclosure Statements or Confirmation of Plans; and (V) Procedures and Deadlines for Voting on the Plans* attached to the Disclosure Statement Order as Exhibit 1 (the "Combined Hearing Notice");

vi. approved the form of *Notice of Non-Voting Status with Respect to Impaired Classes Under the Debtor's Plan of Reorganization* attached as Exhibit 4 to the Disclosure Statement Order (the "Impaired Non-Voting Status Notice") and approved the form of *Notice of Non-Voting Status with Respect to Unimpaired Classes* (the "Unimpaired Non-Voting Status Notice," and together with the Impaired Non-Voting Status Notice the "Non-Voting Status Notices") attached to the Disclosure Statement Order as Exhibit 5, including the Opt-Out Form attached to the Impaired

6

Non-Voting Status Notice for the purpose of enabling parties to "opt out" of the Plan's Non-Debtor Release (as defined below) provisions (the "Opt-Out Form");

vii. approved the form of the *Ballot for Voting to Accept Or Reject Debtors' Chapter 11 Plan Of Reorganization* attached to the Disclosure Statement as Exhibit 2 (the "Ballot");

viii. established procedures for the Debtor's solicitation of votes on the Plan; and

ix. scheduled the Confirmation Hearing.

H.      **Solicitation**. On or about April 1, 2022, the Debtor, through its solicitation agent, Stretto ("Stretto"), served solicitation packages to all Claimants and parties in interest in its Case consisting of (i) the Combined Hearing Notice; (ii) the Disclosure Statement, including the Prior Plan (defined below) attached thereto as Exhibit A and the *Liquidation Analysis* (the "Liquidation Analysis"); (iii) the Disclosure Statement Order; and (iv) where appropriate, a Ballot or a Non-Voting Status Notice and Opt-Out Form (collectively, the "Solicitation Packages"). As further evidenced by and described in the Solicitation Certificates and Ballot Certification, the Debtor's service of the Solicitation Packages and other Plan solicitation efforts (collectively, the "Solicitation") was conducted in good faith and in compliance with the Bankruptcy Code, the Bankruptcy Rules, the Local Rules, the Disclosure Statement Order, and all other applicable nonbankruptcy rules, laws, and regulations applicable to the Solicitation. Transmittal and service of the Solicitation Packages was due, proper, adequate, timely, appropriate, and sufficient under the circumstances with respect to all Claimants and parties in interest in this Case.

I.      **Voting and Results**. Prior to the Debtor's Solicitation of votes on the Plan, all Claimants were provided with "adequate information" as defined in section 1125 of the Bankruptcy Code. As evidenced by the Ballot Certification, votes to accept or reject the Plan have been solicited and tabulated fairly, in good faith, and in a manner consistent with the Disclosure Statement Order, the Bankruptcy Code, the Bankruptcy Rules, and the Local Rules. Classes 3, 5,

and 6 are Impaired under the Plan, and Classes 3 and 5 were entitled to cast Ballots with respect to voting on the Plan. As described in the Ballot Certification, Classes 3 and 5 have each voted to accept the Plan in the numbers and amounts required by section 1126 of the Bankruptcy Code. Classes 1, 2 and 4 are deemed to accept the Plan, and Class 6 is deemed to reject the Plan.

**J.** **Plan Modifications**. On or about May 7, 2022, the Debtor filed the (i) *First Amended and Restated Aero Components. LLC's Chapter 11 Plan of Reorganization* [Docket No. 329] and the (ii) *Notice of Filing of First Amended Joint Chapter 11 Plan Of Liquidation For Debtors Fore Aero Holdings, LLC, Fore Machine, LLC And Fore Capital Holding, LLC* [Docket No. 329] setting forth a "redline" indicating all changes to the Plan as filed on April 1, 2022 [Docket No. 158] (the "Prior Plan"). None of the changes to the Plan, whether reflected in the Plan as filed or announced on the record at the Confirmation Hearing, if any, have any material effect on the Prior Plan (in each case, except as related to the treatment of holder of Claims in Classes 3 and 5, wall of whom have consented to such changes) or the treatment of any Claims or Interests under the Plan or are otherwise material, and all such changes set forth in the Debtor's Plan are hereby approved.

**K.** **Compliance with Bankruptcy Rule 3016(a)**. The Plan is dated and identifies the Debtor as the Plan proponent, thereby satisfying Bankruptcy Rule 3016(a). The Debtor appropriately filed the Disclosure Statement and the Plan with this Court, thereby satisfying Bankruptcy Rule 3016(b). The discharge, release, injunction, and exculpation provisions of the Plan are set forth in bold and with specific and conspicuous language, thereby complying with Bankruptcy Rule 3016(c).

**L.** **Compliance with Section 1125 of the Bankruptcy Code**.

i. **Solicitation - § 1125(b)**. After notice and hearing on the Motion for

Conditional Approval, the Court entered the Disclosure Statement Order approving all Solicitation Package materials and determining, on a conditional basis, that the Disclosure Statement contains "adequate information" within the meaning of section 1125(a) of the Bankruptcy Code. Service of the Solicitation Packages was made in compliance with the Disclosure Statement Order, the Bankruptcy Code, the Bankruptcy Rules, and the Local Rules. All Solicitation Packages were served at least twenty-eight (28) days prior to the Objection Deadline in compliance with Bankruptcy Rule 2002(b). Thus, the Debtor's solicitation of the Plan complied with section 1125(b) of the Bankruptcy Code.

ii.      **Service of Disclosure Statement-§ 1125(c)**. The Debtor served the same Disclosure Statement upon all holders of Claims and Interests in compliance with section 1125(c) of the Bankruptcy Code.

iii.      **Good Faith Solicitation — § 1125(e)**. Based on the record before the Court in this Case, the Debtor and its Professionals—including each of their respective current officers, directors, employees, and managers, as of the date of this Order—and all other Persons involved in the Solicitation process have acted in "good faith" within the meaning of section 1125(e) of the Bankruptcy Code and in compliance with the Disclosure Statement Order and with the applicable provisions of the Bankruptcy Code, the Bankruptcy Rules, the Local Rules, and any applicable non-bankruptcy law, rule or regulation governing the adequacy of disclosure in connection with the development of the Plan and in connection with all of their respective activities arising out of or relating to (i) the administration of this Case, (ii) the negotiation and pursuit of approval of the Disclosure Statement, (iii) the preparation, development, and solicitation of acceptances of the Plan, (iv) the pursuit of confirmation of the Plan, (v) the funding of the Plan, (vi) the consummation of the Plan, and (vii) the administration of the Plan and the property to be distributed under the

Plan, and are entitled to the protections afforded by section 1125(e) of the Bankruptcy Code.

     **M.**     <u>**Compliance with Sections 1122 and 1123 of the Bankruptcy Code**</u>.

       i.     **Proper Classification - § 1122**. Article III of the Plan provides for the separate classification of Claims against and Interests in the Debtor based upon differences in the legal nature and/or priority of such Claims and Interests. The Plan designates the following Classes of Claims and Interests:

- Class 1 — Other Secured Claims
- Class 2 — Allowed Priority Non-Tax Claims
- Class 3 — Prepetition Secured Claims
- Class 4 — General Unsecured Claims
- Class 5 — Aero Seller Unsecured Note
- Class 6 — Equity Interests of Holdings

This classification scheme complies with section 1122(a) of the Bankruptcy Code Bankruptcy because the Claims or Interests in each Class are substantially similar to other Claims or Interests, as the case may be, in each such Class. Valid business, factual, and legal reasons exist for separately classifying the Classes of Claims and Interests under the Plan; such classifications were not done for any improper purpose; and such classifications do not unfairly discriminate between the holders of Claims or Interests.

       ii.     **Designation of Classes of Claims and Interests - § 1123(a)(1)**. The Plan complies with section 1123(a)(1) of the Bankruptcy Code in that Article III designates the various Classes of Claims and Interests under the Plan, as further set forth in the preceding paragraph.

       iii.     **Specify Unimpaired Classes - § 1123(a)(2)**. The Plan complies with section 1123(a)(2) of the Bankruptcy Code in that Article III.B of the Plan designates Classes that are Unimpaired and that are Impaired. Unimpaired and Impaired Classes are further designated in the chart in Section 2.1 and 2.4 of the Disclosure Statement.

       iv.     **Specify Treatment of Impaired Classes - § 1123(a)(3)**. The Plan complies

with section 1123(a)(3) of the Bankruptcy Code in that Article III of the Plan clearly explains the treatment for each Class of Claims and Interests under the Plan, including Impaired Classes.

v. **No Discrimination — § 1123(a)(4)**. The Plan complies with section 1123(a)(4) of the Bankruptcy Code in that all Claims or Interests, as applicable, within a particular Class are treated the same as all other Claims or Interests within such Class (without regard to any rights a Claimant may hold against third parties), unless the holder of a particular Claim or Interest has agreed to less favorable treatment of its Claim or Interest.

vi. **Adequate Means of Implementation - § 1123(a)(5)**. The Plan complies with section 1123(a)(5) of the Bankruptcy Code in that Article IV of the Plan provides in detail the means for implementation of the Plan. Specifically, Article IV explains, among other things, that: (i) the Plan will be funded with Cash on hand; (ii) the issuance and distribution of the Reorganized Debtor's Interests, (iii) the Capital Equity Investment, and (ii) the Debtor's directors and managers will be eliminated and replaced.

vii. **Prohibition on Issuance of Non-Voting Securities - § 1123(a)(6)**. The Plan complies with section 1123(a)(6) of the Bankruptcy Code in that the Plan does not contemplate the issuance of any non-voting Interests in the Debtor and the holders of Interests are not entitled to vote on the Plan.

viii. **Directors and Officers - § 1123(a)(7)**. The Plan satisfies the requirements of section 1123(a)(7) of the Bankruptcy Code. The Plan provides for the selection of the Reorganized Debtor's officers, directors, members, and managers, as applicable, and the selected parties, including those identified in the Plan Supplement, shall take office effective as of the Effective Date without any further action. Such provisions are consistent with the interests of creditors and equity holders and with public policy. Accordingly, the Plan satisfies the

requirements of section 1123(a)(7) of the Bankruptcy Code.

ix.     **Payments to Creditors - § 1123(a)(8)**. Section 1123(a)(8) of the Bankruptcy Code is inapplicable in that the Debtor is not individual.

x.      **Permissive Plan Provisions - § 1123(b).** All of the Plan's provisions are consistent with section 1123(b) of the Bankruptcy Code 1123(b), including, without limitation, the following:

- <u>Impaired and Unimpaired Claims/Interests</u>. In accordance with section 1123(b)(1) of the Bankruptcy Code, the Plan Impairs certain Classes of Claims and Interests and leaves other Classes Unimpaired.

- <u>Debtor Release</u>. Article VIII.B of the Plan effects a release of the Released Parties from any Claims and Causes of Action held by the Debtor, the Estates, or the Reorganized Debtor that arose prior to the Effective Date (subject to and as more fully set forth in Article VIII.B of the Plan, the "<u>Debtor Release</u>"). The Debtor Release is critical to the successful implementation and confirmation of the Plan; the Debtor Release is fair, reasonable, and in the best interests of the Debtor and Estates; and the Debtor Release is appropriate under the circumstances of this Case. The Debtor Release constitutes a valid exercise of the Debtor's business judgment in this Case and is permissible under section 1123(b) of the Bankruptcy Code.

- <u>Non-Debtor Release</u>. The Plan effects a release of the Debtor, the Estates, and the Released Parties from any Claims and Causes of Action held by the Releasing Parties that arose prior to the Effective Date (subject to and as more fully set forth in Article VIII.C of the Plan, the "<u>Non-Debtor Release</u>", and collectively with the Debtor Release, the "<u>Releases</u>"). The Non-Debtor Release was conspicuously noticed in the Plan, Disclosure Statement, Ballots, and Non-Voting Status Notices. All holders of Impaired Claims or Interests (including holders of

Administrative Claims and Priority Tax Claims) were given the chance to opt out of the Non-Debtor Release by checking the appropriate box on their Ballot or Opt-Out Form. Accordingly, the Non-Debtor Release is consensual and is an integral part of the Plan. The Non-Debtor Release is permissible under section 1123(b) of the Bankruptcy Code.

- Exculpation. The Plan provides for an exculpation limiting the liability of the Exculpated Parties for acts or omissions in connection with, among other things, this Case, the commencement and administration of this Case, or the negotiation or implementation of the Plan, save and except for acts determined by Final Order to be the result of fraud or gross negligence (subject to and as more fully described in Article VIII.D of the Plan, the "Exculpation"). The Exculpation is appropriate and vital because it provides protection to those parties who served as fiduciaries during this Case or made substantial and critical contributions to the Plan. The Exculpation prevents future collateral attacks against those who have worked to maximize the Estates and, therefore, the Exculpation is appropriate and consistent with applicable law. The Exculpation is permissible under section 1123(b) of the Bankruptcy Code.

- Injunction. The Plan permanently enjoins parties from pursuing or enforcing any Claims or Interests that are released or exculpated under the terms of the Plan (as more fully described in Article VIII.E of the Plan, the "Injunction"), which is a key component of the Plan necessary to implement the Releases and Exculpation. Without the injunction, the Plan's Release and Exculpation would lose their impact. The Injunction is permissible under Bank section 1123(b) of the Bankruptcy Code.

- Settlement. Pursuant to section 1123 of the Bankruptcy Code and Bankruptcy Rule 9019, and in consideration for the classification, Distributions, Releases, and other benefits provided under the Plan, on the Effective Date, the provisions of the Plan (including,

the Releases, Exculpation, and Injunction) shall constitute a good-faith compromise and settlement of all controversies, Claims, and interests resolved pursuant to the Plan. The Plan is a valid compromise of Claims and Interests and is the product of good faith, arm's-length negotiations with the Debtor's creditors. As further set forth herein, the Plan represents a valid compromise that is fair and equitable and in the best interests of the Estates. The Plan's settlement and compromise of Claims and Interest is permissible under section 1123(b) of the Bankruptcy Code.

xi.    **Plans Proposed by other Parties - § 1123(c)**. Section 1123(c) of the Bankruptcy Code is not applicable because the Debtor is not individuals.

xii.    **Amounts Necessary to Cure Defaults - § 1123(d)**. The Plan complies with section 1123(d) of the Bankruptcy Code in that any Executory Contracts or Unexpired Leases assumed by the Debtor under the Plan will be cured in accordance with Bankruptcy Code §365(b), the provisions of such contract or lease, and applicable law (or as otherwise agreed to by the Debtor and the counterparty thereto).

N.    <u>**Compliance with Bankruptcy Code § 1129**</u>.

i.    **Plan's Compliance with Bankruptcy Code - § 1129(a)(1)**. The Plan complies with all applicable provisions of the Bankruptcy Code, thereby satisfying section 1129(a)(1) of the Bankruptcy Code.

ii.    **Debtor's Compliance with Bankruptcy Code - § 1129(a)(2)**. The Debtor has complied with all applicable provisions of the Bankruptcy Code and Bankruptcy Rules in proposing and soliciting votes on the Plan, specifically sections 1122, 1123, and 1125 of the Bankruptcy Code. The Debtor is an eligible debtor under section 109 of the Bankruptcy Code. The Debtor has complied with the applicable provisions of the Bankruptcy Code, Bankruptcy Rules, and Local Rules in all respects, including in the Solicitation and tabulation of votes on the Plan.

iii. **Plan Proposed in Good Faith - § 1129(a)(3)**. The Debtor has proposed the Plan (and all documents necessary to effectuate the Plan) in good faith and not by any means forbidden by law, thereby satisfying section 1129(a)(3) of the Bankruptcy Code. The Debtor's good faith is evident from, *inter alia*, the facts and record of this Case, the Disclosure Statement, the record made at the Confirmation Hearing, and the other proceedings in this Case. The Plan and all documents, forms, lists and agreements contemplated under the Plan (including, but not limited to the Plan Supplement) to effectuate the terms and conditions of the Plan Documents (collectively, the "Plan Documents") were proposed with the legitimate and honest purpose of maximizing the value of the Debtor's Estate. The Plan and Plan Documents were negotiated at arm's-length. Further, the Plan's classification, indemnification, Exculpation, Releases, and Injunction provisions have been negotiated in good faith and at arm's-length. Such provisions are consistent with sections 105, 1122, 1123(b)(6), 1125, 1129, and 1142 of the Bankruptcy Code; each provision is necessary for the success of the Plan; and none of the Plan's provisions were included for any improper purpose.

iv. **Payment for Services or Costs and Expenses - § 1129(a)(4)**. The Plan complies with section 1129(a)(4) of the Bankruptcy Code in that any payments to be made by the Debtor, Reorganized Debtor, or any person issuing securities or acquiring property under the Plan, for services or for costs and expenses in connection with the Cases, or in connection with the Plan and incident to the Cases, is approved by, or subject to the approval of, as applicable, the Bankruptcy Court as reasonable.

v. **Directors, Officers, and Insiders - § 1129(a)(5)**. The Debtors have satisfied the requirements of section 1129(a)(5) of the Bankruptcy Code. The identities and affiliations of the Reorganized Debtor' directors and officers were disclosed in the Plan

Supplement. Specifically, Greg Barger, Eric Sloane, and Joseph DeLuca will be the new board members of the Reorganized Debtor. None of these individuals is an insider or affiliated with an insider of the Debtor. To the extent that such directors and officers are insiders, the nature of their compensation has been disclosed to the extent known and reasonably practicable. Accordingly, the Debtors have satisfied the requirements of section 1129(a)(5) of the Bankruptcy Code.

vi.     **No Rate Changes — § 1129(a)(6)**. Section 1129(a)(6) of the Bankruptcy Code is not applicable to the Debtor or the Plan.

vii.     **Best Interest of Creditors - § 1129(a)(7)**. Each holder of an Impaired Claim or Interest either has accepted the Plan or will receive or retain under the Plan, on account of such Claim or Interest, property of a value, as of the Effective Date, that is not less than the amount that such holder would receive or retain if the Debtor was liquidated under chapter 7 of the Bankruptcy Code on such date. The Liquidation Analysis attached to the Disclosure Statement and the other evidence related thereto in support of the Plan that was proffered or adduced at or prior to the Confirmation Hearing: (a) are reasonable, persuasive, credible, and accurate as of the dates such analyses or evidence was prepared, presented, or proffered; (b) utilize reasonable and appropriate methodologies and assumptions; (c) have not been controverted by other evidence; and (d) establish that holders of Allowed Claims or Allowed Interests in every Class will recover as much or more under the Plan on account of such Claim or Interest, as of the Effective Date, than the amount such holder would receive if the Debtor was liquidated under chapter 7 of the Bankruptcy Code. Accordingly, the Plan satisfies the "best interest of creditors" test under section 1129(a)(7) of the Bankruptcy Code.

viii.     **Acceptance by Impaired Classes - § 1129(a)(8)**. Claims and Interests in Classes 1, 2, and 4 are Unimpaired and deemed to accept the Plan pursuant to section 1126(f) of

the Bankruptcy Code. Claims in Class 3 and 5 are Impaired under the Plan, and each of those Classes have accepted the Plan in accordance with Bankruptcy Code § 1126(c), as demonstrated by the Ballot Certification. Equity Interests in Classes 6 of the Plan are Impaired and deemed to reject the Plan pursuant to Bankruptcy Code § 1126(g). Thus, the Plan satisfies section 1129(a)(8) of the Bankruptcy Code in that all Impaired Classes entitled to vote on the Plan voted to accept the Plan. The Plan further satisfies the requirements for confirmation under the "cram down" provisions of Bankruptcy Code § 1129(b).

ix.     **Administrative Claims and Priority Tax Claims - § 1129(a)(9)**. The Plan complies with section 1129(a)(9) of the Bankruptcy Code in that Article II of the Plan provides for all Allowed Administrative Claims and Allowed Priority Tax Claims to be paid in full on the Effective Date or such later date in accordance with the Plan and sections 1129(a)(9)(C)-(D) of the Bankruptcy Code, except to the extent that the Claimant agrees to less favorable treatment, and for Professional Claims that are not yet Allowed as of the Effective Date to be paid in full upon allowance by the Bankruptcy Court.

x.     **Acceptance by Impaired Class - § 1129(a) (10)**. Section 1129(a)(10) of the Bankruptcy Code is satisfied in that, as described above and in the Ballot Certification, Classes 3 and 5 are Impaired and voted to accept the Plan.

xi.     **Feasibility — § 1129(a)(11)**. The Plan satisfies the requirements of section 1129(a)(11) of the Bankruptcy Code. The evidence supporting the Plan proffered or adduced by the Debtors at or before the Confirmation Hearing: (a) is reasonable, persuasive, credible, and accurate as of the dates such evidence was prepared, presented, and/or proffered; (b) utilizes reasonable and appropriate methodologies and assumptions; (c) has not been controverted by other evidence; (d) establishes that the Plan is feasible and confirmation of the Plan is not likely to be

followed by the liquidation, or the need for further financial reorganization of the Debtor or the Reorganized Debtor; and (e) establishes that the Debtor or Reorganized Debtor will have sufficient funds available to meet their obligations under the Plan.

xii.     **U.S. Trustee Fees — § 1129(a)(12)**. The Plan satisfies section 1129(a)(12) of the Bankruptcy Code in that Article XII.C of the Plan provides for all U.S. Trustee Fees that are currently due and payable under 28 U.S.C. § 1930, as determined by the Court, to be paid by the Debtor and/or Reorganized Debtor on or before the Effective Date, and for all U.S. Trustee Fees coming due after the Effective Date to be paid by the Reorganized Debtor when due.

xiii.    **Retiree Benefits — § 1129(a)(13)**. The Plan satisfies the requirements of section 1129(a)(13) of the Bankruptcy Code. Article IV.M of the Plan provides that from and after the Effective Date, the payment of all retiree benefits, as defined in section 1114 of the Bankruptcy Code, will continue in accordance with applicable law.

xiv.     **Domestic Support Obligations - § 1129(a)(14)**. Section 1129(a)(14) of the Bankruptcy Code is not applicable because the Debtor is not individuals and do not have any domestic support obligations.

xv.      **Payments by Individual Debtor — § 1129(a)(15)**. Section 1129(a)(15) of the Bankruptcy Code is not applicable because the Debtor is not an individual.

xvi.     **Transfers of Property — § 1129(a)(16)**. The Debtors are moneyed, business, or commercial entities. Accordingly, section 1129(a)(16) of the Bankruptcy Code is inapplicable in the Chapter 11 Cases.

xvii.    **Non-Consensual Confirmation (Cram Down) - § 1129(b)**. The Plan does not discriminate unfairly and is fair and equitable with respect to each Impaired Class that has not voted to accept the Plan, and all classified Claims and Interests are treated the same as all other

Claims or Interests within their respective Class. Class 6 is Impaired and deemed to reject the Plan pursuant to section 1126(g) of the Bankruptcy Code, because the holders in that Class will not receive or retain any property under the Plan. All other Impaired Classes, however, have accepted the Plan in accordance with section 1126(c) of the Bankruptcy Code as set forth in the Ballot Certification. Accordingly, the Plan complies with all provisions of section 1129(b) of the Bankruptcy Code, including the "absolute-priority" rule contained in section 1129(b)(2) of the Bankruptcy Code, and may be confirmed notwithstanding that Class 6 is deemed to reject the Plan.

xviii. **One Plan — § 1129(c)**. Section 1129(c) of the Bankruptcy Code is satisfied in that the Plan is the only Chapter 11 plan subject to confirmation in this Case.

xix. **Purpose of the Plan — § 1129(d)**. Section 1129(d) of the Bankruptcy Code is satisfied in that the principal purpose of the Plan is not the avoidance of taxes or the avoidance of the application of section 5 of the Securities Act of 1933.

xx. **Small Business Cases — § 1129(e)**. Section 1129(e) of the Bankruptcy Code is not applicable because the Debtor's Case is not a small business case.

