

CLERK, U.S. BANKRUPTCY COURT
NORTHERN DISTRICT OF TEXAS

# ENTERED

THE DATE OF ENTRY IS ON
THE COURT'S DOCKET

**The following constitutes the ruling of the court and has the force and effect therein described.**

**Signed May 16, 2022**

*Mark X. Mullin*

**United States Bankruptcy Judge**

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE NORTHERN DISTRICT OF TEXAS
## FORT WORTH DIVISION

| | |
|---|---|
| In re: | Chapter 11 |
| | Case No. 22-40487 |
| FORE MACHINE, LLC, *et al.*,[1] | |
| Debtors. | (Jointly Administered) |

## FINDINGS OF FACT, CONCLUSIONS OF LAW, AND ORDER (I) APPROVING LIQUIDATING DEBTORS' JOINT DISCLOSURE STATEMENT ON A FINAL BASIS AND (II) CONFIRMING LIQUIDATING DEBTORS' JOINT CHAPTER 11 PLAN OF LIQUIDATION

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are: Fore Machine, LLC (1850), Fore Aero Holdings, LLC (2671), Fore Capital Holding, LLC (2920), and Aero Components, LLC (8616). The service address for Fore Aero Holdings, LLC, Fore Machine, LLC, and Fore Capital Holding, LLC is: 5933 Eden Drive, Haltom City, Texas 76117. The service address for Aero Components, LLC is 5124 Kaltenbrun Rd, Fort Worth, Texas 76119.

Fore Aero Holdings, LLC ("Holdings"), Fore Machine, LLC ("Machine"), and Fore Capital Holding, LLC ("Capital Holdings"), Liquidating Debtors and Liquidating Debtors in possession (collectively, the "Liquidating Debtors") having sought (a) confirmation of the *First Amended Liquidating Debtors' Joint Chapter 11 Plan of Liquidation for Liquidating Debtors Fore Aero Holdings, LLC, Fore Machine, LLC and Fore Capital Holding, LLC* [Docket No. 330] filed on May 7, 2022, (together with all documents and/or supplements related thereto or contemplated thereunder, the "Plan"),[2] a copy of which is attached hereto as **Exhibit A**, in the above-captioned jointly administered but not substantively consolidated chapter 11 bankruptcy cases (the "Chapter 11 Cases" or "Cases"), including the documents contained in the Liquidating Debtors' *Plan Supplement for Joint Chapter 11 Plan of Liquidation for Debtors Fore Aero Holdings, LLC, Fore Machine, LLC and Fore Capital Holding, LLC* [Docket No. 269] filed on April 22, 2022 (as amended, modified or supplemented, the "Plan Supplement"), and (b) final approval of the *Disclosure Statement Pursuant to 11 U.S.C. § 1125 in Support of Joint Chapter 11 Plan of Liquidation for Debtors Fore Aero Holdings, LLC, Fore Machine, LLC and Fore Capital Holding, LLC* [Docket No. 163] (the "Disclosure Statement") filed on April 1, 2022.

Having considered the Liquidating Plan, the Disclosure Statement, the *Declaration of Paul Rundell in Support of Confirmation of the Liquidating Debtors' Joint Chapter 11 Plan of Liquidation* (the "Rundell Declaration") filed by the Liquidating Debtors on May 8, 2022, the *Declaration of Jens Verloop in Support of Confirmation of the Debtors' Chapter 11 Plans* (the "Verloop Declaration") filed by the Liquidating Debtors on May 8, 2022, the *Declaration of Hugh Browne in Support of Confirmation of the Debtors' Chapter 11 Plans* (the "Browne Declaration")

---

[2] Capitalized terms used but not defined herein shall have the meanings provided in the Plan unless otherwise noted.

filed by the Liquidating Debtors on May 8, 2022, the *Declaration of Gregory W. Barger in Support*
*of Confirmation of the Debtors' Chapter 11 Plans* [Docket No. 328] filed on May 7, 2022, the
*Certification Of Stretto Regarding Tabulation Of Votes In Connection With The Debtors'*
*Disclosure Statements And Chapter 11 Plans* [Docket No. 316] as amended by *Amended*
*Certification of Stretto Regarding Tabulation of Votes in Connection with The Debtors' Disclosure*
*Statements and Chapter 11 Plans* [Docket No. 342], (the "Ballot Certification") filed by the
Liquidating Debtors on May 9, 2022, and all other evidence presented at the combined hearing to
consider final approval of the Disclosure Statement and confirmation of the Plan held before this
Court on May 10, 2022, at 9:00 a.m. CT (the "Confirmation Hearing"); and the Liquidating
Debtors having timely provided all holders of Claims against or Interests in the Liquidating
Debtors (collectively, "Claimants") and all parties in interest with good and sufficient notice of
the Plan, Disclosure Statement, Confirmation Hearing, and all applicable deadlines in accordance
with the provisions of title 11 of the United States Code, 11 U.S.C. §§ 101–1532 *et seq.* (the
"Bankruptcy Code"), the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"),[3] the
Local Rules of this Court (the "Local Rules"), and the orders of this Court, as evidenced by the
docket in this case, the Ballot Certification and the Certificates of Service filed with this Court
(collectively, the "Solicitation Certificates");[4] and all objections to confirmation of the Plan or
final approval of the Disclosure Statement (collectively, the "Objections") having been overruled

---

[3] All references to statutory code provisions reference the Bankruptcy Code unless otherwise
noted.

[4] "Solicitation Certificates," as used herein, refers collectively to (i) the *Certificate of Service* dated
April 5, 2022 [Docket No. 184] evidencing the Debtors' service of the Solicitation Materials; (ii)
the *Certificate of Service* dated April 26, 2022 [Docket No. 285] evidencing the Debtors' service
of the Plan Supplement; and (iii) any other *Certificates of Service* Filed with the Court in
connection with the Plan, Plan Documents, Disclosure Statement, Solicitation Packages, or
solicitation process.

by the Court on the record at the Confirmation Hearing and/or by terms of this order (this "<u>Order</u>")
or resolved by the applicable parties; and upon the entire record of these Cases, the record made
at the Confirmation Hearing, and the arguments of counsel and all evidence adduced at the
Confirmation Hearing; and the Court having determined, based upon the foregoing, and as further
set forth herein, that the Plan should be confirmed and the Disclosure Statement should be
approved on a final basis; and after due deliberation and good cause appearing therefor, the Court
hereby.

<strong>FINDS, DETERMINES, AND CONCLUDES AS FOLLOWS:</strong>

A.      <u>**Findings of Fact and Conclusions of Law**</u>. The findings and conclusions set forth
herein and on the record at the Confirmation Hearing constitute the Court's findings of fact and
conclusions of law pursuant to Rule 52 of the Federal Rules of Civil Procedure, made applicable
to this proceeding by Bankruptcy Rule 7052, made applicable herein by Bankruptcy Rule 9014.
All findings of fact and conclusions of law announced by this Court at the Confirmation Hearing
in relation to confirmation of the Plan are hereby incorporated into this Order. To the extent any
of the Court's findings of fact constitute conclusions of law, they are adopted as such. To the extent
any of the Court's conclusions of law constitute findings of fact, they are adopted as such.

B.      <u>**Jurisdiction. Venue. Core Proceeding**</u>. This Court has jurisdiction over the
Liquidating Debtors' Chapter 11 Cases pursuant to 28 U.S.C. § 1334. Confirmation of the Plan
and final approval of the Disclosure Statement is a core proceeding pursuant to 28 U.S.C.
§157(b)(2)(A), (B), (L) and (O), and this Court has jurisdiction to enter a final order with respect
thereto. To the extent that it is later determined that the Court, absent consent of the parties, cannot
enter final orders or judgments consistent with Article III of the United States Constitution, the
Liquidating Debtors consent to the entry of a final order by the Court in accordance with the terms

4

set forth herein. The Liquidating Debtors are eligible Debtors under section 109 of the Bankruptcy

Code. Venue is proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409. The Liquidating

Debtors are proponents of the Plan under section 1121(a) of the Bankruptcy Code.

        **C.**    **Commencement of the Chapter 11 Cases**. On Petition Date, each of the

Liquidating Debtors filed a voluntary petition for relief in this Court under Chapter 11 of the

Bankruptcy Code, thereby commencing these Cases. The Liquidating Debtors' Cases are jointly

administered under Case No. 22-40487 pursuant to Bankruptcy Rules 1015(b) and Local Rule

1015-1. The Liquidating Debtors are authorized to operate their businesses and manage their

properties as Debtors in possession pursuant to sections 1107 and 1108 of the Bankruptcy Code.

The Liquidating Debtors commenced these Cases in good faith and for appropriate purposes and

have acted in good faith throughout the duration of the Cases. On March 18, 2022, the Official

Committee of Unsecured Creditors was appointed by the Office of the United States Trustee for

the Northern District of Texas (the "U.S. Trustee") to serve solely in the bankruptcy case of Fore

Machine, LLC. To date, no trustee or examiner has been appointed in these Bankruptcy Cases

under section 1104 of the Bankruptcy Code.

        **D.**    **Judicial Notice**. The Court takes judicial notice of the dockets of the Debtors'

Cases maintained by the Clerk of the Bankruptcy Court, including all pleadings, proofs of claim,

reports, and other documents filed in these Cases, all orders entered in these Cases, all hearing

transcripts in these Cases, and all evidence and arguments made, proffered, or adduced at the

hearings held before this Court during the pendency of these Cases.

        **E.**    **Burden of Proof**. Based on the record of the Liquidating Debtors' Chapter 11

Cases: (i) each of the Liquidating Debtors has met their burden of proving each element of

Bankruptcy Code § 1129(a) and/or (b) by a preponderance of the evidence; (ii) the Liquidating

Debtors have complied with all applicable provisions of the Bankruptcy Code, Bankruptcy Rules, and Local Rules with respect to the Plan and Disclosure Statement and their solicitation of votes on the Plan, including, without limitation, Bankruptcy Rule 2002; (iii) the Plan satisfies all applicable provisions of the Bankruptcy Code, Bankruptcy Rules, and Local Rules, including, without limitation, sections 1122, 1123, and 1129 of the Bankruptcy Code; and (iv) the Disclosure Statement satisfies all applicable provisions of the Bankruptcy Code, Bankruptcy Rules, and Local Rules, including, without limitation, section 1125 of the Bankruptcy Code.

F.    **Adequacy of Disclosure Statement**. The Disclosure Statement, which was timely and properly delivered to all claimants and parties-in-interest entitled to vote, contains "adequate information," as such term is defined in section 1125(a)(1) of the Bankruptcy Code, with respect to the Liquidating Debtors, the Plan, and the transactions contemplated therein.

G.    **Disclosure Statement Order**. On March 25, 2022, the Court entered its *Order (i) Scheduling a Combined Hearing for Approval of the Disclosure Statements and Confirmation of the Plans, (ii) Conditionally Approving the Disclosure Statements, (iii) Approving the Solicitation Procedures and Dates, Deadlines, and Notices Related Thereto, and (iv) Granting Related Relief* [Docket No. 123] (the "Disclosure Statement Order"), which, among other things:

   i.    granted the Liquidating Debtors' amended *Debtors' Motion for Entry of an Order (I) Scheduling a Combined Disclosure Statement Approval and Plan Confirmation Hearing; (II) Approving the Solicitation Procedures and Dates, Deadlines, and Notices Related Thereto; (III) Waiving the Requirement of Filing Statements of Financial Affairs and Schedules of Assets and Liabilities, and (IV) Granting*

*Related Relief* [Docket No. 108] (the "Motion for Conditional Approval") filed on March 22, 2022;

ii.  conditionally approved the Disclosure Statement;

iii.  established April 29, 2022, at 4:00 p.m. (CDT) as the deadline for parties to object to final approval of the Disclosure Statement and/or confirmation of the Plan (the "Objection Deadline");

iv.  established April 8, 2022, as the deadline for parties to submit Ballots (defined below) accepting or rejecting the Plan (the "Voting Deadline");

v.  approved the form of the *Notice of (I) Conditional Approval of Disclosure Statements; (II) Establishment of Voting Record Date; (III) Combined Hearing on Final Approval of Disclosure Statements and Confirmation of Plans; (IV) Procedures for Objecting to Final Approval of Disclosure Statements or Confirmation of Plans; and (V) Procedures and Deadlines for Voting on the Plans* attached to the Disclosure Statement Order as Exhibit 1 (the "Combined Hearing Notice");

vi.  approved the form of *Notice of Non-Voting Status with Respect to Impaired Classes Under the Liquidating Debtors' Plan of Liquidation* attached as Exhibit 4 to the Disclosure Statement Order (the "Impaired Non-Voting Status Notice") and approved the form of *Notice of Non-Voting Status with Respect to Unimpaired Classes* (the "Unimpaired Non-Voting Status Notice," and together with the Impaired Non-Voting Status Notice the "Non-Voting Status Notices") attached to the Disclosure Statement Order as Exhibit 5, including the Opt-Out Form attached to the Impaired Non-Voting Status Notice for the purpose of enabling parties to "opt out" of the Plan's Non-Debtor Release (as defined below) provisions (the "Opt-Out Form");

vii.  approved the form of the *Ballot for Voting To Accept Or Reject Debtors' Chapter 11 Plan Of Liquidation* attached to the Motion for Conditional Approval as Exhibit 2 (the "Ballot");

viii.  established procedures for the Liquidating Debtors' solicitation of votes on the Plan; and

ix.  scheduled the Confirmation Hearing.

**H.    Solicitation**. On or about April 1, 2022, the Liquidating Debtors, through their solicitation agent, Stretto ("Stretto"), served solicitation packages to all Claimants and parties in interest in these Cases consisting of (i) the Combined Hearing Notice; (ii) the Disclosure Statement, including the Plan attached thereto as Exhibit A and the *Liquidation Analysis* (the

"Liquidation Analysis"); (iii) the Disclosure Statement Order; and (iv) where appropriate, a Ballot or a Non-Voting Status Notice (collectively, the "Solicitation Packages"). As further evidenced by and described in the Solicitation Certificates and Ballot Certification, the Liquidating Debtors' service of the Solicitation Packages and other Plan solicitation efforts (collectively, the "Solicitation") was conducted in good faith and in compliance with the Bankruptcy Code, the Bankruptcy Rules, the Local Rules, the Disclosure Statement Order, and all other applicable nonbankruptcy rules, laws, and regulations applicable to the Solicitation. Transmittal and service of the Solicitation Packages was due, proper, adequate, timely, appropriate, and sufficient under the circumstances with respect to all Claimants and parties in interest in these Cases.

I.    **Voting and Results**. Prior to the Liquidating Debtors' Solicitation of votes on the Plan, all Claimants were provided with "adequate information" as defined in section 1125 of the Bankruptcy Code. As evidenced by the Ballot Certification, votes to accept or reject the Plan have been solicited and tabulated fairly, in good faith, and in a manner consistent with the Disclosure Statement Order, the Bankruptcy Code, the Bankruptcy Rules, and the Local Rules. Classes 3, 4A, 4B, 4C, 5, and 6A, 6B, 6C are Impaired under the Plan, and holders of Claims in Class 3 were entitled to cast Ballots with respect to voting on the Plan. As described in the Ballot Certification, Class 3 has voted to accept the Plan in the numbers and amounts required by section 1126 of the Bankruptcy Code.  Classes 1A, 1B, 1C, 2A, 2B, and 2C are deemed to accept the Plan, and Classes 4A, 4B, 4C, 5, and 6A, 6B, 6C are deemed to reject the Plan.

J.    **Plan Modifications**. On or about May 7, 2022, the Debtor filed the (i) *First Amended Liquidating Debtors' Joint Chapter 11 Plan of Liquidation for Liquidating Debtors Fore Aero Holdings, LLC, Fore Machine, LLC and Fore Capital Holding, LLC* [Docket No. 330] and the (ii) *Notice of Filing of First Amended Joint Chapter 11 Plan of Liquidation for Debtors Fore*

*Aero Holdings, LLC, Fore Machine, LLC and Fore Capital Holding, LLC* [Docket No. 330] setting

forth a "redline" indicating all changes to the Plan as originally filed on April 1, 2022 [Docket No.

160] (the "Prior Plan"). None of the changes to the Prior Plan, whether reflected in the Plan as

filed or announced on the record at the Confirmation Hearing, if any, have any material effect on

the Prior Plan or the treatment of any Claims or Interests under the Prior Plan (in each case, except

as relates to the treatment of holders of Claims in Class 3 ,which changes have been consented to

by the holders of the Class 3 Claims) or are otherwise material, and all such changes set forth in

the Plan are hereby approved.

      **K.**    **Compliance with Bankruptcy Rule 3016(a)**. The Plan is dated and identifies the

Liquidating Debtors as the Plan proponents, thereby satisfying Bankruptcy Rule 3016(a). The

Liquidating Debtors appropriately filed the Disclosure Statement and the Plan with this Court,

thereby satisfying Bankruptcy Rule 3016(b). The discharge, release, injunction, and exculpation

provisions of the Plan are set forth in bold and with specific and conspicuous language, thereby

complying with Bankruptcy Rule 3016(c).

      **L.**    **Compliance with Section 1125 of the Bankruptcy Code**.

      i.    **Solicitation - § 1125(b)**. After notice and hearing on the Motion for

Conditional Approval, the Court entered the Disclosure Statement Order approving all Solicitation

Package materials and determining, on a conditional basis, that the Disclosure Statement contains

"adequate information" within the meaning of section 1125(a) of the Bankruptcy Code. Service of

the Solicitation Packages was made in compliance with the Disclosure Statement Order, the

Bankruptcy Code, the Bankruptcy Rules, and the Local Rules. All Solicitation Packages were

served at least twenty-eight (28) days prior to the Objection Deadline in compliance with

Bankruptcy Rule 2002(b). Thus, the Liquidating Debtors' solicitation of the Plan complied with

section 1125(b) of the Bankruptcy Code.

      ii.      **Service of Disclosure Statement-§ 1125(c)**. The Liquidating Debtors served the same Disclosure Statement upon all holders of Claims and Interests in compliance with section 1125(c) of the Bankruptcy Code.

      iii.      **Good Faith Solicitation — § 1125(e)**. Based on the record before the Court in these Cases, the Liquidating Debtors and their Professionals—including each of their respective current officers, directors, employees, and managers, as of the date of this Order—and all other Persons involved in the Solicitation process have acted in "good faith" within the meaning of section 1125(e) of the Bankruptcy Code and in compliance with the Disclosure Statement Order and with the applicable provisions of the Bankruptcy Code, the Bankruptcy Rules, the Local Rules, and any applicable non-bankruptcy law, rule or regulation governing the adequacy of disclosure in connection with the development of the Plan and in connection with all of their respective activities arising out of or relating to (i) the administration of these Cases, (ii) the negotiation and pursuit of approval of the Disclosure Statement, (iii) the preparation, development, and solicitation of acceptances of the Plan, (iv) the pursuit of confirmation of the Plan, (v) the funding of the Plan, (vi) the consummation of the Plan, and (vii) the administration of the Plan and the property to be distributed under the Plan, and are entitled to the protections afforded by section 1125(e) of the Bankruptcy Code.

      **M.**      **Compliance with Sections 1122 and 1123 of the Bankruptcy Code**.

      i.      **Proper Classification - § 1122**. Article III of the Plan provides for the separate classification of Claims against and Interests in the Liquidating Debtors based upon differences in the legal nature and/or priority of such Claims and Interests. The Plan designates the following Classes of Claims and Interests:

- Class 1 — Other Secured Claims
- Class 2 — Allowed Priority Non-Tax Claims
- Class 3 — Prepetition Secured Claims
- Class 4 — General Unsecured Claims
- Class 5 — Intercompany Claims
- Class 6 — Equity Interests

This classification scheme complies with section 1122(a) of the Bankruptcy Code Bankruptcy because the Claims or Interests in each Class are substantially similar to other Claims or Interests, as the case may be, in each such Class. Valid business, factual, and legal reasons exist for separately classifying the Classes of Claims and Interests under the Plan; such classifications were not done for any improper purpose; and such classifications do not unfairly discriminate between the holders of Claims or Interests.

ii.      **Designation of Classes of Claims and Interests - § 1123(a)(1)**. The Plan complies with section 1123(a)(1) of the Bankruptcy Code in that Article III designates the various Classes of Claims and Interests under the Plan, as further set forth in the preceding paragraph.

iii.      **Specify Unimpaired Classes - § 1123(a)(2)**. The Plan complies with section 1123(a)(2) of the Bankruptcy Code in that Article III.C of the Plan designates Classes that are Unimpaired and that are Impaired. Unimpaired and Impaired Classes are further designated in the chart in Section 2.1 and 2.4 of the Disclosure Statement.

iv.      **Specify Treatment of Impaired Classes - § 1123(a)(3)**. The Plan complies with section 1123(a)(3) of the Bankruptcy Code in that Article III of the Plan clearly explains the treatment for each Class of Claims and Interests under the Plan, including Impaired Classes.

v.      **No Discrimination — § 1123(a)(4)**. The Plan complies with section 1123(a)(4) of the Bankruptcy Code in that all Claims or Interests, as applicable, within a particular Class are treated the same as all other Claims or Interests within such Class (without regard to any rights a Claimant may hold against third parties), unless the holder of a particular Claim or Interest

has agreed to less favorable treatment of its Claim or Interest.

      vi.      **Adequate Means of Implementation - § 1123(a)(5)**. The Plan complies with section 1123(a)(5) of the Bankruptcy Code in that Article IV of the Plan provides in detail the means for implementation of the Plan. Specifically, Article IV explains, among other things, that: (i) the Plan will be funded with all Cash of each Liquidating Debtor which, in the case of Fore Machine, will consist primarily of Sale Proceeds; and (ii) the Liquidating Debtors' directors, officers, and managers will be eliminated and the Plan Administrator will oversee the Post-Effective Date Liquidating Debtors and wind-down.

      vii.      **Prohibition on Issuance of Non-Voting Securities - § 1123(a)(6)**. The Plan complies with section 1123(a)(6) of the Bankruptcy Code in that the Plan does not contemplate the issuance of any Interests in the Liquidating Debtors and the holders of Interests are not entitled to vote on the Plan.

      viii.      **Directors and Officers - § 1123(a)(7)**. The Plan complies with section 1123(a)(7) of the Bankruptcy Code in that the Post-Effective Date Liquidating Debtors will exist solely for the limited purposes of winding up and dissolving under the Plan. All of the Liquidating Debtors' directors, officers, and managers will be terminated and eliminated as of the Effective Date without any further corporate action, notice, or order of the Court, at which point the Post-Effective Date Liquidating Debtors will be managed exclusively by the Plan Administrator pursuant to the Plan, this Confirmation Order. Stretto will serve as the initial Plan Administrator. The Plan is consistent with the interests of Claimants and with public policy.

      ix.      **Payments to Creditors - § 1123(a)(8)**. Section 1123(a)(8) of the Bankruptcy Code is inapplicable in that the Liquidating Debtors are not individuals.

      x.      **Permissive Plan Provisions - § 1123(b).** All of the Plan's provisions are

consistent with section 1123(b) of the Bankruptcy Code 1123(b), including, without limitation, the following:

- Impaired and Unimpaired Claims/Interests. In accordance with section 1123(b)(1) of the Bankruptcy Code, the Plan Impairs certain Classes of Claims and Interests and leaves other Classes Unimpaired.

- Debtor Release. Article VIII.B of the Plan effects a release of the Released Parties from any Claims and Causes of Action held by the Liquidating Debtors, the Estates, or the Post- Effective Date Liquidating Debtors that arose prior to the Effective Date (subject to and as more fully set forth in Article VIII.B of the Plan, the "Debtor Release"). The Debtor Release is critical to the successful implementation and confirmation of the Plan; the Debtor Release is fair, reasonable, and in the best interests of the Liquidating Debtors and Estates; and the Debtor Release is appropriate under the circumstances of these Cases. The Debtor Release constitutes a valid exercise of the Liquidating Debtors' business judgment in these Cases and is permissible under section 1123(b) of the Bankruptcy Code.

- Non-Debtor Release. The Plan effects a release of the Liquidating Debtors, the Estates, and the Released Parties from any Claims and Causes of Action held by the Releasing Parties that arose prior to the Effective Date (subject to and as more fully set forth in Article VIII.C of the Plan, the "Non-Debtor Release", and collectively with the Debtor Release, the "Releases"). The Non-Debtor Release was conspicuously noticed in the Plan, Disclosure Statement, Ballots, and Non-Voting Status Notices. All holders of Impaired Claims or Interests (including holders of Administrative Claims and Priority Tax Claims) were given the chance to opt out of the Non-Debtor Release by checking the appropriate box on their Ballot or Opt-Out

13

Form. Accordingly, the Non-Debtor Release is consensual and is an integral part of the Plan. The Non-Debtor Release is permissible under section 1123(b) of the Bankruptcy Code.

