Robert Lapowsky
PA Bar No. 30991
**STEVENS & LEE, P.C.**
620 Freedom Business Center, Suite 200
King of Prussia, Pennsylvania 19406
(215) 751-2866
robert.lawpowsky@stevenslee.com

Joe E. Marshall
Texas Bar No. 13031100
**MARSHALL LAW**
2626 Cole Avenue, Suite 300
Dallas, Texas 75204
(214) 579-9173
jmarshall@marshalllaw.net

David W. Giattino
DE Bar No. 5614
**STEVENS & LEE, P.C.**
919 North Market Street, Suite 1300
Wilmington, Delaware 19801
(302) 654-5180
david.giattino@stevenslee.com

*Attorneys for NewSpring Mezzanine Capital III, L.P.*
*and Southfield Mezzanine Capital, L.P.*

**UNITED STATES BANKRUPTCY COURT**
**NORTHERN DISTRICT OF TEXAS**

| | |
|---|---|
| In re: | Chapter 11 |
| FORE MACHINE, LLC, *et al.*,[1] | Case No. 22-40487 |
| Debtors. | (Jointly Administered) |

**EMERGENCY MOTION OF NEWSPRING MEZZANINE CAPITAL III, L.P. AND SOUTHFIELD MEZZANINE CAPITAL, L.P. FOR DETERMINATION OF EFFECTIVE DATE OF AERO COMPONENTS, LLC PLAN OF REORGANIZATION**

**TO THE HONORABLE MARK X. MULLIN, U.S. BANKRUPTCY JUDGE:**

NewSpring Mezzanine Capital III, L.P. ("NewSpring") and Southfield Mezzanine Capital, L.P. (together with NewSpring, the "Lenders"), by and through their undersigned counsel, file this emergency motion for determination of the Effective Date of the Aero Components, LLC Plan of

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are: Fore Machine, LLC (1850), Fore Aero Holdings, LLC (2671), Fore Capital Holding, LLC (2920), and Aero Components, LLC (8616).

1

Reorganization (the "Motion"). In support of this Motion, the Lenders aver as follows:

## PARTIES, JURISDICTION & VENUE

1. Fore Machine, LLC ("Machine"), Fore Aero Holdings, LLC ("Holdings"), Fore Capital Holding, LLC ("Capital") and Aero Components, LLC ("Aero" and, collectively with Machine, Holdings and Capital, the "Debtors") filed petitions for relief (the "Bankruptcy Petition") under Chapter 11 of the United States Bankruptcy Code, 11 U.S.C. §§101 *et. seq.* (the "Bankruptcy Code")[2] on March 7, 2022 (the "Petition Date").

2. Pursuant to Section 1107 of the Bankruptcy Code, the Debtors remain in possession of their assets as debtor-in-possession.

3. The Court has jurisdiction of this contested matter pursuant to 28 U.S.C. §§ 157 and 1334.

4. This contested matter is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(A) and (G).

5. To the extent it is determined by final order or judgment of the Court that, absent the consent of the parties, this Court cannot enter a final order or judgment in this contested matter consistent with Article III of the United States Constitution, the Lenders consent to the entry of such final order or judgment.

6. The statutory basis for the relief sought by Lenders in this Motion is Section 105 of the Bankruptcy Code.

7. Venue in this Court is proper pursuant to 28 U.S.C. § 1409.

## SUMMARY OF REASONS FOR MOTION AND STATUS OF CASES

8. That the Lenders need to bring this Motion is extremely troubling. It is the result of

---

[2] Capitalized terms used but not defined herein shall have the meaning stated in the Bankruptcy Code.

a clear breach of fiduciary duty by the directors of the Debtors that has placed Aero in immediate jeopardy at what could not be a more critical time.

9. NewSpring is the administrative agent for itself and Southfield pursuant to an agreement (the "Note Purchase Agreement") entered into by the Debtors, NewSpring and Southfield on February 23, 2017.

10. Pursuant to the Note Purchase Agreement, the Lenders made loans to the Debtors (the "Prepetition Loans"). The Prepetition Loans have a current amount due of slightly in excess of Twenty Four Million Dollars ($24,000,000). The Prepetition Loans are secured by liens on substantially all of the Debtors' assets.

11. NewSpring is also the administrative agent for itself and Southfield pursuant to an agreement (the "DIP Loan Agreement") entered into by the Debtors, NewSpring and Southfield on March 11, 2022.

12. Pursuant to the DIP Loan Agreement, the Lenders made loans to the Debtors (the "DIP Loans"). The DIP Loans have a current amount due of slightly in excess of Two Million Five Hundred Thousand Dollars ($2,500,000). The DIP Loans are secured by first priority liens on substantially all of the Debtors' assets.