O. **Satisfaction of Disclosure. Solicitation, and Confirmation Requirements**. All requirements of the Bankruptcy Code, the Bankruptcy Rules, and the Local Rules have been satisfied as necessary for confirmation of the Plan and final approval of the Disclosure Statement.

P. **Plan and Plan Documents**. The Plan Supplement complies with the Bankruptcy Code and the terms of the Plan, and the Debtor provided good, proper, and sufficient notice of the Plan, Plan Supplement, and all other Plan Documents in accordance with the Bankruptcy Code and the Bankruptcy Rules, and no further notice is necessary or required. All documents included in the Plan Supplement are integral to, part of, and incorporated by reference into the Plan and are hereby approved. Subject to the terms of the Plan, the Debtor reserves the right to make alterations,

amendments, updates, or modifications to the Plan Supplement and any other Plan Documents before the Effective Date. The Plan Documents, including the Plan Supplement and all Plan exhibits (as may be amended or supplemented) have been negotiated in good faith and are, in the judgment of the Court and the parties, necessary and appropriate to effectuate the Plan. The Plan Documents are essential elements of the Plan, and entry into each such Plan Document is in the best interests of the Debtor, the Estates, and holders of Claims and Interests. The Debtor has exercised reasonable business judgment in determining to enter into the Plan, and the terms and conditions of the Plan, including the fees, expenses, and other payments set forth therein, have been in good faith and at arm's length, are fair and reasonable, are supported by reasonably equivalent value and fair consideration, and shall, upon completion of documentation and execution, be valid, binding, non- avoidable, and enforceable agreements and not be in conflict with any federal, state, or local law. The Debtor has provided sufficient and adequate notice of the Plan, including each of the Plan Documents, to all parties in interest in the Debtor's Chapter 11 Case.

Q. **Sound Business Judgment**. Consummation of the Plan, the transactions contemplated under the Plan, and execution of all Plan Documents is a sound exercise of the Debtor's business judgment. The terms and provisions of the Plan and all Plan Documents are in the best interest of the Debtor, its Estate, and Claimants.

R. **Assumption and Rejection**. Each assumption or rejection of an Executory Contract or Unexpired Lease as provided for in the Plan and Plan Supplement shall be legal, valid, and binding upon the applicable Debtor and all non-Debtor counterparties to such contracts or leases and satisfies all requirements of section 365 of the Bankruptcy Code.

S.     **Exculpation. Releases, and Injunction**. The Releases, Exculpation, and Injunction provisions set forth in Article VIII of the Plan constitute good faith compromises and settlements of the matters covered thereby. Each of the Release, Exculpation, and Injunction provisions set forth in Article VIII of the Plan: (i) is within the jurisdiction of the Court under 28 U.S.C. § 1334; (ii) is an essential means of implementing the Plan pursuant to section 1123(a)(5) of the Bankruptcy Code; (iii) is an integral element of the resolution of the Chapter 11 Case, and implementation of the Plan, in accordance with the Plan and the failure to effect such provision would seriously impair the Debtor's ability to confirm the Plan; (iv) confers material benefits on, and is in the best interests of, the Debtor, the Debtor's Estate, and Claimants; (v) is, *inter alia*, supported by extensive consideration; (vi) is important to the overall objectives of the Plan to finally resolve all Claims and Interests among or against the parties in interest in the Chapter 11 Case with respect to the Debtor; (vii) is fair, equitable, reasonable, and in the best interests of the Debtor and its Estate, Creditors, and Interest holders; and (viii) is consistent with sections 105, 1123, and 1129 of the Bankruptcy Code and other applicable sections of the Bankruptcy Code and Bankruptcy Rules. The record of the Confirmation Hearing and the Chapter 11 Case is sufficient to support the Releases, Exculpation, and Injunction provisions contained in Article VIII of the Plan. Accordingly, this Court finds that the Exculpation, Injunction, and Releases are consistent with the Bankruptcy Code and applicable law.

T.     **Consensual Non-Debtor Releases.** The Non-Debtor Release described in Article VIII.C of the Plan is a consensual third-party release and constitutes an integral component of the Plan. The Plan provides that: (i) parties entitled to vote on the Plan may affirmatively opt out of the Non-Debtor Releases by voting to reject the Plan and checking the appropriate box on their Ballot to opt out of the Releases; and (ii) impaired parties not entitled to vote on the Plan may

affirmatively opt out of the Non-Debtor Releases by checking the appropriate box on the Opt Out Form included with their Non-Voting Status Notice.

i. <u>Parties Entitled to Vote on the Plan</u>. The Ballots clearly and explicitly stated that, in order to avoid being deemed a Releasing Party, parties were required to timely vote to reject the Plan and check the opt out box on their Ballot; the Ballots included the full text of the Non-Debtor Releases set forth in Article VIII.C of the Plan; and both the Plan and the Ballots conspicuously stated that parties are deemed to provide the Non-Debtor Release unless they opted out. Thus, all parties entitled to vote on the Plan were given due and adequate notice that voting to accept the Plan (or otherwise failing to reject the Plan and opt out of the Non-Debtor Releases) constituted consent to the Non-Debtor Release. All parties who voted to accept the Plan, and all parties whose vote was solicited but did not return a Ballot return a Ballot rejecting the Plan and opting out of the Non-Debtor Release, have manifested their consent to, and are contractually bound by, the Non-Debtor Release, including, without limitation, releases of claims against non-Debtor to the extent set forth in Article VIII.C of the Plan.

ii. <u>Parties Not Entitled to Vote on the Plan</u>. The Impaired Non-Voting Status Notices clearly and explicitly stated that, in order to avoid being deemed a Releasing Party, parties were required to timely submit the Opt Out Form included with their Non-Voting Status Notice checking the box to opt out of the Non- Debtor Release; the Non-Voting Status Notices included the full text of the Non-Debtor Releases set forth in Article VIII.C of the Plan; and both the Plan and the Impaired Non-Voting Status Notices conspicuously stated that parties are deemed to provide the Non-Debtor Release unless they opted out. Thus, all parties not entitled to vote on the Plan were given due and adequate notice that failing to submit the Opt Out Form opting out of the Non-Debtor Releases constituted consent to the Non-Debtor Release. All impaired parties not entitled to vote on the Plan that did not return an Opt Out Form opting out of the Non-Debtor Release have manifested their consent to, and are contractually bound by, the Non-Debtor Release, including, without limitation, releases of claims against non-Debtor to the extent set forth in Article VIII.C of the Plan.

Furthermore, the Debtor and Released Parties compensated Claimants for the Non-Debtor Release with adequate consideration, including, without limitation by providing substantial contributions to the Chapter 11 Case and the Plan. Without such substantial contributions, a successful liquidation and confirmation of the Plan would not be possible. The substantial contributions by the Debtor and Released Parties have thus ultimately resulted in the Debtor being able to submit the Plan, which provides for efficient and timely Distributions to be made to Creditors.

Additionally, the Non-Debtor Release: (1) constitutes a good-faith Settlement and compromise of the Claims and Causes of Action released by the Non-Debtor Release; (2) is in the best interests of the Debtor and its Estate; (3) is fair, equitable, and reasonable; (4) is given and made after due notice and opportunity for hearing; (5) is narrowly tailored; and (6) is a bar to any Claims or Causes of Action released by the Non-Debtor Release against any of the Released Parties.

U.    **Exculpation**. The Exculpation provisions set forth in Article VIII.D of the Plan are essential to the Plan. The record in the Chapter 11 Case fully supports the Exculpation and the provisions set forth in Article VIII.D of the Plan, which are appropriately tailored to protect the Exculpated Parties from inappropriate litigation.

V.    **Injunction**. The Injunction provisions set forth in Article VIII.E of the Plan are essential to the Plan and are necessary to implement the Plan and to preserve and enforce the Debtor Release, the Non-Debtor Release, and the Exculpation, and the Injunction provisions are appropriately tailored to achieve those purposes. Any dispute regarding the scope or application of the Releases contained in the Plan shall be brought before the Bankruptcy Court or such court as the Bankruptcy Court may direct.

W.    **Settlement of Claims and Interests**. The settlements and compromises of Claims and Interests contained in (or incorporated into) the Plan are necessary to, and are an integral and essential element of, the Plan and its consummation, and the terms and conditions of such settlements are fair and reasonable under the circumstances. The performance of the terms thereof is authorized, and the parties are directed to consummate the same. The settlements are the product of arm's-length negotiation, and have been proposed in good faith, for legitimate business purposes, are supported by reasonably equivalent value and fair consideration and reflects the Debtor's exercise of reasonable business judgment. Entry into the settlements and consummation

of the same is in the best interests of the Debtor, its Estate, its creditors, and Interest holders. The Debtor has provided all interested parties with sufficient and adequate notice of, and an opportunity to object and to be heard with respect to, any and all settlements. The terms and provisions of the settlements are approved pursuant to this Order.

       **X.** **Enforceability of the Plan**. Except as addressed herein or in any future order of the Bankruptcy Court contemplated by this Order, the Plan will apply and be enforceable notwithstanding any otherwise applicable non-bankruptcy law. The Debtor, the Sponsor, P4G, the Reorganized Debtor, and their advisors, attorneys, employees, agents, and representatives will be acting in good faith if they proceed to (i) consummate, implement and proceed in furtherance of the Plan and the agreements, the settlement, transactions, transfers and documentation contemplated thereby and (ii) take any actions authorized and directed by this Order.

       **Y.** **Objections**. All parties and parties-in-interest have had a full and fair opportunity to file objections to confirmation of the Plan or final approval of the Disclosure Statement and to litigate any such objections.

       Based upon the foregoing, all requirements for confirmation of the Plan and final approval of the Disclosure Statement—whether set forth in the Bankruptcy Code, Bankruptcy Rules, Local Rules, or otherwise—have been satisfied, and the Plan shall be confirmed and the Disclosure Statement shall be approved. Accordingly,

       **IT IS HEREBY ORDERED, ADJUDGED AND DECREED THAT:**

       1.    **CONFIRMATION OF PLAN**. The Plan attached hereto as Exhibit A is hereby CONFIRMED in each and every respect pursuant to Bankruptcy Code § 1129. Any modifications to the Plan are hereby approved and incorporated into and made an integral part of the Plan. Each and every provision of the Plan is incorporated by reference into, and is made an integral part of,

this Order as if the Plan were set forth in its entirety in this paragraph. The provisions of the Plan and this Order, including the findings of fact and conclusions of law set forth herein, are non-severable and mutually dependent. The failure to specifically include or refer to any particular section or provision of the Plan or the Plan Documents in this Order shall not diminish or impair the effectiveness or enforceability of such section or provision nor constitute a waiver thereof, it being the intent of this Court that the Plan is confirmed in its entirety and incorporated herein by reference.

2. **FINAL APPROVAL OF DISCLOSURE STATEMENT**. The Disclosure Statement is hereby APPROVED on a final basis in all respects. The Disclosure Statement contains (a) sufficient information of a kind consistent with the disclosure requirements of all applicable nonbankruptcy law, rules, and regulations, and (b) "adequate information" (as such term is defined in sections 1125(a) and 1126(b)(2) of the Bankruptcy Code) with respect to the Debtor, the Plan and the transactions contemplated therein.

3. **APPROVAL OF PLAN DOCUMENTS**. All of the Plan Documents are hereby authorized and APPROVED. The form, terms, and provisions of the Plan Documents shall constitute legal, valid, binding and authorized obligations of the respective parties thereto, enforceable in accordance with its terms. The terms and provisions of the Plan Documents are incorporated by reference into, and are made an integral part of, this Order as set forth entirely in this paragraph. Subject to the terms of the Plan, (including all consent rights provided therein), the Debtor reserve the right to alter, amend, update, or modify the Plan Documents prior to the Effective Date.

4. **VESTING OF ASSETS**. As of the Effective Date, pursuant to sections 1141(b) and (c) of the Bankruptcy Code, the Assets shall vest in the Reorganized Debtor free and clear of

all Claims, Liens, Causes of Action, encumbrances, charges, and other interests, except as otherwise provided in the Plan.

5. **SOLICITATION AND NOTICE**. Notice of the Confirmation Hearing and the Debtor's Solicitation of votes on the Plan complied with the terms of the Disclosure Statement Order, were appropriate and satisfactory based upon the circumstances of the Debtor's Cases and were in compliance with the provisions of the Bankruptcy Code, Bankruptcy Rules, and Local Rules.

6. **OBJECTIONS**. To the extent that any Objections (including any reservations of rights contained therein) to confirmation of the Plan, or final approval of the Disclosure Statement, or other responses or reservations of rights with respect thereto have not been withdrawn, waived, settled or otherwise resolved prior to entry of this Order, such Objections and responses shall be, and hereby are, overruled on the merits and denied for all purposes.

7. **ORDER EFFECTIVE IMMEDIATELY**. Notwithstanding the provisions of Bankruptcy Rules 3020(e), 6004(h), 6006(d), 7062, or otherwise, this Order and all terms and provisions hereof shall be effective immediately upon entry. The Debtor, the Sponsor, P4G, the Reorganized Debtor, and their advisors, attorneys, employees, agents, and representatives, the Agent Released Parties, and the Reorganized Debtor and its advisors, attorneys, employees, agents, and representatives shall be acting in good faith if they proceed to immediately (a) consummate the Plan and the agreements, the settlements, transactions, transfers and documentation contemplated thereby and (b) take any actions authorized and directed by this Order, including commencing Distributions and paying U.S. Trustee Fees. This Confirmation Order is a final order, and the period in which an appeal must be filed shall commence immediately upon the entry hereof.

8.     **SUBSTANTIAL CONSUMMATION**. The Plan shall be deemed substantially consummated as of the Effective Date under sections 1101 and 1127(b) of the Bankruptcy Code.

9.     **BINDING EFFECT**. In accordance with section 1141 of the Bankruptcy Code, and immediately upon entry of this Order, the provisions of the Plan (including the Plan Documents) and this Order shall be, and hereby are, binding upon any past, present, or future Claimant, including counterparties to the Debtor's Executory Contracts and Unexpired Leases, whether or not such Claimant is Impaired under the Plan, whether known or unknown, and whether or not such Claimant has accepted the Plan. The terms of the Plan (including all consent rights provided therein), all exhibits thereto, all Plan Documents, and all other relevant and necessary documents shall be effective and binding as of the Effective Date, and the Plan shall apply and be enforceable notwithstanding any otherwise applicable non-bankruptcy law. Subject to the terms of the Plan and this Order, all prior orders of this Court entered in this Case, all documents and agreements executed by the Debtor as authorized and directed thereunder, and all motions or requests for relief by the Debtor pending before the Court as of the Effective Date shall be, and hereby are, binding on and shall inure to the benefit of the Reorganized Debtor and Reorganized Debtor. Pursuant to sections 1123(a) and 1142(a) of the Bankruptcy Code, the provisions of this Order, the Plan and the Plan Documents shall apply and be enforceable notwithstanding any otherwise applicable non-bankruptcy law.

10.     **PLAN CLASSIFICATION CONTROLLING**. The classification of Claims and Interests for purposes of the Distributions to be made under the Plan shall be governed solely by the terms of the Plan.

11.     **RETENTION OF CAUSES OF ACTION/RESERVATION OF RIGHTS**. Subject to the terms of the Plan, and except to the extent not otherwise released by the Plan, all of

the Debtor's Claims and Causes of Action against third parties, including, without limitation, Avoidance Actions, (collectively, "Actions") shall survive Confirmation and the commencement of prosecution of Actions shall not be barred or limited by any res judicata or estoppel, whether judicial, equitable or otherwise. The Reorganized Debtor and Reorganized Debtor's right to commence and prosecute Actions not otherwise released by the Plan shall not be abridged or materially altered in any manner by reason of confirmation of the Plan.

12. **NOTICE OF CONFIRMATION AND EFFECTIVE DATE**. Within five (5) Business Days after the Effective Date, the Reorganized Debtor shall File a notice advising of (a) the entry of this Order; (b) the occurrence of the Effective Date; (c) the last date to File Professional Claims; and (d) the last date to File Rejection Claims arising from the rejection of any Executory Contracts or Unexpired Leases pursuant to Article V of the Plan (the "Notice of Effective Date"). The Reorganized Debtor or their agent shall serve the Notice of Effective Date via regular U.S. mail, postage prepaid, upon all parties set forth on the master mailing matrices for this Case, and such service shall be sufficient to apprise all parties in interest of the applicable Claims Bar Dates and all other information contained in the Notice of Effective Date.

13. **ADMINISTRATIVE CLAIMS**.

(a) **Administrative Claims Bar Dates**. Any and all Administrative Claims subject to the Administrative Claims Bar Date are hereby forever barred, disallowed, and discharged pursuant to the Plan, unless such Administrative Claims are otherwise Allowed pursuant to a Final Order of this Court.

(b) **Final Administrative Claims Bar Dat**e. Any and all Administrative Claims not subject to the Administrative Claims Bar Date ("Other Administrative Claims") shall be Filed by no later than twenty-one (21) days after the Effective Date (the "Final Administrative Claims Bar

Date"). Any requests for allowance and payment of Other Administrative Claims shall be served upon the Reorganized Debtor's counsel, Sponsor's counsel, the U.S. Trustee, and all other parties required under the Bankruptcy Rules or Local Rules by no later than Final Administrative Claims Bar Date and shall, at a minimum, set forth the name of the holder, amount, and basis for the alleged Administrative Claim. Any and all Other Administrative Claims shall be forever barred, disallowed, and discharged pursuant to the Plan unless (i) requests for such Administrative Claims are Filed and served prior to the Final Administrative Claims Bar Date and (ii) such Administrative Claims are thereafter Allowed pursuant to a Final Order of this Court. All objections to Other Administrative Claims shall be filed within fourteen (14) days after the Filing of the request for such Other Administrative Claim.

(c) **Payment**. Except to the extent that a holder of an Allowed Administrative Claim consents to different treatment, each holder of an Allowed Administrative Claim shall receive, on account of and in full satisfaction of such Allowed Administrative Claim, Cash in an amount equal to the Allowed amount of such Administrative Claim in accordance with the Plan.

14. **PROFESSIONAL FEE CLAIMS**.

(a) All final requests for payment of Professional Claims for services rendered and reimbursement of expenses incurred prior to the Confirmation Date must be Filed no later than 45 days after the Effective Date. The Bankruptcy Court shall determine the Allowed amounts of such Professional Claims after notice and a hearing in accordance with the procedures established by the Bankruptcy Code, Bankruptcy Rules, and prior Bankruptcy Court orders. The Reorganized Debtor shall pay Professional Claims owing to the Professionals in Cash to such Professionals in the amount the Bankruptcy Court Allows as soon as reasonably practicable after such Professional Claims are Allowed by entry of an order of the Bankruptcy Court.

29

(b)       The Professionals shall deliver to the Debtors and the Sponsor's counsel a reasonable and good-faith estimate of their unpaid fees and expenses incurred in rendering services to the Debtors before and as of the Confirmation Date projected to be outstanding as of the anticipated Effective Date, and shall deliver such estimate no later than five Business Days prior to the anticipated Effective Date. For the avoidance of doubt, no such estimate shall be considered or deemed an admission or limitation with respect to the amount of the fees and expenses that are the subject of a Professional's final request for payment of Professional Claims Filed with the Bankruptcy Court, and such Professionals are not bound to any extent by the estimates. If a Professional does not provide an estimate, the Debtor may estimate the unpaid and unbilled fees and expenses of such Professional.

15.       **EXECUTORY CONTRACTS AND UNEXPIRED LEASES**. Unless the Debtor or Reorganizing Debtor moves to reject an Executory Contract, each Executory Contract and Unexpired Lease shall be deemed assumed, without the need for any further notice to or action, order, or approval of the Bankruptcy Court, as of the Effective Date under section 365 of the Bankruptcy Code. Except as otherwise provided herein or agreed to by the Debtor and the applicable counterparty, each assumed Executory Contract or Unexpired Lease shall include all modifications, amendments, supplements, restatements, or other agreements related thereto, and all rights related thereto, if any, including all easements, licenses, permits, rights, privileges, immunities, options, rights of first refusal, and any other interests. Modifications, amendments, supplements, and restatements to prepetition Executory Contracts and Unexpired Leases that have been executed by the Debtor during the Chapter 11 Cases shall not be deemed to alter the prepetition nature of the Executory Contract or Unexpired Lease or the validity, priority, or amount of any Claims that may arise in connection therewith. To the maximum extent permitted by law,

to the extent that any provision in any Executory Contract or Unexpired Lease assumed or assumed and assigned pursuant to the Plan restricts or prevents, or purports to restrict or prevent, or is breached or deemed breached by, the assumption or assumption and assignment of such Executory Contract or Unexpired Lease (including any "change of control" provision), then such provision shall be deemed modified such that the transactions contemplated by the Plan shall not entitle the non-Debtor party thereto to terminate such Executory Contract or Unexpired Lease or to exercise any other default-related rights with respect thereto.

16. **INSURANCE POLICIES**. Pursuant to Article V.F of the Plan, each of the Debtor's insurance policies and any agreements, documents, or instruments relating thereto, are treated as Executory Contracts under the Plan. Unless otherwise provided in the Plan, on the Effective Date, the Debtor shall be deemed to have assumed all insurance policies and any agreements, documents, and instruments relating to coverage of all insured Claims.

17. **REJECTION CLAIMS**.

(a) Unless otherwise provided by a Final Order of the Bankruptcy Court, all Proofs of Claim with respect to Claims arising from the rejection of Executory Contracts or Unexpired Leases, pursuant to the Plan or this Order, if any, must be filed with the Claims Agent and served on the Reorganized Debtor no later than fourteen (14) days after the effective date of such rejection.

(b) Any Claims arising from the rejection of an Executory Contract or Unexpired Lease not filed with the Claims Agent within such time will be automatically disallowed, forever barred from assertion, and shall not be enforceable against the Debtor, the Reorganized Debtor, the Estate, or its property, without the need for any objection by the Debtor or Reorganized Debtor, or further notice to, action, order, or approval of the Bankruptcy Court or any other Entity, and any Claim

arising out of the rejection of the Executory Contractor Unexpired Lease shall be deemed fully satisfied, released, and discharged, and be subject to the permanent injunction set forth in Article VIII.E of the Plan, notwithstanding anything in a Proof of Claim to the contrary, unless leave to File a late Claim is obtained.

(c) All Claims arising from the rejection by the Debtor of any Executory Contract or Unexpired Lease pursuant to section 365 of the Bankruptcy Code shall be treated as a General Unsecured Claim pursuant to Article III.B of the Plan and may be objected to in accordance with the provisions of Article VII of the Plan and the applicable provisions of the Bankruptcy Code and Bankruptcy Rules.