- _Exculpation_. The Plan provides for an exculpation limiting the liability of the Exculpated Parties for acts or omissions in connection with, among other things, these Cases, the commencement and administration of these Cases, or the negotiation or implementation of the Plan, save and except for acts determined by Final Order to be the result of fraud or gross negligence (subject to and as more fully described in Article VIII.D of the Plan, the "_Exculpation_"). The Exculpation is appropriate and vital because it provides protection to those parties who served as fiduciaries during these Cases or made substantial and critical contributions to the Sale Transaction and/or the Plan. The Exculpation prevents future collateral attacks against those who have worked to maximize the Estates and, therefore, the Exculpation is appropriate and consistent with applicable law. The Exculpation is permissible under section 1123(b) of the Bankruptcy Code.

- _Injunction_. The Plan permanently enjoins parties from pursuing or enforcing any Claims or Interests that are released or exculpated under the terms of the Plan (as more fully described in Article VIII.E of the Plan, the "_Injunction_"), which is a key component of the Plan necessary to implement the Releases and Exculpation. Without the injunction, the Plan's Release and Exculpation would lose their impact. The Injunction is permissible under Bank section 1123(b) of the Bankruptcy Code.

- _Settlement_. Pursuant to section 1123 of the Bankruptcy Code and Bankruptcy Rule 9019, and in consideration for the classification, Distributions, Releases, and other benefits provided under the Plan, on the Effective Date, the provisions of the Plan (including, the Releases, Exculpation, and Injunction) shall constitute a good-faith compromise and settlement

of all controversies, Claims, and interests resolved pursuant to the Plan. The Plan is a valid compromise of Claims and Interests and is the product of good faith, arm's-length negotiations with the Liquidating Debtors' creditors. As further set forth herein, the Plan represents a valid compromise that is fair and equitable and in the best interests of the Estates. The Plan's settlement and compromise of Claims and Interest is permissible under section 1123(b) of the Bankruptcy Code.

xi.    **Plans Proposed by other Parties - § 1123(c)**. Section 1123(c) of the Bankruptcy Code is not applicable because the Liquidating Debtors are not individuals.

xii.    **Amounts Necessary to Cure Defaults - § 1123(d)**. The Plan complies with section 1123(d) of the Bankruptcy Code in that any Executory Contracts or Unexpired Leases assumed by the Liquidating Debtors under the Plan (if any) will be cured in accordance with Bankruptcy Code §365(b), the provisions of such contract or lease, and applicable law (or as otherwise agreed to by the Liquidating Debtors and the counterparty thereto).

### N.    Compliance with Bankruptcy Code § 1129.

i.    **Plan's Compliance with Bankruptcy Code - § 1129(a)(1)**. The Plan complies with all applicable provisions of the Bankruptcy Code, thereby satisfying section 1129(a)(1) of the Bankruptcy Code.

ii.    **Liquidating Debtors' Compliance with Bankruptcy Code - § 1129(a)(2)**. The Liquidating Debtors have complied with all applicable provisions of the Bankruptcy Code and Bankruptcy Rules in proposing and soliciting votes on the Plan, specifically sections 1122, 1123, and 1125 of the Bankruptcy Code. Each of the Liquidating Debtors is an eligible debtor under section 109 of the Bankruptcy Code. The Liquidating Debtors have complied with the applicable provisions of the Bankruptcy Code, Bankruptcy Rules, and Local Rules in all

respects, including in the Solicitation and tabulation of votes on the Plan.

   iii.  **Plan Proposed in Good Faith - § 1129(a)(3)**. The Liquidating Debtors

have proposed the Plan (and all documents necessary to effectuate the Plan) in good faith and not

by any means forbidden by law, thereby satisfying section 1129(a)(3) of the Bankruptcy Code.

The Liquidating Debtors' good faith is evident from, inter alia, the facts and record of these Cases,

the Disclosure Statement, the record made at the Confirmation Hearing, and the other proceedings

in these Cases. The Plan and all documents, forms, lists and agreements contemplated under the

Plan (including, but not limited to the Plan Supplement) to effectuate the terms and conditions of

the Plan (collectively, the "Plan Documents") were proposed with the legitimate and honest

purpose of maximizing the value of the Liquidating Debtors' Estates and to effectuate a liquidation

of the Liquidating Debtors. The Plan and Plan Documents were negotiated at arm's-length.

Further, the Plan's classification, indemnification, Exculpation, Releases, and Injunction

provisions have been negotiated in good faith and at arm's-length. Such provisions are consistent

with sections 105, 1122, 1123(b)(6), 1125, 1129, and 1142 of the Bankruptcy Code; each provision

is necessary for the success of the Plan; and none of the Plan's provisions were included for any

improper purpose.

   iv.  **Payment for Services or Costs and Expenses - § 1129(a)(4)**. The Plan

complies with section 1129(a)(4) of the Bankruptcy Code in that any payments to be made by the

Liquidating Debtors, Plan Administrator, or any person issuing securities or acquiring property

under the Plan, for services or for costs and expenses in connection with the Cases, or in connection

with the Plan and incident to the Cases, is approved by, or subject to the approval of, as applicable,

the Bankruptcy Court as reasonable.

   v.  **Directors, Officers, and Insiders - § 1129(a)(5)**. The Liquidating Debtors

have complied with section 1129(a)(5) of the Bankruptcy Code in that the Plan identifies Stretto as the Plan Administrator, and the Plan Administrator's powers and duties are clearly set forth in the Article IV.D of the Plan. The Plan Administrator's appointment is consistent with the interests of all Claimants and with public policy.

vi.     **No Rate Changes — § 1129(a)(6)**. Section 1129(a)(6) of the Bankruptcy Code is not applicable to the Liquidating Debtors or the Plan.

vii.     **Best Interest of Creditors - § 1129(a)(7)**. The Plan satisfies section 1129(a)(7) of the Bankruptcy Code in that, as demonstrated by the Liquidation Analysis, each holder of an Impaired Claim that has not accepted the Plan will on account of such Claim receive or retain property under the Plan having a value, as of the Effective Date, that is at least equal to the amount that such holder would receive or retain if the Liquidating Debtors' Estates were liquidated under Chapter 7 of the Bankruptcy Code.

viii.     **Acceptance by Impaired Classes - § 1129(a)(8)**. Claims and Interests in Classes 1A, 1B, 1C, 2A, 2B, and 2C are Unimpaired and deemed to accept the Plan pursuant to section 1126(f) of the Bankruptcy Code. Claims in Class 3 are Impaired under the Plan, and Class 3 has accepted the Plan in accordance with Bankruptcy Code § 1126(c), as demonstrated by the Ballot Certification. General Unsecured Claims under Classes 4A, 4B, and 4C, Intercompany Claims in Class 5, and Equity Interests in Classes 6A, 6B, and 6C of the Plan are Impaired and deemed to reject the Plan pursuant to Bankruptcy Code § 1126(g). Thus, the Plan satisfies section 1129(a)(8) of the Bankruptcy Code in that all Impaired Classes entitled to vote on the Plan voted to accept the Plan. The Plan further satisfies the requirements for confirmation under the "cram down" provisions of Bankruptcy Code § 1129(b).

ix.    **Administrative Claims and Priority Tax Claims - § 1129(a)(9)**. The Plan complies with section 1129(a)(9) of the Bankruptcy Code in that Article II of the Plan provides for all Allowed Administrative Claims and Allowed Priority Tax Claims to be paid in full on the Effective Date or such later date in accordance with the Plan and sections 1129 (a)(9)(C)-(D) of the Bankruptcy Code, except to the extent that the Claimant agrees to less favorable treatment, and for Professional Claims that are not yet Allowed as of the Effective Date to be paid in full upon allowance by the Bankruptcy Court.

x.    **Acceptance by Impaired Class - § 1129(a) (10)**. Section 1129(a)(10) of the Bankruptcy Code is satisfied in that, as described above and in the Ballot Certification, Class 3 is Impaired and voted to accept the Plan.

xi.    **Feasibility — § 1129(a)(11)**. Section 1129(a)(11) of the Bankruptcy Code is satisfied in that the Plan provides for the liquidation, wind-down, and dissolution of the Liquidating Debtors. Article IV sets forth a feasible means of implementing the Plan.

xii.    **U.S. Trustee Fees — § 1129(a)(12)**. The Plan satisfies section 1129(a)(12) of the Bankruptcy Code in that Article XII.C of the Plan provides for all U.S. Trustee Fees that are currently due and payable under 28 U.S.C. § 1930, as determined by the Court, to be paid by the Liquidating Debtors and/or Plan Administrator on or before the Effective Date, and for all U.S. Trustee Fees coming due after the Effective Date to be paid by the Plan Administrator when due.

xiii.    **Retiree Benefits — § 1129(a)(13)**. Section 1129(a)(13) of the Bankruptcy Code is not applicable to the Plan because the Plan provides for the liquidation of the Liquidating Debtors and for all of the Liquidating Debtors' current directors, officers, managers, and employees to be terminated as of the Effective Date.

xiv.    **Domestic Support Obligations - § 1129(a)(14)**. Section 1129(a)(14) of the

Bankruptcy Code is not applicable because the Liquidating Debtors are not individuals and do not have any domestic support obligations.

xv.      **Payments by Individual Liquidating Debtors — § 1129(a)(15)**. Section 1129(a)(15) of the Bankruptcy Code is not applicable because the Liquidating Debtors are not individuals.

xvi.     **Transfers of Property — § 1129(a)(16)**. Section 1129(a)(16) of the Bankruptcy Code is not applicable because the Liquidating Debtors are not non-profit corporations or trusts. However, all transfers of property contemplated by the Plan are to be made in accordance with applicable nonbankruptcy law governing the transfer of property.

xvii.    **Non-Consensual Confirmation (Cram Down) - § 1129(b)**. The Plan does not discriminate unfairly and is fair and equitable with respect to each Impaired Class that has not voted to accept the Plan, and all classified Claims and Interests are treated the same as all other Claims or Interests within their respective Class. Classes 4A, 4B, 4C, 5, 6A, 6B, and 6C are Impaired and deemed to reject the Plan because the holders in those Classes will not receive or retain any property under the Plan.  All other Impaired Classes, however, have accepted the Plan in accordance with section 1126(c) of the Bankruptcy Code as set forth in the Ballot Certification. Accordingly, the Plan complies with all provisions of section 1129(b) of the Bankruptcy Code, including the "absolute-priority" rule contained in section 1129(b)(2) of the Bankruptcy Code, and may be confirmed notwithstanding that Classes 4A, 4B, 4C, 5, 6A, 6B, and 6C are deemed to reject the Plan.

xviii.   **One Plan — § 1129(c)**. Section 1129(c) of the Bankruptcy Code is satisfied in that the Plan is the only Chapter 11 plan subject to confirmation in these Cases.

xix.     **Purpose of the Plan — § 1129(d)**. Section 1129(d) of the Bankruptcy Code

is satisfied in that the principal purpose of the Plan is not the avoidance of taxes or the avoidance

of the application of section 5 of the Securities Act of 1933.

xx.    **Small Business Cases — § 1129(e)**. Section 1129(e) of the Bankruptcy

Code is not applicable because the Liquidating Debtors' Cases are not small business cases.

**O.    <u>Satisfaction of Disclosure. Solicitation, and Confirmation Requirements</u>**. All

requirements of the Bankruptcy Code, the Bankruptcy Rules, and the Local Rules have been

satisfied as necessary for confirmation of the Plan and final approval of the Disclosure Statement.

**P.    <u>Plan and Plan Documents</u>**. The Plan Supplement complies with the Bankruptcy

Code and the terms of the Plan, and the Liquidating Debtors provided good, proper, and sufficient

notice of the Plan, Plan Supplement, and all other Plan Documents in accordance with the

Bankruptcy Code and the Bankruptcy Rules, and no further notice is necessary or required. All

documents included in the Plan Supplement are integral to, part of, and incorporated by reference

into the Plan and are hereby approved. Subject to the terms of the Plan, the Liquidating Debtors

reserve the right to make alterations, amendments, updates, or modifications to the Plan

Supplement and any other Plan Documents before the Effective Date. The Plan Documents,

including the Plan Supplement and all Plan exhibits (as may be amended or supplemented) have

been negotiated in good faith and are, in the judgment of the Court and the parties, necessary and

appropriate to effectuate the Plan. The Plan Documents are essential elements of the Plan, and

entry into each such Plan Document is in the best interests of the Liquidating Debtors, the Estates,

and holders of Claims and Interests. The Liquidating Debtors have exercised reasonable business

judgment in determining to enter into the Plan, and the terms and conditions of the Plan, including

the fees, expenses, and other payments set forth therein, have been in good faith and at arm's

length, are fair and reasonable, are supported by reasonably equivalent value and fair

consideration, and shall, upon completion of documentation and execution, be valid, binding, non-

avoidable, and enforceable agreements and not be in conflict with any federal, state, or local law.

The Liquidating Debtors have provided sufficient and adequate notice of the Plan, including each

of the Plan Documents, to all parties in interest in the Liquidating Debtors' Chapter 11 Cases.

Q.      **Sound Business Judgment**. Consummation of the Plan, the transactions

contemplated under the Plan, and execution of all Plan Documents is a sound exercise of the

Liquidating Debtors' business judgment. The terms and provisions of the Plan and all Plan

Documents are in the best interest of the Liquidating Debtors, their Estates, and Claimants.

R.      **Assumption and Rejection**. Each assumption or rejection of an Executory

Contract or Unexpired Lease as provided for in the Plan and Plan Supplement shall be legal, valid,

and binding upon the applicable Debtor and all non-Debtor counterparties to such contracts or

leases, and satisfies all requirements of section 365 of the Bankruptcy Code.

S.      **Exculpation. Releases, and Injunction**. The Releases, Exculpation, and

Injunction provisions set forth in Article VIII of the Plan constitute good faith compromises and

settlements of the matters covered thereby. Each of the Release, Exculpation, and Injunction

provisions set forth in Article VIII of the Plan: (i) is within the jurisdiction of the Court under 28

U.S.C. § 1334; (ii) is an essential means of implementing the Plan pursuant to section 1123(a)(5)

of the Bankruptcy Code; (iii) is an integral element of the resolution of the Chapter 11 Cases, and

implementation of the Plan, in accordance with the Plan and the failure to effect such provision

would seriously impair the Liquidating Debtors' ability to confirm the Plan; (iv) confers material

benefits on, and is in the best interests, of the Liquidating Debtors, the Liquidating Debtors'

Estates, and Claimants; (v) is, *inter alia*, supported by extensive consideration; (vi) is important to

the overall objectives of the Plan to finally resolve all Claims and Interests among or against the

parties in interest in the Chapter 11 Cases with respect to the Liquidating Debtors; (vii) is fair, equitable, reasonable, and in the best interests of the Liquidating Debtors and their Estates, Creditors, and Interest holders; and (viii) is consistent with sections 105, 1123, and 1129 of the Bankruptcy Code and other applicable sections of the Bankruptcy Code and Bankruptcy Rules. The record of the Confirmation Hearing and the Chapter 11 Cases is sufficient to support the Releases, Exculpation, and Injunction provisions contained in Article VIII of the Plan. Accordingly, this Court finds that the Exculpation, Injunction, and Releases are consistent with the Bankruptcy Code and applicable law.

  **T.** **Consensual Non-Debtor Releases.** The Non-Debtor Release described in Article VIII.C of the Plan is a consensual third-party release and constitutes an integral component of the Plan. The Plan provides that: (i) parties entitled to vote on the Plan may affirmatively opt out of the Non-Debtor Releases by voting to reject the Plan and checking the appropriate box on their Ballot to opt out of the Releases; and (ii) impaired parties not entitled to vote on the Plan may affirmatively opt out of the Non-Debtor Releases by checking the appropriate box on the Opt Out Form included with their Non-Voting Status Notice.

   i. <u>Parties Entitled to Vote on the Plan</u>. The Ballots clearly and explicitly stated that, in order to avoid being deemed a Releasing Party, parties were required to timely vote to reject the Plan and check the opt out box on their Ballot; the Ballots included the full text of the Non-Debtor Releases set forth in Article VIII.C of the Plan; and both the Plan and the Ballots conspicuously stated that parties are deemed to provide the Non-Debtor Release unless they opted out. Thus, all parties entitled to vote on the Plan were given due and adequate notice that voting to accept the Plan (or otherwise failing to reject the Plan and opt out of the Non-Debtor Releases) constituted consent to the Non-Debtor Release. All parties who voted to accept the Plan, and all parties whose vote was solicited but did not return a Ballot return a Ballot rejecting the Plan and opting out of the Non-Debtor Release, have manifested their consent to, and are contractually bound by, the Non-Debtor Release, including, without limitation, releases of claims against non-Liquidating Debtors to the extent set forth in Article VIII.C of the Plan.

   ii. <u>Parties Not Entitled to Vote on the Plan</u>. The Impaired Non-Voting Status Notices clearly and explicitly stated that, in order to avoid being deemed a Releasing Party,

parties were required to timely submit the Opt Out Form included with their Non-Voting Status Notice checking the box to opt out of the Non- Debtor Release; the Non-Voting Status Notices included the full text of the Non-Debtor Releases set forth in Article VIII.C of the Plan; and both the Plan and the Impaired Non-Voting Status Notices conspicuously stated that parties are deemed to provide the Non-Debtor Release unless they opted out. Thus, all parties not entitled to vote on the Plan were given due and adequate notice that failing to submit the Opt Out Form opting out of the Non-Debtor Releases constituted consent to the Non-Debtor Release. All impaired parties not entitled to vote on the Plan that did not return an Opt Out Form opting out of the Non-Debtor Release have manifested their consent to, and are contractually bound by, the Non-Debtor Release, including, without limitation, releases of claims against non-Liquidating Debtors to the extent set forth in Article VIII.C of the Plan.

Furthermore, the Liquidating Debtors and Released Parties compensated Claimants for the Non-Debtor Release with adequate consideration, including, without limitation by providing substantial contributions to the Chapter 11 Cases and the Plan. Without such substantial contributions, a successful liquidation and confirmation of the Plan would not be possible. The substantial contributions by the Liquidating Debtors and Released Parties have thus ultimately resulted in the Liquidating Debtors being able to submit the Plan, which provides for efficient and timely Distributions to be made to Creditors. Additionally, the Non-Debtor Release: (1) constitutes a good-faith Settlement and compromise of the Claims and Causes of Action released by the Non-Debtor Release; (2) is in the best interests of the Liquidating Debtors and their Estates; (3) is fair, equitable, and reasonable; (4) is given and made after due notice and opportunity for hearing; (5) is narrowly tailored; and (6) is a bar to any Claims or Causes of Action released by the Non-Debtor Release against any of the Released Parties.

U. **Exculpation**. The Exculpation provisions set forth in Article VIII.D of the Plan are essential to the Plan. The record in the Chapter 11 Cases fully supports the Exculpation and the provisions set forth in Article VIII.D of the Plan, which are appropriately tailored to protect the Exculpated Parties from inappropriate litigation.

V.    **Injunction**. The Injunction provisions set forth in Article VIII.E of the Plan are essential to the Plan and are necessary to implement the Plan and to preserve and enforce the Debtor Release, the Non-Debtor Release, and the Exculpation, and the Injunction provisions are appropriately tailored to achieve those purposes. Any dispute regarding the scope or application of the Releases contained in the Plan shall be brought before the Bankruptcy Court or such court as the Bankruptcy Court may direct.

W.    **Settlement of Claims and Interests**. The settlements and compromises of Claims and Interests contained in (or incorporated into) the Plan are necessary to, and are an integral and essential element of, the Plan and its consummation, and the terms and conditions of such settlements are fair and reasonable under the circumstances. The performance of the terms thereof is authorized, and the parties are directed to consummate the same. The settlements are the product of arm's-length negotiation, and have been proposed in good faith, for legitimate business purposes, are supported by reasonably equivalent value and fair consideration and reflects the Liquidating Debtors' exercise of reasonable business judgment. Entry into the settlements and consummation of the same is in the best interests of the Liquidating Debtors, their Estates, their Creditors, and Interest holders. The Liquidating Debtors have provided all interested parties with sufficient and adequate notice of, and an opportunity to object and to be heard with respect to, any and all settlements. The terms and provisions of the settlements are approved pursuant to this Order.

X.    **Enforceability of the Plan**. Except as addressed herein or in any future order of the Bankruptcy Court contemplated by this Order, the Plan will apply and be enforceable notwithstanding any otherwise applicable non-bankruptcy law. The Liquidating Debtors, the Sponsor, P4G, the Post- Effective Date Liquidating Debtors, and their advisors, attorneys,

employees, agents, and representatives, and the Plan Administrator and its advisors, attorneys, employees, agents, and representatives will be acting in good faith if they proceed to (i) consummate, implement and proceed in furtherance of the Plan and the agreements, the settlement, transactions, transfers and documentation contemplated thereby and (ii) take any actions authorized and directed by this Order.

      **Y.**    **Objections**. All parties and parties-in-interest have had a full and fair opportunity to file objections to confirmation of the Plan or final approval of the Disclosure Statement and to litigate any such objections.

      Based upon the foregoing, all requirements for confirmation of the Plan and final approval of the Disclosure Statement—whether set forth in the Bankruptcy Code, Bankruptcy Rules, Local Rules, or otherwise—have been satisfied, and the Plan shall be confirmed and the Disclosure Statement shall be approved. Accordingly,

### IT IS HEREBY ORDERED, ADJUDGED AND DECREED THAT:

      1.    **CONFIRMATION OF PLAN**. The Plan attached hereto as Exhibit A is hereby CONFIRMED in each and every respect pursuant to Bankruptcy Code § 1129. Any modifications to the Plan are hereby approved and incorporated into and made an integral part of the Plan. Each and every provision of the Plan is incorporated by reference into, and is made an integral part of, this Order as if the Plan were set forth in its entirety in this paragraph. The provisions of the Plan and this Order, including the findings of fact and conclusions of law set forth herein, are non-severable and mutually dependent. The failure to specifically include or refer to any particular section or provision of the Plan or the Plan Documents in this Order shall not diminish or impair the effectiveness or enforceability of such section or provision nor constitute a waiver thereof, it

being the intent of this Court that the Plan is confirmed in its entirety and incorporated herein by reference.

2.      **FINAL APPROVAL OF DISCLOSURE STATEMENT**. The Disclosure Statement is hereby APPROVED on a final basis in all respects. The Disclosure Statement contains (a) sufficient information of a kind consistent with the disclosure requirements of all applicable nonbankruptcy law, rules, and regulations, and (b) "adequate information" (as such term is defined in sections 1125(a) and 1126(b)(2) of the Bankruptcy Code) with respect to the Liquidating Debtors, the Plan and the transactions contemplated therein.

3.      **APPROVAL OF PLAN DOCUMENTS**. All of the Plan Documents are hereby authorized and APPROVED. The form, terms, and provisions of the Plan Documents shall constitute legal, valid, binding and authorized obligations of the respective parties thereto, enforceable in accordance with its terms. The terms and provisions of the Plan Documents are incorporated by reference into, and are made an integral part of, this Order as set forth entirely in this paragraph. Subject to the terms of the Plan, (including all consent rights provided therein), the Liquidating Debtors reserve the right to alter, amend, update, or modify the Plan Documents prior to the Effective Date.

4.      **SOLICITATION AND NOTICE**. Notice of the Confirmation Hearing and the Liquidating Debtors' Solicitation of votes on the Plan complied with the terms of the Disclosure Statement Order, were appropriate and satisfactory based upon the circumstances of the Liquidating Debtors' Cases and were in compliance with the provisions of the Bankruptcy Code, Bankruptcy Rules, and Local Rules.

5.      **OBJECTIONS**. To the extent that any Objections (including any reservations of rights contained therein) to confirmation of the Plan, or final approval of the Disclosure Statement,

or other responses or reservations of rights with respect thereto have not been withdrawn, waived, settled or otherwise resolved prior to entry of this Order, such Objections and responses shall be, and hereby are, overruled on the merits and denied for all purposes.