13. Pursuant to the Debtors' organizational documents, P4G Capital Management, LLC or its affiliates (collectively, "P4G") control the Debtors. That control is manifested through the power to appoint a majority of the members of the boards of directors of the Debtors.

14. Two of the members of the board of directors of the Debtors are Rachel Lehman ("Lehman") and Hugh Browne ("Browne"), each of whom is an employee of a P4G entity.

15. On the Petition Date, the Debtors filed *Aero Component LLC's Chapter 11 Plan of Reorganization* (the "Original Aero Plan") [Docket No. 14].

16. Pursuant to the Original Aero Plan, among other things, (a) the Lenders were to be paid $19,500,000 in full satisfaction of the Prepetition Loan and were to be paid the full amount due on account of the DIP Loans, and (b) a P4G related entity was to act as the "Sponsor" and, among other things, was to provide the funding needed to pay the compromised amount of the Prepetition Loan and the full amount of the DIP Loans.

17. The hearing to consider confirmation of the Original Aero Plan (the "Confirmation Hearing") was scheduled for May 10, 2022.

18. Approximately three weeks before the Confirmation Hearing, Lehman advised the Lenders that P4G was unwilling to act as the Sponsor under the Original Aero Plan.

19. P4G's decision to back out of its agreement to sponsor the Original Aero Plan was shocking to the Lenders. The Original Aero Plan (including the compromise of the Prepetition Loan) was the culmination of months of contentious and expensive negotiations pre-dating the Petition Date. When final agreement was reached on the Original Aero Plan (days prior to the Petition Date), the Lenders believed that P4G had done whatever diligence it felt was needed to follow-through on the plan and that, as long as confirmation could be achieved promptly, P4G would perform. Yet, barely a month after the Petition Date, P4G pulled out.

20. Needless to say, P4G's decision to abandon the Original Aero Plan threw the Debtors' cases into turmoil and created tremendous uncertainty among vendors to, and customers of, Aero as well as Aero's employees.

21. In order to salvage the best from a bad situation, the Lenders agreed to step into the role of sponsor of a plan for Aero. However, it was apparent that time was of the essence. As a result, the Lenders decided that, rather than start over and propose the plan for Aero that they would have if writing on a blank slate, they decided to become sponsor under an amended plan

that changed only their treatment in order to avoid the need to re-solicit votes. That decision was difficult because the Lenders, given that they were to be paid off, had limited their input to the terms of the Original Aero Plan to terms that directly affected their anticipated payments.

22. On May 7, 2022, the Debtors filed the *First Amended and Restated Aero Component LLC's Chapter 11 Plan of Reorganization* (the "Amended Aero Plan.) [Docket No. 329] pursuant to which, among other things, (a) the Lenders or an entity owned by the Lenders would be the "Sponsor" and become the post-effective date owners of Aero, and (b) rather than being paid on the effective date, the $19,500,000 portion of the Prepetition Loan and the entire amount of the DIP Loans would be restructured into obligations with a five year maturity.

23. On May 16, 2022, the Court entered the (a) Findings of Fact, Conclusions of Law, and Order (I) Approving Aero Component LLC's Disclosure Statement on a Final Basis and (II) Confirming Aero Component LLC's Chapter 11 Plan of Reorganization (the "Aero Confirmation Order") [Docket No. 401].

24. Since entry of the Aero Confirmation Order, the Lenders, in cooperation with employees of Aero and counsel to Aero, have been working tirelessly to prepare Aero for the effective date of the Amended Aero Plan (the "Aero Effective Date"). Among other things, the Lenders and employees of Aero have been in communication with vendors (many of whom hold prepetition claims that are to be paid in full under the Amended Aero Plan) and customers. In the course of those conversations, vendors and customers have consistently been told that the Aero Effective Date was imminent.

25. The importance of the Aero Effective Date occurring cannot be overstated. Put simply, every day that passes without the occurrence of the Aero Effective Date does substantial harm to Aero's credibility with its employees, vendors and customers.

26. Nor is the importance of the occurrence of the Aero Effective Date subject to dispute. To the contrary, in paragraph 8 of the motion filed by the Debtors on May 26, 2022 seeking an amendment to the order approving the DIP Loan Agreement (the "DIP Amendment Motion") [Docket No. 416], the Debtors stated, "*It is important to the success of Aero that the "Effective Date," as defined in the [Aero Plan] occur as soon as possible.*"

27. Pursuant to Article IX of the Amended Aero Plan, the Aero Effective Date was to occur upon the satisfaction or waiver of certain conditions (the "Aero Effective Date Conditions").

28. The Aero Effective Date Conditions have been satisfied. However, apparently driven by concerns first raised to the Lenders on May 31, 2022, regarding the impact of the Aero Effective Date occurring before the effective date of the plan of liquidation for Machine, Holdings and Capital (the "Liquidating Plan Effective Date"), P4G has refused to allow Aero to agree that the Aero Effective Date should be declared. As a result, Aero remain in limbo and continues to suffer damage.