18. **ALLOWED CLAIMS**. Except with respect to (a) Claims hereafter Allowed in accordance with the Plan and this Order (*i.e..,* certain Professional Claims, certain Other Administrative Claims, and certain Rejection Claims), if any, (b) Class 3 Prepetition Lender Secured Claims (which are Allowed pursuant to the terms of the Plan), and (c) the ACI Claim to the extent permitted under the Plan, no Claim shall be deemed an Allowed Claim under the Plan. The Debtor has the right to file a Claim on behalf of the holder of a Claim pursuant to Bankruptcy Rule 3004, on or before May 29, 2022, at 5:00 p.m. (prevailing Central Time). The Reorganized Debtor is entitled to rely solely upon the Plan and the Orders of this Court for purposes of making Distributions under the Plan.

19. **DISTRIBUTIONS**. All Distributions shall be made in accordance with Plan. The Debtor and Reorganized Debtor, as applicable, are hereby authorized to make any and all Distributions contemplated under the Plan. No Distributions shall be made on account of any Claim that is not Allowed in accordance with the terms of the Plan and/or this Order.

20. **DISTRIBUTION RECORD DATE**. The Distribution Record Date shall be the Effective Date. Neither the Debtor nor Reorganized Debtor shall have any obligation to recognize any transfer of Claims or Interests after the Distribution Record Date.

21. **LIENS OF THE PREPETITION SECURED LENDERS/CHALLENGE PERIOD/TERMINATION OF THE DIP LOAN AGREEMENT**. In accordance with the terms of the Plan, all Assets vesting in the Reorganized Debtor shall be subject to the Liens of the Prepetition Agent until the Class 3 Claims are indefeasibly paid in full. The Challenge Period (as defined in the DIP Order [Docket 196]) has expired in accordance with the terms of the DIP Order, and the stipulations, admissions, and findings in the Cash Collateral Order shall be binding on the Debtor, the Reorganized Debtor, and all parties in interest. Further, as of the Effective Date, the Line of Credit Termination Date, as defined in the DIP Loan Agreement, shall be deemed to have occurred.

22. **GENERAL AUTHORIZATION**. Upon the Effective Date, all actions contemplated under the Plan shall be deemed authorized and approved in all respects without any further action by any person or entity or any further Order of this Court.

23. **PAYMENT OF STATUTORY FEES**. All fees currently due and payable under 28 U.S.C. §1930 shall be paid by the Reorganized Debtor on the Effective Date, and thereafter, as such fees become due. The Bankruptcy Court shall retain jurisdiction to hear disputes related to the Exculpation provisions in Article VIII of the Plan.

24. **GOVERNMENTAL APPROVALS NOT REQUIRED**. Except as otherwise provided herein, this Order shall constitute all approvals and consents required, if any, by the laws, rules, and regulations of any state or any other governmental authority with respect to the

implementation or consummation of the Plan and any documents, instruments, or agreements, and any amendments or modifications thereto.

25. **GOVERNMENTAL EXCEPTIONS**. Nothing in this Order, the Plan, or any related documents discharges, releases, precludes or enjoins: (i) any police or regulatory liability to a Governmental Unit that is not a Claim; (ii) any Claim of a Governmental Unit arising on or after the Effective Date; (iii) any liability to a Governmental Unit under police and regulatory statutes or regulations that any entity would be subject to as the owner or operator of property after the Effective Date; or (iv) any liability to a Governmental Unit on the part of any non-debtor. Nor shall anything in this Order or the Plan enjoin or otherwise bar a Governmental Unit from asserting or enforcing, outside this Court, any liability described in the preceding sentence. Nothing in this Order or the Plan shall affect any recoupment rights of any Governmental Unit. Nothing in this Order, the Plan, or any related documents authorize the transfer or assignment of any governmental (i) license, (ii) permit, (iii) registration, (iv) authorization, (v) certification, or (vi) approval, or the discontinuation of any obligation thereunder, without compliance with all applicable legal requirements under nonbankruptcy laws, regulations, and rules (including police or regulatory law or environmental law, or otherwise).

26. **FILING AND RECORDING**. This Order: (a) is and shall be effective as a determination that, on the Effective Date, all Claims and Interests existing prior to such date have been unconditionally released and terminated, except as otherwise provided in the Plan; and (b) is and shall be binding upon and shall govern the acts of all entities including, without limitation, all filing agents, filing officers, title agents, title companies, recorders of mortgages, recorders of deeds, registrars of deeds, administrative agencies, governmental departments, secretaries of state, federal, state, and local officials, and all other persons and entities who may be required, by

operation of law, the duties of their office, or contract, to accept, file, register, or otherwise record or release any document or instrument. Each and every federal, state, and local government agency is hereby directed to accept any and all documents and instruments necessary, useful, or appropriate (including Uniform Commercial Code financing statements) to effectuate, implement, and consummate the transactions contemplated by the Plan and this Order without payment of any recording tax, stamp tax, transfer tax, or similar tax imposed by state or local law, including, but not limited to, the transfer of any Assets pursuant to the Plan.

27. **EXEMPTION FROM TRANSFER TAXES.** Pursuant to section 1146(a) of the Bankruptcy Code, the issuance, transfer, or exchange of notes or equity securities under or in connection with the Plan, the creation of any mortgage, deed of trust or other security interest, the making or assignment of any lease or sublease, or the making or delivery of any deed or other instrument of transfer under, in furtherance of, or in connection with the Plan, including any merger agreements or agreements of consolidation, deeds, bills of sale, or assignments executed in connection with any of the transactions contemplated under the Plan, shall not be subject to any stamp, real estate transfer, mortgage recording, or other similar tax. All transactions consummated by the Debtor and approved by the Court on and after the Petition Dates through and including the Effective Date, including the transfers effectuated under the Plan, any sale by the Debtor pursuant to section 363 of the Bankruptcy Code, and the assumption, assignment, and sale by the Debtor of Executory Contracts and Unexpired Leases pursuant to section 365(a) of the Bankruptcy Code, shall be deemed to have been made under, in furtherance of, or in connection with the Plan and, thus, shall not be subject to any stamp, real estate transfer, mortgage recording, or other similar tax.

28.     **EXCULPATION. RELEASES, AND INJUNCTION**. As of the Effective Date, except for the rights that remain in effect from and after the Effective Date to enforce the Plan, the Exculpation, Releases, and Injunction embodied in the Plan, including those contained in Article VIII.B (Releases by the Debtor), Article VIII.C (Releases by Releasing Parties), Article VIII.D (Exculpation), and Article VIII.E (Injunction), of the Plan are hereby approved as set forth in the Plan.

29.     **SETTLEMENT OF CLAIMS AND INTERESTS**. Pursuant to section 1123 of the Bankruptcy Code and Bankruptcy Rule 9019, and in consideration for the classification, Distributions, Releases, and other benefits provided under the Plan, on the Effective Date, the provisions of the Plan (including, without limitation, the Releases, Exculpation, and Injunction) shall constitute a good-faith compromise and settlement of all controversies, Claims, and Interests resolved pursuant to the Plan. The parties are authorized and directed to take such other actions as may be necessary to effectuate the same, and perform all obligations contemplated thereby.

30.     **TARRANT COUNTY**. Tarrant County asserts that it has a claim for year 2022 *ad valorem* business personal property taxes.  Notwithstanding any other provision in the Plan, the Plan Supplement or this Order, Tarrant County will receive payment of its Allowed Claim in the ordinary course of business prior to the state law delinquency date.  If the Debtor does not timely pay the taxes, Tarrant County will be entitled to receive interest from the Petition Date through the Effective Date of the Plan and from the Effective Date through the date of payment in full.  Tarrant County retains the liens that secure all amounts ultimately owed for tax year 2022 until it receives payment in full.  In the event that Tarrant County's Claim is not timely paid, the Reorganized Debtor will be considered to be in default.  Tarrant County will provide notice of the default to the Reorganized Debtor.  The Reorganized Debtor will have 15 days from the date of the notice to

cure the default. If the Reorganized Debtor does not timely cure the default, Tarrant County will be entitled to pursue collection of all amounts owed pursuant to state law outside the Bankruptcy Court without further notice.

31. **BELL SETTLEMENT**. On May 3, 2022, the Court held a hearing in connection with the Debtors' *Motion Pursuant to Bankruptcy Rule 9019 for Entry of an Order Approving Compromise and Agreement* [Docket No. 251] (the "Bell Settlement Motion"). As a result of the Bell Settlement Motion and the hearing, the Court entered the *Order Approving Motion Pursuant to Bankruptcy Rule 9019 for Entry of an Order Approving Compromise and Agreement* [Docket No. 315] (the "Bell Settlement Order"). The Bell Settlement Order, among other things, resolved the Disputes (as defined in the Agreement attached to the Bell Settlement Order) between the Debtors and Bell Textron Inc. Notwithstanding any injunction, discharge, or other provision of the Plan or this Order to the contrary, the Lift Stay (as defined in the Bell Settlement Order) and the Agreement (as defined in the Bell Settlement Order) shall remain in effect and not be modified by the Plan or this Order.

32. **SETOFF**. The rights of the Debtor, Reorganized Debtor, and Reorganized Debtor to dispute any alleged right of recoupment or setoff is preserved in all respects.

33. **RETENTION OF JURISDICTION**. Pursuant to sections 105(a) and 1142 of the Bankruptcy Code, notwithstanding confirmation of the Plan or occurrence of the Effective Date, this Court retains jurisdiction over this Case and related matters, as legally permissible, to the full extent provided in the Plan.

34. **WAIVER OF P4G CLAIMS**. As stated on the record at the Confirmation Hearing, P4G is deemed to have waived any and all Claims that any person or entity included in the defined term "P4G" in the Plan has or may have against the Debtor.

35. **DEBTOR FILED PROOFS OF CLAIM**. The Debtor shall not file any proofs of claim on behalf of a holder of a Claim without the written consent of the Sponsor.

36. **REGIONS BANK TREATMENT**. Included in Class 1 (Other Secured Claims) are Claims asserted by Regions Commercial Equipment Finance, LLC ("Regions"). One of the Claims is asserted under Regions Contract # 015-0015254-005 ("Contract No. 5"). All of the collateral for Contract No. 5 is owned by the Debtor. The Debtor has elected to reinstate Contract No. 5 as its selected method for unimpairing the Other Secured Claim arising under Contract No. 5. The other Class 1 Claim asserted by Regions is under Regions Contract # 015-0015254-003 ("Contract No. 3"). A portion of the collateral for Contract No. 3 is owned by the Debtor and a portion (the "Fore Machine Contract No. 3 Equipment") is owned by Fore Machine. Notwithstanding that a portion of the Collateral for Contract No. 3 is not owned by the Debtor, the Debtor has elected to reinstate Contract No. 3 in its entirety as its selected method for unimpairing the Other Secured Claim arising under Contract No. 3. If all or any portion of the Fore Machine Contract No. 3 Equipment is sold, the net proceeds will be paid to Regions and will be applied to the amounts then remaining due under Contract No. 3 per the terms of Contract No. 3.

37. **REVERSAL**. Except as otherwise provided herein, if any provision of this Order is hereafter reversed, modified, vacated, or stayed by subsequent order of this Court or any other court, such reversal, stay, modification or vacatur shall not affect the validity or enforceability of any act, obligation, indebtedness, liability, priority, or lien incurred or undertaken by the Debtor or Reorganized Debtor prior to the effective date of such reversal, stay, modification, or vacatur. Notwithstanding any reversal, stay, modification, or vacatur of this Order, any act or obligation incurred or undertaken pursuant to, or in reliance on, this Order prior to the effective date of such

reversal, stay, modification, or vacatur shall be governed in all respects by the provisions of this Order and the Plan or any amendments or modifications thereto, and shall remain binding.

[Remainder of this page intentionally left blank]

38. **CONFLICTS**. The provisions of the Plan and this Order shall be construed in a manner consistent with each other so as to effect the purposes of each; *provided*, *however*, that in the event of any inconsistency among the Plan and the Disclosure Statement (or any exhibit or schedule to the Disclosure Statement), the provisions of the Plan shall govern. In the event of any inconsistency between the Plan and this Order, this Order shall govern. The provisions of this Order are integrated with each other and are non-severable and mutually dependent unless expressly stated by further order of the Court.

###END OF ORDER###

**Submitted by:**

**WINSTON & STRAWN LLP**

Katherine A. Preston (TX Bar No. 24088255)
800 Capitol St., Suite 2400
Houston, Texas 77002
Telephone: (713) 651-2600
Facsimile: (713) 651-2700
Email: kpreston@winston.com

and

Timothy W. Walsh (admitted *pro hac vice*)
James T. Bentley (admitted *pro hac vice*)
Emma Fleming (admitted *pro hac vice*)
200 Park Avenue
New York, New York 10166
Telephone: (212) 294-6700
Facsimile: (212) 294-4700
Email:  twwalsh@winston.com
Email: jbentley@winston.com
Email: efleming@winston.com


*Counsel for Debtors and Debtors-in-Possession*

**Exhibit A**

Confirmed Plan

**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE NORTHER DISTRICT OF TEXAS**
**FORT WORTH DIVISION**

| | |
|---|---|
| In re: | ) Chapter 11 |
| | ) |
| | ) |
| **FORE MACHINE, LLC,** *et al.*[1] | ) Case No. 22-40487 |
| | ) |
| **Debtors** | ) |
| | ) (Jointly Administered) |
| | ) |

**FIRST AMENDED AND RESTATED AERO COMPONENTS, LLC'S CHAPTER 11 PLAN OF REORGANIZATION**

THIS CHAPTER 11 PLAN IS BEING SOLICITED FOR ACCEPTANCE OR REJECTION IN ACCORDANCE WITH BANKRUPTCY CODE SECTION 1125 AND WITHIN THE MEANING OF BANKRUPTCY CODE SECTION 1126. THIS CHAPTER 11 PLAN WILL BE SUBMITTED TO THE BANKRUPTCY COURT FOR APPROVAL FOLLOWING SOLICITATION AND THE DEBTOR'S FILING FOR CHAPTER 11 BANKRUPTCY.

Katherine A. Preston (State Bar No. 24088255)
**WINSTON & STRAWN LLP**
800 Capitol Street, Suite 2400
Houston, Texas 77002
T: (713) 651-2600
F: (713) 651-2700
kpreston@winston.com

Timothy W. Walsh (admitted *pro hac vice*)
James T. Bentley (admitted *pro hac vice*)
Emma Fleming (admitted *pro hac vice*)
**WINSTON & STRAWN LLP**
200 Park Avenue
New York, NY 10166-4193
T: (212) 294-6700
F: (212) 294-4700
twwalsh@winston.com
jbentley@winston.com
efleming@winston.com

*Counsel to the Debtor and Debtor in Possession*

Dated: May 7, 2022

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are: Fore Machine, LLC (1850), Fore Aero Holdings, LLC (2671), Fore Capital Holding, LLC (2920), and Aero Components, LLC (8616). The service address for Fore Aero Holdings, LLC, Fore Machine, LLC, and Fore Capital Holding, LLC is: 5933 Eden Drive, Haltom City, TX 76117. The service address for Aero Components, LLC is 5124 Kaltenbrun Rd, Fort Worth, Texas 76119.

**TABLE OF CONTENTS**

INTRODUCTION ........................................................................................................................... 1

**ARTICLE I DEFINED TERMS, RULES OF INTERPRETATION,  COMPUTATION OF TIME, GOVERNING LAW, AND OTHER REFERENCES** ................................................................. 5
    A.    Defined Terms ........................................................................................... 5
    B.    Rules of Interpretation ............................................................................ 14
    C.    Computation of Time .............................................................................. 15
    D.    Governing Law ........................................................................................ 15
    E.    Reference to Monetary Figures ............................................................. 15
    F.    Reference to the Debtor or the Reorganized Debtor ............................. 15
    G.    Controlling Document ............................................................................ 16

**ARTICLE II ADMINISTRATIVE AND PRIORITY CLAIMS** ............................................. 16
    A.    Administrative Claims ............................................................................ 16
    B.    DIP Claims .............................................................................................. 16
    C.    Professional Claims ................................................................................ 17
    D.    Priority Tax Claims ................................................................................ 17

**ARTICLE III CLASSIFICATION, TREATMENT, AND VOTING OF CLAIMS AND INTERESTS** ...... 17
    A.    Classification of Claims and Interests .................................................. 17
    B.    Treatment of Classes of Claims and Interests ...................................... 18
    C.    Special Provision Governing Unimpaired Claims ................................ 21
    D.    Elimination of Vacant Classes .............................................................. 21
    E.    Voting Classes; Presumed Acceptance by Non-Voting Classes .......... 21
    F.    Subordinated Claims .............................................................................. 21
    G.    Confirmation Pursuant to Section 1129(b) of the Bankruptcy Code ... 22

**ARTICLE IV PROVISIONS FOR IMPLEMENTATION OF THE PLAN** ........................... 22
    A.    General Settlement of Claims and Interests ......................................... 22
    B.    Sources of Consideration for Plan Distributions ................................. 22
    C.    The Capital Equity Investment .............................................................. 23
    D.    RESERVED ............................................................................................. 23
    E.    Exemption from Registration Requirements ........................................ 23
    F.    Corporate Existence ............................................................................... 23
    G.    Vesting of Assets in the Reorganized Debtor ...................................... 23
    H.    Cancellation of Notes, Instruments, Certificates, and Other Documents ... 24
    I.    The Reorganized Debtor's Organizational Documents ....................... 24
    J.    Effectuating Documents; Further Transactions ................................... 24
    K.    Section 1146(a) Exemption ................................................................... 24
    L.    Directors and Officers ........................................................................... 25
    M.    Incentive Plans and Employee and Retiree Benefits ........................... 25
    N.    Preservation of Rights of Action ........................................................... 25
    O.    Restructuring Transactions .................................................................... 26

**ARTICLE V TREATMENT OF EXECUTORY CONTRACTS AND UNEXPIRED LEASES** ...... 26
    A.    Assumption of Executory Contracts and Unexpired Leases ............... 26
    B.    Claims Based on Rejection of Executory Contracts or Unexpired Leases ... 27
    C.    Indemnification ...................................................................................... 27
    D.    Cure of Defaults and Objections to Cure and Assumption .................. 28
    E.    Contracts, and Leases Entered Into After the Petition Date ................ 28
    F.    Insurance Policies ................................................................................... 29
    G.    Director Officer, Manager, and Employee Liability Insurance ........... 29
    H.    Nonoccurrence of Effective Date. ........................................................ 29
    I.    Reservation of Rights ............................................................................ 29

**ARTICLE VI PROVISIONS GOVERNING DISTRIBUTIONS**..................................................**29**
    A.    Distributions on Account of Claims and Interests Allowed as of the Effective Date ...............29
    B.    Special Rules for Distributions to Holders of Disputed Claims and Interests............................30
    C.    Delivery of Distributions...........................................................................................................30
    D.    Claims Paid or Payable by Third Parties ..................................................................................32
    E.    Setoffs ......................................................................................................................................32
    F.    Allocation Between Principal and Accrued Interest ..................................................................33

**ARTICLE VII PROCEDURES FOR RESOLVING DISPUTED CLAIMS AND INTERESTS** .................**33**
    A.    Disputed Claims Process...........................................................................................................33
    B.    Claims Administration Responsibilities. ...................................................................................33
    C.    Adjustment to Claims Without Objection .................................................................................33
    D.    No Interest ................................................................................................................................34
    E.    Disallowance of Claims and Interests.......................................................................................34

**ARTICLE VIII SETTLEMNT, RELEASE, INJUNCTION, AND RELATED PROVISIONS**...................**34**
    A.    Discharge of Claims and Termination of Interests ...................................................................34
    B.    Releases by the Debtor..............................................................................................................35
    C.    Releases by Holders of Claims and Interests............................................................................35
    D.    Exculpation ..............................................................................................................................36
    E.    Injunction .................................................................................................................................37
    F.    Protection Against Discriminatory Treatment ..........................................................................37
    G.    Recoupment..............................................................................................................................37
    H.    Document Retention..................................................................................................................37
    I.    Reimbursement or Contribution ...............................................................................................37
    J.    Release of Liens .......................................................................................................................38

**ARTICLE IX CONDITIONS PRECEDENT TO THE EFFECTIVE DATE** ........................................**38**
    A.    Conditions Precedent to the Effective Date...............................................................................38
    B.    Waiver of Conditions Precedent ...............................................................................................39
    C.    Effect of Non-Occurrence of Conditions to Consummation......................................................39

**ARTICLE X MODIFICATION, REVOCATION, OR WITHDRAWAL OF THE PLAN** ..........................**40**
    A.    Modification of Plan.................................................................................................................40
    B.    Effect of Confirmation on Modifications...................................................................................40
    C.    Effect of Confirmation ..............................................................................................................40
    D.    Withdrawal of Plan ...................................................................................................................40

**ARTICLE XI RETENTION OF JURISDICTION** .............................................................................**40**

**ARTICLE XII MISCELLANEOUS PROVISIONS**...............................................................................**42**
    A.    Immediate Binding Effect .........................................................................................................42
    B.    Additional Documents...............................................................................................................42
    C.    Filing of Quarterly Reports and Payment of Statutory Fees......................................................42
    D.    Reservation of Rights ................................................................................................................43
    E.    Successors and Assigns .............................................................................................................43
    F.    Service of Documents ...............................................................................................................43
    G.    Term of Injunctions or Stays ....................................................................................................44
    H.    Entire Agreement .....................................................................................................................44
    I.    Plan Supplement Exhibits..........................................................................................................44
    J.    Non-Severability ......................................................................................................................44
    K.    Votes Solicited in Good Faith. ..................................................................................................44
    L.    Closing of Chapter 11 Cases. ...................................................................................................44
    M.    Waiver or Estoppel. ..................................................................................................................45

## INTRODUCTION

Aero Components, LLC, as debtor and debtor in possession (the "<u>Debtor</u>") in the above-captioned chapter 11 cases proposes this Plan. Capitalized terms used in the Plan shall have the meanings set forth in Article I.A of the Plan. The Debtor is a proponent of the Plan within the meaning of section 1129 of the Bankruptcy Code. Reference is made to the Disclosure Statement for a discussion of the Debtor's history, business, properties and operations, projections, risk factors, a summary and analysis of this Plan, and certain related matters.

## ARTICLE I

## DEFINED TERMS, RULES OF INTERPRETATION, COMPUTATION OF TIME, GOVERNING LAW, AND OTHER REFERENCES

### A. <u>Defined Terms</u>

1. "*Administrative Claim*" means a Claim for costs and expenses of administration of the Chapter 11 Cases pursuant to sections 503(b), 507(a)(2), 507(b), or 1114(e)(2) of the Bankruptcy Code, including: (a) the actual and necessary costs and expenses incurred on or after the Petition Date until and including the Effective Date of preserving the Estate and operating the Debtor's businesses; (b) Allowed Professional Claims; and (c) all fees and charges assessed against the Estate pursuant to section 1930 of chapter 123 of title 28 of the United States Code.