6. **ORDER EFFECTIVE IMMEDIATELY**. Notwithstanding the provisions of Bankruptcy Rules 3020(e), 6004(h), 6006(d), 7062, or otherwise, this Order and all terms and provisions hereof shall be effective immediately upon entry. The Liquidating Debtors, the Sponsor, P4G, the Post- Effective Date Liquidating Debtors, and their advisors, attorneys, employees, agents, and representatives, the Agent Released Parties, and the Plan Administrator and its advisors, attorneys, employees, agents, and representatives shall be acting in good faith if they proceed to immediately (a) consummate the Plan and the agreements, the settlements, transactions, transfers and documentation contemplated thereby and (b) take any actions authorized and directed by this Order, including commencing Distributions and paying U.S. Trustee Fees. This Confirmation Order is a final order, and the period in which an appeal must be filed shall commence immediately upon the entry hereof.

7. **SUBSTANTIAL CONSUMMATION**. The Plan shall be deemed substantially consummated as of the Effective Date under sections 1101 and 1127(b) of the Bankruptcy Code.

8. **BINDING EFFECT**. In accordance with section 1141 of the Bankruptcy Code, and immediately upon entry of this Order, the provisions of the Plan (including the Plan Documents) and this Order shall be, and hereby are, binding upon any past, present, or future Claimant, including counterparties to the Liquidating Debtors' Executory Contracts and Unexpired Leases, whether or not such Claimant is Impaired under the Plan, whether known or unknown, and whether or not such Claimant has accepted the Plan. The terms of the Plan (including all consent rights provided therein), all exhibits thereto, all Plan Documents, and all

other relevant and necessary documents shall be effective and binding as of the Effective Date, and the Plan shall apply and be enforceable notwithstanding any otherwise applicable non-bankruptcy law. Subject to the terms of the Plan and this Order, all prior orders of this Court entered in these Cases, all documents and agreements executed by the Liquidating Debtors as authorized and directed thereunder, and all motions or requests for relief by the Liquidating Debtors pending before the Court as of the Effective Date shall be, and hereby are, binding on and shall inure to the benefit of the Plan Administrator and Post-Effective Date Liquidating Debtors. Pursuant to sections 1123(a) and 1142(a) of the Bankruptcy Code, the provisions of this Order, the Plan and the Plan Documents shall apply and be enforceable notwithstanding any otherwise applicable non-bankruptcy law.

9.      **PLAN ADMINISTRATOR**. Stretto is hereby approved as the Plan Administrator and is hereby authorized to take any and all actions contemplated of the Plan Administrator under this Order and the Plan (including, without limitation, all acts to implement the Plan set forth in Article IV of the Plan). The Plan Administrator shall have all powers and duties (and all rights and privileges) set forth in Article VI of the Plan. Upon the Effective Date: (a) the positions of the current officers and directors of the Liquidating Debtors shall be eliminated, and each officer and director shall be terminated (without the necessity of further action); and (b) to the fullest extent permitted by applicable law, the rights, powers, and duties of the directors and officers of each Liquidating Debtor shall vest in the Plan Administrator, who shall serve as the sole officer and director of each Post-Effective Date Liquidating Debtor after the Effective Date. Stretto, as the Plan Administrator, shall be the sole officer, director, and manager, of the Post-Effective Date Liquidating Debtors. Upon the Effective Date, all actions contemplated by the Liquidating Plan (including any action to be undertaken by the Plan Administrator) shall be deemed authorized,

approved, and, to the extent taken prior to the Effective Date, ratified without any requirement for further action by holders of Claims or Interests, the Liquidating Debtors, or any other Entity or Person.  All matters provided for in the Liquidating Plan involving the corporate structure of the Liquidating Debtors, and any corporate action required by the Liquidating Debtors in connection therewith, shall be deemed to have occurred and shall be in effect, without any requirement of further action by the Liquidating Debtors or the Liquidating Debtors' Estates. Any such transactions may be effective as of the Effective Date pursuant to the Confirmation Order without any further action by the members, managers, or directors of any of the Liquidating Debtors.

10. **PLAN CLASSIFICATION CONTROLLING**. The classification of Claims and Interests for purposes of the Distributions to be made under the Plan shall be governed solely by the terms of the Plan.

11. **RETENTION OF CAUSES OF ACTION/RESERVATION OF RIGHTS**. Subject to the terms of the Plan, and except to the extent not otherwise released by the Plan, all of the Liquidating Debtors' Claims and Causes of Action against third parties, including, without limitation, Avoidance Actions, (collectively, "Actions") shall survive Confirmation and the commencement of prosecution of Actions shall not be barred or limited by any res judicata or estoppel, whether judicial, equitable or otherwise. The Plan Administrator and Post-Effective Date Liquidating Debtors' right to commence and prosecute Actions not otherwise released by the Plan shall not be abridged or materially altered in any manner by reason of confirmation of the Plan.

12. **CASE ADMINISTRATION**. From and after the Effective Date and continuing through the date that a Final Decree closing these Cases is entered under section 350 of the Bankruptcy Code and Bankruptcy Rule 3022, the Plan Administrator will possess the rights of the Liquidating Debtors for all matters arising in, arising under or related to these Cases. In addition

29

to, and without limiting the generality of the foregoing, for all matters arising in, arising under or related to these Cases, the Plan Administrator will: (a) have the right to appear and be heard on matters brought before the Bankruptcy Court or other courts of competent jurisdiction; (b) have the right to obtain records of, or related to, the Liquidating Debtors (including, without limitation, financial records, tax returns, bank statements and cancelled checks), and the entities from which such records may be requested are hereby authorized and directed to produce such records to the Plan Administrator; (c) be entitled to notice and opportunity for hearing; (d) be entitled to participate in all matters brought before the Bankruptcy Court, including, but not limited to, adversary proceedings; (e) have exclusive standing to commence Actions not otherwise released by the Plan; (f) be entitled to request the Bankruptcy Court to enter a Final Decree closing the Cases; (g) be entitled to receive notice of all applications, motions and other papers and pleadings set before the Bankruptcy Court in this case; and (h) have all other rights, privileges, and protections set forth in the Plan.

13.    **PROPERTY OF THE LIQUIDATING DEBTORS**. The Plan Administrator has express authority to convey, transfer, and assign any and all property of the Liquidating Debtors consistent with the terms of the Plan, any sale order entered in these Cases with respect to such Assets and to take all actions necessary to effectuate the same.

14.    **DISSOLUTION OF LIQUIDATING DEBTORS**. Upon the Effective Date, the Plan Administrator shall complete the wind-down as expeditiously as practicable without the necessity for (a) any other or further actions to be taken by or on behalf of such Post- Effective Date Debtor or (b) any payments to be made in connection therewith subject to the filing of a certificate of dissolution with the appropriate Governmental Unit. Subject to the terms of the Plan and the Plan Administration Agreement, the Plan Administrator may take all appropriate or

necessary actions to dissolve the Liquidating Debtors and complete the wind-down at any time

following the Effective Date, notwithstanding whether any Distributions or Budgeted Expenses

remain to be paid under the Plan, if the Plan Administrator finds the same to be in the best interests

of the Estates and Claimants; provided, however, unless all Distributions due to the holders of

Class 3 Claims have been paid in full, any such dissolution or completion of the wind-down shall

require the written consent of the Prepetition Lenders.

15.    **NOTICE OF CONFIRMATION AND EFFECTIVE DATE**. Within five (5)

Business Days after the Effective Date, the Post-Effective Date Liquidating Debtors shall File a

notice advising of (a) the entry of this Order; (b) the occurrence of the Effective Date; (c) the last

date to File Professional Claims; and (d) the last date to File Rejection Claims arising from the

rejection of any Executory Contracts or Unexpired Leases pursuant to Article V of the Plan (the

"Notice of Effective Date"). The Post-Effective Date Liquidating Debtors or their agent shall serve

the Notice of Effective Date via regular U.S. mail, postage prepaid, upon all parties set forth on

the master mailing matrices for these Cases, and such service shall be sufficient to apprise all

parties in interest of the applicable Claims Bar Dates and all other information contained in the

Notice of Effective Date.

16.    **ADMINISTRATIVE CLAIMS**.

(a)    **Administrative Claims Bar Dates**. Any and all Administrative Claims subject to

the Administrative Claims Bar Date are hereby forever barred, disallowed, and discharged

pursuant to the Plan, unless such Administrative Claims are otherwise Allowed pursuant to a Final

Order of this Court.

(b)    **Final Administrative Claims Bar Dat**e. Any and all Administrative Claims not

subject to the Administrative Claims Bar Date ("Other Administrative Claims") shall be Filed by

no later than twenty-one (21) days after the Effective Date (the "Final Administrative Claims Bar Date"). Any requests for allowance and payment of Other Administrative Claims shall be served upon the Plan Administrator, the Liquidating Debtors' counsel, counsel to the Prepetition Lenders, the U.S. Trustee, and all other parties required under the Bankruptcy Rules or Local Rules by no later than Final Administrative Claims Bar Date and shall, at a minimum, set forth the name of the holder, amount, and basis for the alleged Administrative Claim. Any and all Other Administrative Claims shall be forever barred, disallowed, and discharged pursuant to the Plan unless (i) requests for such Administrative Claims are Filed and served prior to the Final Administrative Claims Bar Date and (ii) such Administrative Claims are thereafter Allowed pursuant to a Final Order of this Court. All objections to Other Administrative Claims shall be filed within fourteen (14) days after the Filing of the request for such Other Administrative Claim.

(c)      **Payment**. Except to the extent that a holder of an Allowed Administrative Claim consents to different treatment, each holder of an Allowed Administrative Claim shall receive, on account of and in full satisfaction of such Allowed Administrative Claim, Cash in an amount equal to the Allowed amount of such Administrative Claim in accordance with the Plan.

17.      **PROFESSIONAL FEE CLAIMS**. All Professional Claims of the Debtors' Professionals shall be paid pursuant to the Reorganizing Plan. All requests for payment of Professional Claims by Creditors' Committee Professionals for services rendered and reimbursement of expenses incurred prior to the Effective Date must be filed no later than 45 days after the Effective Date. The Bankruptcy Court shall determine the Allowed amounts of such Professional Claims after notice and a hearing in accordance with the procedures established by the Bankruptcy Code, Bankruptcy Rules, and prior Bankruptcy Court orders. The Plan Administrator shall pay Professional Claims owing to Committee Professionals in Cash to such

Professionals in the amount the Bankruptcy Court Allows as soon as reasonably practicable after such Professional Claims are Allowed by entry of an order of the Bankruptcy Court.

18.    **EXECUTORY CONTRACTS AND UNEXPIRED LEASES**. Except as set forth herein or in the Plan Supplement, pursuant to Article V.A of the Plan, each Liquidating Debtor is hereby deemed to have rejected, as of the Effective Date, each Executory Contract or Unexpired Lease unless such Executory Contract and Unexpired Lease: (i) has been previously rejected by the Liquidating Debtors (in which case, such Executory Contract or Unexpired Lease shall be deemed rejected as of the date states in the applicable rejection order), (ii) as of the Effective Date is subject to a pending motion to assume such Executory Contract or Unexpired Lease; (iii) is a contract, release, or other agreement or document entered into in connection with the Plan; or (iv) is a D&O Policy or an insurance policy. This Order shall constitute approval, pursuant to sections 365(a) and 1123(b) of the Bankruptcy Code, of (i) the assumption, assumption and assignment, or rejection of Executory Contracts and Unexpired Leases as provided in any supplemental assumption-rejection notice and (ii) the rejection of Executory Contracts and Unexpired Leases pursuant to Article V.A. of the Plan. Such assumption or rejection shall be legal, valid, and binding upon the applicable Post-Effective Date Debtor and all counterparties to such Executory Contracts or Unexpired Leases and satisfies all requirements of section 365 of the Bankruptcy Code.

19.    **INSURANCE POLICIES**. Pursuant to Article V.E of the Plan, each insurance policy, including the D&O Policy, shall be assumed by the applicable Liquidating Debtor effective as of the Effective Date, pursuant to sections 365 and 1123 of the Bankruptcy Code, to the extent such insurance policy is executory, unless such insurance policy previously was rejected by the Liquidating Debtors pursuant to a Bankruptcy Court order or is the subject of a motion to reject

pending on the Effective Date, and coverage for defense and indemnity under the D&O Policy

shall remain available to all individuals within the definition of "Insured" in the D&O Policy. For

the avoidance of doubt, and notwithstanding anything to the contrary contained in the Plan or this

Order, the Liquidating Debtors' directors' and officers' liability insurance policy (as further

described and defined in the Plan, the "D&O Policy") shall ***not*** be cancelled or rejected under the

Plan, but rather shall be retained by the Post-Effective Date Liquidating Debtors following the

Effective Date.

20.    **REJECTION CLAIMS**. Any Proofs of Claim based on the rejection of the

Liquidating Debtors' Executory Contracts or Unexpired Leases pursuant to the Liquidating Plan

or otherwise, must be filed with Bankruptcy Court and served on the Liquidating Debtors and the

Plan Administrator no later than fourteen (14) days after the earlier of the Effective Date or the

effective date of rejection of such Executory Contract or Unexpired Lease.  In addition, any

objection to the rejection of an Executory Contract or Unexpired Lease must be filed with the

Bankruptcy Court and served on the Liquidating Debtors, no later than fourteen (14) days after

service of the Liquidating Debtors' proposed rejection of such Executory Contract or Unexpired

Lease. Any Claims arising from the rejection of an Executory Contract or Unexpired Lease not

filed with the Bankruptcy Court within such time will be automatically disallowed, forever barred

from assertion, and shall not be enforceable against the Liquidating Debtors, the Plan

Administrator, the Liquidating Debtors' Estates, or the property for any of the foregoing without

the need for any objection by the Plan Administrator or further notice to, or action, order, or

approval of the Bankruptcy Court or any other Entity, and any Claim arising out of the rejection

of the Executory Contract or Unexpired Lease shall be deemed fully compromised, settled, and

released, notwithstanding anything in a Proof of Claim to the contrary.  All Allowed Claims arising

from the rejection of the Liquidating Debtors' prepetition Executory Contracts or prepetition Unexpired Leases shall be classified as General Unsecured Claims, except as otherwise provided by order of the Bankruptcy Court.

21.    **ALLOWED CLAIMS**. Except with respect to (a) Claims hereafter Allowed in accordance with the Plan and this Order (*i.e..,* certain Professional Fee Claims, certain Other Administrative Claims, and certain Rejection Claims), if any, and (b) Class 3 Prepetition Lender Secured Claims (which are Allowed pursuant to the terms of the Plan), no Claim shall be deemed an Allowed Claim under the Plan. The Liquidating Debtors have the right to file a Claim on behalf of the holder of a Claim pursuant to Bankruptcy Rule 3004, on or before May 29, 2022, at 5:00 p.m. (prevailing Central Time). The Plan Administrator is entitled to rely solely upon the Plan and the Orders of this Court for purposes of making Distributions under the Plan.

22.    **DISTRIBUTIONS**. All Distributions shall be made in accordance with Plan. The Liquidating Debtors, Post-Effective Date Liquidating Debtors, and Plan Administrator, as applicable, are hereby authorized to make any and all Distributions contemplated under the Plan. No Distributions shall be made on account of any Claim that is not Allowed in accordance with the terms of the Plan and/or this Order.

23.    **DISTRIBUTION RECORD DATE**. The Distribution Record Date shall be the Effective Date. Neither the Liquidating Debtors, Post-Effective Date Liquidating Debtors, nor the Plan Administrator shall have any obligation to recognize any transfer of Claims or Interests after the Distribution Record Date.

24.    **LIENS OF THE PREPETITION SECURED LENDERS/CHALLENGE PERIOD/TERMINATION OF DIP LOAN AGREEMENT**. In accordance with the terms of the Plan, all Assets vesting in the Post-Effective Date Liquidating Debtors shall be subject to the

Liens of the Prepetition Agent until the Class 3 Claims are indefeasibly paid in full. The Challenge

Period (as defined in the DIP Order [Docket No. 196]) has expired in accordance with the terms

of the DIP Order, and the stipulations, admissions, and findings in the DIP Order shall be binding

on the Liquidating Debtors, the Post-Effective Date Liquidating Debtors, and all parties in interest.

Further, as of the Effective Date of the Reorganizing Plan, the Line of Credit Termination Date,

as defined in the DIP Loan Agreement, shall be deemed to have occurred.

25.     **GENERAL AUTHORIZATION**. Upon the Effective Date, all actions

contemplated under the Plan shall be deemed authorized and approved in all respects without any

further action by any person or entity or any further Order of this Court.

26.     **PAYMENT OF STATUTORY FEES**. All fees currently due and payable under

28 U.S.C. §1930 shall be paid by the Plan Administrator on the Effective Date, and thereafter, as

such fees become due.  The Bankruptcy Court shall retain jurisdiction to hear disputes related to

the Exculpation provisions in Article VIII of the Plan.

27.     **GOVERNMENTAL APPROVALS NOT REQUIRED**. Except as otherwise

provided herein, this Order shall constitute all approvals and consents required, if any, by the laws,

rules, and regulations of any state or any other governmental authority with respect to the

implementation or consummation of the Plan and any documents, instruments, or agreements, and

any amendments or modifications thereto.

28.     **GOVERNMENTAL EXCEPTIONS**. Nothing in this Order, the Plan, or any

related documents discharges, releases, precludes or enjoins: (i) any police or regulatory liability

to a Governmental Unit that is not a Claim; (ii) any Claim of a Governmental Unit arising on or

after the Effective Date; (iii) any liability to a Governmental Unit under police and regulatory

statutes or regulations that any entity would be subject to as the owner or operator of property after

the Effective Date; or (iv) any liability to a Governmental Unit on the part of any non-debtor. Nor shall anything in this Order or the Plan enjoin or otherwise bar a Governmental Unit from asserting or enforcing, outside this Court, any liability described in the preceding sentence. Nothing in this Order or the Plan shall affect any recoupment rights of any Governmental Unit. Nothing in this Order, the Plan, or any related documents authorize the transfer or assignment of any governmental (i) license, (ii) permit, (iii) registration, (iv) authorization, (v) certification, or (vi) approval, or the discontinuation of any obligation thereunder, without compliance with all applicable legal requirements under nonbankruptcy laws, regulations, and rules (including police or regulatory law or environmental law, or otherwise).

29.   **FILING AND RECORDING**. This Order: (a) is and shall be effective as a determination that, on the Effective Date, all Claims and Interests existing prior to such date have been unconditionally released and terminated, except as otherwise provided in the Plan; and (b) is and shall be binding upon and shall govern the acts of all entities including, without limitation, all filing agents, filing officers, title agents, title companies, recorders of mortgages, recorders of deeds, registrars of deeds, administrative agencies, governmental departments, secretaries of state, federal, state, and local officials, and all other persons and entities who may be required, by operation of law, the duties of their office, or contract, to accept, file, register, or otherwise record or release any document or instrument. Each and every federal, state, and local government agency is hereby directed to accept any and all documents and instruments necessary, useful, or appropriate (including Uniform Commercial Code financing statements) to effectuate, implement, and consummate the transactions contemplated by the Plan and this Order without payment of any recording tax, stamp tax, transfer tax, or similar tax imposed by state or local law, including, but not limited to, the transfer of any Assets or Available Cash pursuant to the Plan.

30. **EXEMPTION FROM TRANSFER TAXES.** Pursuant to section 1146(a) of the Bankruptcy Code, the issuance, transfer, or exchange of notes or equity securities under or in connection with the Plan, the creation of any mortgage, deed of trust or other security interest, the making or assignment of any lease or sublease, or the making or delivery of any deed or other instrument of transfer under, in furtherance of, or in connection with the Plan, including any merger agreements or agreements of consolidation, deeds, bills of sale, or assignments executed in connection with any of the transactions contemplated under the Plan, shall not be subject to any stamp, real estate transfer, mortgage recording, or other similar tax. All transactions consummated by the Liquidating Debtors and approved by the Court on and after the Petition Dates through and including the Effective Date, including the transfers effectuated under the Plan, any sale by the Liquidating Debtors pursuant to section 363 of the Bankruptcy Code, and the assumption, assignment, and sale by the Liquidating Debtors of Executory Contracts and Unexpired Leases pursuant to section 365(a) of the Bankruptcy Code, shall be deemed to have been made under, in furtherance of, or in connection with the Plan and, thus, shall not be subject to any stamp, real estate transfer, mortgage recording, or other similar tax.

31. **EXCULPATION. RELEASES, AND INJUNCTION**. As of the Effective Date, except for the rights that remain in effect from and after the Effective Date to enforce the Plan, the Exculpation, Releases, and Injunction embodied in the Plan, including those contained in Article VIII.B (Releases by the Liquidating Debtors), Article VIII.C (Releases by Releasing Parties), Article VIII.D (Exculpation), and Article VIII.E (Injunction), of the Plan are hereby approved as set forth in the Plan.

32. **SETTLEMENT OF CLAIMS AND INTERESTS**. Pursuant to section 1123 of the Bankruptcy Code and Bankruptcy Rule 9019, and in consideration for the classification,

Distributions, Releases, and other benefits provided under the Plan, on the Effective Date, the provisions of the Plan (including, without limitation, the Releases, Exculpation, and Injunction) shall constitute a good-faith compromise and settlement of all controversies, Claims, and Interests resolved pursuant to the Plan. The parties are authorized and directed to take such other actions as may be necessary to effectuate the same, and perform all obligations contemplated thereby.

## 33.   RESOLUTION OF PLAN OBJECTION FILED BY EDEN FORT WORTH INDUSTRIAL, LLC ("EDEN").

(a)      Eden alleges that it is owed $177,721.00 for rent due and owing under the Eden Lease as of the Petition Date, which amount is unpaid ("Eden's Prepetition Rent Claim").  Prior to the Petition Date, Eden Fort Worth Industrial, LLC ("Eden") leased certain property located on Eden Drive, Fort Worth, Texas ("Premises") to Holdings pursuant to that certain Lease Agreement, dated June 1, 2020 (the "Eden Lease").  Since execution of the Eden Lease, Machine has occupied the Premises and continues to do so post-petition.

(b)      Eden (and any successor in interest or assignee of the Lease) shall have until thirty (30) days after the Effective Date to file any Proof of Claim based on a post-petition administrative expense claim for rent and other charges under the Lease ("Eden Post-Petition Rent Claim"); and to file any Proof of Claim based on rejection of the Lease ("Eden Rejection Claim").  Each such Proof of Claim shall be served on the Plan Administrator and counsel to the Prepetition Lenders. The Liquidating Debtors and/or Plan Administrator shall provide written notice upon surrendering the Premises to counsel for Eden via email (katherine.hopkins@kellyhart.com; nancy.ribaudo@kellyhart.com) and counsel to the Prepetition Lenders via email (robert.lapowsky@stevenslee.com) within two days of such surrender.

(c)         The Liquidating Debtors shall reserve $500,000 (the "Reserve") from the proceeds

received by the Liquidating Debtors from the sale contemplated by the *Debtors' Amended Motion*

*for an Order Pursuant to 11 U.S.C. Sections 105(a) and 363(b) and (f) of the Bankruptcy Code*

*(A) Authorizing, But Not Requiring, the Liquidating Debtors to Sell at Auction Certain Assets Free*

*and Clear of All Liens, Claims, Interests, and Encumbrances, (B) Approving Auction Procedures*

*Relating to Such Auction Sales, and (C) Granting Related Relief* (the "Amended Sale Motion")

[Docket No. 385] until the thirty-first (31st) day following the Effective Date (which shall also be

the date the Lease will be rejected).  If, on or before the thirtieth (30th) day following the Effective

Date, Eden files and serves as required above an Eden Post-Petition Rent Claim, the Reserve shall

be held by the Plan Administrator until such Post-Petition Rent Claim is Allowed or dis-Allowed.

Any Allowed amount of a Post-Petition Rent Claim shall be paid from the Reserve, with the

balance, if any, released for distribution in accordance with the terms of the Plan.  If, on or before

the thirtieth (30th) day following the Effective Date, Eden does not file and serve an Eden Post-

Petition Rent Claim, the Reserve shall be released for distribution pursuant to the terms of the Plan.

The Liquidating Debtors and the Prepetition Lenders reserve all rights to object to any Eden Post-

Petition Rent Claim as well as any Eden Rejection Claim.

(d)         Further, and notwithstanding anything to the contrary in the Plan, Disclosure

Statement or Confirmation Order, all of the rights of Eden to pursue any and all insurance claims

pertaining to the Premises, including the right to pursue a claim under any Liquidating Debtors'

insurance policy and rights to receive any and all proceeds therefrom, are expressly preserved.  For

avoidance of doubt, any injunction as set forth in Article VI(E) of the Plan, shall not apply with

respect to the rights of Eden to pursue such claims or proceeds under any insurance policy owned

by Liquidating Debtors pertaining to the Premises and the Liquidating Debtors in no way release any claims against any such insurance policy under the Plan.