29. P4G's position that the Aero Plan Effective Date cannot occur prior to the Liquidating Plan Effective Date is indefensible. While it is true that one of the Aero Effective Date Conditions is that the order confirming the plan of liquidation for Machine, Holdings and Capital (the "Liquidating Debtors' Plan) have been entered, that has happened. But, it is not an Aero Effective Date Condition that the Liquidating Debtors' Plan has gone effective. *See* Aero Plan, Article IX A. 2.

30. Further, it has been common knowledge for at least a month that the two plans would not go effective at the same time. That is because, as noted, Aero is an operating business and it desperately needs to exit these proceedings while, on the other hand, Machine is in liquidation and needs to complete an auction of its equipment, which is located on leased premises.

And the lease of those premises is deemed rejected (and the automatic stay terminates) on the Liquidating Plan Effective Date.

31. In fact, in the DIP Amendment Motion, the Debtors confirmed their understanding that the effective dates would not occur together when they stated, "*However, due to the need to complete the liquidation of Machine's assets, the [Liquidating Plan Effective Date] will not occur until sometime after the Aero Plan Effective Date.*" DIP Amendment Motion, ¶8. The Court will likely recall similar statements by Debtors' counsel during the hearing on the DIP Amendment Motion and at other hearings.

32. To be fair, PG4 has raised other concerns regarding the impact of the Aero Effective Date occurring prior to the Liquidating Plan Effective Date, some of which are legitimate. For example, Machine likely needs access to certain Aero employees to complete the pending auction of its equipment. And, the Lenders have told P4G that they are prepared to discuss arrangements to have Aero provide that support. In fact, it is in the Lenders economic interest to do so since, after payment of other expenses, they are the sole residual beneficiaries of the auction. However, just as clearly, this is an issue that should have been raised by P4G weeks ago, not on the eve of the Aero Effective Date. And, in any event, no Aero Effective Date Condition requires that Aero have entered into an agreement to provide support to Machine and P4G holding the Aero Effective Date hostage to such an agreement is a clear violation of its fiduciary duties to Aero.

## **REQUESTS FOR RELIEF**

33. On request of a party in interest and after notice and a hearing, the Court is authorized under 11 U.S.C.A. § 105 to issue any order necessary to carry out the provisions of the Bankruptcy Code.

34. Under the circumstances, it is necessary for the Court to enter an order determining

05/05/2022 SL1 1784567v2 101921.00055

that the Aero Effective Date Conditions have been satisfied (or deemed waived) and that the Aero Effective Date has occurred and to compel a filing of the Notice of Occurrence of Effective Date.

WHEREFORE, the Lenders respectfully requests that the Court enter an order pursuant to 11 U.S.C. § 105 determining that the Aero Effective Date Conditions have been satisfied (or deemed waived) and that the Aero Effective Date has occurred, compelling the Debtor to immediately file a Notice of Occurrence of Effective Date, and granting all such other relief as may be just and proper.

Dated: June 3, 2022

/s/ *Joe E. Marshall*
Joe E. Marshall
Bar No. 13031100
Marshall Law
2626 Cole Ave., Suite 300
Dallas, Texas 75204
(214) 579-9173
Jmarshall@MarshallLaw.net

-and-

Robert Lapowsky
PA Bar No. 30991
STEVENS & LEE, P.C.
620 Freedom Business Center, Suite 200
King of Prussia, PA. 19406
Tel. (215) 751-2866
robert.lapowsky@stevenslee.com

-and-

David W. Giattino
DE Bar No. 5614
STEVENS & LEE, P.C.
919 North Market Street, Suite 1300
Wilmington, Delaware 19801
Tel. (302) 425-2608
david.giattino@stevenslee.com

*Attorneys for NewSpring Mezzanine Capital III, L.P. and Southfield Mezzanine Capital, L.P.*

## CERTIFICATE OF SERVICE

      I hereby certify that on June 3, 2022, a true and correct copy of the foregoing Motion was served (i) electronically by the Court's PACER system on parties receiving notice thereunder, and additionally (ii) on the following parties by electronic mail.

    James Bentley (Attorney for the Debtors)
    *JBentley@Winston.com*

    Timothy W. Walsh (Attorney for the Debtor)
    *TWWalsh@Winston.com*

    Jermaine Watson (Attorney for the Unsecured Creditors' Committee)
    *jwatson@canteyhanger.com*

    Elizabeth Ziegler Young (Attorney for the US Trustee)
    *Elizabeth.A.Young@usdoj.gov*

                            */s/ Joe Marshall*
                            Joe Marshall

05/05/2022 SL1 1784567v2 101921.00055