2. "*Administrative Claims Bar Date*" means the date by which parties seeking to assert Administrative Claims against the Debtor must file proof of such Administrative Claims, which is (a) April 29, 2022, at 5:00 p.m. (prevailing Central Time) for all Administrative Claims against the Debtor arising on or prior to the Petition Date, (b) for all claims arising after the Petition Date, the 15th day of the month following the month in which the claim arose. For the avoidance of doubt, neither the Administrative Claims Bar Date nor any other Bar Date shall apply to the DIP Loan Claims.

3. *"Aero Seller"* means Aero Components, Inc., and its successors and assigns.

4. "*Aero Seller Subordination Agreement*" means the Subordination Agreement, dated as of February 2017, among the Fore Aero Debtors, the Aero Seller, as junior creditor, and Newspring, as administrative agent for the senior lenders, as senior creditor.

5. *"Aero Seller Unsecured Note"* means the unsecured Subordinated Promissory Note, dated February 23, 2017, by the Debtor, in the principal amount of $2,000,000.00 together with interest thereon, payable to the Aero Seller, as the same has been amended, restated, modified, supplemented, or replaced from time to time and including all ancillary and related documents.

6. *"Aero Seller Unsecured Note Claims"* means the amount owed to the Aero Seller on account of the Aero Seller Unsecured Note reflected in Proof of Claim Number 5-1 filed in Case No. 22-40485, which shall be an Allowed Claim in the amount of $2,934,640.83 and entitled to the treatment set forth in Article III.B.5(b) of the Plan.

7. "*Affiliate*" has the meaning set forth in Rule 12b-2 of the General Rules and Regulations under the Securities Exchange Act of 1934, as amended.

8.   "*Allowed*" means with respect to any Claim, except as otherwise provided in the Plan: (a) a Claim that is evidenced by a Proof of Claim Filed by the Claims Bar Date (or for which Claim under the Plan, the Bankruptcy Code, or pursuant to a Final Order a Proof of Claim is not or shall not be required to be Filed); or (b) a Claim Allowed pursuant to the Plan or a Final Order of the Bankruptcy Court; <u>provided</u>, that with respect to a Claim described in clause (a) above, such Claim shall be considered Allowed only if and to the extent that, with respect to such Claim, no objection to the allowance thereof has been interposed within the applicable period of time fixed by the Plan, the Bankruptcy Code, the Bankruptcy Rules, or the Bankruptcy Court, or such an objection is so interposed and the Claim shall have been Allowed by a Final Order. Except as otherwise specified in the Plan or any Final Order, and except for any Claim that is Secured by property of a value in excess of the principal amount of such Claims, the amount of an Allowed Claim shall not include interest on such Claim from and after the Petition Date. For purposes of determining the amount of an Allowed Claim, there shall be deducted therefrom an amount equal to the amount of any Claim that the Debtors may hold against the holder thereof, to the extent such Claim may be offset, recouped, or otherwise reduced under applicable law. For the avoidance of doubt: (x) a Proof of Claim Filed after the Claims Bar Date shall not be Allowed for any purposes whatsoever absent entry of a Final Order allowing such late-filed Claim; and (y) the Debtors may affirmatively determine to deem Unimpaired Claims Allowed to the same extent such Claims would be allowed under applicable non-bankruptcy law. "Allow" and "Allowing" shall have correlative meanings.

9.   "*A&R LLCA*" means the Amended and Restated Limited Liability Company Agreement for Aero Components, LLC.

10.  "*Assumed Executory Contract and Unexpired Lease List*" means the list, as determined by the Debtor or the Reorganized Debtor, as applicable, of Executory Contracts and Unexpired Leases (with proposed cure amounts) that will be assumed by the Reorganized Debtor, which list shall be included in the Plan Supplement.

11.  "*Bankruptcy Code*" means title 11 of the United States Code, 11 U.S.C. §§ 101–1532.

12.  "*Bankruptcy Court*" means the United States Bankruptcy Court for the Northern District of Texas, Fort Worth Division, or such other court having jurisdiction over the Chapter 11 Cases.

13.  "*Bankruptcy Rules*" means the Federal Rules of Bankruptcy Procedure as promulgated by the United States Supreme Court under section 2075 of title 28 of the United States Code, 28 U.S.C. § 2075, as applicable to the Chapter 11 Cases and the general, local, and chambers rules of the Bankruptcy Court.

14.  "*Bar Date*" means, as applicable, the Administrative Claims Bar Date, the Claims Bar Date, the Governmental Bar Date, and any other date or dates established or to be established by an order of the Court by which Proofs of Claim must be Filed.

15.  "*Business Day*" means any day, other than a Saturday, Sunday, or a legal holiday, as defined in Bankruptcy Rule 9006(a).

16.  "*Capital Equity Investment*" means the new money investment by the Sponsor in the amount needed to pay Administrative Claims (other than the DIP Claims), Priority Tax Claims, Other Secured Claims, Other Priority Claims, General Unsecured Claims and the Aero Seller Unsecured Note Claims to be paid on the Effective Date;.

17. "*Cash*" means the legal tender of the United States of America or the equivalent thereof, includingbank deposits and checks.

18. "*Causes of Action*" means any claims, interests, damages, remedies, causes of action, demands, rights, actions, suits, obligations, liabilities, accounts, defenses, offsets, powers, privileges, licenses, liens, indemnities, guaranties, and franchises of any kind or character whatsoever, whether known or unknown, foreseen or unforeseen, existing or hereinafter arising, contingent or non-contingent, liquidated or unliquidated, secured or unsecured, assertable, directly or derivatively, matured or unmatured, suspected or unsuspected, in contract, tort, law, equity, or otherwise. Causes of Action also include: (a) all rights of setoff, counterclaim, or recoupment and claims under contracts or for breaches of duties imposed by law; (b) the right to object to or otherwise contest Claims or Interests; (c) claims pursuant to sections 362, 510, 542, 543, 544 through 550, or 553 of the Bankruptcy Code; and (d) such claims and defenses as fraud, mistake, duress, and usury, and any other defenses set forth in section 558 of the Bankruptcy Code.

19. "*Certificate*" means any instrument evidencing a Claim or an Interest.

20. "*Chapter 11 Case*" means the chapter 11 case pending for the Debtor in the Bankruptcy Court.

21. "*Chapter 11 Cases*" means the procedurally consolidated chapter 11 cases pending for the Debtor, Fore Aero Holdings, LLC, a Delaware limited liability company, Fore Machine, LLC, a Delaware limited liability company, and Fore Capital Holding, LLC, a Texas limited liability company, in the Bankruptcy Court.

22. "*Claim*" means any claim, as defined in section 101(5) of the Bankruptcy Code, against any of the Debtor.

23. "*Claims Agent*" means Stretto.

24. "*Claims Bar Date*" means (a) as to any Proof of Claim filed by the holder of the Claim, April 29, 2022, at 5:00 p.m. (prevailing Central Time) as established by the Bankruptcy Court, (b) as to any Claim filed by the Debtor on behalf of the holder of a Claim pursuant to Bankruptcy Rule 3004, May 29, 2022, at 5:00 p.m. (prevailing Central Time); and (c) as to any Governmental Unit, the Governmental Bar Date.

25. "*Claims Register*" means the official register of Claims against and Interests in the Debtor maintained by the Claims Agent.

26. "*Class*" means a category of holders of Claims or Interests under section 1122(a) of the Bankruptcy Code.

27. "*Confirmation*" means entry of the Confirmation Order on the docket of the Chapter 11 Cases.

28. "*Confirmation Date*" means the date on which the Bankruptcy Court enters the Confirmation Order on the docket of the Chapter 11 Cases within the meaning of Bankruptcy Rules 5003 and 9021.

29. "*Confirmation Hearing*" means the hearing(s) before the Bankruptcy Court under section 1128 of the Bankruptcy Code at which the Debtor seek entry of the Confirmation Order.

30.  "*Confirmation Order*" means the order of the Bankruptcy Court confirming the Plan under section 1129 of the Bankruptcy Code and approving the Disclosure Statement, which order shall be in form and substance acceptable to the Debtor and the Sponsor.

31.  "*Consenting Stakeholders*" means, collectively, Newspring and Southfield in their capacities as (a) the holders of approximately 14.9% of the outstanding membership interests in Holdings, (b) as lenders under the Note Purchase Agreement, and (c) as DIP Lenders under the DIP Credit Agreement.

32.  "*Consenting Stakeholders Indemnifications*" means the indemnification provided to the Consenting Stakeholders under Section 10.10 of the Note Purchase Agreement.

33.  "*Consummation*" means the occurrence of the Effective Date.

34.  "*Creditor*" has the meaning set forth in section 101(10) of the Bankruptcy Code.

35.  "*Cure*" means a Claim (unless waived or modified by the applicable counterparty) based upon a Debtor's defaults under an Executory Contract or an Unexpired Lease assumed by such Debtor under section 365 of the Bankruptcy Code, other than a default that is not required to be cured pursuant to section 365(b)(2) of the Bankruptcy Code.

36.  "*D&O Liability Insurance Policies*" means all insurance policies (including any "tail policy") maintained by the Debtor as of the Petition Date for liabilities against any of the Debtor's current or former directors, managers, and officers, including, without limitation, all endorsements.

37.  "*Debtor*" means Aero Components, LLC.

38.  "*DIP Agent*" means Newspring, in its capacity as administrative agent under the DIP Loan Agreement.

39.  "*DIP Claims*" means any Claim held by the DIP Lenders or the DIP Agent arising under or related to the DIP Loan Agreement or the DIP Order, including any and all fees, expenses, interest, and accrued but unpaid interest, expenses and fees arising under the DIP Loan Agreement.

40.  "*DIP Facility*" means that certain $2.5 million multiple draw non-amortizing senior secured term loan debtor-in-possession credit facility under the DIP Loan Agreement.

41.  "*DIP Lenders*" means Newspring and Southfield, as lenders party to the DIP Loan Agreement.

42.  "*DIP Loan Agreement*" means that certain debtor-in-possession credit agreement by and among the Debtor, the DIP Agent, and the DIP Lenders as approved by the DIP Order.

43.  "*DIP Order*" means, collectively, the interim and final orders entered by the Bankruptcy Court authorizing the Debtor to enter into the DIP Loan Agreement and access the DIP Facility, which shall be in form and substance acceptable to the DIP Lenders, and the Debtor.

44.  "*Disclosure Statement*" means the disclosure statement for the Plan, including all exhibits and schedules thereto, to be approved by the Confirmation Order.

45.     "*Disputed*" means, as to a Claim or an Interest, a Claim or an Interest: (a) that is not Allowed; (b) that is not disallowed under the Plan, the Bankruptcy Code, or a Final Order, as applicable; and (c) with respect to which a party in interest has filed a Proof of Claim or otherwise made a written request to a Debtor for payment, without any further notice to or action, order, or approval of the Bankruptcy Court.

46.     "*Distribution Date*" means, except as otherwise set forth herein, the date or dates determined by the Debtor or the Reorganized Debtor, on or after the Effective Date, shall make distributions to holders of Allowed Claims entitled to receive distributions under the Plan.

47.     "*Effective Date*" means the date that is the first Business Day after the Confirmation Date on which all conditions precedent to the occurrence of the Effective Date set forth in <u>Article IX.A</u> of the Plan have beensatisfied or waived in accordance with <u>Article IX.B</u> of the Plan.

48.     "*Entity*" has the meaning set forth in section 101(15) of the Bankruptcy Code.

49.     "*Estate*" means the estate of the Debtor created under sections 301 and 541 of the Bankruptcy Code upon the commencement of the applicable Debtor's Chapter 11 Case.

50.     "*Exculpated Party*" means, collectively, and in each case in its capacity as such: (a) the Debtor; (b) the Reorganized Debtor; (c) any official committees appointed in the Chapter 11 Cases and each of their respective members; (d) Newspring; (e) Southfield; (f) the Sponsor; (g) P4G; and (h) with respect to each of the foregoing in clauses (a) through (g), such Entity and its current and former Affiliates, and such Entities' and their current and former Affiliates' current and former subsidiaries, officers, directors, managers, principals, members, employees, agents, advisory board members, financial advisors, partners, attorneys, accountants, investment bankers, consultants, representatives, and other professionals, each in their capacity as such.

51.     "*Executory Contract*" means a contract or lease to which one or more of the Debtor is a party that is subject to assumption or rejection under section 365 of the Bankruptcy Code.

52.     "*Existing D&O Liability Insurance Policy*" shall mean that certain insurance policy #PCD1002582-01 issued by Arch Insurance Company providing, among other things, directors and officers liability insurance coverage, including, without limitation, all endorsements and run-off coverage related thereto.

53.     RESERVED

54.     RESERVED

55.     RESERVED

56.     "*File*" or "*Filed*" means file or filed with the Bankruptcy Court or its authorized designee in the Chapter 11 Case, or, with respect to the filing of a Proof of Claim or Proof of Interest, the Claims Agent.

57.     "*Final Decree*" means the decree contemplated under Bankruptcy Rule 3022.

58.     "*Final Order*" means, as applicable, an order or judgment of the Bankruptcy Court or other court of competent jurisdiction with respect to the relevant subject matter that has not been reversed,

stayed, modified, or amended, and as to which the time to appeal or seek certiorari has expired and no appeal or petition for certiorari has been timely taken, or as to which any appeal that has been taken or any petition for certiorari that has been or may be filed has been resolved by the highest court to which the order or judgment could be appealed or from which certiorari could be sought or the new trial, reargument, or rehearing shall have been denied, resulted in no modification of such order, or has otherwise been dismissed with prejudice.

59.    "*Fore Aero Debtors*" means the Debtor and the Liquidating Debtors.

60.    "*Fore Capital*" means Fore Capital Holding, LLC, a Delaware limited liability company, a debtor and debtor in possession.

61.    "*Fore Machine*" means Fore Machine, LLC, a Delaware limited liability company, a debtor and debtor in possession.

62.    "*Fore Machine Auction*" means the auction or auctions of substantially all of the assets of Fore Machine by the Liquidator.

63.    "*General Unsecured Claim*" means any Claim other than an Administrative Claim, a Professional Claim, a Secured Tax Claim, an Other Secured Claim, a Priority Tax Claim, an Other Priority Claim, a Prepetition Lender Claim (to the extent it is a Class 3 Claim), a DIP Facility Claim, an Aero Seller Unsecured Note Claims, or a Section 510(b) Claim.

64.    "*Governmental Bar Date*" means, as to the Debtor, September 3, 2022, at 5:00 p.m. (prevailing Central Time), or such later date as may be set by order of the Court.

65.    "*Governmental Unit*" has the meaning set forth in section 101(27) of the Bankruptcy Code.

66.    "*Holdings Interests*" means, collectively, the membership interests held by the members of Holdings in the Debtor.

67.    "*Holdings*" means Fore Aero Holdings, LLC, a Delaware limited liability company, a debtor and debtor in possession.

68.    "*Impaired*" means, with respect to any Class of Claims or Interests, a Claim or an Interest that is not Unimpaired.

69.    "*Impaired Non-Voting Status Notice*" means either of the forms of notice attached as Exhibit 3 and Exhibit 4 to the *Order (I) Scheduling a Combined Disclosure Statement Approval and Plan Confirmation Hearing; (II) Approving the Solicitation Procedures and Dates, Deadlines, and Notices Related Thereto; (III) Waiving the Requirement of Filing Statements of Financial Affairs and Schedules of Assets And Liabilities, and (IV) Granting Related Relief* [Docket No. 123], which will be sent to holder of Claims and Interests not entitled to vote under the Plan.

70.    "*Indemnification Provisions*" means the Debtor's indemnification provisions currently in place whether in the Debtor's bylaws, limited liability company agreement, other formation documents, board resolutions, or contracts for the current and former directors, officers, managers, employees, attorneys, other professionals, and agents of the Debtor and such current and former directors', officers', and managers' respective Affiliates.

71. "*Intercompany Contract*" means a contract between or among two or more Debtors or a contract between or among one or more Debtor and one or more of its Affiliates.

72. "*Interest*" means any membership interest in the Debtor and any other rights, options, redemption rights, repurchase rights, convertible, exercisable or exchangeable securities or other agreements, arrangements or commitments of any character relating to, or whose value is related to, any such interest or other ownership interest in the Debtor.

73. "*Lien*" has the meaning set forth in section 101(37) of the Bankruptcy Code.

74. "*Liquidating Debtors*" means Fore Machine, Holdings, and Fore Capital.

75. "*Liquidating Plan*" means the chapter 11 plan and all exhibits, supplements, appendices, and schedules, which plan shall be in form and substance acceptable to the Liquidating Debtors.

76. "*New Equity*" means 100% of the equity in the Reorganized Debtor issued on the Effective Date.

77. "*Newspring*" means Newspring Mezzanine Capital III, L.P., a Delaware limited partnership and its successors and assigns.

78. "*Note Purchase Agreement*" means the Senior Note Purchase Agreement, dated February 23, 2017, among the Fore Aero Debtors, the Prepetition Lenders, and Newspring, in its capacity as administrative agent, as the same has been amended, restated, modified, supplemented, or replaced from time to time and including all ancillary and related documents.

79. "*Other Priority Claim*" means any Claim other than an Administrative Claim or a Priority Tax Claim entitled to priority in right of payment under section 507(a) of the Bankruptcy Code.

80. "*Other Secured Claim*" means any Secured Claim, including the Assumed Equipment Loans, other than the following: (a) the Prepetition Lender Claim; or (b) the DIP Claims.

81. "*P4G*" means P4G Capital Management, LLC and its current and former Affiliates and their current and former Affiliates' current and former directors, managers, officers, equity holders (regardless of whether such interests are held directly or indirectly), predecessors, successors, and assigns, subsidiaries, and each of their respective current and former equity holders, officers, directors, managers, principals, members, employees, agents, advisory board members, financial advisors, partners, attorneys, accountants, investment bankers, consultants, representatives, and other professionals.

82. "*Person*" has the meaning set forth in section 101(41) of the Bankruptcy Code.

83. "*Petition Date*" means the date on which the Chapter 11 Cases were commenced.

84. "*Plan Supplement*" means the compilation of documents and forms of documents, agreements, schedules, and exhibits to the Plan to be filed by the Debtor seven days before the deadline established to object to this Plan, as the same may be amended, supplemented, altered, or modified from time to time on the terms set forth herein, and which includes: (a) the Reorganized Debtor Organizational Documents; (b) the Rejected Executory Contract and Unexpired Lease List; (c) the Assumed Executory Contract and Unexpired Lease List; (d) the schedule of retained

Causes of Action; and (e) any other necessary documentation related to the Restructuring Transactions.

85. "*Plan*" means this chapter 11 plan, including the Plan Supplement and all exhibits, supplements, appendices, and schedules, which plan shall be in form and substance acceptable to the Debtor.

86. RESERVED

87. "*Prepetition Agent*" means Newspring, in its capacity as Administrative Agent under the Note Purchase Agreement.

88. "*Prepetition Lenders*" means Newspring and Southfield.

89. "*Prepetition Lender Claim*" means any Claim arising under, derived from, or based upon the Note Purchase Agreement.

90. "*Priority Tax Claim*" means any Claim of a Governmental Unit of the kind specified in section 507(a)(8) of the Bankruptcy Code.

91. "*Pro Rata*" means the proportion that an Allowed Claim in a particular Class bears to the aggregate amount of Allowed Claims in that Class.

92. "*Professional*" means an Entity: (a) employed in the Chapter 11 Cases pursuant to a Final Order in accordance with sections 327 and 1103 of the Bankruptcy Code and to be compensated for services rendered prior to or on the Effective Date pursuant to sections 327, 328, 329, 330, and 331 of the Bankruptcy Code; or (b) for which compensation and reimbursement has been Allowed by the Bankruptcy Court pursuant to section 503(b)(4) of the Bankruptcy Code.

93. "*Professional Claim*" means a Claim by a Professional seeking an award by the Bankruptcy Court of compensation for services rendered or reimbursement of expenses incurred through and including the Confirmation Date under sections 330, 331, 503(b)(2), 503(b)(3), 503(b)(4), or 503(b)(5) of the Bankruptcy Code.

94. "*Professional Fee Amount*" means the aggregate amount of Professional Claims and other unpaid fees and expenses Professionals estimate they have incurred or will incur in rendering services to the Debtor prior to and as of the Confirmation Date, which estimates Professionals shall deliver to the Debtor as set forth in Article II.C of the Plan.

95. "*Proof of Claim*" means a proof of Claim filed against the Debtor in the Chapter 11 Case.

96. "*Proof of Interest*" means a proof of Interest Filed in the Debtor's Chapter 11 Case.

97. "*Reinstate*," "*Reinstated*," or "*Reinstatement*" means with respect to Claims and Interests, that the Claim or Interest shall be rendered unimpaired in accordance with section 1124 of the Bankruptcy Code.

98. "*Released Party*" means collectively: (a) Newspring; (b) Southfield; (c) the Exit Lenders; (d) Holdings; (e) Fore Machine; (f) Fore Capital; (g) P4G; (h) the holders of Holdings' Interests; (i) the Sponsor; (j) the Aero Seller, and (k) with respect to each of the Debtor, the Reorganized Debtor, and each of the foregoing entities in clauses (a) through (j), such Entity and its current and

former Affiliates, and such Entities' and their current and former Affiliates' current and former directors, managers, officers, equity holders (regardless of whether such interests are held directly or indirectly), predecessors, successors, and assigns, subsidiaries, and each of their respective current and former equity holders, officers, directors, managers, principals, members, employees, agents, advisory board members, financial advisors, partners, attorneys, accountants, investment bankers, consultants, representatives, and other professionals.

99.     "*Releasing Parties*" means, collectively, (a) Newspring; (b) Southfield; (c) the Exit Lenders; (d) Holdings; (e) Fore Machine; (f) Fore Capital; (g) P4G; (h) the holders of Holdings' Interests; (i) the Sponsor; (j) all holders of Claims or Interests who vote to accept the Plan or are deemed to have accepted the Plan; (k) all holders of Claims or Interests who abstain from voting on the Plan and who do not opt out of the releases provided by the Plan; (l) all holders of Claims or Interests who timely vote to reject the Plan and who, in their returned ballots, do not opt out of the releases provided by the Plan, (m) all holders of Claims or Interests who receive an Impaired Non-Voting Status Notice and who do not return such notice on or before the deadline stated in the notice indicating that they are opting out of the releases provided in such Impaired Non-Voting Status Notice; (n) the Aero Seller, (o) all holders of Reorganized Debtor Interests; (p) with respect to each of the Debtor, the Reorganized Debtor and each of the foregoing entities in clauses (a) through (o), such Entity and its current and former Affiliates, and such Entities' and their current and former Affiliates' current and former directors, managers, officers, equity holders (regardless of whether such interests are held directly or indirectly), predecessors, successors, and assigns, subsidiaries, and each of their respective current and former equity holders, officers, directors, managers, principals, members, employees, agents, advisory board members, financial advisors, partners, attorneys, accountants, investment bankers, consultants, representatives, and other professionals, each in their capacity as such collectively; and (p) all holders of Claims and Interests, solely with respect to releases of all holders of Holdings Interests, and their current and former Affiliates, and such Entities' and their Affiliates' current and former equity holders (regardless of whether such interests are held directly or indirectly), predecessors, successors, and assigns, subsidiaries, and their current and former officers, directors, managers, principals, members, employees, agents, advisory board members, financial advisors, partners, attorneys, accountants, investment bankers, consultants, representatives, and other professionals, each in their capacity as such.