(e)    Prior to the Petition Date, Liquidating Debtors assigned Eden all rights to proceeds under the insurance policy with Endurance American Insurance Company covering claims for damage or destruction to the Premises (the "EAIC Insurance Policy"), including any proceeds for Liquidating Debtors' claim for damages arising out of a wind/hail storm in April 2020 ("Hail Claim").  In exchange for and satisfaction of Eden's Prepetition Rent Claim, Liquidating Debtors (and following the Plan Effective Date, the Plan Administrator), agree and shall continue to pursue the Hail Claim, retain insurance counsel as necessary and as agreed by Eden to do so, and turn over any and all proceeds received on account of such Hail Claim to Eden.  Any engagement of insurance counsel by Liquidating Debtors and/or the Plan Administrator shall be on a contingency fee or other basis as agreed to by Eden providing that no charges for fees or expenses shall be paid by the Liquidating Debtors or their' estates.

34.    **TARRANT COUNTY**. Tarrant County asserts a prepetition claim for year 2022 *ad valorem* real and business personal property ad valorem taxes.  Notwithstanding any other provision in the Plan, the Plan Supplement or this Order, the liens that secure all amounts ultimately owed to Tarrant County shall remain attached to the real and business personal property or the proceeds thereof until Tarrant County receives payment in full.  Any *ad valorem* real property taxes owed will be paid in the ordinary course of business prior to the state law delinquency date. With regard to Tarrant County's claim for unpaid year 2022 *ad valorem* business personal property taxes, the proceeds of the sale of the Liquidating Debtors' tangible business personal property will not be disbursed to any creditor that is junior to Tarrant County unless funds in an amount sufficient to pay the base amount of *ad valorem* property taxes owed plus interest

that accrues at the state statutory rate pursuant to sections 506(b), 511 and 1129 of the Bankruptcy Code are held in a segregated account to which Tarrant County's liens attach as adequate protection of Tarrant County's liens. This amount is not dispositive of the amount owed to Tarrant County and has no effect on any parties' right to object to Tarrant County's claims.

35.    **BELL SETTLEMENT**. On May 3, 2022, the Court held a hearing in connection with the Debtors' *Motion Pursuant to Bankruptcy Rule 9019 for Entry of an Order Approving Compromise and Agreement* [Docket No. 251] (the "Bell Settlement Motion"). As a result of the Bell Settlement Motion and the hearing, the Court entered the *Order Approving Motion Pursuant to Bankruptcy Rule 9019 for Entry of an Order Approving Compromise and Agreement* [Docket No. 315] (the "Bell Settlement Order"). The Bell Settlement Order, among other things, resolved the Disputes (as defined in the Agreement attached to the Bell Settlement Order) between the Debtors and Bell Textron Inc. Notwithstanding any injunction, discharge, or other provision of the Plan or this Order to the contrary, the Lift Stay (as defined in the Bell Settlement Order) and the Agreement (as defined in the Bell Settlement Order) shall remain in effect and not be modified by the Plan or this Order.

36.    **SETOFF**. The rights of the Liquidating Debtors, Post- Effective Date Liquidating Debtors, and Plan Administrator to dispute any alleged right of recoupment or setoff is preserved in all respects.

37.    **RETENTION OF JURISDICTION**. Pursuant to sections 105(a) and 1142 of the Bankruptcy Code, notwithstanding confirmation of the Plan or occurrence of the Effective Date, this Court retains jurisdiction over these Cases and related matters, as legally permissible, to the full extent provided in the Plan.

38.    **REVERSAL**. Except as otherwise provided herein, if any provision of this Order is hereafter reversed, modified, vacated, or stayed by subsequent order of this Court or any other court, such reversal, stay, modification or vacatur shall not affect the validity or enforceability of any act, obligation, indebtedness, liability, priority, or lien incurred or undertaken by the Liquidating Debtors or Plan Administrator prior to the effective date of such reversal, stay, modification, or vacatur. Notwithstanding any reversal, stay, modification, or vacatur of this Order, any act or obligation incurred or undertaken pursuant to, or in reliance on, this Order prior to the effective date of such reversal, stay, modification, or vacatur shall be governed in all respects by the provisions of this Order and the Plan or any amendments or modifications thereto, and shall remain binding.

39.    **CONFLICTS**. The provisions of the Plan and this Order shall be construed in a manner consistent with each other so as to effect the purposes of each; *provided*, *however*, that in the event of any inconsistency among the Plan and the Disclosure Statement (or any exhibit or schedule to the Disclosure Statement), the provisions of the Plan shall govern. In the event of any inconsistency between the Plan and this Order, this Order shall govern. The provisions of this Order are integrated with each other and are non-severable and mutually dependent unless expressly stated by further order of the Court.

###END OF ORDER###

**Submitted by:**

**WINSTON & STRAWN LLP**

Katherine A. Preston (TX Bar No. 24088255)
800 Capitol St., Suite 2400
Houston, Texas 77002
Telephone: (713) 651-2600
Facsimile: (713) 651-2700
Email: kpreston@winston.com

and

Timothy W. Walsh (admitted *pro hac vice*)
James T. Bentley (admitted *pro hac vice*)
Emma Fleming (admitted *pro hac vice*)
200 Park Avenue
New York, New York 10166
Telephone: (212) 294-6700
Facsimile: (212) 294-4700
Email:  twwalsh@winston.com
Email: jbentley@winston.com
Email: efleming@winston.com

*Counsel for Debtors and Debtors-in-Possession*

**Exhibit A**

<u>Confirmed Plan</u>

**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE NORTHER DISTRICT OF TEXAS
FORT WORTH DIVISION**

| | |
|---|---|
| In re: | ) Chapter 11 |
| | ) |
| | ) |
| **FORE MACHINE, LLC, *et al.*[1]** | ) Case No. 22-40487 |
| | ) |
| **Debtors** | ) |
| | ) (Jointly Administered) |
| | ) |

**FIRST AMENDED JOINT CHAPTER 11 PLAN OF LIQUIDATION FOR DEBTORS FORE
AERO HOLDINGS, LLC, FORE MACHINE, LLC AND
FORE CAPITAL HOLDING, LLC**

---

THIS CHAPTER 11 PLAN IS BEING SOLICITED FOR ACCEPTANCE OR REJECTION IN
ACCORDANCE WITH BANKRUPTCY CODE SECTION 1125 AND WITHIN THE MEANING OF
BANKRUPTCY CODE SECTION 1126.  THIS CHAPTER 11 PLAN WILL BE SUBMITTED TO THE
BANKRUPTCY COURT FOR APPROVAL FOLLOWING SOLICITATION AND THE DEBTORS'
FILING FOR CHAPTER 11 BANKRUPTCY.

---

Katherine A. Preston (State Bar No. 24088255)   Timothy W. Walsh (admitted *pro hac vice*)
**WINSTON & STRAWN LLP**                          James T. Bentley (admitted *pro hac vice*)
800 Capitol Street, Suite 2400                    Emma Fleming (admitted *pro hac vice*)
Houston, Texas 77002                              **WINSTON & STRAWN LLP**
T: (713) 651-2600                                 200 Park Avenue
F: (713) 651-2700                                 New York, NY 10166-4193
kpreston@winston.com                              T: (212) 294-6700
                                                  F: (212) 294-4700
                                                  twwalsh@winston.com
                                                  jbentley@winston.com
                                                  efleming@winston.com

*Counsel to the Debtors and Debtors in Possession*

Dated: May 7, 2022

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax
identification number, are:  Fore Machine, LLC (1850), Fore Aero Holdings, LLC (2671), Fore Capital
Holding, LLC (2920), and Aero Components, LLC (8616).  The service address for Fore Aero Holdings,
LLC, Fore Machine, LLC, and Fore Capital Holding, LLC is:  5933 Eden Drive, Haltom City, Texas
76117.  The service address for Aero Components, LLC is 5124 Kaltenbrun Rd, Fort Worth, Texas
76119.

**TABLE OF CONTENTS**

INTRODUCTION...................................................................................................................1

**ARTICLE I DEFINED TERMS, RULES OF INTERPRETATION,  COMPUTATION OF TIME, GOVERNING LAW, AND OTHER REFERENCES** ...................................................................**5**
A.    Defined Terms.........................................................................................5
B.    Rules of Interpretation............................................................................15
C.    Computation of Time .............................................................................15
D.    Governing Law........................................................................................15
E.    Reference to Monetary Figures ..............................................................15
F.    Controlling Document ............................................................................16

**ARTICLE II ADMINISTRATIVE AND PRIORITY TAX CLAIMS**........................................**16**
A.    Administrative Claims.............................................................................16
B.    DIP Claims ..............................................................................................16
C.    Professional Claims .................................................................................17
D.    Priority Tax Claims .................................................................................17

**ARTICLE III CLASSIFICATION, TREATMENT, AND VOTING OF CLAIMS AND INTERESTS**......**17**
A.    Classification of Claims and Interests .....................................................17
B.    Identification of Classes: ........................................................................17
C.    Treatment of Classes of Claims and Interests .........................................18
D.    Special Provision Governing Unimpaired Claims....................................21
E.    Elimination of Vacant Classes ................................................................21
F.    Voting Classes; Presumed Acceptance by Non-Voting Classes ..............21
G.    Subordinated Claims ...............................................................................21
H.    Confirmation Pursuant to Section 1129(b) of the Bankruptcy Code........21

**ARTICLE IV PROVISIONS FOR IMPLEMENTATION OF THE LIQUIDATING PLAN**.......................**21**
A.    General Settlement of Claims and Interests .............................................21
B.    Sources of Consideration for Plan Distributions .....................................22
C.    Professional Fees and Expenses ..............................................................22
D.    Plan Administrator ..................................................................................22
E.    Corporate Existence ................................................................................23
F.    Release of Liens ......................................................................................23
G.    Cancellation of Notes, Instruments, Certificates, and Other Documents ....24
H.    Section 1146(a) Exemption.....................................................................24
I.    Effectuating Documents; Further Transactions.........................................24
J.    Preservation of Causes of Action ............................................................24
K.    Closing of Holdings' Case ......................................................................25

**ARTICLE V TREATMENT OF EXECUTORY CONTRACTS AND UNEXPIRED LEASES**...................**25**
A.    Rejection of Executory Contracts and Unexpired Leases .........................25
B.    Rejection Claims .....................................................................................25
C.    Indemnification .......................................................................................26
D.    Modifications, Amendments, Supplements, Restatements, or Other Agreements ....26
E.    Insurance Policies....................................................................................26
F.    Reservation of Rights ..............................................................................26

**ARTICLE VI PROVISIONS GOVERNING DISTRIBUTIONS**..........................................**27**
A.    Distributions on Account of Claims and Interests Allowed as of the Effective Date........27
B.    Distributions on Account of Claims Allowed After the Effective Date .....................27
C.    Special Rules for Distributions to Holders of Disputed Claims ...............27

D.   Delivery of Distributions.................................................................................27
E.   Claims Paid or Payable by Third Parties.........................................................29
F.   Allocation Between Principal and Accrued Interest.........................................30

**ARTICLE VII PROCEDURES FOR RESOLVING DISPUTED CLAIMS.......................30**
A.   Disputed Claims Process...................................................................................30
B.   Objections to Claims.........................................................................................30
C.   Estimation of Claims.........................................................................................31
D.   No Distributions Pending Allowance................................................................31
E.   Resolution of Claims.........................................................................................31
F.   Amendments to Claims......................................................................................31
G.   Adjustment to Claims Without Objection.........................................................31
H.   No Interest.........................................................................................................32
I.   Single Satisfaction of Claims............................................................................32
J.   Disallowance of Claims and Interests...............................................................32

**ARTICLE VIII EFFECT OF CONFIRMATION OF THE LIQUIDATING PLAN......................32**
A.   Binding Effect....................................................................................................32
B.   Releases by the Liquidating Debtors.................................................................33
C.   Releases by Holders of Claims and Interests....................................................33
D.   Exculpation........................................................................................................34
E.   Injunction..........................................................................................................35
F.   Protection Against Discriminatory Treatment..................................................35
G.   Recoupment.......................................................................................................35
H.   Reimbursement or Contribution.......................................................................35

**ARTICLE IX CONDITIONS PRECEDENT TO THE EFFECTIVE DATE.......................36**
A.   Conditions Precedent to the Effective Date......................................................36
B.   Waiver of Conditions Precedent.......................................................................37
C.   Effect of Non-Occurrence of Conditions to Consummation.............................37

**ARTICLE X MODIFICATION, REVOCATION, OR WITHDRAWAL OF THE LIQUIDATING PLAN
.......................................................................................................................37**
A.   Modification of Liquidating Plan......................................................................37
B.   Effect of Confirmation on Modifications..........................................................38
C.   Effect of Confirmation on Modifications..........................................................38
D.   Withdrawal of Plan...........................................................................................38

**ARTICLE XI RETENTION OF JURISDICTION .........................................................38**

**ARTICLE XII MISCELLANEOUS PROVISIONS...........................................................40**
A.   Immediate Binding Effect..................................................................................40
B.   Additional Documents.......................................................................................40
C.   Payment of Statutory Fees................................................................................40
D.   Reservation of Rights........................................................................................40
E.   Successors and Assigns.....................................................................................40
F.   Service of Documents........................................................................................40
G.   Term of Injunctions or Stays............................................................................41
H.   Entire Agreement..............................................................................................41
I.   Liquidating Plan Supplement Exhibits.............................................................42
J.   Non-Severability...............................................................................................42
K.   Votes Solicited in Good Faith...........................................................................42
L.   Closing of Liquidating Debtors' Chapter 11 Cases..........................................42
M.   Dissolution of Creditors' Committee................................................................42
N.   Waiver or Estoppel............................................................................................42

## INTRODUCTION

Fore Aero Holdings, LLC ("Holdings"), Fore Machine, LLC ("Fore Machine"), and Fore Capital Holding, LLC ("Fore Capital" and together with Holdings and Fore Machine, collectively, the "Liquidating Debtors" and each a "Liquidating Debtor"), hereby propose the Chapter 11 Plan of Liquidation for Fore Machine, Holdings, and Fore Capital (the "Liquidating Plan"). Capitalized terms used in the Liquidating Plan shall have the meanings set forth in Article I.A of the Liquidating Plan.

Although proposed jointly for administrative purposes, the Liquidating Plan constitutes a separate liquidating plan for each of Holdings, Fore Machine, and Fore Capital, for the resolution of outstanding Claims and Interests pursuant to the Bankruptcy Code. **Each Liquidating Debtor is a proponent of the Liquidating Plan within the meaning of section 1129 of the Bankruptcy Code. The classifications of Claims and Interests set forth in Article III of the Liquidating Plan shall be deemed to apply separately with respect to each liquidating plan proposed by each Liquidating Debtor, as applicable. The Liquidating Plan does not contemplate substantive consolidation of any of the Debtors.**

Reference is made to the Disclosure Statement for a discussion of the Liquidating Debtors' history, business, properties and operations, projections, risk factors, a summary and analysis of this Liquidating Plan, and certain related matters.

**ALL HOLDERS OF CLAIMS AND INTERESTS ARE ENCOURAGED TO READ THE LIQUIDATING PLAN AND THE DISCLOSURE STATEMENT IN THEIR ENTIRETY, PARTICULARLY HOLDERS OF CLAIMS AND INTERESTS ENTITLED TO VOTE TO ACCEPT OR REJECT THE PLAN**.

## ARTICLE I

### DEFINED TERMS, RULES OF INTERPRETATION, COMPUTATION OF TIME, GOVERNING LAW, AND OTHER REFERENCES

### A.    Defined Terms

1.    "*Administrative Claim*" means a Claim for costs and expenses of administration of the Liquidating Debtors' Chapter 11 Cases pursuant to sections 503(b), 507(a)(2), 507(b), or 1114(e)(2) of the Bankruptcy Code, including: (a) the actual and necessary costs and expenses incurred on or after the Petition Date until and including the Effective Date of preserving the Estates and operating or liquidating the Liquidating Debtors' businesses; (b) Allowed Professional Claims; and (c) all fees and charges assessed against the Estates pursuant to section 1930 of chapter 123 of title 28 of the United States Code.

2.    "*Administrative Claims Bar Date*" means the date by which parties seeking to assert Administrative Claims against the Liquidating Debtors must file proof of such Administrative Claims, which is (a) April 29, 2022, at 5:00 p.m. (prevailing Central Time) for all Administrative Claims against the Liquidating Debtors arising on or prior to the Petition Date, (b) for all claims arising after the Petition Date, the 15th day of the month following the month in which the claim arose.

3.    "*Adjusted Prepetition Lender Claims*" has the meaning set forth in Article III, Section C part 3 hereof.

4.      "*Aero*" means Aero Components, LLC, a Delaware limited liability company, and debtor and debtor in possession, together with its successors and assigns.

5.      "*Affiliate*" has the meaning set forth in Rule 12b-2 of the General Rules and Regulations under the Securities Exchange Act of 1934, as amended.

6.      "*Allowed*" means with respect to any Claim, except as otherwise provided in the Liquidating Plan: (a) a Claim that is evidenced by a Proof of Claim Filed by the Claims Bar Date (or for which Claim under the Liquidating Plan, the Bankruptcy Code, or pursuant to a Final Order a Proof of Claim is not or shall not be required to be Filed); or (b) a Claim Allowed pursuant to the Plan or a Final Order of the Bankruptcy Court; provided, that with respect to a Claim described in clause (a) above, such Claim shall be considered Allowed only if and to the extent that, with respect to such Claim, no objection to the allowance thereof has been interposed within the applicable period of time fixed by the Plan, the Bankruptcy Code, the Bankruptcy Rules, or the Bankruptcy Court, or such an objection is so interposed and the Claim shall have been Allowed by a Final Order.  Except as otherwise specified in the Liquidating Plan or any Final Order, and except for any Claim that is Secured by property of a value in excess of the principal amount of such Claims, the amount of an Allowed Claim shall not include interest on such Claim from and after the Petition Date.  For purposes of determining the amount of an Allowed Claim, there shall be deducted therefrom an amount equal to the amount of any Claim that the Debtors may hold against the holder thereof, to the extent such Claim may be offset, recouped, or otherwise reduced under applicable law.  For the avoidance of doubt: (x) a Proof of Claim Filed after the Claims Bar Date shall not be Allowed for any purposes whatsoever absent entry of a Final Order allowing such late-filed Claim; and (y) the Debtors may affirmatively determine to deem Unimpaired Claims Allowed to the same extent such Claims would be allowed under applicable non-bankruptcy law.  "Allow" and "Allowing" shall have correlative meanings.

7.      "*Available Cash*" means (a) all Cash of a Liquidating Debtor realized from its business operations, the Liquidation Proceeds, the interest earned on its invested funds, recoveries from Causes of Action or from any other source or otherwise less (b) the amount of Cash (i) necessary to pay all fees payable under section 1930 of chapter 123 of title 28 of the United States Code and all holders of Allowed Administrative Expense Claims, Priority Tax Claims, Other Priority Claims, Other Secured Claims, against such Liquidating Debtor in accordance with the Liquidating Plan, and (ii) an amount equal to $50,000 to be reserved from the Liquidation Proceeds to fund the reasonable and necessary projected costs to carry out the provisions of the Liquidating Plan with respect to the Liquidating Debtors on and after the Effective Date, including to fund the wind-down of the Liquidating Debtors' estates. To the extent any portion of the reserve is not used to pay the costs and fees described above, such excess shall be added back to the calculation of Available Cash.

8.      "*Bankruptcy Code*" means title 11 of the United States Code, 11 U.S.C. §§ 101–1532.

9.      "*Bankruptcy Court*" means the United States Bankruptcy Court for the Northern District of Texas, Fort Worth Division, or such other court having jurisdiction over the Liquidating Debtors' Chapter 11 Cases.

10.     "*Bankruptcy Rules*" means the Federal Rules of Bankruptcy Procedure as promulgated by the United States Supreme Court under section 2075 of title 28 of the United States Code, 28 U.S.C. § 2075, as applicable to the Liquidating Debtors' Chapter 11 Cases and the general, local, and chambers rules of the Bankruptcy Court.

11.    "*Bar Date*" means, as applicable, the Administrative Claims Bar Date, the Claims Bar Date, the Governmental Bar Date, and any other date or dates established or to be established by an order of the Court by which Proofs of Claim must be Filed.

12.    "*Business Day*" means any day, other than a Saturday, Sunday, or a legal holiday, as defined in Bankruptcy Rule 9006(a).

13.    RESERVED

14.    "*Cash*" means the legal tender of the United States of America or the equivalent thereof, including bank deposits and checks.

15.    "*Causes of Action*" means any claims, interests, damages, remedies, causes of action, demands, rights, actions, suits, obligations, liabilities, accounts, defenses, offsets, powers, privileges, licenses, liens, indemnities, guaranties, and franchises of any kind or character whatsoever, whether known or unknown, foreseen or unforeseen, existing or hereinafter arising, contingent or non-contingent, liquidated or unliquidated, secured or unsecured, assertable, directly or derivatively, matured or unmatured, suspected or unsuspected, in contract, tort, law, equity, or otherwise.  Causes of Action also include: (a) all rights of setoff, counterclaim, or recoupment and claims under contracts or for breaches of duties imposed by law; (b) the right to object to or otherwise contest Claims or Interests; (c) claims pursuant to sections 362, 510, 542, 543, 544 through 550, or 553 of the Bankruptcy Code; and (d) such claims and defenses as fraud, mistake, duress, and usury, and any other defenses set forth in section 558 of the Bankruptcy Code.

16.    "*Certificate*" means any instrument evidencing a Claim or an Interest.

17.    "*Chapter 11 Cases*" means the procedurally consolidated chapter 11 cases pending for the Liquidating Debtors in the Bankruptcy Court.

18.    "*Claim*" means any claim, as defined in section 101(5) of the Bankruptcy Code, against any of the Liquidating Debtors.

19.    "*Claims Bar Date*" means (a) as to any Proof of Claim filed by the holder of the Claim, April 29, 2022, at 5:00 p.m. (prevailing Central Time) as established by the Bankruptcy Court, (b) as to any Claim filed by any Liquidating Debtor on behalf of the holder of a Claim pursuant to Bankruptcy Rule 3004, May 29, 2022, at 5:00 p.m. (prevailing Central Time), and (c) the Governmental Bar Date.

20.    "*Claims Register*" means the official register of Claims against and Interests in the Liquidating Debtors maintained by the Liquidating Debtors.

21.    "*Class*" means a category of holders of Claims or Interests under section 1122(a) of the Bankruptcy Code.

22.    "*Confirmation*" means entry of the Confirmation Order on the docket of the Liquidating Debtors' Chapter 11 Cases.

23.    "*Confirmation Date*" means the date on which the Bankruptcy Court enters the Confirmation Order on the docket of the Liquidating Debtors' Chapter 11 Cases within the meaning of Bankruptcy Rules 5003 and 9021.

24.     "*Confirmation Hearing*" means the hearing(s) before the Bankruptcy Court under section 1128 of the Bankruptcy Code at which the Liquidating Debtors seek entry of the Confirmation Order.

25.     "*Confirmation Order*" means the order of the Bankruptcy Court confirming the Liquidating Plan under section 1129 of the Bankruptcy Code and approving the Disclosure Statement, which order shall be in form and substance acceptable to the Liquidating Debtors and, as such order affects the DIP Lender or Prepetition Lenders, the DIP Lenders and the Prepetition Lenders, as applicable.

26.     "*Consenting Stakeholders*" means, collectively, Newspring and Southfield in their capacities as (a) the holders of approximately 14.9% of the outstanding membership interests in Holdings, (b) as lenders under the Note Purchase Agreement, and (c) as DIP Lenders under the DIP Credit Agreement.

27.     "*Consenting Stakeholders Indemnifications*" means the indemnification provided to the Consenting Stakeholders under Section 10.10 of the Note Purchase Agreement.

28.     "*Consummation*" means the occurrence of the Effective Date.

29.     "*Creditor*" has the meaning set forth in section 101(10) of the Bankruptcy Code.

30.     "*Creditors' Committee*" means the Official Committee of Unsecured Creditors appointed by the U.S. Trustee in the Fore Machine Liquidating Debtor.

31.     "*Creditors' Committee Professionals*" means Canter Hangey, LLP and CR3 Partners, LLC.