100.    "*Rejected Executory Contract and Unexpired Lease List*" means the list, as determined by the Debtor or the Reorganized Debtor, as applicable, of Executory Contracts and Unexpired Leases that will be rejected by the Reorganized Debtor pursuant to the Plan, which list shall be included in the Plan Supplement.

101.    "*Reorganized Debtor*" means the Debtor, or any successor or assign thereto, by merger, consolidation, or otherwise, on and after the Effective Date.

102.    "*Reorganized Debtor Board*" means the Reorganized Debtor's initial board of directors.

103.    "*Reorganized Debtor Interests*" means the membership interests in the Reorganized Debtor.

104.    "*Reorganized Debtor Organizational Documents*" means, as applicable, the limited liability company agreement, bylaws, operating agreements, or other organization documents of the Reorganized Debtor each in form and substance acceptable to the Debtor.

105.    "*Restructuring Transactions*" means the restructuring and recapitalization transactions described in Article IV.O of the Plan.

106. "*RSA*" means that certain Restructuring Support Agreement, dated as of March 7, 2022, by and among the Fore Aero Debtors and the Consenting Stakeholders, including all exhibits and attachments thereto.

107. RESERVED

108. RESERVED

109. "*Section 510(b) Claim*" means any Claim arising from: (a) rescission of a purchase or sale of a security of the Debtor or an Affiliate of the Debtor; (b) purchase or sale of such a security; or (c) reimbursement or contribution allowed under section 502 of the Bankruptcy Code on account of such a Claim.

110. "*Secured Claim*" means a Claim: (a) secured by a Lien on collateral to the extent of the value of such collateral, as determined in accordance with section 506(a) of the Bankruptcy Code or (b) subject to a valid right of setoff pursuant to section 553 of the Bankruptcy Code.

111. "*Secured Tax Claim*" means any Secured Claim that, absent its secured status, would be entitled to priority in right of payment under section 507(a)(8) of the Bankruptcy Code (determined irrespective of time limitations), including any related Secured Claim for penalties.

112. "*Securities Act*" means the Securities Act of 1933, as amended, 15 U.S.C. §§ 77a–77aa, or any similar federal, state, or local law.

113. "*Southfield*" means Southfield Mezzanine Capital, L.P., a Delaware limited partnership, and its successors and assigns.

114. *"Sponsor"* means Newspring and Southfield or an entity owned by Newspring and Southfield.

115. "*Unclaimed Distribution*" means any distribution under the Plan on account of an Allowed Claim or Allowed Interest to a holder that has not: (a) accepted a particular distribution or, in the case of distributions made by check, negotiated such check; (b) given notice to the Reorganized Debtor of an intent to accept a particular distribution; (c) responded to the Debtor's or Reorganized Debtor's requests for information necessary to facilitate a particular distribution; or (d) taken any other action necessary to facilitate such distribution.

116. "*Unexpired Lease*" means a lease of nonresidential real property to which one or more of the Debtor is a party that is subject to assumption or rejection under section 365 of the Bankruptcy Code.

117. "*Unimpaired*" means a Class of Claims or Interests that is unimpaired within the meaning of section 1124 of the Bankruptcy Code.

118. "*U.S. Trustee*" means the Office of the United States Trustee for the Northern District of Texas.

**B.** **Rules of Interpretation**

For purposes of the Plan: (a) in the appropriate context, each term, whether stated in the singular or the plural, shall include both the singular and the plural, and pronouns stated in the masculine, feminine, or neuter gender shall include the masculine, feminine, and the neuter gender; (b) unless

otherwise specified, any reference herein to a contract, lease, instrument, release, indenture, or other agreement or document being in a particular form or on particular terms and conditions means that such document shall be substantially in such form or substantially on such terms and conditions; (c) unless otherwise specified, any reference herein to an existing document, schedule, or exhibit, shall mean such document, schedule, or exhibit, as it may have been or may be amended, modified, or supplemented; (d) unless otherwise specified, all references herein to "Articles" and "Sections" are references to Articles and Sections, respectively, hereof or hereto; (e) the words "herein," "hereof," and "hereto" refer to the Plan in its entirety rather than to any particular portion of the Plan; (f) captions and headings to Articles and Sections are inserted for convenience of reference only and are not intended to be a part of or to affect the interpretation of the Plan; (g) unless otherwise specified herein, the rules of construction set forth in section 102 of the Bankruptcy Code shall apply; (h) any term used in capitalized form herein that is not otherwise defined but that is used in the Bankruptcy Code or the Bankruptcy Rules shall have the meaning assigned to such term in the Bankruptcy Code or the Bankruptcy Rules, as applicable; (i) references to docket numbers of documents filed in the Chapter 11 Cases are references to the docket numbers under the Bankruptcy Court's CM/ECF system; (j) references to "Proofs of Claim," "Holders of Claims," "Disputed Claims," and the like shall include "Proofs of Interest," "Holders of Interests," "Disputed Interests," and the like as applicable; (k) references to "shareholders," "directors," and/or "officers" shall also include "members" and/or "managers," as applicable, as such terms are defined under the applicable state limited liability company laws; and (l) any immaterial effectuating provisions may be interpreted by the Debtor or the Reorganized Debtor in such a manner that is consistent with the overall purpose and intent of the Plan all without further notice to or action, order, or approval of the Bankruptcy Court or any other Entity.

## C.     Computation of Time

Unless otherwise specifically stated herein, the provisions of Bankruptcy Rule 9006(a) shall apply in computing any period of time prescribed or allowed herein. If the date on which a transaction may occur pursuant to the Plan shall occur on a day that is not a Business Day, then such transaction shall instead occur on the next succeeding Business Day.

## D.     Governing Law

Unless a rule of law or procedure is supplied by federal law (including the Bankruptcy Code and Bankruptcy Rules) or unless otherwise specifically stated, the laws of the State of New York, without giving effect to the principles of conflict of laws (other than section 5-1401 and section 5-1402 of the New York General Obligations Law), shall govern the rights, obligations, construction, and implementation of the Plan, any agreements, documents, instruments, or contracts executed or entered into in connection with the Plan (except as otherwise set forth in those agreements, in which case the governing law of such agreement shall control); *provided*, *however*, that corporate governance matters relating to the Debtor or the Reorganized Debtor, as applicable, shall be governed by the laws of the state formation of the Debtor or Reorganized Debtor, as applicable.

## E.     Reference to Monetary Figures

All references in the Plan to monetary figures refer to currency of the United States of America, unless otherwise expressly provided.

## F.     Reference to the Debtor or the Reorganized Debtor

Except as otherwise specifically provided in the Plan to the contrary, references in the Plan to the Debtor or to the Reorganized Debtor mean the Debtor and the Reorganized Debtor, as applicable, to

the extent the context requires.

**G.     Controlling Document**

In the event of an inconsistency between the Plan and the Disclosure Statement, the terms of the Plan shall control in all respects. In the event of an inconsistency between the Plan and the Plan Supplement, the Plan shall control. In the event of any inconsistency between the Plan and the Confirmation Order, the ConfirmationOrder shall control.

**ARTICLE II**

**ADMINISTRATIVE AND PRIORITY CLAIMS**

In accordance with section 1123(a)(1) of the Bankruptcy Code, Administrative Claims, DIP Claims, Professional Claims, and Priority Tax Claims have not been classified and thus are excluded from the Classes of Claims set forth in Article III of the Plan.

**A.     Administrative Claims**

Unless otherwise agreed to by the holder of an Allowed Administrative Claim and the Debtor or the Reorganized Debtor, as applicable, each holder of an Allowed Administrative Claim (other than holders ofProfessional Claims and Claims for fees and expenses pursuant to section 1930 of chapter 123 of title 28 of the United States Code) will receive in full and final satisfaction of its Administrative Claim an amount of Cash equal to the amount of such Allowed Administrative Claim in accordance with the following: (a) if an Administrative Claim is Allowed on or prior to the Effective Date, on the Effective Date or as soon as reasonably practicable thereafter (or, if not then due, when such Allowed Administrative Claim is due or as soon as reasonably practicable thereafter); (b) if such Administrative Claim is not Allowed as of the Effective Date, no later than 30 days after the date on which an order Allowing such Administrative Claim becomes a Final Order, or as soon as reasonably practicable thereafter; (c) if such Allowed Administrative Claim is based on liabilities incurred by the Debtor in the ordinary course of their business after the Petition Date in accordance with the terms and conditions of the particular transaction giving rise to such Allowed Administrative Claim without any further action by the holders of such Allowed Administrative Claim; (d) at such time and upon such terms as may be agreed upon by such holder and the Debtor or the Reorganized Debtor, as applicable; or (e) at such time and upon such terms as set forth in an order ofthe Bankruptcy Court.

Except as otherwise provided in this Article II.A and except with respect to DIP Claims and Professional Claims, requests for payment of Administrative Claims must be Filed and served on the Debtor no later than the Administrative Claims Bar Date. Holders of Administrative Claims that are required to, but do not, File and serve a request for payment of such Administrative Claims by such date shall be forever barred, estopped, and enjoined from asserting such Administrative Claims against the Debtor or its property and such Administrative Claims shall be deemed compromised, settled, and released as of the Effective Date.

**B.     DIP Claims**

Subject to the terms, conditions, and priorities set forth in the DIP Order, the DIP Claims shall be deemed to be Allowed in the full amount due and owing under the DIP Facility as of the Effective Date, including all accrued but unpaid expenses, including legal expenses. In full satisfaction of and in exchange for each DIP Facility Claim, on the Effective Date, (a) the Reorganized Debtor shall assume the

DIP Claims (including all indemnification obligations stated in the DIP Loan Agreement), which DIP Claims shall remain (i) evidenced by the DIP Loan Agreement and the Line of Credit Notes (as defined in the DIP Loan Agreement), and secured by a perfected security interest in the Collateral (as defined in the DIP Loan Agreement) in which the Reorganized Debtor has an interest, with the same priority that exists as of the Effective Date, and (b) the DIP Loan Agreement shall be amended to, among other things, (i) change the Maturity Date to the date that is sixty (60) months after the Effective Date, (ii) change the reference in the definition of "Line of Credit Termination Date" from "two-hundred eighty (280) days from the Petition Date" to "the Maturity Date," (iii) change the Contract Rate to eight percent (8%), and (iv) provide that, on each anniversary of the Effective Date, accrued interest shall be capitalized and added to the principal amount due on the DIP Claims.

**C.**     **Professional Claims**

All requests for payment of Professional Claims for services rendered and reimbursement of expenses incurred prior to the Effective Date must be filed no later than 45 days after the Effective Date. The Bankruptcy Court shall determine the Allowed amounts of such Professional Claims after notice and a hearing in accordance with the procedures established by the Bankruptcy Court. The Reorganized Debtor shall pay Professional Claims in Cash in the amount the Bankruptcy Court allows. Professionals shall deliver to the Debtor their estimates for purposes of the Reorganized Debtor computing the Professional Fee Amount no later than five Business Days prior to the anticipated Effective Date. For the avoidance of doubt, no such estimate shall be deemed to limit the amount of the fees and expenses that are the subject of a Professional's final request for payment of Professional Claims filed with the Bankruptcy Court. If a Professional does not provide an estimate, the Debtor may estimate the unpaid and unbilled fees and expenses of such Professional. No Professional Claims shall be paid on or after the Effective Date unless prior thereto, all DIP Claims have been paid in full and each Prepetition Lender shall have received payment in full of amounts due to such Prepetition Lender on the Effective Date pursuant to Article III B.3 of this Plan.

From and after the Effective Date, any requirement that Professionals comply with sections 327 through 331 and 1103 of the Bankruptcy Code in seeking retention or compensation for services rendered after such date shall terminate, and the Reorganized Debtor may employ and pay any Professional in the ordinary course of business without any further notice to or action, order, or approval of the Bankruptcy Court.

**D.**     **Priority Tax Claims**

Except to the extent that a holder of an Allowed Priority Tax Claim agrees to a less favorable treatment, in full and final satisfaction, settlement, release, and discharge of and in exchange for each Allowed Priority Tax Claim, each holder of such Allowed Priority Tax Claim shall be treated in accordance with the terms set forth in section 1129(a)(9)(C) of the Bankruptcy Code and, for the avoidance of doubt, holders of Allowed Priority Tax Claims will receive interest on such Allowed Priority Tax Claims after the Effective Date in accordance with sections 511 and 1129(a)(9)(C) of the Bankruptcy Code.

**ARTICLE III**

**CLASSIFICATION, TREATMENT, AND VOTING OF CLAIMS AND INTERESTS**

**A.**     **Classification of Claims and Interests**

Except for the Claims addressed in <u>Article II</u> of the Plan, all Claims and Interests are classified

in the Classes set forth below in accordance with section 1122 of the Bankruptcy Code. A Claim or an Interest is classified in a particular Class only to the extent that the Claim or Interest qualifies within the description of that Class and is classified in other Classes to the extent that any portion of the Claim or Interest qualifies within the description of such other Classes. A Claim or an Interest also is classified in a particular Class for the purpose of receiving distributions under the Plan only to the extent that such Claim or Interest is an Allowed Claim or Interest in that Class and has not been paid, released, or otherwise satisfied prior to the Effective Date.

Below is a chart assigning each Class a number for purposes of identifying each separate Class.

| Class | Claim | Status | Voting Rights |
|-------|-------|--------|---------------|
| 1 | Other Secured Claims | Unimpaired | Presumed to Accept |
| 2 | Other Priority Claims | Unimpaired | Presumed to Accept |
| 3 | Prepetition Lender Claims | Impaired | Entitled to Vote |
| 4 | General Unsecured Claims | Unimpaired | Presumed to Accept |
| 5 | Aero Seller Unsecured Note | Impaired | Entitled to Vote[2] |
| 6 | Equity Interests of Holdings | Impaired | Deemed to Reject |

## B.   Treatment of Classes of Claims and Interests

Each holder of an Allowed Claim or Allowed Interest, as applicable, shall receive under the Plan the treatment described below in full and final satisfaction, settlement, release, and discharge of and in exchange for such holder's Allowed Claim or Allowed Interest, except to the extent different treatment is agreed to by: (a) the Debtor; and (b) the holder of such Allowed Claim or Allowed Interest, as applicable. Unless otherwise indicated, the holder of an Allowed Claim or Allowed Interest, as applicable, shall receive such treatment on the Effective Date or as soon as reasonably practicable thereafter.

1.   **Class 1 - Other Secured Claims**

(a) *Classification:* Class 1 consists of any Other Secured Claims against the Debtor.

(b) *Treatment:* Each holder of an Allowed Class 1 Claim shall receive as determined by the Debtor or the Reorganized Debtor, as applicable:

---

[2] Pursuant to the Aero Seller Subordination Agreement, the Holder is required not to vote against any plan of reorganization that is supported by the Consenting Stakeholders.

(i)       payment in full in Cash of its Allowed Class 1 Claim;

(ii)      the collateral securing its Allowed Class 1 Claim;

(iii)     Reinstatement of its Allowed Class 1 Claim; or

(iv)     such other treatment rendering its Allowed Class 1 Claim Unimpaired in accordance with section 1124 of the Bankruptcy Code.

(c) *Voting*: Class 1 is Unimpaired under the Plan. Holders of Allowed Class 1 Claims are conclusively presumed to have accepted the Plan under section 1126(f) of the Bankruptcy Code. Holders of Allowed Class 1 Claims are not entitled to vote to accept or reject the Plan.

2.      **Class 2 — Other Priority Claims**

(a) *Classification*: Class 2 consists of any Other Priority Claims against the Debtor.

(b) *Treatment*: Each holder of an Allowed Class 2 Claim shall receive Cash in an amount equal to such Allowed Class 2 Claim.

(c) *Voting*: Class 2 is Unimpaired under the Plan. Holders of Allowed Class 2 Claims are conclusively presumed to have accepted the Plan under section 1126(f) of the Bankruptcy Code. Holders of Allowed Class 2 Claims are not entitled to vote to accept or reject the Plan.

3.      **Class 3 — Prepetition Secured Lender Claims**

(a) *Classification*:  Class 3 consists of all Prepetition Lender Claims that are Secured Claims.

(b) *Allowance:* The Class 3 Claims shall be Allowed as Secured Claims in the aggregate principal amount of $19,500,000.00 plus all accrued and unpaid reasonable and documented fees and expenses of the Prepetition Lenders and the Prepetition Agent. For the avoidance of doubt, the difference between the full Prepetition Lender Claims and the amount that is Allowed as a Secured Claim will be Allowed as a Class 4 General Unsecured Claim.

(c) *Treatment*:  In full and final satisfaction, compromise, settlement, release, and discharge of their Class 3 Claims, (i) the Reorganized Debtor shall assume the Class 3 Claims (including all indemnification obligations stated in the Note Purchase Agreement or any Loan Document, as defined in the Note Purchase Agreement), which Class 3 Claims shall remain (i) evidenced by the Note Purchase Agreement and the Loan Documents, and (ii) secured by a perfected security interest in the Collateral (as defined in the Note Purchase Agreement) in which the Reorganized Debtor has an interest, with the same priority that exists as of the Effective Date, and (b) the Note Purchase Agreement shall be amended to, among other things, (i) change the Maturity Date to the date that is sixty (60) months after the Effective Date, (ii) change the reference in the definition of "Line of Credit Termination Date" from "two-hundred eighty (280) days from the Petition Date" to "the Maturity Date," (iii) change the Contract Rate to eight percent (8%), and (iv) provide

that, on each anniversary of the Effective Date, accrued interest shall be capitalized and added to the principal amount due on the DIP Claims.

For the avoidance of doubt, the treatment of the Class 3 Claim hereunder shall not constitute a termination, waiver or limitation of the Prepetition Lender's claims, rights, interests, liens or security interests against the Liquidating Debtors or any other third party.

(d) *Voting*: Class 3 is Impaired under the Plan. Holders of Allowed Class 3 Claims are entitled to vote to accept or reject the Plan.

4.  **Class 4 — General Unsecured Claims**

(a) *Classification*: Class 4 consists of any General Unsecured Claims against the Debtor.

(b) *Treatment*: Each holder of an Allowed Class 4 Claim other than the Prepetition Lenders shall receive Cash in an amount equal to such Allowed Class 4 Claim on the later of: (a) the Effective Date; or (b) the date due in the ordinary course of business in accordance with the terms and conditions of the particular transaction giving rise to such Allowed Class 4 Claim. The Prepetition Lenders shall be deemed to have waived distribution from the Reorganized Debtor on account of their Class 4 Claim. For the avoidance of doubt, the waiver by the Prepetition Lenders of a distribution on account of their Class 4 Claims hereunder shall not constitute a termination, waiver or limitation of the Prepetition Lender's claims, rights, interests, liens or security interests against the Liquidating Debtors or any other third party.

(c) *Voting*: Class 4 is Unimpaired under the Plan. Holders of Allowed Class 4 Claims are conclusively presumed to have accepted the Plan under section 1126(f) of the Bankruptcy Code. Holders of Allowed Class 4 Claims are not entitled to vote to accept or reject the Plan.

5.  **Class 5 – Aero Seller Unsecured Note Claim**

(a) *Classification*: Class 5 consists of the Aero Seller Unsecured Note Claim.

(b) *Treatment*: The Aero Seller shall receive Cash in an amount equal to $325,000 on the Effective Date.  The Aero Seller shall not be entitled to any further payment on account of the Aero Seller Unsecured Note Claims unless, (i) within one (1) year of the Effective Date (the "Subsequent Sale Period"), the Sponsor is able to sell the membership interests in the Reorganized Debtor or the Reorganized Debtor's business or assets to a third party purchaser (a "Subsequent Purchaser"), and (ii) the purchase price paid by the Subsequent Purchaser for the membership interests in the Reorganized Debtor or the Reorganized Debtor's business or assets exceeds an amount (the "Minimum Purchase Price," ) which is sufficient to result in the payment to the Lenders, on account of their Class 3 Claims and their DIP Claims and to the Sponsor, on account of its New Equity, in an aggregate amount equal to the lesser of (y) Twenty-Five Million ($25,000,000), or (z) nineteen million five hundred dollars ($19,500,000) plus the amount of the DIP Claims plus the Capital Equity Investment and plus any additional capital contributions made by the Sponsor to the Reorganized Debtor during the Subsequent Sale Period. If a Subsequent Purchaser pays more than the Minimum Purchase Price for the membership interests in the Reorganized Debtor or the Reorganized Debtor's business or assets within the

Subsequent Sale Period, then any amount over the Minimum Purchase Price shall be paid to the Aero Seller up to the full amount of the Aero Seller Unsecured Note Claims in full and final satisfaction of the Aero Seller Unsecured Note Claims. The Sponsor agrees that, during the Subsequent Sale Period, it will not sell the membership interests in the Sponsor, the membership interests in the Reorganized Debtor, or any of the Reorganized Debtor's assets or business to P4G or any entities affiliated with either P4G or any of its officers, directors or managers.

(c) *Voting*: Class 5 is Impaired under the Plan. The holder of the Class 5 Claim is entitled to vote to accept or reject the Plan.

6. **Class 6 — Holdings Interests**

(a) *Classification*: Class 6 consists of the Holdings Interests.

(b) *Treatment*: Class 6 Interests will be canceled, released, and extinguished as of the Effective Date, and will be of no further force or effect, and holders of Class 6 Interests will not receive any distribution on account of such Class 6 Interests.

(c) *Voting*: Class 6 is Impaired under the Plan. Holders of Class 6 Interests are deemed to have rejected the Plan pursuant to section 1126(g) of the Bankruptcy Code and, therefore, are not entitled to vote to accept or reject the Plan.

C.     **Special Provision Governing Unimpaired Claims**

Except as otherwise provided in the Plan, nothing under the Plan shall affect the Debtor's or the Reorganized Debtor's rights regarding any Unimpaired Claims, including all rights regarding legal and equitable defenses to or setoffs or recoupments against any such Unimpaired Claim.

D.     **Elimination of Vacant Classes**

Any Class of Claims or Interests that does not have a holder of an Allowed Claim or Allowed Interest or a Claim or Interest temporarily Allowed by the Bankruptcy Court as of the date of the Confirmation Hearing shall be deemed eliminated from the Plan for purposes of voting to accept or reject the Plan and for purposes of determining acceptance or rejection of the Plan by such Class pursuant to section 1129(a)(8) of the Bankruptcy Code.

E.     **Voting Classes; Presumed Acceptance by Non-Voting Classes**

If a Class contains Claims or Interests eligible to vote and no holders of Claims or Interests eligible to vote in such Class vote to accept or reject the Plan, the Debtor shall request the Bankruptcy Court to deem the Plan accepted by the holders of such Claims or Interests in such Class.

F.     **Subordinated Claims**

The allowance, classification, and treatment of all Allowed Claims and the respective distributions and treatments under the Plan take into account and conform to the relative priority and rights of the Claims in each Class in connection with any contractual, legal, and equitable subordination rights relating thereto, whether arising under general principles of equitable subordination, section 510(b) of the Bankruptcy Code, or otherwise. Pursuant to section 510 of the Bankruptcy Code, the Reorganized Debtor reserves the right to re-classify any Allowed Claim (other than the Allowed Claims

held by the Prepetition Lenders and the DIP Lenders) or Allowed Interest in accordance with any contractual, legal, or equitable subordination relating thereto.