32.     "*Cure*" means a Claim (unless waived or modified by the applicable counterparty) based upon a Liquidating Debtors' defaults under an Executory Contract or an Unexpired Lease assumed by such Liquidating Debtor under section 365 of the Bankruptcy Code, other than a default that is not required to be cured pursuant to section 365(b)(2) of the Bankruptcy Code.

33.     "*D&O Policies*" means all insurance policies (including any "tail policy") maintained by the Debtors as of the Petition Date for liabilities against any of the Debtors' current or former directors, managers, and officers.

34.     "*Debtor Affiliates*" means the Liquidating Debtors other than Fore Aero Holdings, LLC.

35.     "*Debtor Professionals*" means Winston & Strawn, LLP, and Alvarez & Marsal North America, LLC.

36.     "*DIP Agent*" means Newspring, in its capacity as administrative agent under the DIP Loan Agreement.

37.     "*DIP Claims*" means any Claim held by the DIP Lenders or the DIP Agent arising under or related to the DIP Loan Agreement or the DIP Order, including any and all fees, expenses, interest, and accrued but unpaid interest, expenses, and fees arising under the DIP Facility.

38.     "*DIP Facility*" means that certain $2.5 million multiple draw non-amortizing senior secured term loan debtor-in-possession credit facility under the DIP Loan Agreement.

39.     "*DIP Lenders*" means Newspring and Southfield, as lenders party to the DIP Loan Agreement.

40.     "*DIP Loan Agreement*" means that certain debtor-in-possession credit agreement by and among the Debtors, the DIP Agent, and the DIP Lenders as approved by the DIP Order.

41.     "*DIP Order*" means, collectively, the interim and final orders entered by the Bankruptcy Court authorizing the Debtors to enter into the DIP Loan Agreement and access the DIP Facility, which shall be in form and substance acceptable to the DIP Lenders, and the Debtors.

42.     "*Disclosure Statement*" means the disclosure statement for the Liquidating Plan, including all exhibits and schedules thereto, to be approved by the Confirmation Order.

43.     "*Disputed*" means, as to a Claim or an Interest, a Claim or an Interest: (a) that is not Allowed; (b) that is not disallowed under the Liquidating Plan, the Bankruptcy Code, or a Final Order, as applicable; and (c) with respect to which a party in interest has filed a Proof of Claim or otherwise made a written request to a Liquidating Debtor for payment, without any further notice to or action, order, or approval of the Bankruptcy Court.

44.     "*Distribution Date*" means, except as otherwise set forth herein, the date or dates determined by the Liquidating Debtors, on or after the Effective Date, upon which the Liquidating Debtors shall make distributions to holders of Allowed Claims entitled to receive distributions under the Liquidating Plan.

45.     "*Effective Date*" means the date that is the first Business Day after the Confirmation Date on which all conditions precedent to the occurrence of the Effective Date set forth in Article IX.A of the Liquidating Plan have been satisfied or waived in accordance with Article IX.B of the Liquidating Plan.

46.     "*Entity*" has the meaning set forth in section 101(15) of the Bankruptcy Code.

47.     "*Equity Interests*" means, collectively, the membership interests held by the members of the Liquidating Debtors.

48.     "*Estates*" means the Estates of the Liquidating Debtors created under sections 301 and 541 of the Bankruptcy Code upon the commencement of the applicable Liquidating Debtor's Chapter 11 Case.

49.     "*Exculpated Party*" means, collectively, and in each case in its capacity as such: (a) the Liquidating Debtors; (b) the Reorganized Debtor; (c) any official committees appointed in the Liquidating Debtors' Chapter 11 Cases and each of their respective members; (d) Newspring; (e) Southfield; (f) the Sponsor; (g) P4G; and (h) with respect to each of the foregoing in clauses (a) through (h), such Entity and its current and former Affiliates, and such Entities' and their current and former Affiliates' current and former subsidiaries, officers, directors, managers, principals, members, employees, agents, advisory board members, financial advisors, partners, attorneys, accountants, investment bankers, consultants, representatives, and other professionals, each in their capacity as such

50.     "*Executory Contract*" means a contract or lease to which one or more of the Liquidating Debtors is a party that is subject to assumption or rejection under section 365 of the Bankruptcy Code.

51.     "*File*" or "*Filed*" means file or filed with the Bankruptcy Court or its authorized designee in the Liquidating Debtors' Chapter 11 Cases, or, with respect to the filing of a Proof of Claim or Proof of Interest, the Claims Agent.

52.     "*Final Decree*" means the decree contemplated under Bankruptcy Rule 3022.

53.     "*Final Order*" means, as applicable, an order or judgment of the Bankruptcy Court or other court of competent jurisdiction with respect to the relevant subject matter that has not been reversed, stayed, modified, or amended, and as to which the time to appeal or seek certiorari has expired and no appeal or petition for certiorari has been timely taken, or as to which any appeal that has been taken or any petition for certiorari that has been or may be filed has been resolved by the highest court to which the order or judgment could be appealed or from which certiorari could be sought or the new trial, reargument, or rehearing shall have been denied, resulted in no modification of such order, or has otherwise been dismissed with prejudice.

54.     "*Fore-Aero Debtors*" means the Reorganizing Debtor and the Liquidating Debtors.

55.     "*Fore Capital*" means Fore Capital Holding, LLC, a Texas limited liability company, a debtor and debtor in possession.

56.     "*Fore Machine*" means Fore Machine, LLC, a Delaware limited liability company, a debtor and debtor in possession.

57.     "*Fore Machine Auction*" means the auction or auctions of substantially all of the assets of Fore Machine by the Liquidator.

58.     "*General Unsecured Claim*" means any Claim other than an Other Priority Claim, a Prepetition Lender Claim that is a Secured Claim, a DIP Facility Claim, or a Section 510(b) Claim.

59.     "*Governmental Unit*" has the meaning set forth in section 101(27) of the Bankruptcy Code.

60.     "*Holdings*" means Fore Aero Holdings, LLC, a Delaware limited liability company, a debtor and debtor in possession.

61.     "*Impaired*" means, with respect to any Class of Claims or Interests, a Claim or an Interest that is not Unimpaired.

62.     "*Impaired Non-Voting Status Notice*" means either of the forms of notice attached as Exhibit 3 and Exhibit 4 to the *Order (I) Scheduling a Combined Disclosure Statement Approval and Plan Confirmation Hearing; (II) Approving the Solicitation Procedures and Dates, Deadlines, and Notices Related Thereto; (III) Waiving the Requirement of Filing Statements of Financial Affairs and Schedules of Assets And Liabilities, and (IV) Granting Related Relief* [Docket No. 123], which will be sent to holder of Claims and Interests not entitled to vote under the Plan.

63.     "*Indemnification Provisions*" means each of the Liquidating Debtors' indemnification provisions currently in place whether in the Liquidating Debtors' bylaws, limited liability company agreements, other formation documents, board resolutions, or contracts for the current and former directors, officers, managers, employees, attorneys, other professionals, and agents of the Liquidating Debtors and such current and former directors', officers', and managers' respective Affiliates.

64.    "*Intercompany Contract*" means a contract between or among two or more Liquidating Debtors or a contract between or among one or more Liquidating Debtors and one or more of its or their Affiliates.

65.    "*Interest*" means any membership interest in a Liquidating Debtor and any other rights, options, redemption rights, repurchase rights, convertible, exercisable or exchangeable securities or other agreements, arrangements or commitments of any character relating to, or whose value is related to, any such interest or other ownership interest in a Liquidating Debtor.

66.    "*Initial Distribution*" means the first distribution that either the Liquidating Debtors or the Plan Administrator, as applicable, makes to holders of Allowed Claims.

67.    "*Initial Distribution Date*" means the date selected by the Liquidating Debtors on or as soon as reasonably practicable after the Effective Date.

68.    "*Intercompany Claim*" means a Claim against any Liquidating Debtor by an Affiliate of such Liquidating Debtor, which Affiliate may be another Liquidating Debtor.

69.    "*Lien*" has the meaning set forth in section 101(37) of the Bankruptcy Code.

70.    "*Liquidating Debtors*" means Fore Machine, Holdings, and Fore Capital.

71.    "*Liquidating Plan*" means this chapter 11 plan, including the Plan Supplement and all exhibits, supplements, appendices, and schedules, which plan shall be in form and substance acceptable to the Liquidating Debtors.

72.    "*Liquidation Proceeds*" means the proceeds of the liquidation of the Liquidating Debtors, including, without limitation, proceeds from the Fore Machine Auction.

73.    "*Liquidator*" means the liquidator retained by the Liquidating Debtors to liquidate their assets.

74.    "*Newspring*" means Newspring Mezzanine Capital III, L.P., a Delaware limited partnership.

75.    "*Note Purchase Agreement*" means the Senior Note Purchase Agreement, dated February 23, 2017, among the Fore-Aero Debtors, the Prepetition Lenders, and Newspring, in its capacity as administrative agent, as the same has been amended, restated, modified, supplemented, or replaced from time to time and including all ancillary and related documents.

76.    "*Other Priority Claim*" means any Claim other than an Administrative Claim or a Priority Tax Claim entitled to priority in right of payment under section 507(a) of the Bankruptcy Code.

77.    "*Other Secured Claim*" means any Secured Claim, including any Secured Tax Claim, other than the following: (a) a Prepetition Lender Claim; or (b) the DIP Claims.

78.  "*P4G*" means P4G Capital Management, LLC, and its current and former Affiliates and their current and former Affiliates' current and former directors, managers, officers, equity holders (regardless of whether such interests are held directly or indirectly), predecessors, successors, and assigns, subsidiaries, and each of their respective current and former equity holders, officers, directors, managers, principals, members, employees, agents, advisory board members, financial advisors, partners, attorneys, accountants, investment bankers, consultants, representatives, and other professionals.

79.  "*Person*" has the meaning set forth in section 101(41) of the Bankruptcy Code.

80.  "*Petition Date*" means the date on which the Liquidating Debtors' Chapter 11 Cases were commenced.

81.  "*Plans*" means, collectively, the Liquidating Plan and the Reorganizing Plan.

82.  "*Plan Administrator*" means Stretto.

83.  "*Prepetition Agent*" means Newspring, in its capacity as Administrative Agent under the Note Purchase Agreement.

84.  "*Prepetition Lenders*" means Newspring and Southfield.

85.  "*Prepetition Lender Claim*" means any Claim arising under, derived from, or based upon the Note Purchase Agreement.

86.  "*Plan Supplement*" means any compilation of documents and forms of documents, agreements, schedules, and exhibits to the Liquidating Plan.

87.  "*Priority Tax Claim*" means any Claim of a Governmental Unit of the kind specified in section 507(a)(8) of the Bankruptcy Code.

88.  "*Pro Rata*" means the proportion that an Allowed Claim in a particular Class bears to the aggregate amount of Allowed Claims in that Class.

89.  "*Professional*" means an Entity: (a) employed in the Liquidating Debtors' Chapter 11 Cases pursuant to a Final Order in accordance with sections 327 and 1103 of the Bankruptcy Code and to be compensated for services rendered priorto or on the Effective Date pursuant to sections 327, 328, 329, 330, and 331 of the Bankruptcy Code; or (b) for which compensation and reimbursement has been Allowed by the Bankruptcy Court pursuant to section 503(b)(4) ofthe Bankruptcy Code.

90.  "*Professional Claim*" means a Claim by a Professional seeking an award by the Bankruptcy Court of compensation for services rendered or reimbursement of expenses incurred through and including the Confirmation Date under sections 330, 331, 503(b)(2), 503(b)(3), 503(b)(4), or 503(b)(5) of the Bankruptcy Code.

91.  "*Professional Fee Amount*" means the aggregate amount of Professional Claims and other unpaid fees and expenses Professionals estimate they have incurred or will incur in rendering services to the Liquidating Debtors prior to and as of the Confirmation Date, which estimates Professionals shall deliver to Aero as set forth in <u>Article II.C</u> of the Liquidating Plan.

92.     "*Proof of Claim*" means a proof of Claim filed against any of the Liquidating Debtors in their Chapter 11 Case.

93.     "*Reinstate*," "*Reinstated*," or "*Reinstatement*" means with respect to Claims and Interests, that the Claim or Interest shall be rendered unimpaired in accordance with section 1124 of the Bankruptcy Code.

94.     "*Released Party*" means collectively: (a) Newspring; (b) Southfield; (c) Aero; (d) Holdings; (e) Fore Machine; (f) Fore Capital; (g) the holders of Holdings' Interests; (h) the Sponsor; (i) P4G; and (j) with respect to the Liquidating Debtors, and each of the foregoing entities in clauses (a) through (i), such Entity and its current and former Affiliates, and such Entities' current and former Affiliates' current and former directors, managers, officers, equity holders (regardless of whether such interests are held directly or indirectly), predecessors, successors, and assigns, subsidiaries, and each of their respective current and former equity holders, officers, directors, managers, principals, members, employees, agents, advisory board members, financial advisors, partners, attorneys, accountants, investment bankers, consultants, representatives, and other professionals.

95.     "*Releasing Parties*" means, collectively, (a) Newspring; (b) Southfield; (c) the Exit Lenders; (d) Holdings; (e) Fore Machine; (f) Fore Capital; (g) P4G; (h) the holders of Holdings' Interests; (i) the Sponsor; (j) all holders of Claims or Interests who vote to accept the Liquidating Plan or are deemed to have accepted the Liquidating Plan; (k) all holders of Claims or Interests who abstain from voting on the Liquidating Plan and who do not opt out of the releases provided by the Liquidating Plan; (l) all holders of Claims or Interests who timely vote to reject the Liquidating Plan and who, in their returned ballots, do not opt out of the releases provided by the Liquidating Plan; (m) all holders of Claims or Interests who receive an Impaired Non-Voting Status Notice and who do not return such notice on or before the deadline stated in the notice indicating that they are opting out of the releases provided in such Impaired Non-Voting Status Notice; (n) all holders of Reorganized Debtor Interests; (o) with respect to each Liquidating Debtor, and each of the foregoing entities in clauses (a) through (n), such Entity and its current and former Affiliates, and such Entities' and their current and former Affiliates' current and former directors, managers, officers, equity holders (regardless of whether such interests are held directly or indirectly), predecessors, successors, and assigns, subsidiaries, and each of their respective current and former equity holders, officers, directors, managers, principals, members, employees, agents, advisory board members, financial advisors, partners, attorneys, accountants, investment bankers, consultants, representatives, and other professionals, each in their capacity as such collectively; and (p) all holders of Claims and Interests, solely with respect to releases of all holders of Holdings Interests, and their current and former Affiliates, and such Entities' and their Affiliates' current and former equity holders (regardless of whether such interests are held directly or indirectly), predecessors, successors, and assigns, subsidiaries, and their current and former officers, directors, managers, principals, members, employees, agents, advisory board members, financial advisors, partners, attorneys, accountants, investment bankers, consultants, representatives, and other professionals, each in their capacity as such. "*Reorganized Debtor*" means Aero, or any successor or assign thereto, by merger, consolidation, or otherwise, on and after the Effective Date.

96.     "*Reorganizing Disclosure Statement*" means the disclosure statement for the Reorganized Debtor.

97.     "*Reorganizing Plan*" means the plan of reorganization for the Reorganized Debtor filed on the Petition Date, subject to such modifications permitted thereunder.

98. "*Reorganizing Plan Effective Date*" means the date on which all conditions to the effective date of the Reorganizing Plan have occurred and the Reorganizing Plan has become effective.

99. "*Restructuring Transactions*" means the restructuring and recapitalization transactions described in <u>Article IV.O</u> of the Reorganizing Plan.

100. "*RSA*" means that certain Restructuring Support, dated as of March 7, 2022, by and among Aero, Holdings, Fore Machine, Fore Capital, and the Consenting Stakeholders, including all exhibits and attachments thereto.

101. "*Sale Proceeds*" means all proceeds from the Sale Transaction.

102. "*Sale Order*" means that certain order entered by the Bankruptcy Court authorizing and approving the sale of the Liquidating Debtors' assets free and clear of all liens, claims, encumbrances, and interests; and granting related relief.

103. "*Sale Transaction*" means the sale of substantially all of the Liquidating Debtors' assets pursuant to the Sale Order, including the Fore Machine Auction.

104. "*Section 510(b) Claim*" means any Claim arising from: (a) rescission of a purchase or sale of a security of the Liquidating Debtors or an Affiliate of the Liquidating Debtors; (b) purchase or sale of such a security; or (c) reimbursement or contribution allowed under section 502 of the Bankruptcy Code on account of such a Claim.

105. "*Secured Claim*" means a Claim: (a) secured by a Lien on collateral to the extent of the value of such collateral, as determined in accordance with section 506(a) of the Bankruptcy Code or (b) subject to a valid right of setoff pursuant to section 553 of the Bankruptcy Code.

106. "*Secured Tax Claim*" means any Secured Claim that, absent its secured status, would be entitled to priority in right of payment under section 507(a)(8) of the Bankruptcy Code (determined irrespective of time limitations), including any related Secured Claim for penalties.

107. "*Southfield*" means Southfield Mezzanine Capital, L.P., a Delaware limited partnership, and its successors and assigns.

108. "*Sponsor*" means Newspring and Southfield or an entity owned by Newspring and Southfield.

109. "*Unclaimed Distribution*" means any distribution under the Liquidating Plan on account of an Allowed Claim to a holder that has not: (a) accepted a particular distribution or, in the case of distributions made by check, negotiated such check; (b) given notice to the Liquidating Debtors of an intent to accept a particular distribution; (c) responded to the Liquidating Debtors' requests for information necessary to facilitate a particular distribution; or (d) taken any other action necessary to facilitate such distribution.

110. "*Unexpired Lease*" means a lease of nonresidential real property to which one or more of the Liquidating Debtors is a party that is subject to assumption or rejection under section 365 of the Bankruptcy Code.

*111.* "*Unimpaired*" means a Class of Claims or Interests that is unimpaired within the meaning of section 1124 of the Bankruptcy Code.

112.    "*U.S. Trustee*" means the Office of the United States Trustee for the Northern District of Texas.

**B.      Rules of Interpretation**

For purposes of the Liquidating Plan: (a) in the appropriate context, each term, whether stated in the singular or the plural, shall include both the singular and the plural, and pronouns stated in the masculine, feminine, or neuter gender shall include the masculine, feminine, and the neuter gender; (b) unless otherwise specified, any reference herein to a contract, lease, instrument, release, indenture, or other agreement or document being in a particular form or on particular terms and conditions means that such document shall be substantially in such form or substantially on such terms and conditions; (c) unless otherwise specified, any reference herein to an existing document, schedule, or exhibit, shall mean such document, schedule, or exhibit, as it may have been or may be amended, modified, or supplemented; (d) unless otherwise specified, all references herein to "Articles" and "Sections" are references to Articles and Sections, respectively, hereof or hereto; (e) the words "herein," "hereof," and "hereto" refer to the Liquidating Plan in its entirety rather than to any particular portion of the Liquidating Plan; (f) captions and headings to Articles and Sections are inserted for convenience of reference only and are not intended to be a part of or to affect the interpretation of the Liquidating Plan; (g) unless otherwise specified herein, the rules of construction set forth in section 102 of the Bankruptcy Code shall apply; (h) any term used in capitalized form herein that is not otherwise defined but that is used in the Bankruptcy Code or the Bankruptcy Rules shall have the meaning assigned to such term in the Bankruptcy Code or the Bankruptcy Rules, as applicable; (i) references to docket numbers of documents filed in the Liquidating Debtors' Chapter 11 Cases are references to the docket numbers under the Bankruptcy Court's CM/ECF system; (j) references to "Proofs of Claim," "Holders of Claims," "Disputed Claims," and the like shall include "Proofs of Interest," "Holders of Interests," "Disputed Interests," and the like as applicable; (k) references to "shareholders," "directors," and/or "officers" shall also include "members" and/or "managers," as applicable, as such terms are defined under the applicable state limited liability company laws; and (l) any immaterial effectuating provisions may be interpreted by the Liquidating Debtors in such a manner that is consistent with the overall purpose and intent of the Liquidating Plan all without further notice to or action, order, or approval of the Bankruptcy Court or any other Entity.

**C.      Computation of Time**

Unless otherwise specifically stated herein, the provisions of Bankruptcy Rule 9006(a) shall apply in computing any period of time prescribed or allowed herein.  If the date on which a transaction may occur pursuant to the Liquidating Plan shall occur on a day that is not a Business Day, then such transaction shall instead occur on the next succeeding Business Day.

**D.      Governing Law**

Unless a rule of law or procedure is supplied by federal law (including the Bankruptcy Code and Bankruptcy Rules) or unless otherwise specifically stated, the laws of the State of New York, without giving effect to the principles of conflict of laws (other than section 5-1401 and section 5-1402 of the New York General Obligations Law), shall govern the rights, obligations, construction, and implementation of the Liquidating Plan, any agreements, documents, instruments, or contracts executed or entered into in connection with the Liquidating Plan (except asotherwise set forth in those agreements, in which case the governing law of such agreement shall control); *provided*, *however*, that corporate governance matters relating to the Liquidating Debtors, as applicable, shall be governed by the laws of the relevant state of formation of the relevant Liquidating Debtor, as applicable.

**E.      Reference to Monetary Figures**

All references in the Liquidating Plan to monetary figures refer to currency of the United States of America, unless otherwise expressly provided.

**F.**    **Controlling Document**

In the event of an inconsistency between the Liquidating Plan and the Disclosure Statement, the terms of the Liquidating Plan shall control in all respects.  In the event of any inconsistency between the Liquidating Plan and the Confirmation Order, the Confirmation Order shall control.

**ARTICLE II**

**ADMINISTRATIVE AND PRIORITY TAX CLAIMS**

In accordance with section 1123(a)(1) of the Bankruptcy Code, Administrative Claims, DIP Claims, Professional Claims, and Priority Tax Claims have not been classified and thus are excluded from the Classes of Claims set forth in Article III of the Liquidating Plan.

**A.**    **Administrative Claims**

Unless otherwise agreed to by the holder of an Allowed Administrative Claim and a Liquidating Debtor or the Plan Administrator, each holder of an Allowed Administrative Claim (other than holders of Professional Claims and Claims for fees and expenses pursuant to section 1930 of chapter 123 of title 28 of the United States Code) will receive in full and final satisfaction of its Administrative Claim an amount of Cash equal to the amount of such Allowed Administrative Claim in accordance with the following: (a) if an Administrative Claim is Allowed on or prior to the Effective Date, on the Effective Date or as soon as reasonably practicable thereafter (or, if not then due, when such Allowed Administrative Claim is due or as soon as reasonably practicable thereafter); (b) if such Administrative Claim is not Allowed as of the Effective Date, no later than 30 days after the date on which an order Allowing such Administrative Claim becomes a Final Order, or as soon as reasonably practicable thereafter; (c) if such Allowed Administrative Claim is based on liabilities incurred by the Liquidating Debtors in the ordinary course of their business after the Petition Date in accordance with the terms and conditions of the particular transaction giving rise to such Allowed Administrative Claim without any further action by the holders of such Allowed Administrative Claim; (d) at such time and upon such terms as may be agreed upon by such holder and the Liquidating Debtor; or (e) at such time and upon such terms as set forth in an order of the Bankruptcy Court.

Except as otherwise provided in this Article II.A and except with respect to DIP Claims and Professional Claims, requests for payment of Administrative Claims must be Filed and served on the Liquidating Debtors and Plan Administrator no later than the Administrative Claims Bar Date.  Holders of Administrative Claims that are required to, but do not, File and serve a request for payment of such Administrative Claims by such date shall be forever barred, estopped, and enjoined from asserting such Administrative Claims against the Liquidating Debtors or their property and such Administrative Claims shall be deemed compromised, settled, and released as of the Effective Date.

**B.**    **DIP Claims**

Subject to the terms, conditions, and priorities set forth in the DIP Order, the DIP Claims shall be deemed to be Allowed in the full amount due and owing under the DIP Facility as of the Effective Date. In full satisfaction of and in exchange for each DIP Facility Claim, each holder of a DIP Facility Claim shall receive its Pro Rata share of payment in cash of the DIP Claims pursuant to the Reorganizing Plan. Such treatment shall render each DIP Facility Claim satisfied in full on the Effective Date, consistent with

16

the terms of the DIP Loan Agreement. Notwithstanding the foregoing, each DIP Lender shall retain its right to indemnification under the DIP Loan Agreement in accordance with its terms.