## G. Confirmation Pursuant to Section 1129(b) of the Bankruptcy Code

The Debtor shall seek Confirmation of the Plan pursuant to section 1129(b) of the Bankruptcy Code with respect to any rejecting Class of Claims or Interests. The Debtor, with the consent of the Consenting Stakeholders, reserve the right to modify the Plan in accordance with Article X of the Plan to the extent, if any, that Confirmation pursuant to section 1129(b) of the Bankruptcy Code requires modification, including by modifying the treatment applicable to a Class of Claims or Interests to render such Class of Claims or Interests Unimpaired to the extent permitted by the Bankruptcy Code and the Bankruptcy Rules.

## ARTICLE IV

## PROVISIONS FOR IMPLEMENTATION OF THE PLAN

### A. General Settlement of Claims and Interests

Pursuant to section 1123 of the Bankruptcy Code and Bankruptcy Rule 9019, and in consideration for the classification, distributions, releases, and other benefits provided under the Plan, upon the Effective Date, the provisions of the Plan shall constitute a good faith compromise and settlement of all Claims and Interests and controversies resolved pursuant to the Plan. The entry of the Confirmation Order shall constitute the Bankruptcy Court's approval of the compromise or settlement of all such Claims, Interests, and controversies, as well as a finding by the Bankruptcy Court that such compromise or settlement is in the best interests of the Debtor, its Estate, and Holders of Claims and Interests and is fair, equitable, and is within the range of reasonableness. Subject to Article VI of the Plan, all distributions made to holders of Allowed Claims in any Class are intended to be and shall be final.

### B. Sources of Consideration for Plan Distributions

#### 1. Cash on Hand

The Reorganized Debtor shall use Cash on hand and proceeds of the Capital Equity Investment to fund distributions required under the Plan.

#### 2. Issuance and Distribution of the Reorganized Debtor Interests

All existing Interests of the Debtor shall be cancelled as of the Effective Date and the Reorganized Debtor shall issue the Reorganized Debtor Interests to Entities entitled to receive the Reorganized Debtor Interests pursuant to the Plan. The issuance of the Reorganized Debtor Interests shall be authorized without the need for any further corporate action and without any further action by the holders of Claims or Interests or the Debtor or the Reorganized Debtor, as applicable. The Reorganized Debtor Organizational Documents shall authorize the issuance and distribution on the Effective Date of the Reorganized Debtor Interests to the Sponsor for the benefit of Entities entitled to receive the Reorganized Debtor Interests pursuant to the Plan. All of the Reorganized Debtor Interests issued under the Plan shall be duly authorized, validly issued, fully paid, and non-assessable. Each distribution and issuance of the Reorganized Debtor Interests under the Plan shall be governed by the terms and conditions set forth in the Plan applicable to such distribution or issuance and by the terms and conditions of the instruments evidencing or relating to such distribution or issuance, which terms and conditions shall bind each Entity receiving such distribution or issuance. The Reorganized Debtor Organizational

Documents shall prohibit the issuance of non-voting equity securities.

**C.**     **The Capital Equity Investment**

On the Effective Date, (i) the existing membership interests and all rights of members and the manager of the Reorganizing Debtor shall be cancelled and of no further force or effect, (ii) the Reorganizing Debtor shall enter into the A&R LLCA, and (iii) in consideration of the Capital Equity Investment, the Sponsor will receive the New Equity under the A&R LLCA. **The above-proposed capital contributions are subject to the occurrence of the Effective Date. The Sponsor shall not have any obligation to fund, and will not fund, the Capital Equity Investment if the Effective Date does not occur.**

**D.**     **RESERVED**

**E.**     **Exemption from Registration Requirements**

The offering, issuance, and distribution of any Securities, including the Reorganized Debtor Interests, pursuant to the Plan will be exempt from the registration requirements of section 5 of the Securities Act pursuant to section 1145 of the Bankruptcy Code or any other available exemption from registration under the Securities Act, as applicable. Pursuant to section 1145 of the Bankruptcy Code, the Reorganized Debtor Interests issued under the Plan will be freely transferable under the Securities Act by the recipients thereof, subject to: (a) the provisions of section 1145(b)(1) of the Bankruptcy Code relating to the definition of an underwriter in section 2(a)(11) of the Securities Act and compliance with any applicable state or foreign securities laws, if any, and the rules and regulations of the United States Securities and Exchange Commission, if any, applicable at the time of any future transfer of such Securities or instruments; and (b) any other applicable regulatory approval.

**F.**     **Corporate Existence**

Except as otherwise provided in the Plan (including, for the avoidance of doubt, the Restructuring Transactions), the Debtor will continue to exist after the Effective Date as a limited liability company with all the powers of a limited liability company pursuant to the applicable law in the jurisdiction in which the Debtor is incorporated or formed and pursuant to the formation documents and by-laws in effect prior to the Effective Date, except to the extent such formation documents and by-laws are amended under the Plan or otherwise, and to the extent such documents are amended, such documents are deemed to be amended pursuant to the Plan and require no further action or approval (other than any requisite filings required under applicable state, provincial, or federal law).

**G.**     **Vesting of Assets in the Reorganized Debtor**

Except as otherwise provided in the Plan (including, for the avoidance of doubt, the Restructuring Transactions), or in any agreement, instrument, or other document incorporated in the Plan, on the Effective Date, all property in the Debtor's Estate, all Causes of Action, and any property acquired by the Debtor under the Plan shall vest in the Reorganized Debtor, free and clear of all Liens, Claims, charges, or other encumbrances. Notwithstanding the forgoing, none of the DIP Claims, Prepetition Lender Claims, or Liens securing either shall be divested prior to payment in full of the DIP Claims and the Prepetition Lender Claims classified in Class 3 hereof. On and after the Effective Date, except as otherwise provided herein, the Reorganized Debtor may operate its business and may use, acquire, or dispose of property and compromise or settle any Claims, Interests, or Causes of Action without supervision or approval by the Bankruptcy Court and free of any restrictions of the Bankruptcy Code or Bankruptcy Rules.

**H.**     **Cancellation of Notes, Instruments, Certificates, and Other Documents**

On the Effective Date, except to the extent otherwise provided herein, all notes, instruments, Certificates, and other documents evidencing Claims or Interests, including, for the avoidance of doubt, the Aero Seller Unsecured Note, shall be cancelled and the obligations of the Debtor or the Reorganized Debtor thereunder or in any way related thereto shall be discharged; *provided*, *however*, that notwithstanding Confirmation or the occurrence of the Effective Date, any credit document or agreement that governs the rights of the holder of a Claim or Interest shall continue in effect solely for purposes of allowing holders of Allowed Claims to receive distributions under the Plan, and the DIP Loan Agreement and the Note Purchase Agreement, and all related documents, shall continue in effect in their entirety until payment in full of the DIP Claims and the Prepetition Lender Claims classified in Class 3 hereof.

**I.**     **The Reorganized Debtor's Organizational Documents**

On the Effective Date, the Debtor shall enter into new formation, organizational, and constituent documents (including those formation, organizational, and constituent documents relating to limited partnerships and limited liability companies) as may be necessary to effectuate the transactions contemplated by the Plan and shall be in form and substance acceptable to the Debtor. The Debtor's formation, organizational, and constituent documents shall be amended as may be required to be consistent with the provisions of the Plan, and the Bankruptcy Code. the Reorganized Debtor Organizational Documents shall be included as exhibits to the Plan Supplement. After the Effective Date, the Reorganized Debtor may amend and restate its formation, organizational, and constituent documents as permitted by the laws of its respective jurisdiction of formation and the terms of such documents.

**J.**     **Effectuating Documents; Further Transactions**

On and after the Effective Date, the Reorganized Debtor, and the officers and members of the boards of directors and managers thereof, are authorized to and may issue, execute, deliver, file, or record such contracts, Securities, instruments, releases, and other agreements or documents and take such actions as may be necessary or appropriate to effectuate, implement, and further evidence the terms and conditions of the Plan, and the Securities issued pursuant to the Plan in the name of and on behalf of the Reorganized Debtor, without the need for any approvals, authorizations, or consents except for those expressly required under the Plan.

**K.**     **Section 1146(a) Exemption**

To the fullest extent permitted by section 1146(a) of the Bankruptcy Code, any transfers of property under the Plan or pursuant to: (a) the issuance, distribution, transfer, or exchange of any debt, equity security, or other interest in the Debtor or the Reorganized Debtor; (b) the Restructuring Transaction; (c) the creation, modification, consolidation, termination, refinancing, and/or recording of any mortgage, deed of trust, or other security interest, or the securing of additional indebtedness by such or other means; (d) the making, assignment, or recording of any lease or sublease; or (e) the making, delivery, or recording of any deed or other instrument of transfer under, in furtherance of, or in connection with, the Plan, including any deeds, bills of sale, assignments, or other instrument of transfer executed in connection with any transaction arising out of, contemplated by, or in any way related to the Plan, shall not be subject to any document recording tax, stamp tax, conveyance fee, intangibles or similar tax, mortgage tax, real estate transfer tax, mortgage recording tax, Uniform Commercial Code filing or recording fee, regulatory filing or recording fee, or other similar tax or governmental assessment, and upon entry of the Confirmation Order, the appropriate state or local governmental officials or agents shall forego the collection of any such tax or governmental assessment and accept for filing and recordation any of the foregoing instruments or other documents without the payment of any such tax, recordation

fee, or governmental assessment. All filing or recording officers (or any other Person with authority over any of the foregoing), wherever located and by whomever appointed, shall comply with the requirements of section 1146(c) of the Bankruptcy Code, shall forego the collection of any such tax or governmental assessment, and shall accept for filing and recordation any of the foregoing instruments or other documents without the payment of any such tax or governmental assessment.

## L.      Directors and Officers

The members of the Reorganized Debtor Board and the officers, directors, and/or managers of the Reorganized Debtor will be identified in the Plan Supplement. The Members of the Reorganized Debtor Board shall be appointed by the Sponsor. On the Effective Date, the existing officers of the Debtor shall serve in their current capacities for the Reorganized Debtor. From and after the Effective Date, each director, officer, or manager of the Reorganized Debtor shall serve pursuant to the terms of their respective charters and bylaws or other formation and constituent documents, and applicable laws of the respective Reorganized Debtor's jurisdiction of formation. In accordance with section 1129(a)(5) of the Bankruptcy Code, the identities, and affiliations of the members of the Reorganized Debtor Board and any Person proposed to serve as an officer of the Reorganized Debtor shall be disclosed at or before the Confirmation Hearing.

## M.      Incentive Plans and Employee and Retiree Benefits

Except as otherwise provided herein, on and after the Effective Date, subject to any Final Order and, without limiting any authority provided to the Reorganized Debtor Board under the Debtor's respective formation and constituent documents, the Reorganized Debtor shall: (a) amend, adopt, assume, and/or honor in the ordinary course of business, any contracts, agreements, policies, programs, and plans, in accordance with their respective terms, for, among other things, compensation, including any incentive plans, health care benefits, disability benefits, deferred compensation benefits, savings, severance benefits, retirement benefits, welfare benefits, workers' compensation insurance, and accidental death and dismemberment insurance for the directors, officers, and employees of any of the Debtor who served in such capacity from and after the Petition Date; and (b) honor, in the ordinary course of business, Claims of employees employed as of the Effective Date for accrued vacation time arising prior to the Petition Date and not otherwise paid pursuant to a Bankruptcy Court order.

## N.      Preservation of Rights of Action

In accordance with section 1123(b) of the Bankruptcy Code, the Reorganized Debtor shall retain and may enforce all rights to commence and pursue any and all Causes of Action, whether arising before or after the Petition Date, including any actions specifically enumerated in the Plan Supplement, and the Reorganized Debtor's rights to commence, prosecute, or settle such Causes of Action shall be preserved notwithstanding the occurrence of the Effective Date, other than the following: (a) the Causes of Action released by the Debtor pursuant to the releases and exculpations contained in the Plan, including in Article VIII of the Plan, which shall be deemed released and waived by the Debtor and Reorganized Debtor as of the Effective Date; and (b) all Causes of Action that arise under sections 544, 547, 548, and 549 of the Bankruptcy Code and state fraudulent conveyance law.

The Reorganized Debtor may pursue such Causes of Action, as appropriate, in accordance with the best interests of the Reorganized Debtor. **No Entity may rely on the absence of a specific reference in the Plan, the Plan Supplement, or the Disclosure Statement to any Cause of Action against it as any indication that the Debtor or the Reorganized Debtor will not pursue any and all available Causes of Action against it. The Debtor and the Reorganized Debtor expressly reserve all rights to prosecute any and all Causes of Action against any Entity, except as otherwise expressly provided**

**herein or in the DIP Order**. Unless any Causes of Action against an Entity are expressly waived, relinquished, exculpated, released, compromised, or settled in the Plan or a Bankruptcy Court order, the Reorganized Debtor expressly reserve all Causes of Action, for later adjudication, and, therefore no preclusion doctrine, including the doctrines of res judicata, collateral estoppel, issue preclusion, claim preclusion, estoppel (judicial, equitable, or otherwise), or laches, shall apply to such Causes of Action upon, after, or as a consequence of the Confirmation or Consummation.

The Reorganized Debtor reserves and shall retain the Causes of Action notwithstanding the rejection of any Executory Contract or Unexpired Lease during the Chapter 11 Cases or pursuant to the Plan. In accordance with section 1123(b)(3) of the Bankruptcy Code, any Causes of Action that a Debtor may hold against any Entity shall vest in the Reorganized Debtor. the Reorganized Debtor shall have the exclusive right, authority, and discretion to determine and to initiate, file, prosecute, enforce, abandon, settle, compromise, release, withdraw, or litigate to judgment any such Causes of Action, or to decline to do any of the foregoing, without the consent or approval of any third party or any further notice to or action, order, or approval of the Bankruptcy Court.

O.    **Restructuring Transactions**

On or after the Effective Date, or as soon as reasonably practicable thereafter, the Debtor may take all actions as may be necessary or appropriate to effect any transaction described in, approved by, contemplated by, or necessary to effectuate the Plan, including: (a) the execution and delivery of appropriate agreements or other documents of merger, amalgamation, consolidation, restructuring, reorganization, conversion, disposition, transfer, arrangement, continuance, dissolution, sale, purchase, or liquidation containing terms that are consistent with the terms of the Plan; (b) the execution and delivery of appropriate instruments of transfer, assignment, assumption, or delegation of any asset, property, right, liability, debt, or obligation on terms consistent with the terms of the Plan and having other terms to which the applicable parties agree; (c) the filing of appropriate certificates or articles of incorporation, reincorporation, merger, consolidation, conversion, amalgamation, arrangement, continuance, or dissolution or other certificates or documentation for other transactions as described in clause (a), pursuant to applicable state law; (d) the issuance and distribution of the Reorganized Debtor Interests; and (e) all other actions that the applicable Entities determine to be necessary or appropriate, including making filings or recordings that may be required by applicable law in connection with the Restructuring Transactions.

Each of the matters provided for by the Plan involving the corporate structure of the Debtor or corporate or related actions to be taken by or required of the Reorganized Debtor, whether taken prior to or as of the Effective Date, shall be deemed authorized and approved in all respects without the need for any further corporate action and without any further action by the Debtor or the Reorganized Debtor, as applicable. Such actions may include the following: (a) the adoption and filing of the Reorganized Debtor Organizational Documents; (b) the selection of the directors, managers, and officers for the Reorganized Debtor, including the appointment of the Reorganized Debtor Board; (c) the authorization, issuance, and distribution of the Reorganized Debtor Interests; and (d) the adoption or assumption, as applicable, of Executory Contracts or Unexpired Leases.

## ARTICLE V

## TREATMENT OF EXECUTORY CONTRACTS AND UNEXPIRED LEASES

A.    **Assumption of Executory Contracts and Unexpired Leases**

Unless the Debtor or Reorganizing Debtor moves to reject an Executory Contract, each Executory

Contract and Unexpired Lease shall be deemed assumed, without the need for any further notice to or action, order, or approval of the Bankruptcy Court, as of the Effective Date under section 365 of the Bankruptcy Code.

Except as otherwise provided herein or agreed to by the Debtor and the applicable counterparty, each assumed Executory Contract or Unexpired Lease shall include all modifications, amendments, supplements, restatements, or other agreements related thereto, and all rights related thereto, if any, including all easements, licenses, permits, rights, privileges, immunities, options, rights of first refusal, and any other interests. Modifications, amendments, supplements, and restatements to prepetition Executory Contracts and Unexpired Leases that have been executed by the Debtor during the Chapter 11 Cases shall not be deemed to alter the prepetition nature of the Executory Contract or Unexpired Lease or the validity, priority, or amount of any Claims that may arise in connection therewith.

To the maximum extent permitted by law, to the extent that any provision in any Executory Contract or Unexpired Lease assumed or assumed and assigned pursuant to the Plan restricts or prevents, or purports to restrict or prevent, or is breached or deemed breached by, the assumption or assumption and assignment of such Executory Contract or Unexpired Lease (including any "change of control" provision), then such provision shall be deemed modified such that the transactions contemplated by the Plan shall not entitle the non-Debtor party thereto to terminate such Executory Contract or Unexpired Lease or to exercise any other default-related rights with respect thereto.

**B.**     **Claims Based on Rejection of Executory Contracts or Unexpired Leases**

Unless otherwise provided by a Final Order of the Bankruptcy Court, all Proofs of Claim with respect to Claims arising from the rejection of Executory Contracts or Unexpired Leases, pursuant to the Plan or the Confirmation Order, if any, must be filed with the Claims Agent and served on the Reorganized Debtor no later than fourteen (14) days after the effective date of such rejection.

Any Claims arising from the rejection of an Executory Contract or Unexpired Lease not filed with the Claims Agent within such time will be automatically disallowed, forever barred from assertion, and shall not be enforceable against the Debtor, the Reorganized Debtor, the Estate, or its property, without the need for any objection by the Debtor or Reorganized Debtor, or further notice to, action, order, or approval of the Bankruptcy Court or any other Entity, and any Claim arising out of the rejection of the Executory Contractor Unexpired Lease shall be deemed fully satisfied, released, and discharged, and be subject to the permanent injunction set forth in Article VIII.E of the Plan, notwithstanding anything in a Proof of Claim to the contrary, unless leave to File a late Claim is obtained.

All Claims arising from the rejection by the Debtor of any Executory Contract or Unexpired Lease pursuant to section 365 of the Bankruptcy Code shall be treated as a General Unsecured Claim pursuant to Article III.B of the Plan and may be objected to in accordance with the provisions of Article VII of the Plan and the applicable provisions of the Bankruptcy Code and Bankruptcy Rules.

**C.**     **Indemnification**

On and as of the Effective Date, the Indemnification Provisions will be assumed and irrevocable and will survive the effectiveness of the Plan, and the Reorganized Debtor's governance documents will provide for the indemnification, defense, reimbursement, exculpation, and/or limitation of liability of, and advancement of fees and expenses to the Debtor's and the Reorganized Debtor's current and former directors, officers, employees, and agents to the fullest extent permitted by law and at least to the same extent as the organizational documents of the Debtor on the Petition Date, against any claims or Causes of Action whether direct or derivative, liquidated or unliquidated, fixed or contingent, disputed or

undisputed, matured or unmatured, known or unknown, foreseen or unforeseen, asserted or unasserted, and the Reorganized Debtor will not amend and/or restate its governance documents before or after the Effective Date to terminate or adversely affect any of the Reorganized Debtor's obligations to provide such Indemnification Provisions or such directors', officers', employees', or agents' indemnification rights.

**D.**     **Cure of Defaults and Objections to Cure and Assumption**

The Debtor or the Reorganized Debtor, as applicable, shall pay Cures, if any, on the Effective Date or as soon as reasonably practicable thereafter. Unless otherwise agreed upon in writing by the parties to the applicable Executory Contract or Unexpired Lease, all requests for payment of Cure that differ from the amounts paid or proposed to be paid by the Debtor or the Reorganized Debtor to a counterparty must be filed with the Debtor on or before 30 days after the Effective Date. Any such request that is not timely filed shall be disallowed and forever barred, estopped, and enjoined from assertion, and shall not be enforceable against any Reorganized Debtor, without the need for any objection by the Reorganized Debtor or any other party in interest or any further notice to or action, order, or approval of the Bankruptcy Court. Any Cure shall be deemed fully satisfied, released, and discharged upon payment by the Debtor or the Reorganized Debtor of the Cure; *provided*, *however*, that nothing herein shall prevent the Reorganized Debtor from paying any Cure despite the failure of the relevant counterparty to file such request for payment of such Cure. the Reorganized Debtor also may settle any Cure without any further notice to or action, order, or approval of the Bankruptcy Court. In addition, any objection to the assumption of an Executory Contract or Unexpired Lease under the Plan must be filed with the Bankruptcy Court on or before 30 days after the Effective Date. Any such objection will be scheduled to be heard by the Bankruptcy Court at the Debtor's or Reorganized Debtor's, as applicable, first scheduled omnibus hearing for which such objection is timely filed. Any counterparty to an Executory Contract or Unexpired Lease that fails to timely object to the proposed assumption of any Executory Contract or Unexpired Lease will be deemed to have consented to such assumption.

If there is any dispute regarding any Cure, the ability of the Reorganized Debtor or any assignee to provide "adequate assurance of future performance" within the meaning of section 365 of the Bankruptcy Code, or any other matter pertaining to assumption, then payment of Cure shall occur as soon as reasonably practicable after entry of a Final Order resolving such dispute, approving such assumption (and, if applicable, assignment), or as may be agreed upon by the Debtor or the Reorganized Debtor, as applicable, and the counterparty to the Executory Contract or Unexpired Lease.

Assumption of any Executory Contract or Unexpired Lease pursuant to the Plan or otherwise and full payment of any applicable Cure pursuant to this <u>Article V.D</u> shall result in the full release and satisfaction of any Cures, Claims, or defaults, whether monetary or nonmonetary, including defaults of provisions restricting the change in control or ownership interest composition or other bankruptcy-related defaults, arising under any assumed Executory Contract or Unexpired Lease at any time prior to the effective date of assumption. **Any and all Proofs of Claim based upon Executory Contracts or Unexpired Leases that have been assumed in the Chapter 11 Cases, including pursuant to the Confirmation Order, and for which any Cure has been fully paid pursuant to this Article V.D, shall be deemed disallowed and expunged as of the Effective Date without the need for any objection thereto or any further notice to or action, order, or approval of the Bankruptcy Court**.

**E.**     **Contracts, and Leases Entered Into After the Petition Date**

Contracts, and leases entered into after the Petition Date by the Debtor and any Executory Contracts and Unexpired Leases assumed by the Debtor may be performed by the Reorganized Debtor in the ordinary course of business.

F. **Insurance Policies.**

Each of the Debtor's insurance policies and any agreements, documents, or instruments relating thereto, are treated as Executory Contracts under the Plan. Unless otherwise provided in the Plan, on the Effective Date, the Debtor shall be deemed to have assumed all insurance policies and any agreements, documents, and instruments relating to coverage of all insured Claims.