**C.**     **Professional Claims**

All Professional Claims of the Debtors' Professionals shall be paid pursuant to the Reorganizing Plan. All requests for payment of Professional Claims by Creditors' Committee Professionals for services rendered and reimbursement of expenses incurred prior to the Effective Date must be filed no later than 45 days after the Effective Date. The Bankruptcy Court shall determine the Allowed amounts of such Professional Claims after notice and a hearing in accordance with the procedures established by the Bankruptcy Court. The Plan Administrator shall pay Professional Claims in Cash in the amount the Bankruptcy Court allows.

**D.**     **Priority Tax Claims**

Except to the extent that a holder of an Allowed Priority Tax Claim agrees to a less favorable treatment, in full and final satisfaction, settlement, release, and discharge of and in exchange for each Allowed Priority Tax Claim, each holder of such Allowed Priority Tax Claim shall be treated in accordance with the terms set forth in section 1129(a)(9)(C) of the Bankruptcy Code and, for the avoidance of doubt, holders of Allowed Priority Tax Claims will receive interest on such Allowed Priority Tax Claims after the Effective Date in accordance with sections 511 and 1129(a)(9)(C) of the Bankruptcy Code. Any such treatment of Allowed Priority Tax Claims shall be fulfilled pursuant to the Reorganizing Plan.

## ARTICLE III

## CLASSIFICATION, TREATMENT, AND VOTING OF CLAIMS AND INTERESTS

**A.**     **Classification of Claims and Interests**

Except for the Claims addressed in Article II of the Liquidating Plan, all Claims and Interests are classified in the Classes set forth below in accordance with section 1122 of the Bankruptcy Code. A Claim or an Interest is classified in a particular Class only to the extent that the Claim or Interest qualifies within the description of that Class and is classified in other Classes to the extent that any portion of the Claim or Interest qualifies within the description of such other Classes. A Claim or an Interest also is classified in a particular Class for the purpose of receiving distributions under the Liquidating Plan only to the extent that such Claim or Interest is an Allowed Claim or Interest in that Class and has not been paid, released, or otherwise satisfied prior to the Effective Date.

**B.**     **Identification of Classes:**

1.  Class 1 – Other Secured Claims: Class 1 shall consist of all Other Secured Claims. Each Allowed Claim in this class is assigned to a separate subclass.

2.  Class 2 – Allowed Priority Non-Tax Claims: Class 2 consists of three subclasses, Class 2A, Class 2B, and Class 2C.

    (a)  Class 2A – Holdings Allowed Priority Non-Tax Claims: Class 2A consists of all Allowed Priority Non-Tax Claims against Holdings.

    (b)  Class 2B – Fore Machine Allowed Priority Non-Tax Claims: Class 2B consists of all

Allowed Priority Non-Tax Claims against Fore Machine.

(c) Class 2C – Fore Capital Allowed Priority Non-Tax Claims: Class 2C consists of all Allowed Priority Non-Tax Claims against Fore Capital.

3. Class 3 – Prepetition Lender Secured Claims: Class 3 consists of all Allowed Prepetition Lender Claims that are secured claims. The Liquidating Debtors are jointly and severally liable for the Prepetition Lender Secured Claims so there is no need for separate subclasses for Class 3 Prepetition Lender Secured Claims.

4. Class 4 – Allowed General Unsecured Claims: Class 4 consists of three subclasses, Class 4A, Class 4B, and Class 4C.

(a) Class 4A – Holdings Allowed General Unsecured Claims: Class 4A consists of all Allowed General Unsecured Claims against Holdings.

(b) Class 4B – Fore Machine Allowed General Unsecured Claims: Class 4B consists of all Allowed General Unsecured Claims against Fore Machine.

(c) Class 4C – Fore Capital Allowed General Unsecured Claims: Class 4C consists of all Allowed General Unsecured Claims against Fore Capital.

5. Class 5 – Intercompany Claims: Class 5 shall consist of all Intercompany Claims.  Each Allowed Claim in this class is assigned a separate subclass.

6. Class 6 – Equity Interests: Class 6 consists of three subclasses, Class 6A, Class 6B, and Class 6C.

(a) Class 6A – Holdings Equity Interests: Class 6A consists of all Equity Interests of Holdings.

(b) Class 6B – Fore Machine Equity Interests: Class 6B consists of all Equity Interests of Fore Machine.

(c) Class 6C – Fore Capital Equity Interests: Class 6C consists of all Equity Interests of Fore Capital.

## C.     Treatment of Classes of Claims and Interests

Each holder of an Allowed Claim, as applicable, shall receive under the Liquidating Plan the treatment described below in full and final satisfaction, settlement, release, and discharge of and in exchange for such holder's Allowed Claim, except to the extent different treatment is agreed to by: (a) the relevant Liquidating Debtor(s); and (b) the holder of such Allowed Claim.  Unless otherwise indicated, the holder of an Allowed Claim, shall receive such treatment on the Effective Date or as soon as reasonably practicable thereafter.

1.     **Class 1 - Other Secured Claims**

(a) *Classification:* Class 1 consists of any Other Secured Claims against the Liquidating Debtors.  Each Allowed Claim in this class is assigned to a separate subclass.

(b) *Treatment:* Each holder of an Allowed Class 1 Claim shall receive as determined by the

Liquidating Debtors or the Plan Administrator:

(i)       payment in full in Cash of its Allowed Class 1 Claim;

(ii)      the collateral securing its Allowed Class 1 Claim; or

(iii)     such other treatment rendering its Allowed Class 1 Claim Unimpaired in accordance with section 1124 of the Bankruptcy Code.

(c)   *Voting*: Class 1 is Unimpaired under the Liquidating Plan.  Holders of Allowed Class 1 Claims are conclusively presumed to have accepted the Liquidating Plan under section 1126(f) of the Bankruptcy Code.  Holders of Allowed Class 1 Claims are not entitled to vote to accept or reject the Liquidating Plan.

2.     **Classes 2A, 2B, and 2C — Other Priority Non-Tax Claims**

(a)   *Classification*: Classes 2A, 2B, and 2C consist of any Other Priority Claims against the Liquidating Debtors other than tax claims.

(b)   *Treatment*: Each holder of an Allowed Claim in Classes 2A, 2B, and 2C shall receive Cash in an amount equal to such Allowed Claim.

(c)   *Voting*: Classes 2A, 2B, and 2C are Unimpaired under the Liquidating Plan.  Holders of Allowed Claims in Classes 2A, 2B, and 2C are conclusively presumed to have accepted the Liquidating Plan under section 1126(f) of the Bankruptcy Code.  Holders of Allowed Claims in Classes 2A, 2B, and 2C are not entitled to vote to accept or reject the Liquidating Plan.

3.     **Class 3 — Prepetition Secured Lender Claims**

(a)   *Classification*:  Class 3 consists of all Prepetition Lender Claims that are Secured Claims.

(b)   *Allowance:* The Class 3 Claims shall be Allowed as Secured Claims against each of the Liquidating Debtors in the amount equal to the lesser of (i) (A) the full amount of the Prepetition Lender Claims, minus (B) provided the Reorganizing Plan Effective Date has occurred, the amount of the Prepetition Lender Claims assumed by the Reorganized Debtor under the Reorganized Debtor's Plan (the "*Adjusted Prepetition Lender Claims*") and (ii) as to each Liquidating Debtor, the value of the assets owned by such Liquidating Debtor securing the Class 3 Claims.  For the avoidance of doubt, as to each Liquidating Debtor, the difference between the full Adjusted Prepetition Lender Claims and the amount that is Allowed as a Secured Claim will be Allowed as a Class 4 General Unsecured Claim and entitled to distribution under each of the Class 4 subclasses.

(c) *Treatment*:  In full and final satisfaction, compromise, settlement, release, and discharge of their Class 3 Claims, the Prepetition Lenders shall be entitled to receive payment of all Available Cash, up to an aggregate amount equal to the Allowed Class 3 Claims promptly following receipt by the Plan Administrator of such Available Cash.  In addition, each Prepetition Lender and the Prepetition Agent shall retain its right to the Consenting Stakeholder Indemnifications.

(d) *Voting*: Class 3 is Impaired under the Plan.  Holders of Allowed Class 3 Claims are entitled to vote to accept or reject the Plan.

4.    **Classes 4A, 4B, and 4C — General Unsecured Claims**

(a) *Classification*: Classes 4A, 4B, and 4C consist of any General Unsecured Claims against the Liquidating Debtors.

(b) *Treatment*: Each holder of an Allowed Claim in Classes 4A, 4B, and 4C will receive a distribution, on a Liquidating Debtor by Liquidating Debtor basis, equal to its Pro Rata share of Available Cash of such Liquidating Debtor remaining after payment in full of the Allowed Class 3 Claims.

(c) *Voting*: Classes 4A, 4B, and 4C are Impaired under the Liquidating Plan.  Holders of Claims in Classes 4A, 4B, and 4C are deemed to have rejected the Liquidating Plan and, therefore, are not entitled to vote to accept or reject the Liquidating Plan.

5.    **Class 5 – Intercompany Claims.**

(a) *Classification*: Class 5 consists of the Intercompany Claims against each of the Liquidating Debtors.  Each Allowed Claim in this class is assigned to a separate subclass.

(b) *Treatment*: Class 5 Intercompany Claims will be canceled, released, and extinguished as of the Effective Date, and will be of no further force or effect, and holders of Class 5 Claims will not receive any distribution on account of such Class 5 Claims.

(c) *Voting*: Class 5 is Impaired under the Liquidating Plan.  Holders of Class 5 Claims are deemed to have rejected the Liquidating Plan pursuant to section 1126(g) of the Bankruptcy Code and, therefore, are not entitled to vote to accept or reject the Liquidating Plan.

6.    **Classes 6A, 6B, and 6C — Equity Interests**

(a) *Classification*: Classes 6A, 6B, and 6C consist of Equity Interests in the Liquidating Debtors.

(b) *Treatment*: Each Equity Interest in Classes 6A, 6B, and 6C will be canceled, released, and extinguished as of the Effective Date, and will be of no further force or effect, and holders of Equity Interests in Classes 6A, 6B, and 6C will not receive any distribution on account of such Equity Interest in Classes 6A, 6B, and 6C.

(c) *Voting*: Classes 6A, 6B, and 6C are Impaired under the Liquidating Plan.  Holders of Equity Interests in Classes 6A, 6B, and 6C are deemed to have rejected the Liquidating Plan pursuant to section 1126(g) of the Bankruptcy Code and, therefore, are not entitled

to vote to accept or reject the Liquidating Plan.

**D.      Special Provision Governing Unimpaired Claims**

Except as otherwise provided in the Liquidating Plan, nothing under the Liquidating Plan shall affect the Liquidating Debtors' rights regarding any Unimpaired Claim, including all rights regarding legal and equitable defenses to or setoffs or recoupments against any such Unimpaired Claim.

**E.      Elimination of Vacant Classes**

Any Class of Claims or Interests that does not have a holder of an Allowed Claim or Allowed Interest or a Claim or Interest temporarily Allowed by the Bankruptcy Court as of the date of the Confirmation Hearing shall be deemed eliminated from the Liquidating Plan for purposes of voting to accept or reject the Liquidating Plan and for purposes of determining acceptance or rejection of the Liquidating Plan by such Class pursuant to section 1129(a)(8) of the Bankruptcy Code.

**F.      Voting Classes; Presumed Acceptance by Non-Voting Classes**

If a Class contains Claims or Interests eligible to vote and no holders of Claims or Interests eligible to vote in such Class vote to accept or reject the Liquidating Plan, the Liquidating Debtors shall request that the Bankruptcy Court deem the Liquidating Plan accepted by the holders of such Claims or Interests in such Class.

**G.      Subordinated Claims**

The allowance, classification, and treatment of all Allowed Claims and the respective distributions and treatments under the Liquidating Plan take into account and conform to the relative priority and rights of the Claims and Interests in each Class in connection with any contractual, legal, and equitable subordination rights relating thereto, whether arising under general principles of equitable subordination, section 510(b) of the Bankruptcy Code, or otherwise. Pursuant to section 510 of the Bankruptcy Code, the Liquidating Debtors reserve the right to re-classify any Allowed Claim or Allowed Interest in accordance with any contractual, legal, or equitable subordination relating thereto.

**H.      Confirmation Pursuant to Section 1129(b) of the Bankruptcy Code**

The Liquidating Debtors shall seek Confirmation of the Liquidating Plan pursuant to section 1129(b) of the Bankruptcy Code with respect to any rejecting Class of Claims or Interests. The Liquidating Debtors, with the consent of the Consenting Stakeholders, reserve the right to modify the Liquidating Plan in accordance with Article X of the Liquidating Plan to the extent, if any, that Confirmation pursuant to section 1129(b) of the Bankruptcy Code requires modification, including by modifying the treatment applicable to a Class of Claims or Interests to render such Class of Claims or Interests Unimpaired to the extent permitted by the Bankruptcy Code and the Bankruptcy Rules.

**ARTICLE IV**

**PROVISIONS FOR IMPLEMENTATION OF THE LIQUIDATING PLAN**

**A.      General Settlement of Claims and Interests**

Pursuant to section 1123 of the Bankruptcy Code and Bankruptcy Rule 9019, and in consideration for the classification, distributions, releases, and other benefits provided under the

Liquidating Plan, upon the Effective Date, the provisions of the Liquidating Plan shall constitute a good faith compromise and settlement of all Claims and Interests and controversies resolved pursuant to the Liquidating Plan. The entry of the Confirmation Order shall constitute the Bankruptcy Court's approval of the compromise or settlement of all such Claims, Interests, and controversies, as well as a finding by the Bankruptcy Court that such compromise or settlement is in the best interests of the Liquidating Debtors, their Estates, and Holders of Claims and Interests and is fair, equitable, and is within the range of reasonableness. Subject to <u>Article VI</u> of the Liquidating Plan, all distributions made to holders of Allowed Claims in any Class are intended to be and shall be final.

**B.**    **Sources of Consideration for Plan Distributions**

The Liquidating Plan provides for the distribution of all Cash held by or for the benefit of the Liquidating Debtors on and after the Effective Date. In addition to Cash on hand, the Liquidating Debtors' property consists primarily of the Debtors' rights with respect to the Insurance Policies, including the D&O Policies.

**C.**    **Professional Fees and Expenses**

On the Effective Date, the Plan Administrator shall pay each Liquidating Debtors' pro rata share of all accrued and unpaid reasonable and documented fees and expenses of the Consenting Stakeholders, in their capacities as such and as the DIP Lenders.

**D.**    **Plan Administrator**

(a)    <u>Authority</u>. The Plan Administrator shall have the authority and right on behalf of each of the Liquidating Debtors, without the need for Bankruptcy Court approval (unless otherwise indicated), to carry out and implement all provisions of the Liquidating Plan, including, without limitation, to:

(i)    except to the extent Claims have been previously Allowed, control and effectuate the Claims reconciliation process, including to object to, seek to subordinate, compromise or settle any and all Claims against the Debtors;

(ii)    make Distributions to holders of Allowed Claims in accordance with the Liquidating Plan;

(iii)    exercise its reasonable business judgment to direct and control the wind down, liquidation, sale and/or abandoning of the remaining assets of the Liquidating Debtors under the Liquidating Plan and in accordance with applicable law as necessary to maximize Distributions to holders of Allowed Claims;

(iv)    Prosecute all Causes of Action on behalf of the Debtors, elect not to pursue any Causes of Action, and determine whether and when to compromise, settle, abandon, dismiss, or otherwise dispose of any such Causes of Action, as the Plan Administrator may determine is in the best interests of the Debtors;

(v)    make payments to existing professionals who will continue to perform in their current capacities;

(vi)    retain professionals to assist in performing its duties under the Plan;

(vii)    maintain the books and records and accounts of the Debtors;

(viii)    invest Cash of the Debtors, including any Liquidation Proceeds, including any Causes of Action, and any income earned thereon;

(ix)    incur and pay reasonable and necessary expenses in connection with the performance of duties under the Liquidating Plan, including the reasonable fees and expenses of professionals retained by the Plan Administrator;

(x)    administer each Liquidating Debtor's tax obligations, including (i) filing tax returns and paying tax obligations, (ii) requesting, if necessary, an expedited determination of any unpaid tax liability of each Liquidating Debtor or its estate under Bankruptcy Code section 505(b) for all taxable periods of such Liquidating Debtor ending after the Petition Date through the liquidation of such Liquidating Debtor as determined under applicable tax laws and (iii) representing the interest and account of each Liquidating Debtor or its estate before any taxing authority in all matters including, without limitation, any action, suit, proceeding or audit;

(xi)    prepare and file any and all informational returns, reports, statements, returns or disclosures relating to the Liquidating Debtors that are required hereunder, by any Governmental Unit or applicable law;

(xii)    determine whether to create a liquidating trust for the assets of a Liquidating Debtor and which assets to transfer to such liquidating trust;

(xiii)    perform other duties and functions that are consistent with the implementation of the Plan.

(b)    <u>Indemnification</u>.  Each of the Liquidating Debtors shall indemnify and hold harmless the Plan Administrator for any losses incurred in such capacity, except to the extent such losses were the result of the Plan Administrator's gross negligence, willful misconduct or criminal conduct.

## E.    <u>Corporate Existence</u>

(a)    After the Effective Date, the Plan Administrator may engage in any other transaction in furtherance of the Liquidating Plan.  Any such transactions may be effective as of the Effective Date pursuant to the Confirmation Order without any further action by the members, managers, or directors of any of the Liquidating Debtors.

(b)    Upon the Effective Date, by virtue of entry of the Confirmation Order, all actions contemplated by the Liquidating Plan (including any action to be undertaken by the Plan Administrator) shall be deemed authorized, approved, and, to the extent taken prior to the Effective Date, ratified without any requirement for further action by holders of Claims or Interests, the Liquidating Debtors, or any other Entity or Person.  All matters provided for in the Liquidating Plan involving the corporate structure of the Liquidating Debtors, and any corporate action required by the Liquidating Debtors in connection therewith, shall be deemed to have occurred and shall be in effect, without any requirement of further action by the Liquidating Debtors or the Liquidating Debtors' Estates.

## F.    <u>Release of Liens</u>

Except as otherwise provided herein or in any contract, instrument, release, or other agreement or document created pursuant to the Liquidating Plan, on the Effective Date and concurrently with the applicable distributions made pursuant to the Liquidating Plan and, in the case of a Secured Claim, satisfaction in full of the portion of the Secured Claim that is Allowed as of the Effective Date, all

mortgages, deeds of trust, Liens, pledges, or other security interests against any property of the Liquidating Debtors' Estates shall be fully released, settled, and compromised, and the holder of such mortgages, deeds of trust, Liens, pledges, or other security interest against any property of the Liquidating Debtors' Estates shall be authorized to take such actions as may be reasonably requested by the Liquidating Debtors to evidence such releases. Notwithstanding the forgoing, neither the Adjusted Prepetition Lender Claims nor the Liens securing the Adjusted Prepetition Lender Claims shall be divested prior to payment in full of the Adjusted Prepetition Lender Claims classified in Class 3 hereof.

**G.**     **Cancellation of Notes, Instruments, Certificates, and Other Documents**

On the Effective Date, except to the extent otherwise provided herein, all notes, instruments, Certificates, and other documents evidencing Claims or Interests shall be cancelled and the obligations of the Liquidating Debtors thereunder or in any way related thereto shall be discharged; *provided*, *however*, that notwithstanding Confirmation or the occurrence of the Effective Date, any credit document or agreement that governs the rights of the holder of a Claim or Interest shall continue in effect solely for purposes of allowing holders of Allowed Claims to receive distributions under the Liquidating Plan or the Reorganizing Plan, as applicable and the Note Purchase Agreement, and all related documents, shall continue in effect in their entirety until payment in full of the Adjusted Prepetition Lender Claims classified in Class 3 hereof.

**H.**     **Section 1146(a) Exemption**

To the maximum extent provided by section 1146(a) of the Bankruptcy Code, any post-Confirmation sale by any Debtor, or any transfer from any Entity pursuant to, in contemplation of, or in connection with the Plan or pursuant to: (1) the issuance, distribution, transfer, or exchange of any debt, equity security, or other interest in the Liquidating Debtors; or (2) the making, delivery, or recording of any deed or other instrument of transfer under, in furtherance of, or in connection with, the Liquidating Plan, including any deeds, bills of sale, assignments, or other instruments of transfer executed in connection with any transaction arising out of, contemplated by, or in any way related to the Liquidating Plan, shall not be subject to any document recording tax, stamp tax, conveyance fee, intangibles or similar tax, mortgage tax, real estate transfer tax, mortgage recording tax, Uniform Commercial Code filing or recording fee, or other similar tax or governmental assessment, in each case to the extent permitted by applicable bankruptcy law, and the appropriate state or local government officials or agents shall forego collection of any such tax or governmental assessment and accept for filing and recordation any of the foregoing instruments or other documents without the payment of any such tax or governmental assessment.

**I.**     **Effectuating Documents; Further Transactions**

On and after the Effective Date, the Plan Administrator is authorized to and may issue, execute, deliver, file, or record such contracts, securities, instruments, releases, and other agreements or documents and take such actions as may be necessary or appropriate to effectuate, implement and further evidence the terms and conditions of the Liquidating Plan in the name of and on behalf of the Liquidating Debtors, without the need for any approvals, authorization, or consents except for those expressly required pursuant to the Liquidating Plan.

**J.**     **Preservation of Causes of Action**

Other than Causes of Action against an Entity that are waived, relinquished, exculpated, released, compromised, or settled in the Plan or by a Bankruptcy Court order, the Liquidating Debtors reserve any and all Causes of Action.  On and after the Effective Date, the Plan Administrator may pursue such

Causes of Action in its sole discretion. No Entity may rely on the absence of a specific reference in the Liquidating Plan or the Disclosure Statement to any Cause of Action against them as any indication that the Liquidating Debtors or the Plan Administrator will not pursue any and all available Causes of Action against them. No preclusion doctrine, including the doctrines of res judicata, collateral estoppel, issue preclusion, claim preclusion (judicial, equitable, or otherwise), or laches, shall apply to such Causes of Action upon, after, or as a consequence of the Confirmation or Consummation. Prior to the Effective Date, the Liquidating Debtors, and on and after the Effective Date, the Plan Administrator shall retain and shall have, including through its authorized agents or representatives, the exclusive right, authority, and discretion to determine and to initiate, file, prosecute, enforce, abandon, settle, compromise, release, withdraw, or litigate to judgment any such Causes of Action and to decline to do any of the foregoing without the consent or approval of any third party or further notice to or action, order, or approval of the Bankruptcy Court. Notwithstanding anything contained herein to the contrary, the settlement of any Claims and Causes of Action which are expressly to be settled by Confirmation of the Liquidating Plan itself shall be resolved only by Confirmation of the Liquidating Plan itself.

**K.**     **Closing of Holdings' Case**

After the Chapter 11 Case of Holdings has been fully administered, the Plan Administrator shall seek authority from the Bankruptcy Court to close Holdings' Chapter 11 Case in accordance with the Bankruptcy Code and the Bankruptcy Rules.

**ARTICLE V**

**TREATMENT OF EXECUTORY CONTRACTS AND UNEXPIRED LEASES**

**A.**     **Rejection of Executory Contracts and Unexpired Leases**

Each Executory Contract and Unexpired Lease shall be deemed rejected, without the need for any further notice to or action, order, or approval of the Bankruptcy Court, as of the Effective Date under sections 365 and 1123 of the Bankruptcy Code, unless such Executory Contract and Unexpired Lease: (i) has been previously rejected by the Liquidating Debtors, (ii) as of the Effective Date is subject to a pending motion to assume such Executory Contract or Unexpired Lease; (iii) is a contract, release, or other agreement or document entered into in connection with the Plan; or (iv) is a D&O Policy or an insurance policy.

**B.**     **Rejection Claims**

Unless otherwise provided by an order of the Bankruptcy Court, any Proofs of Claim based on the rejection of the Liquidating Debtors' Executory Contracts or Unexpired Leases pursuant to the Liquidating Plan or otherwise, must be filed with Bankruptcy Court and served on the Plan Administrator no later than fourteen (14) days after the earlier of the Effective Date or the effective date of rejection of such Executory Contract or Unexpired Lease. In addition, any objection to the rejection of an Executory Contract or Unexpired Lease must be filed with the Bankruptcy Court and served on the Liquidating Debtors, no later than fourteen (14) days after service of the Liquidating Debtors' proposed rejection of such Executory Contract or Unexpired Lease.