G. **Director Officer, Manager, and Employee Liability Insurance**

Before the Effective Date, the Fore Aero Debtors have purchased and maintained the Existing D&O Liability Insurance Policy. After the Effective Date, the Reorganized Debtor may not terminate or otherwise reduce the coverage under the Existing D&O Liability Insurance Policy (including, if applicable, any "tail policy") with respect to conduct occurring before the Effective Date, and all officers, directors, managers, and employees of the Debtor who served in such capacity at any time before the Effective Date shall be entitled to the full benefits of any such policy regardless of whether such officers, directors, managers, or employees remain in such positions after the Effective Date.

On and after the Effective Date, the Reorganized Debtor may purchase additional directors' and officers' liability insurance policy for the benefit of their respective directors, members, trustees, officers, and managers in the ordinary course of business.

H. **Nonoccurrence of Effective Date.**

In the event that the Effective Date does not occur, the Bankruptcy Court shall retain jurisdiction with respect to any request to extend the deadline for assuming or rejecting Unexpired Leases pursuant to section 365(d)(4) of the Bankruptcy Code, unless such deadline(s) have expired.

I. **Reservation of Rights**

Nothing contained in the Plan or the Plan Supplement shall constitute an admission by the Debtor or any other party that any such contract or lease is in fact an Executory Contract or Unexpired Lease or that any Reorganized Debtor has any liability thereunder. If there is a dispute regarding whether a contract or lease is or was executory or unexpired at the time of assumption, the Debtor or the Reorganized Debtor, as applicable, shall have 45 days following entry of a Final Order resolving such dispute to alter their treatment of such contract or lease.

## ARTICLE VI

### PROVISIONS GOVERNING DISTRIBUTIONS

A. **Distributions on Account of Claims and Interests Allowed as of the Effective Date**

Except as otherwise provided herein, a Final Order, or as otherwise agreed to by the Debtor or the Reorganized Debtor, as the case may be, and the holder of the applicable Claim or Interest, on the Effective Date or as reasonably practicable thereafter, the Reorganized Debtor shall make initial distributions under the Plan on account of Allowed Claims on the Effective Date, subject to the Reorganized Debtor's right to object to Claims; *provided, however*, that (i) Allowed Administrative Claims with respect to liabilities incurred by the Debtor in the ordinary course of business during the Chapter 11 Cases or assumed by the Debtor prior to the Effective Date shall be paid or performed in the ordinary course of business in accordance with the terms and conditions of any controlling agreements, course of dealing, course of business, or industry practice, (ii) Allowed Priority Tax Claims shall be paid

in accordance with Article II.D of the Plan, and the DIP Claims shall be paid on the Effective Date, and (iii) the Allowed Class 3 Claim shall be paid on the Effective Date. To the extent any Allowed Priority Tax Claim is not due and owing on the Effective Date, such Claim shall be paid in full in Cash inaccordance with the terms of any agreement between the Debtor and the holder of such Claim or as may be due and payable under applicable non-bankruptcy law or in the ordinary course of business. A Distribution Date shall occur no less frequently than once in every 30-day period after the Effective Date, as necessary, in the Reorganized Debtor's sole discretion.

**B.      Special Rules for Distributions to Holders of Disputed Claims and Interests**

Notwithstanding any provision otherwise in the Plan and except as otherwise agreed by the relevant parties: (i) no partial payments and no partial distributions shall be made with respect to a Disputed Claim or Interest until all such disputes in connection with such Disputed Claim or Interest have been resolved by settlement or Final Order; and (ii) any Entity that holds both an Allowed Claim and a Disputed Claim shall not receive any distribution on the Allowed Claim unless and until all objections to the Disputed Claim have been resolved by settlement or Final Order or the Claims or Interests have been Allowed or expunged. Any distributions arising from property distributed to holders of Allowed Claims in a Class and paid to such holders under the Plan shall also be paid, in the applicable amounts, to any holder of a Disputed Claim in such Class that becomes an Allowed Claim after the date or dates that such distributions were earlier paid to holders of Allowed Claims in such Class.

**C.      Delivery of Distributions**

**1.      Record Date for Distributions to Holders of Non-Publicly Traded Securities**

On the Effective Date, the Claims Register shall be closed and the Debtor shall be authorized and entitled to recognize only those record holders, if any, listed on the Claims Register as of the close of business on the Effective Date. Notwithstanding the foregoing, if a Claim is transferred and the Debtor has been notified in writing of such transfer less than 10 days before the Effective Date, the Debtor shall make distributions to the transferee (rather than the transferor) only to the extent practical and in any event only if the relevant transfer form contains an unconditional and explicit certification and waiver of any objection to the transfer by the transferor.

**2.      Distribution Process**

The Debtor shall make all distributions required under the Plan at which time such distributions shall be deemed complete. Except as otherwise provided herein, and notwithstanding any authority to the contrary, distributions to holders of Allowed Claims, including Claims that become Allowed after the Effective Date, shall be made to holders of record as of the Effective Date by the Debtor: (1) to the address of such holder as set forth in the books and records of the applicable Debtor (or if the Debtor has been notified in writing, on or before the date that is 10 days before the Effective Date, of a change of address, to the changed address); (2) in accordancewith Federal Rule of Civil Procedure 4, as modified and made applicable by Bankruptcy Rule 7004, if no address exists in the Debtor books and records, no Proof of Claim has been filed and the Debtor has not received a written notice of a change of address on or before the date that is 10 days before the Effective Date; or (3) on any counsel that has appeared in the Chapter 11 Case on the holder's behalf. the Reorganized Debtor and the Debtor, as applicable, shall not incur any liability whatsoever on account of any distributions under the Plan.

**3.      Accrual of Dividends and Other Rights**

For purposes of determining the accrual of distributions or other rights after the Effective Date,

the Reorganized Debtor Interests shall be deemed distributed as of the Effective Date regardless of the date on which they are actually issued, dated, authenticated, or distributed; *provided*, *however*, the Reorganized Debtor shall not pay any such distributions or distribute such other rights, if any, until after distributions of the Reorganized Debtor Interests actually take place.

4.      **Compliance Matters**

In connection with the Plan, to the extent applicable, the Reorganized Debtor and the Debtor shall comply with all tax withholding and reporting requirements imposed on them by any Governmental Unit, and all distributions pursuant to the Plan shall be subject to such withholding and reporting requirements. Notwithstanding any provision in the Plan to the contrary, the Reorganized Debtor and the Debtor shall be authorized to take all actions necessary or appropriate to comply with such withholding and reporting requirements, including liquidating a portion of the distribution to be made under the Plan to generate sufficient funds to pay applicable withholding taxes, withholding distributions pending receipt of information necessary to facilitate such distributions, or establishing any other mechanisms they believe are reasonable and appropriate. the Reorganized Debtor reserve the right to allocate all distributions made under the Plan in compliance with all applicable wage garnishments, alimony, child support, and other spousal awards, liens, and encumbrances. Notwithstanding the foregoing, the provisions of this paragraph shall not apply to distributions on account of the DIP Claims and the Allowed Class 3 Claim, which shall be paid pursuant to the terms of this Plan without further deductions.

5.      **Foreign Currency Exchange Rate**

Except as otherwise provided in a Bankruptcy Court order, as of the Effective Date, any Claim asserted in currency other than U.S. dollars shall be automatically deemed converted to the equivalent U.S. dollar value using the exchange rate for the applicable currency as published in The Wall Street Journal, National Edition, on the Effective Date.

6.      **Undeliverable and Unclaimed Distributions**

(a)      *Undeliverable Distributions*. If any distribution to a holder of an Allowed Claim is returned to the Debtor as undeliverable, no further distributions shall be made to such holder unless and until the Debtor is notified in writing of such holder's then-current address or other necessary information for delivery, at which time all currently due missed distributions shall be made to such holder on the next Distribution Date. Undeliverable distributions shall remain in the possession of the Reorganized Debtor until such time as a distribution becomes deliverable, or such distribution reverts to the Reorganized Debtor or is cancelled pursuant to Article VI.C.7. of the Plan, and shall not be supplemented with any interest, or other accruals of any kind.

(b)      *Reversion*. Any distribution under the Plan that is an Unclaimed Distribution for a period of six months after distribution shall be deemed unclaimed property under section 347(b) of the Bankruptcy Code and such Unclaimed Distribution shall revest in the Reorganized Debtor. Upon such revesting, the Claim or Interest of any holder or its successors with respect to such property shall be cancelled, discharged, and forever barred notwithstanding any applicable federal or state escheat, abandoned, or unclaimed property laws, or any provisions in any document governing the distribution that is an Unclaimed Distribution, to the contrary.

7.      **Surrender of Cancelled Instruments or Securities**

On the Effective Date, each holder of a Certificate shall be deemed to have surrendered such Certificate to the Debtor. Such Certificate shall be cancelled solely with respect to the Debtor, and such

cancellation shall not alter the obligations or rights of any non-Debtor third parties vis-à-vis one another with respect to such Certificate.

## D. Claims Paid or Payable by Third Parties

### 1. Claims Paid by Third Parties

A Claim shall be reduced in full, and such Claim shall be disallowed without an objection to such Claim having to be filed and without any further notice to or action, order, or approval of the Bankruptcy Court, to the extent that the holder of such Claim receives payment in full on account of such Claim from a party that is not the Debtor or the Reorganized Debtor. To the extent a holder of a Claim receives a distribution on account of such Claim and receives payment from a party that is not a Debtor or a Reorganized Debtor on account of such Claim, such holder shall repay, return or deliver any distribution held by or transferred to the holder to the Reorganized Debtor to the extent the holder's total recovery on account of such Claim from the third party and under the Plan exceeds the amount of such Claim as of the date of any such distribution under the Plan. The provisions of this paragraph shall not apply to the DIP Claims or the Allowed Class 3 Claims.

### 2. Claims Payable by Insurance Carriers

No distributions under the Plan shall be made on account of an Allowed Claim that is payable pursuant to one of the Debtor's insurance policies until the holder of such Allowed Claim has exhausted all remedies with respect to such insurance policy. To the extent that one or more of the Debtor's insurers agrees to satisfy in full a Claim (if and to the extent adjudicated by a court of competent jurisdiction), then immediately upon such insurers' agreement, such Claim may be expunged to the extent of any agreed upon satisfaction on the Claims Register by the Debtor without a Claims objection having to be filed and without any further notice to or action, order, or approval of the Bankruptcy Court. The provisions of this paragraph shall not apply to the DIP Claims or the Allowed Class 3 Claims.

### 3. Applicability of Insurance Policies

Except as otherwise provided herein, distributions to holders of Allowed Claims shall be in accordance with the provisions of an applicable insurance policy. Nothing contained in the Plan shall constitute or be deemed a waiver of any Cause of Action that the Debtor or any Entity may hold against any other Entity, including insurers under any policies of insurance, nor shall anything contained herein constitute or be deemed a waiver by such insurers of any defenses, including coverage defenses, held by such insurers.

## E. Setoffs

Except with respect to the Prepetition Lender Claims, the DIP Claims, or as otherwise expressly provided for herein, the Reorganized Debtor, pursuant to the Bankruptcy Code (including section 553 of the Bankruptcy Code), applicable non-bankruptcy law, or as may be agreed to by the holder of a Claim, may set off against any Allowed Claim and the distributions to be made pursuant to the Plan on account of such Allowed Claim (before any distribution is made on account of such Allowed Claim), any claims, rights, and Causes of Action of any nature that such Debtor or Reorganized Debtor, as applicable, may hold against the holder of such Allowed Claim, to the extent such claims, rights, or Causes of Action against such holder have not been otherwise compromised or settled on or prior to the Effective Date (whether pursuant to the Plan or otherwise); *provided*, *however*, that neither the failure to effect such a setoff nor the allowance of any Claim pursuant to the Plan shall constitute a waiver or release by such Reorganized Debtor of any such claims, rights, and Causes of Action that such Reorganized Debtor may

possess against such holder. In no event shall any holder of Claims be entitled to set off any such Claim against any claim, right, or Cause of Action of the Debtor or Reorganized Debtor (as applicable), unless such holder has filed a motion with the Bankruptcy Court requesting the authority to perform such setoff on or before the Confirmation Date, and notwithstanding any indication in any Proof of Claim or otherwise that such holder asserts, has, or intends to preserve any right of setoff pursuant to section 553 of the Bankruptcy Code or otherwise.

**F.**     **Allocation Between Principal and Accrued Interest**

Except as otherwise provided herein, the aggregate consideration paid to holders with respect to their Allowed Claims shall be treated pursuant to the Plan as allocated first to the principal amount of such Allowed Claims (to the extent thereof) and, thereafter, to the interest, if any, on such Allowed Claim accrued through the Effective Date.

**ARTICLE VII**

**PROCEDURES FOR RESOLVING DISPUTED CLAIMS AND INTERESTS**

**A.**     **Disputed Claims Process**

Except as otherwise provided herein, if a party files a Proof of Claim and the Debtor or the Reorganized Debtor, as applicable, do not determine, and without the need for notice to or action, order, or approval of the Bankruptcy Court, that the Claim subject to such Proof of Claim is Allowed, such Claim shall be Disputed unless Allowed or disallowed by a Final Order or as otherwise set forth in this Article VII of the Plan. **Except as otherwise provided herein, all Proofs of Claim filed after the Effective Date shall be disallowed and forever barred, estopped, and enjoined from assertion, and shall not be enforceable against any Reorganized Debtor, without the need for any objection by the Reorganized Debtor or any further notice to or action, order, or approval of the Bankruptcy Court; provided, that, this shall in no way impact the Governmental Bar Date.**

**B.**     **Claims Administration Responsibilities.**

Except as otherwise specifically provided in the Plan, after the Effective Date, the Reorganized Debtor shall have the sole authority: (1) to file, withdraw, or litigate to judgment, objections to Claims or Interests; (2) to settle or compromise any Disputed Claim without any further notice to or action, order, or approval by the Bankruptcy Court; and (3) to administer and adjust the Claims Register to reflect any such settlements or compromises without any further notice to or action, order, or approval by the Bankruptcy Court. For the avoidance of doubt, except as otherwise provided herein, from and after the Effective Date, the Reorganized Debtor shall have and retain any and all rights and defenses such Debtor had immediately prior to the Effective Date with respect to any Disputed Claim or Interest, including the Causes of Action retained pursuant to Article IV.N of the Plan.

**C.**     **Adjustment to Claims Without Objection**

Any duplicate Claim or Interest or any Claim or Interest that has been paid, satisfied, amended, or superseded may be adjusted or expunged on the Claims Register by the Reorganized Debtor without the Reorganized Debtor having to File an application, motion, complaint, objection, or any other legal proceeding seeking to object to such Claim or Interest and without any further notice to or action, order, or approval of the Bankruptcy Court.

D.    **No Interest**

Unless otherwise specifically provided for herein or by order of the Bankruptcy Court, postpetition interest shall not accrue or be paid on Claims, and no holder of a Claim shall be entitled to interest accruing on or after the Petition Date on any Claim or right. Additionally, and without limiting the foregoing, interest shall not accrue or be paid on any Disputed Claim with respect to the period from the Effective Date to the date a final distribution is made on account of such Disputed Claim, if and when such Disputed Claim becomes an Allowed Claim.

E.    **Disallowance of Claims and Interests**

All Claims and Interests of any Entity from which property is sought by the Debtor under sections 542, 543, 550, or 553 of the Bankruptcy Code or that the Debtor or the Reorganized Debtor allege is a transferee of a transfer that is avoidable under sections 522(f), 522(h), 544, 545, 547, 548, 549, or 724(a) of the Bankruptcy Code shall be disallowed if: (a) the Entity, on the one hand, and the Debtor or the Reorganized Debtor, as applicable, on the other hand, agree or the Bankruptcy Court has determined by Final Order that such Entity or transferee is liable to turn over any property or monies under any of the aforementioned sections of the Bankruptcy Code; and (b) such Entity or transferee has failed to turn over such property by the date set forth in such agreement or Final Order. The provisions of this paragraph shall not apply to the DIP Claims or the Allowed Class 3 Claims.

**EXCEPT AS PROVIDED HEREIN, IN AN ORDER OF THE COURT, OR OTHERWISE AGREED, ANY AND ALL PROOFS OF CLAIM FILED AFTER THE APPLICABLE BAR DATE SHALL BE DEEMED DISALLOWED AND EXPUNGED AS OF THE EFFECTIVE DATE WITHOUT ANY FURTHER NOTICE TO OR ACTION, ORDER, OR APPROVAL OF THE COURT, AND HOLDERS OF SUCH CLAIMS MAY NOT RECEIVE ANY DISTRIBUTIONS ON ACCOUNT OF SUCH CLAIMS, UNLESS AT OR PRIOR TO THE CONFIRMATION HEARING SUCH LATE CLAIM HAS BEEN DEEMED TIMELY FILED BY A FINAL ORDER.**

**ARTICLE VIII**
**SETTLEMNT, RELEASE, INJUNCTION, AND RELATED PROVISIONS**

A.    **Discharge of Claims and Termination of Interests**

**Pursuant to section 1141(d) of the Bankruptcy Code, and except as otherwise specifically provided in the Plan or in any contract, instrument, or other agreement or document created pursuant to the Plan, the distributions, rights, and treatment that are provided in the Plan shall be in complete satisfaction, discharge, and release, effective as of the Effective Date, of Claims, Interests, and Causes of Action of any nature whatsoever, including any interest accrued on Claims or Interests from and after the Petition Date, whether known or unknown, against, liabilities of, liens on, obligations of, rights against, and Interests in, the Debtor or any of their assets or properties, regardless of whether any property shall have been distributed or retained pursuant to the Plan on account of such Claims and Interests, including demands, liabilities, and Causes of Action that arose before the Effective Date, any liability to the extent such Claims or Interests relate to services performed by employees of the Debtor prior to the Effective Date and that arise from a termination of employment, any contingent or non-contingent liability on account of representations or warranties issued on or before the Effective Date, and all debts of the kind specified in sections 502(g), 502(h), or 502(i) of the Bankruptcy Code, in each case whether or not: (a) a Proof of Claim based upon such debt or right is filed or deemed filed pursuant to section 501 of the Bankruptcy Code; (b) a Claim or Interest based upon such debt, right, or Interest is Allowed**

pursuant to section 502 of the Bankruptcy Code; or (c) the holder of such a Claim or Interest has accepted the Plan. The Confirmation Order shall be a judicial determination of the discharge of all Claims and Interests subject to the occurrence of the Effective Date.

B. **Releases by the Debtor**

Pursuant to section 1123(b) of the Bankruptcy Code, for good and valuable consideration, on and after the Effective Date, each Released Party is deemed released and discharged by the Debtor, the Reorganized Debtor, and their Estate from any and all Causes of Action, including any derivative claims, asserted on behalf of the Debtor, that the Debtor, the Reorganized Debtor, or their Estate would have been legally entitled to assert in its own right or on behalf of the holder of any Claim against, or Interest in, a Debtor or other Entity, based on or relating to, or in any manner arising from, in whole or in part, the Debtor, the Debtor's in- or out-of-court restructuring efforts, intercompany transactions, the Chapter 11 Cases, the formulation, preparation, dissemination, negotiation, or filing of the RSA, the Disclosure Statement, the DIP Facility, the Note Purchase Agreement, the Plan, the Liquidating Plan, or any Restructuring Transaction, contract, instrument, release, or other agreement or document created or entered into in connection with the RSA, the Disclosure Statement, the DIP Facility, the Note Purchase Agreement, the Plan, the Liquidating Plan, the filing of the Chapter 11 Cases, the pursuit of Confirmation, the pursuit of Consummation, the administration and implementation of the Plan, including the issuance or distribution of securities pursuant to the Plan, or the distribution of property under the Plan or any other related agreement, or upon any other act or omission, transaction, agreement, event, or other occurrence taking place on or before the Effective Date. The Debtor knowingly grants this release notwithstanding that the Debtor may hereafter discover facts in addition to, or different from, those which either the Debtor now knows or believes to be true, and without regard to the subsequent discovery or existence of such different or additional facts, and the Debtor expressly waives any and all rights that it may have under any statute or common law principle which would limit the effect of the release to those claims actually known or suspected to exist as of the Effective Date. Notwithstanding anything to the contrary in the foregoing, the releases set forth above do not release any post-Effective Date obligations of any party or Entity under the Plan, any Restructuring Transaction, or any document, instrument, or agreement (including those set forth in the Plan Supplement) executed to implement the Plan. Entry of the confirmation order shall constitute the Court's approval, pursuant to Bankruptcy Rule 9019, of the Debtor releases, which includes by reference each of the related provisions and definitions contained in the Plan, and, further, shall constitute the Court's finding that the Debtor's release is: (1) in exchange for the good and valuable consideration provided by the Released Parties; (2) a good-faith settlement and compromise of the Claims released by the Debtor's release; (3) in the best interests of the Debtor's Estate and all holders of Claims and Interests; (4) fair, equitable, and reasonable; (5) given and made after due notice and opportunity for hearing; and (6) a bar to the Debtor's Estate asserting any Claim or Cause of Action released pursuant to the Debtor's release.

C. **Releases by Holders of Claims and Interests**

As of the Effective Date, each Releasing Party is deemed to have released and discharged the Debtor, Reorganized Debtor, and all Released Parties from any and all Causes of Action, whether known or unknown, including any derivative claims, asserted on behalf of the Debtor, that such Entity would have been legally entitled to assert (whether individually or collectively), based on or relating to, or in any manner arising from, in whole or in part, the Debtor, the Debtor's in- or out-of-court restructuring efforts, intercompany transactions, the Chapter 11 Cases, the formulation, preparation, dissemination, negotiation, or filing of the RSA, the Disclosure Statement, the DIP Facility, the Note Purchase Agreement, the Plan, the Liquidating Plan, or any

Restructuring Transaction, contract, instrument, release, or other agreement or document created or entered into in connection with the RSA, the Disclosure Statement, the DIP Facility, the Note Purchase Agreement, the Plan, the Liquidating Plan, the filing of the Chapter 11 Cases, the pursuit of Confirmation, the pursuit of Consummation, the administration and implementation of the Plan, including the issuance or distribution of securities pursuant to the Plan, or the distribution of property under the Plan or any other related agreement, or upon any other related act or omission, transaction, agreement, event, or other occurrence taking place on or before the Effective Date. The Releasing Party knowingly grants this release notwithstanding that the Releasing Party may hereafter discover facts in addition to, or different from, those which either the Releasing Party now knows or believes to be true, and without regard to the subsequent discovery or existence of such different or additional facts, and the Releasing Party expressly waives any and all rights that it may have under any statute or common law principle which would limit the effect of the release to those claims actually known or suspected to exist as of the Effective Date. Notwithstanding anything to the contrary in the foregoing, the releases set forth above do not release (a) any Claims that the Prepetition Lenders have or may have against any of the Liquidating Debtors, or (b) any Effective Date or post-Effective Date obligations of any party or Entity under the Plan, any Restructuring Transaction, or any document, instrument, or agreement (including those set forth in the Plan Supplement) executed to implement the Plan. Entry of the confirmation order shall constitute the Court's approval, pursuant to Bankruptcy Rule 9019, of this release, which includes by reference each of the related provisions and definitions contained in the Plan, and, further, shall constitute the Court's finding that this release is: (1) in exchange for the good and valuable consideration and substantial contributions provided by the Released Parties; (2) a good faith settlement and compromise of the Claims released by this release; (3) in the best interests of the Debtor and all holders of Claims and Interests; (4) fair, equitable, and reasonable; (5) given and made after due notice and opportunity for hearing; and (6) a bar to any of the Releasing Parties asserting any Claim released pursuant to this release.