**Any Claims arising from the rejection of an Executory Contract or Unexpired Lease not filed with the Bankruptcy Court within such time will be automatically disallowed, forever barred from assertion, and shall not be enforceable against the Liquidating Debtors, the Plan Administrator, the Liquidating Debtors' Estates, or the property for any of the foregoing without the need for any objection by the Plan Administrator or further notice to, or action, order, or**

**approval of the Bankruptcy Court or any other Entity, and any Claim arising out of the rejection of the Executory Contract or Unexpired Lease shall be deemed fully compromised, settled, and released, notwithstanding anything in a Proof of Claim to the contrary.** All Allowed Claims arising from the rejection of the Liquidating Debtors' prepetition Executory Contracts or prepetition Unexpired Leases shall be classified as General Unsecured Claims, except as otherwise provided by order of the Bankruptcy Court.

## C.   <u>Indemnification</u>

On and as of the Effective Date, the Indemnification Provisions will be assumed and irrevocable and will survive the effectiveness of the Plan, and the Liquidating Debtor's governance documents will provide for the indemnification, defense, reimbursement, exculpation, and/or limitation of liability of, and advancement of fees and expenses to the Liquidating Debtor's current and former directors, officers, employees, and agents to the fullest extent permitted by law and at least to the same extent as the organizational documents of the Liquidating Debtor on the Petition Date, against any claims or Causes of Action whether direct or derivative, liquidated or unliquidated, fixed or contingent, disputed or undisputed, matured or unmatured, known or unknown, foreseen or unforeseen, asserted or unasserted, and the Liquidating Debtors will not amend and/or restate their respective governance documents before or after the Effective Date to terminate or adversely affect any of the Liquidating Debtor's obligations to provide such Indemnification Provisions or such directors', officers', employees', or agents' indemnification rights.

## D.   <u>Modifications, Amendments, Supplements, Restatements, or Other Agreements</u>

Unless otherwise provided in the Liquidating Plan, each assumed Executory Contract or Unexpired Lease shall include all modifications, amendments, supplements, restatements, or other agreements that in any manner affect such Executory Contract or Unexpired Lease, and all Executory Contracts and Unexpired Leases related thereto, if any, including all easements, licenses, permits, rights, privileges, immunities, options, rights of first refusal, and any other interests, unless any of the foregoing agreements has been previously rejected or repudiated or is rejected or repudiated under the Liquidating Plan.

Modifications, amendments, supplements, and restatements to prepetition Executory Contracts and Unexpired Leases that have been executed by the Liquidating Debtors during the Liquidating Debtors' Chapter 11 Cases shall not be deemed to alter the prepetition nature of the Executory Contract or Unexpired Lease, or the validity, priority, or amount of any Claims that may arise in connection therewith.

## E.   <u>Insurance Policies</u>

Each insurance policy, including the D&O Policy, shall be assumed by the applicable Liquidating Debtor effective as of the Effective Date, pursuant to sections 365 and 1123 of the Bankruptcy Code, to the extent such insurance policy is executory, unless such insurance policy previously was rejected by the Liquidating Debtors pursuant to a Bankruptcy Court order or is the subject of a motion to reject pending on the Effective Date, and coverage for defense and indemnity under the D&O Policy shall remain available to all individuals within the definition of "Insured" in the D&O Policy.

## F.   <u>Reservation of Rights</u>

Nothing contained in the Liquidating Plan shall constitute an admission by the Liquidating Debtors or any other party that any such contract or lease is in fact an Executory Contract or Unexpired

Lease or that any Liquidating Debtor has any liability thereunder.  If there is a dispute regarding whether a contract or lease is or was executory or unexpired at the time of assumption, the Liquidating Debtors or the Plan Administrator, as applicable, shall have 45 days following entry of a Final Order resolving such dispute to alter their treatment of such contract or lease.

**ARTICLE VI**

**PROVISIONS GOVERNING DISTRIBUTIONS**

**A.**     **Distributions on Account of Claims and Interests Allowed as of the Effective Date**

As of the close of business on the Effective Date, the various transfer registers for each of the Classes of Claims or Interests as maintained by the Liquidating Debtors or their respective agents, shall be deemed closed, and there shall be no further changes in the record of holders of any of the Claims or Interests.  The Liquidating Debtors or the Plan Administrator shall have no obligation to recognize any transfer of the Claims or Interests occurring on or after the Effective Date.

**B.**     **Distributions on Account of Claims Allowed After the Effective Date**

Distributions made after the Effective Date to Holders of Disputed Claims that are not Allowed Claims as of the Effective Date, but which later become Allowed Claims shall be deemed to have been made on the Effective Date.

**C.**     **Special Rules for Distributions to Holders of Disputed Claims**

Notwithstanding any provision otherwise in the Liquidating Plan and except as otherwise agreed by the relevant parties: (i) no partial payments and no partial distributions shall be made with respect to a Disputed Claim until all such disputes in connection with such Disputed Claim have been resolved by settlement or Final Order; and (ii) any Entity that holds both an Allowed Claim and a Disputed Claim shall not receive any distribution on the Allowed Claim unless and until all objections to the Disputed Claim have been resolved by settlement or Final Order or the Claims have been Allowed or expunged.  Any distributions arising from property distributed to holders of Allowed Claims in a Class and paid to such holders under the Liquidating Plan shall also be paid, in the applicable amounts, to any holder of a Disputed Claim in such Class that becomes an Allowed Claim after the date or dates that such distributions were earlier paid to holders of Allowed Claims in such Class.

**D.**     **Delivery of Distributions**

1.     **Record Date for Distributions to Holders**

On the Effective Date, the Claims Register shall be closed, and Liquidating Debtors shall be authorized and entitled to recognize only those record holders, if any, listed on the Claims Register as of the close of business on the Effective Date.  The Liquidating Debtors or the Plan Administrator shall have no obligation to recognize any transfer of the Claims or Interests occurring on or after the Effective Date.

2.     **Distribution Process**

Except as otherwise provided herein, the Liquidating Debtors shall make the Initial Distribution to holders of Allowed Claims no later than the Initial Distribution Date and thereafter, the Liquidating Debtors shall from time to time determine the subsequent Distribution Dates, if any.  In the event that any payment or act under the Liquidating Plan is required to be made or performed on a date that is not a

Business Day, then the making of such payment or the performance of such act may be completed on or as soon as reasonably practicable after the next succeeding Business Day but shall be deemed to have been completed as of the required date.

The Plan Administrator shall reserve an amount sufficient to pay holders of Disputed Administrative Expense Claims the amount such holders would be entitled to receive under the Plan if such Claims were to become Allowed Claims.  After the resolution of all Disputed Administrative Expense Claims, the Plan Administrator shall treat any amounts that were reserved for Disputed Administrative Expense claims that do not become Allowed Claims as Available Cash.

Notwithstanding anything to the contrary in the Liquidating Plan, no holder of an Allowed Administrative Expense Claim shall, on account of such Allowed Administrative Expense Claim, receive a distribution in excess of the Allowed amount of such Administrative Expense Claim.

3.     **Minimum; De Minimis Distributions**

If either (a) all Allowed Administrative Expense Claims have been paid in full or (b) the amount of any final distributions to holders of Allowed Administrative Expense Claims would be $50 or less and the aggregate amount of Cash available for distributions to holders of Allowed Administrative Expense Claims is less than $10,000, then no further distribution shall be made by the Plan Administrator and any surplus Cash shall be paid to the Prepetition Lenders on account of their Class 3 Claims.

4.     **Compliance Matters**

In connection with the Liquidating Plan, to the extent applicable, the Plan Administrator shall comply with all tax withholding and reporting requirements imposed on them by any Governmental Unit, and all distributions pursuant to Liquidating Plan shall be subject to such withholding and reporting requirements.  Notwithstanding any provision in Liquidating Plan to the contrary, the Plan Administrator shall be authorized to take all actions necessary or appropriate to comply with such withholding and reporting requirements, including liquidating a portion of the distribution to be made under Liquidating Plan to generate sufficient funds to pay applicable withholding taxes, withholding distributions pending receipt of information necessary to facilitate such distributions, or establishing any other mechanisms they believe are reasonable and appropriate.  The Liquidating Debtors and the Plan Administrator reserve the right to allocate all distributions made under the Liquidating Plan in compliance with all applicable wage garnishments, alimony, child support, and other spousal awards, liens, and encumbrances. Notwithstanding the foregoing, the provisions of this paragraph shall not apply to distributions on account of and the Allowed Class 3 Claim, which shall be paid pursuant to the terms of this Liquidating Plan without further deductions.

5.     **Foreign Currency Exchange Rate**

Except as otherwise provided in a Bankruptcy Court order, as of the Effective Date, any Claim asserted in currency other than U.S. dollars shall be automatically deemed converted to the equivalent U.S. dollar value using the exchange rate for the applicable currency as published in The Wall Street Journal, National Edition, on the Effective Date.

6.     **Undeliverable and Unclaimed Distributions**

In the event that any distribution to any holder is returned as undeliverable, no distribution to such holder shall be made unless and until the Liquidating Debtors or the Plan Administrator, as applicable, has determined the then current address of such holder, at which time such distribution shall

be made to such holder without interest; provided, however, such distributions shall be deemed unclaimed property under section 347(b) of the Bankruptcy Code at the expiration of six (6) months from the date the Initial Distribution is made.  After such date, all unclaimed property or interests in property shall revert (notwithstanding any applicable federal or state escheat, abandoned, or unclaimed property laws to the contrary) to the Liquidating Debtors automatically and without need for a further order by the Bankruptcy Court for distribution in accordance with the Liquidating Plan and the Claim of any such holder to such property or interest in property shall be released, settled, compromised, and forever barred.

7.      **Manner of Payment**

At the option of the Liquidating Debtors or the Plan Administrator, any Cash payment to be made hereunder may be made by a check or wire transfer.

8.      **Surrender of Cancelled Instruments or Securities**

On the Effective Date, each holder of a Certificate shall be deemed to have surrendered such Certificate to the Liquidating Debtors.  Such Certificate shall be cancelled solely with respect to the Liquidating Debtors, and such cancellation shall not alter the obligations or rights of any non-Debtor third parties vis-à-vis one another with respect to such Certificate.

9.      **Setoff**

The Liquidating Debtors and the Plan Administrator may, but shall not be required to, set off against any Claim, any Claims of any nature whatsoever that the Liquidating Debtors or the Plan Administrator may have against the holder of such Claim; provided, that, neither the failure to do so nor the allowance of any Claim hereunder shall constitute a waiver or release by the Liquidating Debtors or the Plan Administrator of any such Claim the Liquidating Debtors or the Plan Administrator may have against the holder of such Claim.

10.     **Distributions Made After the Effective Date**

Distributions made after the Effective Date to holders of Disputed Administrative Expense Claims that are not Allowed Administrative Expense Claims as of the Effective Date but which later become Allowed Administrative Expense Claims shall be deemed to have been made on the Effective Date.

E.      **Claims Paid or Payable by Third Parties**

1.      **Claims Paid by Third Parties**

A Claim shall be reduced in full, and such Claim shall be disallowed without an objection to such Claim having to be filed and without any further notice to or action, order, or approval of the Bankruptcy Court, to the extent that the holder of such Claim receives payment in full on account of such Claim from a party that is not a Liquidating Debtor.  To the extent a holder of a Claim receives a distribution on account of such Claim and receives payment from a party that is not a Liquidating Debtor on account of such Claim, such holder shall repay, return or deliver any distribution held by or transferred to the holder to the Liquidating Debtor or the Plan Administrator to the extent the holder's total recovery on account of such Claim from the third party and under the Liquidating Plan exceeds the amount of such Claim as of the date of any such distribution under the Liquidating Plan.  The provisions of this paragraph shall not apply to the Allowed Class 3 Claims.

2.      **Claims Payable by Insurance Carriers**

No distributions under the Liquidating Plan shall be made on account of an Allowed Claim that is payable pursuant to one of the Liquidating Debtor's insurance policies until the holder of such Allowed Claim has exhausted all remedies with respect to such insurance policy.  To the extent that one or more of the Liquidating Debtors' insurers agree to satisfy in full a Claim (if and to the extent adjudicated by a court of competent jurisdiction), then immediately upon such insurers' agreement, such Claim may be expunged to the extent of any agreed upon satisfaction on the Claims Register by the Plan Administrator without a Claims objection having to be filed and without any further notice to or action, order, or approval of the Bankruptcy Court.  The provisions of this paragraph shall not apply to the Allowed Class 3 Claims.

3.      **Applicability of Insurance Policies**

Except as otherwise provided herein, distributions to holders of Allowed Claims shall be in accordance with the provisions of an applicable insurance policy.  Nothing contained in the Liquidating Plan shall constitute or be deemed a waiver of any Cause of Action that the Liquidating Debtors or any Entity may hold against any other Entity, including insurers under any policies of insurance, nor shall anything contained herein constitute or be deemed a waiver by such insurers of any defenses, including coverage defenses, held by such insurers.

F.      **Allocation Between Principal and Accrued Interest**

Except as otherwise provided herein, the aggregate consideration paid to holders with respect to their Allowed Claims shall be treated pursuant to the Liquidating Plan as allocated first to the principal amount of such Allowed Claims (to the extent thereof) and, thereafter, to the interest, if any, on such Allowed Claim accrued through the Effective Date.

## ARTICLE VII

## PROCEDURES FOR RESOLVING DISPUTED CLAIMS

A.      **Disputed Claims Process**

The Plan Administrator shall have and shall retain any and all rights and defenses that the Liquidating Debtors had with respect to any Claim immediately before the Effective Date.  Except as expressly provided in the Liquidating Plan or in any Order entered in the Liquidating Debtors' Chapter 11 Cases prior to the Effective Date (including the Confirmation Order), no Claim shall become an Allowed Claim unless and until such Claim is deemed Allowed pursuant to the Liquidating Plan or a Final Order, including the Confirmation Order (when it becomes a Final Order), allowing such Claim.  **Except as otherwise provided herein, all Proofs of Claim filed after the Effective Date shall be disallowed and forever barred, estopped, and enjoined from assertion, and shall not be enforceable against any Liquidating Debtor, without the need for any objection by any Liquidating Debtor or the Plan Administrator or any further notice to or action, order, or approval of the Bankruptcy Court.**

B.      **Objections to Claims**

As of the Effective Date, objections to, and requests for estimation of, Administrative Expense Claims against the Liquidating Debtors may be interposed and prosecuted only by the Plan Administrator.  Such objections and requests for estimation shall be served and filed (a) on or before the 75th day following the later of (i) the Effective Date and (ii) the date that a proof of Claim is filed or amended or a

Claim is otherwise asserted or amended in writing by or on behalf of a holder of such Claim, or (b) such later date as ordered by the Bankruptcy Court upon motion filed by the Plan Administrator.

### C.      Estimation of Claims.

The Plan Administrator may at any time request that the Bankruptcy Court estimate any contingent, unliquidated, or Disputed Administrative Expense Claim pursuant to section 502(c) of the Bankruptcy Code regardless of whether the Liquidating Debtors or Plan Administrator previously objected to such Administrative Expense Claim or whether the Bankruptcy Court has ruled on any such objection, and the Bankruptcy Court will retain jurisdiction to estimate any Administrative Expense Claim at any time during litigation concerning any objection to any Administrative Expense Claim, including, without limitation, during the pendency of any appeal relating to any such objection.  In the event that the Bankruptcy Court estimates any contingent, unliquidated, or Disputed Administrative Expense Claim, the amount so estimated shall constitute either the Allowed amount of such Administrative Expense Claim or a maximum limitation on such Administrative Expense Claim, as determined by the Bankruptcy Court.  If the estimated amount constitutes a maximum limitation on the amount of such Administrative Expense Claim, the Liquidating Debtors or Plan Administrator, as applicable, may pursue supplementary proceedings to object to the allowance of such Administrative Expense Claim.  All of the aforementioned objection, estimation and resolution procedures are intended to be cumulative and not exclusive of one another.  Administrative Expense Claims may be estimated and subsequently compromised, settled, withdrawn, or resolved by any mechanism approved by the Bankruptcy Court.

### D.      No Distributions Pending Allowance

If an objection to an Administrative Expense Claim is filed as set forth in Article VII, no payment or distribution provided under the Liquidating Plan shall be made on account of such Claim unless and until such Disputed Administrative Expense Claim becomes an Allowed Administrative Expense Claim.

### E.      Resolution of Claims

Except as otherwise provided herein, or in the Confirmation Order or in any contract, instrument, release, indenture, or other agreement or document entered into in connection with this Liquidating Plan, in accordance with section 1123(b) of the Bankruptcy Code, the Plan Administrator shall retain and may enforce, sue on, settle, or compromise (or decline to do any of the foregoing) all Claims, Disputed Administrative Expense Claims, rights, Causes of Action, suits and proceedings, whether in law or in equity, whether known or unknown, that the Liquidating Debtors or their estates may hold against any Person, without the need for further approval of the Bankruptcy Court.  The Plan Administrator or its successor may pursue such retained Claims, rights, Causes of Action, suits or proceedings, as appropriate, in accordance with the best interests of the Liquidating Debtors.

### F.      Amendments to Claims

On or after the Effective Date, except as otherwise provided herein, a Claim may not be filed or amended without the prior authorization of the Bankruptcy Court or the Plan Administrator.  Absent such authorization, any new or amended Claim filed shall be deemed disallowed in full and expunged without any further action.

### G.      Adjustment to Claims Without Objection

Any duplicate Claim or any Claim that has been paid, satisfied, amended, or superseded may be

adjusted or expunged on the Claims Register by the Plan Administrator without the Plan Administrator having to File an application, motion, complaint, objection, or any other legal proceeding seeking to object to such Claim and without any further notice to or action, order, or approval of the Bankruptcy Court.

**H.**    **No Interest**

Unless otherwise specifically provided for herein or by order of the Bankruptcy Court, postpetition interest shall not accrue or be paid on Claims, and no holder of a Claim shall be entitled to interest accruing on or after the Petition Date on any Claim or right. Additionally, and without limiting the foregoing, interest shall not accrue or be paid on any Disputed Claim with respect to the period from the Effective Date to the date a final distribution is made on account of such Disputed Claim, if and when such Disputed Claim becomes an Allowed Claim.

**I.**    **Single Satisfaction of Claims**

Holders of Allowed Claims may assert such Claims against the Liquidating Debtors obligated with respect to such Claims, and such Claims shall be entitled to share in the recovery provided for the applicable Class of Claims against the Liquidating Debtors based upon the full Allowed amount of such Claims. Notwithstanding the foregoing, in no case shall the aggregate value of all property received or retained under the Liquidating Plan on account of any Allowed Claim exceed 100 percent (100%) of the underlying Allowed Claim plus applicable interest, if any.

**J.**    **Disallowance of Claims and Interests**

All Claims of any Entity from which property is sought by the Liquidating Debtors under sections 542, 543, 550, or 553 of the Bankruptcy Code or that the Liquidating Debtors or the Plan Administrator allege is a transferee of a transfer that is avoidable under sections 522(f), 522(h), 544, 545, 547, 548, 549, or 724(a) of the Bankruptcy Code shall be disallowed if: (a) the Entity, on the one hand, and the Liquidating Debtor or the Plan Administrator, as applicable, on the other hand, agree or the Bankruptcy Court has determined by Final Order that such Entity or transferee is liable to turn over any property or monies under any of the aforementioned sections of the Bankruptcy Code; and (b) such Entity or transferee has failed to turn over such property by the date set forth in such agreement or Final Order. The provisions of this paragraph shall not apply to the DIP Claims or the Allowed Class 3 Claims.

**EXCEPT AS PROVIDED HEREIN, IN AN ORDER OF THE COURT, OR OTHERWISE AGREED, ANY AND ALL PROOFS OF CLAIM FILED AFTER THE APPLICABLE BAR DATE SHALL BE DEEMED DISALLOWED AND EXPUNGED AS OF THE EFFECTIVE DATE WITHOUT ANY FURTHER NOTICE TO OR ACTION, ORDER, OR APPROVAL OF THE COURT, AND HOLDERS OF SUCH CLAIMS MAY NOT RECEIVE ANY DISTRIBUTIONS ON ACCOUNT OF SUCH CLAIMS, UNLESS AT OR PRIOR TO THE CONFIRMATION HEARING SUCH LATE CLAIM HAS BEEN DEEMED TIMELY FILED BY A FINAL ORDER.**

## ARTICLE VIII

## EFFECT OF CONFIRMATION OF THE LIQUIDATING PLAN

**A.**    **Binding Effect**

Confirmation of the Liquidating Plan does not provide the Liquidating Debtors with a discharge

under section 1141 of the Bankruptcy Code because the Liquidating Plan is a liquidating chapter 11 plan. Except as otherwise provided in section 1141(d)(3) of the Bankruptcy Code and subject to the occurrence of the Effective Date, on and after the Effective Date, the provisions of the Liquidating Plan shall bind any holder of a Claim against, or Interest in, the Liquidating Debtors, and such holder's respective successors and assigns, whether or not the Claim or Interest of such holder is Impaired under the Liquidating Plan and whether or not such holder has accepted the Liquidating Plan.

**B.**     <u>Releases by the Liquidating Debtors</u>

**Pursuant to section 1123(b) of the Bankruptcy Code, for good and valuable consideration, on and after the Effective Date, each Released Party is deemed released and discharged by the Liquidating Debtors and their Estates from any and all Causes of Action, including any derivative claims, asserted on behalf of Liquidating Debtors, that the Liquidating Debtors or their Estates would have been legally entitled to assert in their own right or on behalf of the holder of any Claim against, or Interest in, a Liquidating Debtor or other Entity, based on or relating to, or in any manner arising from, in whole or in part, Liquidating Debtors, Liquidating Debtors' in- or out-of-court restructuring efforts, intercompany transactions, the Liquidating Debtors' Chapter 11 Cases, the formulation, preparation, dissemination, negotiation, or filing of the RSA, the Disclosure Statement, the DIP Facility, the Note Purchase Agreement, the Liquidating Plan, or any contract, instrument, release, or other agreement or document created or entered into in connection with the RSA, the Disclosure Statement, the DIP Facility, the Note Purchase Agreement, or the Liquidating Plan, the filing of the Liquidating Debtors' Chapter 11 Cases, the pursuit of Confirmation, the pursuit of Consummation, the administration and implementation of the Liquidating Plan, including the distribution of property under the Liquidating Plan or any other related agreement, or upon any other act or omission, transaction, agreement, event, or other occurrence taking place on or before the Effective Date. The Liquidating Debtors knowingly grant this Release notwithstanding that the Liquidating Debtors may hereafter discover facts in addition to, or different from, those which either the Liquidating Debtors now knows or believes to be true, and without regard to the subsequent discovery or existence of such different or additional facts, and the Liquidating Debtors expressly waives any and all rights that it may have under any statute or common law principle which would limit the effect of the Release to those claims actually known or suspected to exist as of the Effective Date. Notwithstanding anything to the contrary in the foregoing, the releases set forth above do not release any post-Effective Date obligations of any party or Entity under the Liquidating Plan or any document, instrument, or agreement (including those set forth in the Plan Supplement) executed to implement the Liquidating Plan. Entry of the confirmation order shall constitute the Court's approval, pursuant to Bankruptcy Rule 9019, of the Liquidating Debtor releases, which includes by reference each of the related provisions and definitions contained in the Liquidating Plan, and, further, shall constitute the Court's finding that the Liquidating Debtors' release is: (1) in exchange for the good and valuable consideration provided by the Released Parties; (2) a good-faith settlement and compromise of the Claims released by the Liquidating Debtors' release; (3) in the best interests of the Liquidating Debtors' Estates and all holders of Claims and Interests; (4) fair, equitable, and reasonable; (5) given and made after due notice and opportunity for hearing; and (6) a bar to any of the Liquidating Debtors' Estates asserting any Claim or Cause of Action released pursuant to the Liquidating Debtors' release.**

**C.**     <u>Releases by Holders of Claims and Interests</u>

**As of the Effective Date, each Releasing Party is deemed to have released and discharged the Liquidating Debtors and each Released Party from any and all Causes of Action, whether known or unknown, including any derivative claims, asserted on behalf of the Liquidating Debtors,**

that such Entity would have been legally entitled to assert (whether individually or collectively), based on or relating to, or in any manner arising from in whole or in part, Liquidating Debtors, Liquidating Debtors' in- or out-of-court restructuring efforts, intercompany transactions, the Liquidating Debtors' Chapter 11 Cases, the formulation, preparation, dissemination, negotiation, or filing of the Disclosure Statement, the DIP Facility, the Note Purchase Agreement, the Liquidating Plan, or any Restructuring Transaction, contract, instrument, release, or other agreement or document created or entered into in connection with the RSA, the Disclosure Statement, the DIP Facility, the Note Purchase Agreement, the filing of the Liquidating Debtors' Chapter 11 Cases, the pursuit of Confirmation, the pursuit of Consummation, the administration and implementation of the Liquidating Plan, including the distribution of property under Liquidating Plan or any other related agreement, or upon any other related act or omission, transaction, agreement, event, or other occurrence taking place on or before the Effective Date. Each Releasing Party knowingly grants this release notwithstanding that the Releasing Party may hereafter discover facts in addition to, or different from, those which either the Releasing Party now knows or believes to be true, and without regard to the subsequent discovery or existence of such different or additional facts, and the Releasing Party expressly waives any and all rights that it may have under any statute or common law principle which would limit the effect of the release to those claims actually known or suspected to exist as of the Effective Date. Notwithstanding anything to the contrary in the foregoing, the releases set forth above do not release any post-Effective Date obligations of any party or Entity under the Liquidating Plan or any document, instrument, or agreement (including those set forth in the Plan Supplement) executed to implement the Liquidating Plan. Entry of the confirmation order shall constitute the Court's approval, pursuant to Bankruptcy Rule 9019, of this release, which includes by reference each of the related provisions and definitions contained in the Liquidating Plan, and, further, shall constitute the Court's finding that this release is: (1) in exchange for the good and valuable consideration and substantial contributions provided by the Released Parties; (2) a good faith settlement and compromise of the Claims released by this release; (3) in the best interests of the Releasing Party and all holders of Claims and Interests; (4) fair, equitable, and reasonable; (5) given and made after due notice and opportunity for hearing; and (6) a bar to any of the Releasing Parties asserting any Claim released pursuant hereto.