D.    **Exculpation**

Except as otherwise specifically provided in the Plan, no Exculpated Party shall have or incur, and each Exculpated Party is released and exculpated from any Cause of Action for any claim related to any act or omission in connection with, relating to, or arising out of, the Chapter 11 Cases, the formulation, preparation, dissemination, negotiation, or filing of the RSA and related prepetition transactions, the Disclosure Statement, the Plan, the Liquidating Plan, or any Restructuring Transaction, contract, instrument, release or other agreement or document created or entered into in connection with the Disclosure Statement or the Plan, the Liquidating Plan, the RSA, the filing of the Chapter 11 Cases, the pursuit of Confirmation, the pursuit of Consummation, the administration and implementation of the Plan, including the issuance of securities pursuant to the Plan, or the distribution of property under the Plan or any other related agreement, except for claims related to any act or omission that is determined in a final order to have constituted actual fraud or gross negligence, but in all respects the Exculpated Parties shall be entitled to reasonably rely upon the advice of counsel with respect to their duties and responsibilities. The Exculpated Parties have, and upon completion of the Plan shall be deemed to have, participated in good faith and in compliance with the applicable laws with regard to the solicitation of votes and distribution of consideration pursuant to the Plan and, therefore, are not, and on account of such distributions shall not be, liable at any time for the violation of any applicable law, rule, or regulation governing the solicitation of acceptances or rejections of the Plan or such distributions made pursuant to the Plan.

E.      **Injunction**

**Except as otherwise expressly provided in the Plan or for obligations issued or required to be paid pursuant to the Plan or the Confirmation Order, all Entities who have held, hold, or may hold claims or interests that have been released, discharged, or are subject to exculpation are permanently enjoined, from and after the Effective Date, from taking any of the following actions against, as applicable, the Debtor, the Reorganized Debtor, the Exculpated Parties, or the Released Parties: (a) commencing or continuing in any manner any action or other proceeding of any kind on account of or in connection with or with respect to any such claims or interests; (b) enforcing, attaching, collecting, or recovering by any manner or means any judgment, award, decree, or order against such Entities on account of or in connection with or with respect to any such claims or interests; (c) creating, perfecting, or enforcing any encumbrance of any kind against such Entities or the property or the Estate of such Entities on account of or in connection with or with respect to any such claims or interests; (d) asserting any right of setoff, subrogation, or recoupment of any kind against any obligation due from such Entities or against the property of such Entities on account of or in connection with or with respect to any such claims or interests unless such holder has filed a motion requesting the right to perform such setoff on or before the Effective Date, and notwithstanding an indication of a claim or interest or otherwise that such holder asserts, has, or intends to preserve any right of setoff pursuant to applicable law or otherwise; and (e) commencing or continuing in any manner any action or other proceeding of any kind on account of or in connection with or with respect to any such claims or interests released or settled pursuant to the Plan.**

F.      **Protection Against Discriminatory Treatment**

In accordance with section 525 of the Bankruptcy Code, and consistent with paragraph 2 of Article VI of the United States Constitution, no Governmental Unit shall discriminate against any Reorganized Debtor, or any Entity with which a Reorganized Debtor has been or is associated, solely because such Reorganized Debtor was a Debtor under chapter 11, may have been insolvent before the commencement of the Chapter 11 Cases (or during the Chapter 11 Cases but before such Debtor was granted or denied a discharge), or has not paid a debt that is dischargeable in the Chapter 11 Cases.

G.      **Recoupment**

In no event shall any holder of Claims or Interests be entitled to recoup any Claim or Interest against any claim, right, or Cause of Action of the Debtor or the Reorganized Debtor, as applicable, unless such holder actually has performed such recoupment and provided notice thereof in writing to the Debtor on or before the Confirmation Date, notwithstanding any indication in any Proof of Claim or Interest or otherwise that such holder asserts, has, or intends to preserve any right of recoupment.

H.      **Document Retention**

On and after the Effective Date, the Reorganized Debtor may maintain documents in accordance with its standard document retention policy, as may be altered, amended, modified, or supplemented by the Reorganized Debtor.

I.      **Reimbursement or Contribution**

If the Bankruptcy Court disallows a Claim for reimbursement or contribution of an Entity pursuant to section 502(e)(1)(B) of the Bankruptcy Code, then to the extent that such Claim is contingent as of the time of allowance or disallowance, such Claim shall be forever disallowed and expunged

notwithstanding section 502(j) of the Bankruptcy Code, unless prior to the Confirmation Date: (1) such Claim has been adjudicated as non-contingent; or (2) the relevant holder of a Claim has filed a non-contingent Proof of Claim on account of such Claim and a Final Order has been entered prior to the Confirmation Date determining such Claim as no longer contingent.

**J.**     **Release of Liens**

Except (a) with respect to the Liens securing (i) the DIP Claims, (ii) the Class 3 Claims and (iii) Other Secured Claims that the Debtor elects to reinstate in accordance with Article III.B.1 hereof, or (b) as otherwise provided in this Plan or in any contract, instrument, release, or other agreement or document created pursuant to the Plan, on the Effective Date, all mortgages, deeds of trust, Liens, pledges, collateral or other property of the Debtor (including any cash collateral and possessory collateral), or other security interests against any property of the Estate shall be fully released and discharged, and the holders (and the applicable authorized agents for such holders) of such mortgages, deeds of trust, Liens, pledges, or other security interests shall execute such documents as may be requested by the Debtor or the Reorganized Debtor, as applicable, to reflect or effectuate such releases, and all of the right, title, and interest of any holder (and the applicable authorized agents for such holder) of such mortgages, deeds of trust, Liens, pledges, collateral or other property of any Debtor (including any cash collateral and possessory collateral), or other security interests shall revert to the Reorganized Debtor and its successors and assigns. The presentation or filing of the Confirmation Order to or with any federal, state, provincial, or local agency or department shall constitute good and sufficient evidence of, but shall not be required to effect, the termination of such Liens.

# ARTICLE IX

# CONDITIONS PRECEDENT TO THE EFFECTIVE DATE

**A.**     **Conditions Precedent to the Effective Date**.

It shall be a condition to the Effective Date that the following conditions shall have been satisfied or waived pursuant to Article IX.B of the Plan:

    1.     the Bankruptcy Court shall have entered the Confirmation Order, which shall be in form and substance acceptable to the Debtor and the Sponsor, and shall:

       (a)    authorize the Debtor to take all actions necessary to enter into, implement, and consummate the contracts, instruments, releases, leases, indentures, and other agreements or documents created in connection with the Plan;

       (b)    decree that the provisions of the Confirmation Order and the Plan are nonseverable and mutually dependent;

       (c)    authorize the Debtor, as applicable or necessary, to: (1) implement the Restructuring Transactions; (2) distribute the Reorganized Debtor Interests pursuant to the exemption from registration under the Securities Act provided by section 1145 of the Bankruptcy Code or other exemption from such registration or pursuant to one or more registration statements; (3) make all distributions and issuances as required under the Plan, including cash and the Reorganized Debtor Interests; and (4) enter into any agreements, transactions and sales of property, if any, as set forth in the Plan Supplement;

(d) authorize the implementation of the Plan in accordance with its terms; and

(e) provide that, pursuant to section 1146 of the Bankruptcy Code, the assignment or surrender of any lease or sublease, and the delivery of any deed or other instrument or transfer order, in furtherance of, or in connection with the Plan, including any deeds, bills of sale, or assignments executed in connection with any disposition or transfer of assets contemplated under the Plan, shall not be subject to any stamp, real estate transfer, mortgage recording, or other similar tax (including, any mortgages or security interest filing to be recorded or filed in connection with the DIP Facility and the Class 3 Claims); and

2. the Bankruptcy Court shall have entered an order confirming the Liquidating Plan, which order shall be in form and substance satisfactory to the Debtor and the Sponsor;

3. the Debtor shall have obtained all authorizations, consents, regulatory approvals, rulings, or documents that are necessary to implement and effectuate the Plan;

4. the final version of the Plan Supplement and all of the schedules, documents, and exhibits contained therein shall have been filed in a manner consistent in all material respects with the Plan and shall be in form and substance acceptable to the Debtor and the Sponsor;

5. subject to the restrictions stated in Article II.C of this Plan, all Professional fees and expenses of retained professionals required to be approved by the Bankruptcy Court shall have been paid in full or amounts sufficient to pay such fees and expenses after the Effective Date have been reserved pending approval by the Bankruptcy Court;

6. all reasonable and documented fees and expenses of the Prepetition Agent, the Prepetition Lenders, the DIP Agent, and the DIP Lenders, shall have been paid or, if objected to, shall have been reserved; and

7. the Debtor shall have implemented the Restructuring Transactions.

## B.    Waiver of Conditions Precedent

The Debtor, with the consent of the Sponsor, may waive any of the conditions to the Effective Date set forth in Article IX.A of the Plan at any time without any notice to any other parties in interest and without any further notice to or action, order, or approval of the Bankruptcy Court, and without any formal action other than proceeding to confirm and consummate the Plan.

## C.    Effect of Non-Occurrence of Conditions to Consummation

If prior to Consummation, the Confirmation Order is vacated pursuant to a Final Order, then except as provided in any order of the Bankruptcy Court vacating the Confirmation Order, the Plan will be null and void in all respects, and nothing contained in the Plan or Disclosure Statement shall: (a) constitute a waiver or release of any Claims, Interests, or Causes of Action; (b) prejudice in any manner the rights of the Debtor or any other Entity; or (c) constitute an admission, acknowledgment, offer, or undertaking of any sort by the Debtor or any other Entity. For the avoidance of doubt, if prior to Consummation, the Confirmation Order is vacated pursuant to a Final Order, then the Sponsor and its affiliates will not fund the capital contributions contemplated herein or make any other payment.

# ARTICLE X

## MODIFICATION, REVOCATION, OR WITHDRAWAL OF THE PLAN

**A.**     **Modification of Plan**

Effective as of the date hereof, (a) the Debtor reserves the right, in accordance with the Bankruptcy Code and the Bankruptcy Rules, to amend or modify the Plan before the entry of the Confirmation Order consistent with the terms set forth herein; provided, that the Debtor may only amend or modify provisions of the Plan that affect the Consenting Stakeholders before the entry of the Confirmation Order with the consent of the Consenting Stakeholders; and (b) after the entry of the Confirmation Order, the Debtor or the Reorganized Debtor, as applicable, may, upon order of the Bankruptcy Court, amend or modify the Plan, in accordance with section 1127(b) of the Bankruptcy Code, to remedy any defect or omission, or reconcile any inconsistency in the Plan in such manner as may be necessary to carry out the purpose and intent of the Plan consistent with the terms set forth herein.

**B.**     **Effect of Confirmation on Modifications**

Entry of the Confirmation Order shall constitute approval of all modifications to the Plan occurring after the solicitation thereof pursuant to section 1127(a) of the Bankruptcy Code and a finding that such modifications to the Plan do not require additional disclosure or resolicitation under Bankruptcy Rule 3019.

**C.**     **Effect of Confirmation**

Upon entry of the Confirmation Order, the Bankruptcy Court shall be deemed to have made and issued on the Confirmation Date the findings of fact and conclusions of law as though made after due deliberation and upon the record at the Confirmation Hearing. Upon entry of the Confirmation Order, any and all findings of fact in the Plan shall constitute findings of fact even if they are stated as conclusions of law, and any and all conclusions of law in the Plan shall constitute conclusions of law even if stated as findings of fact.

**D.**     **Withdrawal of Plan**

The Debtor reserves the right to withdraw the Plan before the Confirmation Date and to file subsequent chapter 11 plans. If the Debtor withdraws the Plan, or if the Confirmation Date or the Effective Date does not occur, then: (a) the Plan will be null and void in all respects; (b) any settlement or compromise embodied in the Plan, assumption of Executory Contracts or Unexpired Leases effected by the Plan, and any document or agreement executed pursuant hereto will be null and void in all respects; and (c) nothing contained in the Plan shall (1) constitute a waiver or release of any Claims, Interests, or Causes of Action, (2) prejudice in any manner the rights of the Debtor or any other Entity, or (3) constitute an admission, acknowledgement, offer, or undertaking of any sort by the Debtor or any other Entity.

# ARTICLE XI

## RETENTION OF JURISDICTION

Notwithstanding the entry of the Confirmation Order and the occurrence of the Effective Date, the Bankruptcy Court shall retain exclusive jurisdiction over all matters arising out of, or related to, the Chapter 11 Case and the Plan pursuant to sections 105(a) and 1142 of the Bankruptcy Code, including

jurisdiction to:

1. allow, disallow, determine, liquidate, classify, estimate, or establish the priority, secured or unsecured status, or amount of any Claim or Interest, including the resolution of any request for payment of any Claim or Interest and the resolution of any and all objections to the secured or unsecured status, priority, amount, or allowance of Claims or Interests;

2. decide and resolve all matters related to the granting and denying, in whole or in part, any applications for allowance of compensation or reimbursement of expenses to Professionals authorized pursuant to the Bankruptcy Code or the Plan;

3. resolve any matters related to Executory Contracts or Unexpired Leases, including: (a) the assumption or assumption and assignment of any Executory Contract or Unexpired Lease to which a Debtor is party or with respect to which a Debtor may be liable and to hear, determine, and, if necessary, liquidate, any Cure or Claims arising therefrom, including pursuant to section 365 of the Bankruptcy Code; (b) any potential contractual obligation under any Executory Contract or Unexpired Lease that is assumed; and (c) any dispute regarding whether a contract or lease is or was executory or expired;

4. ensure that distributions to holders of Allowed Claims are accomplished pursuant to the provisions of the Plan and adjudicate any and all disputes arising from or relating to distributions under the Plan;

5. adjudicate, decide, or resolve any motions, adversary proceedings, contested or litigated matters, and any other matters, and grant or deny any applications involving a Debtor that may be pending on the Effective Date;

6. enter and implement such orders as may be necessary or appropriate to execute, implement, or consummate the provisions of (a) contracts, instruments, releases, indentures, and other agreements or documents approved by Final Order in the Chapter 11 Case and (b) the Plan, the Confirmation Order, and contracts, instruments, releases, indentures, and other agreements or documents created in connection with the Plan;

7. enforce any order for the sale of property pursuant to sections 363, 1123, or 1146(a) of the Bankruptcy Code;

8. grant any consensual request to extend the deadline for assuming or rejecting Unexpired Leases pursuant to section 365(d)(4) of the Bankruptcy Code;

9. issue injunctions, enter and implement other orders, or take such other actions as may be necessary or appropriate to restrain interference by any Entity with Consummation or enforcement of the Plan;

10. hear, determine, and resolve any cases, matters, controversies, suits, disputes, or Causes of Action in connection with or in any way related to the Chapter 11 Case, including: (a) with respect to the repayment or return of distributions and the recovery of additional amounts owed by the holder of a Claim or an Interest for amounts not timely repaid pursuant to Article VI.D.1 of the Plan; (b) with respect to the releases, injunctions, and other provisions contained in Article VIII of the Plan, including entry of such orders as may be necessary or appropriate to implement such releases, injunctions, and other provisions; (c) that may arise in connection with the Consummation, interpretation, implementation, or enforcement of the Plan, the Confirmation

Order, and contracts, instruments, releases, indemnifications, indentures, and other agreements or documents created in connection with the Plan; or (d) related to section 1141 of the Bankruptcy Code;

11. enter and implement such orders as are necessary or appropriate if the Confirmation Order is for any reason modified, stayed, reversed, revoked, or vacated;

12. consider any modifications of the Plan, to cure any defect or omission, or to reconcile any inconsistency in any Bankruptcy Court order, including the Confirmation Order;

13. hear and determine matters concerning (a) state, local, and federal taxes in accordance with sections 346, 505, and 1146 of the Bankruptcy Code and (b) Governmental Units in accordance with section 1141 of the Bankruptcy Code;

14. enter an order or Final Decree concluding or closing the Chapter 11 Cases;

15. enforce all orders previously entered by the Bankruptcy Court; and

16. hear any other matter not inconsistent with the Bankruptcy Code.

## ARTICLE XII

## MISCELLANEOUS PROVISIONS

### A. Immediate Binding Effect

Subject to Article IX.A hereof and notwithstanding Bankruptcy Rules 3020(e), 6004(h), or 7062 or otherwise, upon the occurrence of the Effective Date, the terms of the Plan and the Plan Supplement shall be immediately effective and enforceable and deemed binding upon the Debtor, the Reorganized Debtor, and any and all holders of Claims or Interests (irrespective of whether such Claims or Interests are deemed to have accepted the Plan), all Entities that are parties to or are subject to the settlements, compromises, releases, discharges, and injunctions described in the Plan, each Entity acquiring property under the Plan, and any and all non-Debtor parties to Executory Contracts and Unexpired Leases with the Debtor.

### B. Additional Documents

On or before the Effective Date, the Debtor may file with the Bankruptcy Court such agreements and other documents as may be necessary or appropriate to effectuate and further evidence the terms and conditions of the Plan. The Debtor or the Reorganized Debtor, as applicable, and all holders of Claims and Interests receiving distributions pursuant to the Plan and all other parties in interest shall, from time to time, prepare, execute, and deliver any agreements or documents and take any other actions as may be necessary or advisable to effectuate the provisions and intent of the Plan.

### C. Filing of Quarterly Reports and Payment of Statutory Fees

All quarterly reports required to be filed pursuant to the *United States Trustee's Guideline's for Chapter 11 Cases Norther & Eastern Districts of Texas Region VI* shall be filed in accordance therewith, and all fees payable pursuant to 28 U.S.C. § 1930(a) shall be paid for each quarter (including any fraction thereof), in each case, until the Chapter 11 Cases are converted, dismissed, or a Final Decree is issued, whichever occurs first.

### D.     Reservation of Rights

Except as expressly set forth herein, the Plan shall have no force or effect unless the Bankruptcy Court shall enter the Confirmation Order and the Effective Date does not occur. None of the filing of the Plan, any statement or provision contained in the Plan, or the taking of any action by the Debtor with respect to the Plan, the Disclosure Statement, or the Plan Supplement shall be or shall be deemed to be an admission or waiver of any rights of the Debtor with respect to the holders of Claims or Interests prior to the Effective Date.

### E.     Successors and Assigns

The rights, benefits, and obligations of any Entity named or referred to in the Plan shall be binding on, and shall inure to the benefit of any heir, executor, administrator, successor or assign, Affiliate, officer, director, agent, representative, attorney, beneficiaries, or guardian, if any, of each Entity.

### F.     Service of Documents

After the Effective Date, any pleading, notice, or other document required by the Plan to be served on or delivered to the Reorganized Debtor shall be served on:

If to the Debtor:

NewSpring Mezzanine Capital III, L.P.
Radnor Financial Center
555 E. Lancaster Ave., 3rd Floor
Radnor, Pennsylvania 19087
Attention: Greg Barger
Telephone: (610) 567-2394
gbarger@newspringcapital.com

with a copy (which will not be service) to:

Stevens & Lee, P.C.
620 Freedom Business Center, Suite 200
King of Prussia, Pennsylvania 19406
Attention: Robert Lapowsky
Telephone 215-751-2866
robert.lapowsky@stevenslee.com

United States Trustee

Office of the United States Trustee for the Northern District of Texas
Earle Cabell Federal Building
1100 Commerce Street, Room 976
Dallas, Texas 75242
Attention: Erin Schmidt and
            Elizabeth A. Young
Erin.Schmidt2@usdoj.gov
Elizabeth.A.Young@usdoj.gov

G.     **Term of Injunctions or Stays**

Unless otherwise provided herein or in the Confirmation Order, all injunctions or stays in effect in the Chapter 11 Cases (pursuant to sections 105 or 362 of the Bankruptcy Code or any order of the Bankruptcy Court) and existing on the Confirmation Date (excluding any injunctions or stays contained in the Plan or the Confirmation Order) shall remain in full force and effect until the Effective Date. All injunctions or stays contained in the Plan or the Confirmation Order shall take effect on the Effective Date, and, thereafter, remain in full force and effect in accordance with their terms.

H.     **Entire Agreement**

Except as otherwise indicated, the Plan supersedes all previous and contemporaneous negotiations, promises, covenants, agreements, understandings, and representations on such subjects, all of which have become merged and integrated into the Plan.

I.     **Plan Supplement Exhibits**

All exhibits and documents included in the Plan Supplement are incorporated into and are a part of the Plan as if set forth in full in the Plan. After the exhibits and documents are filed, copies of such exhibits and documents shall be made available upon written request to the Debtor's counsel at the address above or by downloading such exhibits and documents from https://cases.stretto.com/ForeMachine or the Bankruptcy Court's website at www.txs.uscourts.gov/bankruptcy. Unless otherwise ordered by the Bankruptcy Court, to the extent any exhibit or document in the Plan Supplement is inconsistent with the terms of any part of the Plan that does not constitute the Plan Supplement, such part of the Plan that does not constitute the Plan Supplement shall control.

J.     **Non-Severability**

The provisions of the Plan, including its release, injunction, exculpation and compromise provisions, are mutually dependent and non-severable. The Confirmation Order shall constitute a judicial determination and shall provide that each term and provision of the Plan is: (a) valid and enforceable pursuant to its terms; (b) integral to the Plan and may not be deleted or modified without the consent of the Debtor; and (c) nonseverable and mutually dependent.

K.     **Votes Solicited in Good Faith.**

Upon entry of the Confirmation Order, the Debtor will be deemed to have solicited votes on the Plan in good faith and in compliance with the Bankruptcy Code, and pursuant to section 1125(e) of the Bankruptcy Code, the Debtor and each of their respective Affiliates, agents, representatives, members, principals, shareholders, officers, directors, employees, advisors, and attorneys will be deemed to have participated in good faith and in compliance with the Bankruptcy Code in the offer, issuance, sale, and purchase of Securities offered and sold under the Plan and any previous plan, and, therefore, neither any of such parties or individuals or the Reorganized Debtor will have any liability for the violation of any applicable law, rule, or regulation governing the solicitation of votes on the Plan or the offer, issuance, sale, or purchase of the Securities offered and sold under the Plan and any previous plan.

L.     **Closing of Chapter 11 Cases.**

The Reorganized Debtor shall, promptly after the full administration of the Chapter 11 Cases, file with the Bankruptcy Court all documents required by Bankruptcy Rule 3022 and any applicable

order  of  the Bankruptcy Court to close the Chapter 11 Cases.

**M.**  **<u>Waiver or Estoppel</u>.**

Each holder of a Claim or an Interest shall be deemed to have waived any right to assert any argument, including the right to argue that its Claim or Interest should be Allowed in a certain amount, in a certain priority, Secured or not subordinated by virtue of an agreement made with the Debtor or their counsel, or any other Entity, ifsuch agreement was not disclosed in the Plan, the Disclosure Statement or papers filed with the Bankruptcy Court prior to the Confirmation Date.

[*Remainder of page intentionally left blank*.]

AERO COMPONENTS, LLC


*/s/ Jens Verloop*
Jens Verloop
Chief Financial Officer
5124 Kaltenbrun Rd.,
Fort Worth, Texas 76119