D.     **Exculpation**

Except as otherwise specifically provided in the Liquidating Plan, no Exculpated Party shall have or incur, and each Exculpated Party is released and exculpated from any Cause of Action for any claim related to any act or omission in connection with, relating to, or arising out of, the Liquidating Debtors' Chapter 11 Cases, the formulation, preparation, dissemination, negotiation, or filing of the RSA and related prepetition transactions, the Disclosure Statement, the Liquidating Plan, the Sale Transaction, or any Restructuring Transaction, contract, instrument, release or other agreement or document created or entered into in connection with the Disclosure Statement, the Sale Transaction, the Liquidating Plan, the RSA, the filing of the Liquidating Debtors' Chapter 11 Cases, the pursuit of Confirmation, the pursuit of Consummation, the administration and implementation of the Liquidating Plan, including distribution of property under the Liquidating Plan or any other related agreement, except for claims related to any act or omission that is determined in a final order to have constituted actual fraud or gross negligence, but in all respects the Exculpated Parties shall be entitled to reasonably rely upon the advice of counsel with respect to their duties and responsibilities pursuant to the Liquidating Plan. The Exculpated Parties have, and upon completion of the Liquidating Plan shall be deemed to have, participated in good faith and in compliance with the applicable laws with regard to the solicitation of votes and distribution of consideration pursuant to the Liquidating Plan and, therefore, are not, and on account of such distributions shall not be, liable at any time for the violation of any applicable law, rule, or

**regulation governing the solicitation of acceptances or rejections of the Liquidating Plan or such distributions made pursuant to the Liquidating Plan.**

E.    **Injunction**

**Except as otherwise expressly provided in the Liquidating Plan or for obligations issued or required to be paid pursuant to the Liquidating Plan or the Confirmation Order, all Entities who have held, hold, or may hold claims or interests that have been released, discharged, or are subject to exculpation are permanently enjoined, from and after the Effective Date, from taking any of the following actions against, as applicable, the Liquidating Debtors, the Exculpated Parties, or the Released Parties: (a) commencing or continuing in any manner any action or other proceeding of any kind on account of or in connection with or with respect to any such claims or interests; (b) enforcing, attaching, collecting, or recovering by any manner or means any judgment, award, decree, or order against such Entities on account of or in connection with or with respect to any such claims or interests; (c) creating, perfecting, or enforcing any encumbrance of any kind against such Entities or the property or the Estates of such Entities on account of or in connection with or with respect to any such claims or interests; (d) asserting any right of setoff, subrogation, or recoupment of any kind against any obligation due from such Entities or against the property of such Entities on account of or in connection with or with respect to any such claims or interests unless such holder has filed a motion requesting the right to perform such setoff on or before the Effective Date, and notwithstanding an indication of a claim or interest or otherwise that such holder asserts, has, or intends to preserve any right of setoff pursuant to applicable law or otherwise; and (e) commencing or continuing in any manner any action or other proceeding of any kind on account of or in connection with or with respect to any such claims or interests released or settled pursuant to the Liquidating Plan.**

F.    **Protection Against Discriminatory Treatment**

In accordance with section 525 of the Bankruptcy Code, and consistent with paragraph 2 of Article VI of the United States Constitution, no Governmental Unit shall discriminate against any Liquidating Debtor, or any Entity with which a Liquidating Debtor has been or is associated, solely because such Liquidating Debtor was a Debtor under chapter 11, may have been insolvent before the commencement of the Chapter 11 Cases (or during the Chapter 11 Cases but before such Liquidating Debtor was granted or denied a discharge), or has not paid a debt that is dischargeable in the Chapter 11 Cases.

G.    **Recoupment**

In no event shall any holder of Claims or Interests be entitled to recoup any Claim or Interest against any claim, right, or Cause of Action of the Liquidating Debtors unless such holder actually has performed such recoupment and provided notice thereof in writing to the Liquidating Debtors on or before the Confirmation Date, notwithstanding any indication in any Proof of Claim or Interest or otherwise that such holder asserts, has, or intends to preserve any right of recoupment.

H.    **Reimbursement or Contribution**

If the Bankruptcy Court disallows a Claim for reimbursement or contribution of an Entity pursuant to section 502(e)(1)(B) of the Bankruptcy Code, then to the extent that such Claim is contingent as of the time of allowance or disallowance, such Claim shall be forever disallowed and expunged notwithstanding section 502(j) of the Bankruptcy Code, unless prior to the Confirmation Date: (1) such Claim has been adjudicated as non-contingent; or (2) the relevant holder of a Claim has filed a non-

contingent Proof of Claim on account of such Claim and a Final Order has been entered prior to the Confirmation Date determining such Claim as no longer contingent.

**ARTICLE IX**

**CONDITIONS PRECEDENT TO THE EFFECTIVE DATE**

A.  **<u>Conditions Precedent to the Effective Date</u>**.

It shall be a condition to the Effective Date that the following conditions shall have been satisfied or waived pursuant to <u>Article IX.B</u> of the Liquidating Plan:

1.  the Bankruptcy Court shall have entered the Confirmation Order, which shall be in form and substance acceptable to the Liquidating Debtors and, solely as it related to their treatment, the Consenting Stakeholders, and shall:

    (a)  authorize the Liquidating Debtors to take all actions necessary to enter into, implement, and consummate the contracts, instruments, releases, leases, indentures, and other agreements or documents created in connection with the Liquidating Plan;

    (b)  decree that the provisions of the Confirmation Order and the Liquidating Plan are nonseverable and mutually dependent;

    (c)  authorize the Plan Administrator or Liquidating Debtors, as applicable or necessary, to make all distributions and issuances as required under the Liquidating Plan, including cash;

    (d)  authorize the implementation of the Liquidating Plan in accordance with its terms; and

    (e)  provide that, pursuant to section 1146 of the Bankruptcy Code, the assignment or surrender of any lease or sublease, and the delivery of any deed or other instrument or transfer order, in furtherance of, or in connection with the Liquidating Plan, including any deeds, bills of sale, or assignments executed in connection with any disposition or transfer of assets contemplated under the Liquidating Plan, shall not be subject to any stamp, real estate transfer, mortgage recording, or other similar tax.

2.  the Court shall have entered an order confirming the Reorganizing Plan, which order shall be in form and substance satisfactory to the Reorganizing Debtor and the Sponsor;

3.  the final version of the Plan Supplement and all of the schedules, documents, and exhibits contained therein shall have been filed in a manner consistent in all material respects with the Liquidating Plan and shall be in form and substance acceptable to the Liquidating Debtors and, solely as it relates to their treatment, the Consenting Stakeholders;

4.  subject to the restrictions stated in <u>Article II.C</u> of this Plan, all Professional fees and expenses of retained professionals required to be approved by the Bankruptcy Court shall have been paid in full or amounts sufficient to pay such fees and expenses after the

36

Effective Date have been reserved pending approval by the Bankruptcy Court;

5. all reasonable and documented fees and expenses of the Prepetition Agent, the Prepetition Lenders, the DIP Agent, and the DIP Lenders shall have been paid, or if objected to, shall have been reserved;

6. All property of the estate of each Liquidating Debtor shall have been reduced to Available Cash; and

7. the Reorganizing Plan Effective Date shall have occurred or be occurring simultaneously with the Effective Date.

## B. Waiver of Conditions Precedent

The Liquidating Debtors may waive any of the conditions to the Effective Date set forth in Article IX.A of the Liquidating Plan at any time without any notice to any other parties in interest and without any further notice to or action, order, or approval of the Bankruptcy Court, and without any formal action other than proceeding to confirm and consummate the Liquidating Plan. Notwithstanding the foregoing, the Liquidating Debtors may only waive conditions to the Effective Date set forth in Article IX.A of the Liquidating Plan that (i) require the consent of the Consenting Stakeholders, (ii) that require the Reorganizing Plan Effective Date to have occurred or be occurring simultaneously, or (iii) that require all property of the estate of each Liquidating Debtor to have been reduced to Available Cash with the consent of the Consenting Stakeholders.

## C. Effect of Non-Occurrence of Conditions to Consummation

If prior to Consummation, the Confirmation Order is vacated pursuant to a Final Order, then except as provided in any order of the Bankruptcy Court vacating the Confirmation Order, the Liquidating Plan will be null and void in all respects, and nothing contained in the Liquidating Plan or Disclosure Statement shall: (a) constitute a waiver or release of any Claims, Interests, or Causes of Action; (b) prejudice in any manner the rights of the Liquidating Debtors or any other Entity; or (c) constitute an admission, acknowledgment, offer, or undertaking of any sort by the Liquidating Debtors or any other Entity.

## ARTICLE X

## MODIFICATION, REVOCATION, OR WITHDRAWAL OF THE LIQUIDATING PLAN

## A. Modification of Liquidating Plan

Effective as of the date hereof, (a) the Liquidating Debtors reserve the right, in accordance with the Bankruptcy Code and the Bankruptcy Rules, to amend or modify the Liquidating Plan before the entry of the Confirmation Order consistent with the terms set forth herein; provided, that the Liquidating Debtors may only amend or modify provisions of the Plan that affect the Consenting Stakeholders before the entry of the Confirmation Order with the consent of the Consenting Stakeholders; and (b) after the entry of the Confirmation Order, the Liquidating Debtors may, upon order of the Bankruptcy Court, amend or modify the Liquidating Plan, in accordance with section 1127(b) of the Bankruptcy Code, to remedy any defect or omission, or reconcile any inconsistency in the Liquidating Plan in such manner as may be necessary to carry out the purpose and intent of the Liquidating Plan consistent with the terms set forth herein.

## B.    Effect of Confirmation on Modifications

Entry of the Confirmation Order shall constitute approval of all modifications to the Liquidating Plan occurring after the solicitation thereof pursuant to section 1127(a) of the Bankruptcy Code and a finding that such modifications to the Liquidating Plan do not require additional disclosure or resolicitation under Bankruptcy Rule 3019.

## C.    Effect of Confirmation on Modifications

Entry of the Confirmation Order shall constitute approval of all modifications to the Liquidating Plan occurring after the solicitation thereof pursuant to section 1127(a) of the Bankruptcy Code and a finding that such modifications to the Liquidating Plan do not require additional disclosure or resolicitation under Bankruptcy Rule 3019.

## D.    Withdrawal of Plan

The Liquidating Debtors reserve the right to withdraw the Liquidating Plan before the Confirmation Date and to file subsequent chapter 11 plans.  If the Liquidating Debtors withdraw the Liquidating Plan, or if the Confirmation Date or the Effective Date does not occur, then: (a) the Liquidating Plan will be null and void in all respects; (b) any settlement or compromise embodied in the Liquidating Plan, assumption of Executory Contracts or Unexpired Leases effected by the Liquidating Plan, and any document or agreement executed pursuant hereto will be null and void in all respects; and (c) nothing contained in the Liquidating Plan shall (1) constitute a waiver or release of any Claims, Interests, or Causes of Action, (2) prejudice in any manner the rights of the Liquidating Debtors or any other Entity, or (3) constitute an admission, acknowledgement, offer, or undertaking of any sort by the Liquidating Debtors or any other Entity.

## ARTICLE XI

## RETENTION OF JURISDICTION

Notwithstanding the entry of the Confirmation Order and the occurrence of the Effective Date, the Bankruptcy Court shall retain exclusive jurisdiction over all matters arising out of, or related to, the Liquidating Debtors' Chapter 11 Cases and the Liquidating Plan pursuant to sections 105(a) and 1142 of the Bankruptcy Code, including jurisdiction to:

1.    allow, disallow, determine, liquidate, classify, estimate, or establish the priority, secured or unsecured status, or amount of any Claim or Interest, including the resolution of any request for payment of any Claim or Interest and the resolution of any and all objections to the secured or unsecured status, priority, amount, or allowance of Claims or Interests;

2.    decide and resolve all matters related to the granting and denying, in whole or in part, any applications for allowance of compensation or reimbursement of expenses to Professionals authorized pursuant to the Bankruptcy Code or the Liquidating Plan;

3.    resolve any matters related to Executory Contracts or Unexpired Leases, including: (a) the assumption or assumption and assignment of any Executory Contract or Unexpired Lease to which a Liquidating Debtor is party or with respect to which a Liquidating Debtor may be liable and to hear, determine, and, if necessary, liquidate, any Cure or Claims arising therefrom, including pursuant to section 365 of the Bankruptcy Code; (b) any potential contractual obligation under any Executory Contract or Unexpired Lease that is assumed; and (c) any dispute

regarding whether a contract or lease is or was executory or expired;

4.      ensure that distributions to holders of Allowed Claims are accomplished pursuant to the provisions of the Liquidating Plan and adjudicate any and all disputes arising from or relating to distributions under the Liquidating Plan;

5.      adjudicate, decide, or resolve any motions, adversary proceedings, contested or litigated matters, and any other matters, and grant or deny any applications involving a Liquidating Debtor that may be pending on the Effective Date;

6.      enter and implement such orders as may be necessary or appropriate to execute, implement, or consummate the provisions of (a) contracts, instruments, releases, indentures, and other agreements or documents approved by Final Order in the Liquidating Debtors' Chapter 11 Cases and (b) the Liquidating Plan, the Confirmation Order, and contracts, instruments, releases, indentures, and other agreements or documents created in connection with the Liquidating Plan;

7.      enforce any order for the sale of property pursuant to sections 363, 1123, or 1146(a) of the Bankruptcy Code;

8.      grant any consensual request to extend the deadline for assuming or rejecting Unexpired Leases pursuant to section 365(d)(4) of the Bankruptcy Code;

9.      issue injunctions, enter and implement other orders, or take such other actions as may be necessary or appropriate to restrain interference by any Entity with Consummation or enforcement of the Liquidating Plan;

10.     hear, determine, and resolve any cases, matters, controversies, suits, disputes, or Causes of Action in connection with or in any way related to the Liquidating Debtors' Chapter 11 Cases, including: (a) with respect to the repayment or return of distributions and the recovery of additional amounts owed by the holder of a Claim or an Interest for amounts not timely repaid pursuant to <u>Article VI.E.1</u> of the Liquidating Plan; (b) with respect to the releases, injunctions, and other provisions contained in <u>Article VIII</u> of the Liquidating Plan, including entry of such orders as may be necessary or appropriate to implement such releases, injunctions, and other provisions; (c) that may arise in connection with the Consummation, interpretation, implementation, or enforcement of the Liquidating Plan, the Confirmation Order, and contracts, instruments, releases, indentures, and other agreements or documents created in connection with the Liquidating Plan; or (d) related to section 1141 of the Bankruptcy Code;

11.     enter and implement such orders as are necessary or appropriate if the Confirmation Order is for any reason modified, stayed, reversed, revoked, or vacated;

12.     consider any modifications of the Liquidating Plan, to cure any defect or omission, or to reconcile any inconsistency in any Bankruptcy Court order, including the Confirmation Order;

13.     hear and determine matters concerning state, local, and federal taxes in accordance with sections 346, 505, and 1146 of the Bankruptcy Code;

14.     enter an order or Final Decree concluding or closing the Liquidating Debtors' Chapter 11 Cases;

15.     enforce all orders previously entered by the Bankruptcy Court; and

16.      hear any other matter not inconsistent with the Bankruptcy Code.

## ARTICLE XII

## MISCELLANEOUS PROVISIONS

**A.      Immediate Binding Effect**

Subject to Article IX.A hereof and notwithstanding Bankruptcy Rules 3020(e), 6004(h), or 7062 or otherwise, upon the occurrence of the Effective Date, the terms of the Liquidating Plan shall be immediately effective and enforceable and deemed binding upon the Liquidating Debtors and any and all holders of Claims or Interests (irrespective of whether such Claims or Interests are deemed to have accepted the Liquidating Plan), all Entities that are parties to or are subject to the settlements, compromises, releases, discharges, and injunctions described in the Liquidating Plan, each Entity acquiring property under the Liquidating Plan, and any and all non-Debtor parties to Executory Contracts and Unexpired Leases with the Liquidating Debtors.

**B.      Additional Documents**

On or before the Effective Date, the Liquidating Debtors may file with the Bankruptcy Court such agreements and other documents as may be necessary or appropriate to effectuate and further evidence the terms and conditions of the Liquidating Plan.  The Liquidating Debtors and all holders of Claims and Interests receiving distributions pursuant to the Liquidating Plan and all other parties in interest shall, from time to time, prepare, execute, and deliver any agreements or documents and take any other actions as may be necessary or advisable to effectuate the provisions and intent of the Liquidating Plan.

**C.      Payment of Statutory Fees**

All fees payable pursuant to 28 U.S.C. § 1930(a) shall be paid for each quarter (including any fraction thereof) until the Liquidating Debtors' Chapter 11 Cases are converted, dismissed, or a Final Decree is issued, whichever occurs first.

**D.      Reservation of Rights**

Except as expressly set forth herein, the Liquidating Plan shall have no force or effect unless the Bankruptcy Court shall enter the Confirmation Order.  None of the filing of the Liquidating Plan, any statement or provision contained in the Liquidating Plan, or the taking of any action by the Liquidating Debtors with respect to the Liquidating Plan, or the Disclosure Statement shall be or shall be deemed to be an admission or waiver of any rights of the Liquidating Debtors with respect to the holders of Claims or Interests prior to the Effective Date.

**E.      Successors and Assigns**

The rights, benefits, and obligations of any Entity named or referred to in the Liquidating Plan shall be binding on, and shall inure to the benefit of any heir, executor, administrator, successor or assign, Affiliate, officer, director, agent, representative, attorney, beneficiaries, or guardian, if any, of each Entity.

**F.      Service of Documents**

After the Effective Date, any pleading, notice, or other document required by the Liquidating

Plan to be served on or delivered to the Liquidating Debtors shall be served on:

| | |
|---|---|
| If to the Liquidating Debtors: | Fore Aero Holdings, LLC<br>Fore Machine, LLC<br>Fore Capital Holding, LLC<br>5933 Eden Drive<br>Haltom City, Texas 76117<br>Attn.: Jens Verloop<br>jverloop@foreaero.com |
| Proposed Counsel to the Liquidating Debtors | Winston & Strawn LLP<br>200 Park Avenue<br>New York, New York 10166<br>Attention:      Timothy Walsh<br>                    James Bentley<br>                    Katherine A. Preston<br>                    Emma Fleming<br>Telephone: (212) 294-6700<br>twwalsh@winston.com<br>jbentley@winston.com<br>kpreston@winston.com<br>efleming@winston.com |
| United States Trustee | Office of the United States Trustee for the Northern District of Texas<br>Earle Cabell Federal Building<br>1100 Commerce Street, Room 976<br>Dallas, Texas 75242<br>Attention: Erin Schmidt and<br>                 Elizabeth A. Young<br>Erin.Schmidt2@usdoj.gov<br>Elizabeth.A.Young@usdoj.gov |

## G.    Term of Injunctions or Stays

Unless otherwise provided herein or in the Confirmation Order, all injunctions or stays in effect in the Liquidating Debtors' Chapter 11 Cases (pursuant to sections 105 or 362 of the Bankruptcy Code or any order of the Bankruptcy Court) and existing on the Confirmation Date (excluding any injunctions or stays contained in the Liquidating Plan or the Confirmation Order) shall remain in full force and effect until the Effective Date.  All injunctions or stays contained in the Liquidating Plan or the Confirmation Order shall take effect on the Effective Date, and, thereafter, remain in full force and effect in accordance with their terms.

## H.    Entire Agreement

Except as otherwise indicated, the Liquidating Plan supersedes all previous and contemporaneous negotiations, promises, covenants, agreements, understandings, and representations on such subjects, all of which have become merged and integrated into the Liquidating Plan.

I.      **Liquidating Plan Supplement Exhibits**

All exhibits and documents included in the Plan Supplement are incorporated into and are a part of the Liquidating Planas if set forth in full in the Liquidating Plan.  After the exhibits and documents are filed, copies of such exhibits and documents shall be made available upon written request to the Liquidating Debtor's counsel at the address above or by downloading such exhibits and documents from https://cases.stretto.com/ForeMachine     or     the     Bankruptcy     Court's     website     at www.txs.uscourts.gov/bankruptcy.  Unless otherwise ordered by the Bankruptcy Court, to the extent any exhibit or document in the Plan Supplement is inconsistent with the terms of any part of the Liquidating Plan that does not constitute the Plan Supplement, such part of the Liquidating Plan that does not constitute the Plan Supplement shall control.

J.      **Non-Severability**

The provisions of the Liquidating Plan, including its release, injunction, exculpation and compromise provisions, are mutually dependent and non-severable.  The Confirmation Order shall constitute a judicial determination and shall provide that each term and provision of the Liquidating Plan is: (a) valid and enforceable pursuant to its terms; (b) integral to the Liquidating Plan and may not be deleted or modified without the consent of the Liquidating Debtors; and (c) nonseverable and mutually dependent.

K.      **Votes Solicited in Good Faith**

Upon entry of the Confirmation Order, the Liquidating Debtors will be deemed to have solicited votes on the Liquidating Plan in good faith and in compliance with the Bankruptcy Code, and pursuant to section 1125(e) of the Bankruptcy Code, the Liquidating Debtors and each of their respective Affiliates, agents, representatives, members, principals, shareholders, officers, directors, employees, advisors, and attorneys will be deemed to have participated in good faith and in compliance with the Bankruptcy Code and, therefore, neither any of such parties or individuals or the Liquidating Debtors will have any liability for the violation of any applicable law, rule, or regulation governing the solicitation of votes on the Liquidating Plan.

L.      **Closing of Liquidating Debtors' Chapter 11 Cases**

The Plan Administrator or Holdings shall, promptly after the Effective Date of the Liquidating Plan, file with the Bankruptcy Court all documents required by Bankruptcy Rule 3022 and any applicable order of the Bankruptcy Court to close the Chapter 11 Cases for the Debtor Affiliates.

M.      **Dissolution of Creditors' Committee**

On the Effective Date, the Creditors' Committee shall dissolve, and the members thereof shall be released and discharged from all rights and duties arising from, or related to, the Liquidating Debtors' Chapter 11 Cases.

N.      **Waiver or Estoppel**

Each holder of a Claim or an Interest shall be deemed to have waived any right to assert any argument, including the right to argue that its Claim or Interest should be Allowed in a certain amount, in a certain priority, Secured or not subordinated by virtue of an agreement made with the Liquidating Debtors or their counsel, or any other Entity, if such agreement was not disclosed in the Liquidating Plan, the Disclosure Statement, the RSA, or papers filed with the Bankruptcy Court prior to the Confirmation

Date.

[*Remainder of page intentionally left blank.*]

FORE AERO HOLDINGS, LLC
FORE MACHINE, LLC
FORE CAPITAL HOLDING, LLC


*/s/ Jens Verloop*
Jens Verloop
Chief Financial Officer