Joyce W. Lindauer
State Bar No. 21555700
Joyce W. Lindauer Attorney, PLLC
1412 Main St., Suite 500
Dallas, Texas 75202
Telephone: (972) 503-4033
Facsimile: (972) 503-4034
ATTORNEYS FOR GL EDEN, LLC

**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE NORTHERN DISTRICT OF TEXAS**
**FORT WORTH DIVISION**

| | | |
|---|---|---|
| **IN RE:** | § | |
| | § | |
| **FORE MACHINE, LLC et al.,** | § | **CASE NO. 22-40487-mxm11** |
| | § | **CHAPTER 11** |
| **Debtors.** | § | **(Jointly Administered)** |

**SECOND AMENDED APPLICATION TO APPROVE**
**PAYMENT OF ADMINISTRATIVE EXPENSE CLAIM**

**TO THE HONORABLE UNITED STATES BANKRUPTCY COURT:**

**COMES NOW** GL Eden, LLC ("GL Eden") through its principal, David Fong ("Fong"), a creditor in the above styled and numbered bankruptcy case, and files this its First Amended Application to Approve Payment of Administrative Expense Claim ("Application") and in support of same would respectfully show the Court as follows:

1.     This Court has jurisdiction over this matter pursuant to 28 U.S.C. §1334.   This is a core proceeding pursuant to 28 U.S.C. §157(b)(2).   Venue of the Chapter 11 case and the Motion in this district is proper pursuant to 28 U.S.C. §§ 1408 and 1409.   GL Eden files this Application pursuant to 11 U.S.C. § 503(a) and (b), and Federal Bankruptcy Rule 2016(a).

2.     On March 7, 2022, the Debtors filed a voluntary petition for relief under Chapter 11 of the Bankruptcy Code.

3.      On May 16, 2022, this Court entered its *Findings of Fact, Conclusions of Law, and Order (i) Approving Liquidating Debtors' Joint Disclosure Statement on a Final Basis and (ii) Confirming Liquidating Debtor's Joint Chapter 11 Plan of Liquidation* [Dkt. No. 400].

4.      Eden Forth Worth Industrial, LLC ("Eden Fort Worth") leased certain commercial real properties located generally at 5933 Eden Drive, Haltom City, Texas 76117 (the "Property") to the Debtors.   Subsequent to the Petition Date, Eden Fort Worth sold the aforementioned Property to GL Eden, the successor in interest to Eden Fort Worth.   Debtors rejected their pre-petition unexpired lease and/or leases and vacated said Property on or about July 31, 2022.   When they did so, they failed to remove a large amount of hazardous waste and industrial solid waste that they abandoned on site, requiring GL Eden to undertake its removal in accordance with federal law and Texas Commission on Environmental Quality ("TCEQ") requirements.   GL Eden's post-petition administrative expenses consisting of those waste removal costs currently amount to $391,368.00.   This estimate was provided to GL Eden by its third-party vendor, Ingenium Group, LLC ("Ingenium) a company specializing in waste removal.   A copy of the Sales Order (i.e. invoice) dated November 15, 2022 and paid on November 17, 2022, is attached hereto as **Exhibit "A**."   In addition to this amount, corporate representatives from Ingenium have provided GL Eden with an additional verbal estimate of $10,500.00 for the removal of contaminated barrels ($500.00) and decontamination of a runoff pit and a ceiling structure ($10,000.00 combined). Upon receipt of its invoice for these amounts, GL Eden shall supplement this application with a copy of that invoice.

5.      In its original Application to Approve Payment of Administrative Expense Claim filed August 4, 2022 (Doc. No. 531), GL Eden estimated the cost of removal of the Debtors' waste to be $45,000.00. This estimate was based on the Debtors' representation of the expected costs at

the time, which proved to be far too low. Upon further inspection of the Property by the Debtors, and through the Ingenium's ongoing services and estimate of required future services, the actual costs to be incurred are at least $401,868.00 ($391,368.00 already paid and $10,500.00 estimated future costs as mentioned *supra*), and may increase as the actual work of clean-up and remediation is commenced.

6.      GL Eden seeks reimbursement of the above expenses as an "actual, necessary cost and expense of preserving the estate" under 11 U.S.C. § 503(b)(1)(A), alternatively as a "substantial contribution" to this case under Section 503(b)(3)(D):

a.      **Section 503(b)(1)(A).**   The cost of clean-up and removal of the wastes is an "actual and necessary" administrative expense under 11 U.S.C. § 503(b)(1)(A) because the Debtors' estates are responsible by law for the removal of waste.  The creation, storage, and disposal (and duties related thereto) of hazardous wastes and industrial solid wastes is governed by, among other things, Texas' Solid Waste Disposal Act ("SWDA"), the federal Resource Conservation and Recovery Act ("RCRA"), and the federal Comprehensive Environmental Response, Compensation and Liability Act, ("CERCLA").[1] Because the estates, as they may be succeeded by the Plan Administrator in this case, are obligated to pay for the cost of disposal, clean-up, and removal, if they refuse and leave this task to GL Eden then GL Eden has an administrative claim. In *Midlantic Nat. Bank v. N.J. Dept. of Envtl. Prot.*, 474 U.S. 494 (1986), the Supreme Court established that a trustee or debtor-in-possession may not abandon property in contravention of a statute or regulation that is designed to protect public health and/or safety. The District Court for the Northern District of Texas further explained as follows:

---

[1] See Tex. Health and Safety Code, Chapter 361 (SWDA), 42 U.S.C. Chapter 82, §§ 6901 et seq (RCRA), and 42 U.S.C.A. §§ 9601-9657 (CERCLA).

> In the context of environmental claims, the meaning of "preserving the estate" under Section 503 of the Code has been expanded to encompass protection of the environment and public health. The Supreme Court in Midlantic National Bank v. New Jersey Department of Environmental Protection, 474 U.S. 494, 106 S.Ct. 755, 88 L.Ed.2d 859 (1986), enunciated the obligations of a bankruptcy trustee or a debtor-in-possession in ensuring that the environment and public health are not unduly degraded: [A]nyone in possession of the site . . . must comply with the environmental laws. . . . Plainly, that person or firm may not maintain a nuisance, pollute the waters of the State, or refuse to remove the source of such conditions. … The Supreme Court in Midlantic further restricted the ability of a trustee or debtor to abandon property where such abandonment would result in "imminent and identifiable harm" to the public health or safety.

*In re Nat'l Gypsum Co.*, 139 B.R. 397, 413 (N.D. Tex. 1992). (See additional argument and authorities regarding the Debtors' statutory obligations under the SWDA, RCRA and CERCLA to clean up and remove their hazardous waste in GL Eden's *Response* to the *Objection to Application to Approve Payment of Administrative Expense Claim* filed by NewSpring Mezzanine Capital III, L.P. and Southfield Mezzanine Capital, L.P. The *Response* is filed concurrently herewith, and the argument and authorities expressed therein are incorporated herein by reference.)

        b.      **Section 503(b)(3)(D)**. Pursuant 11 U.S.C § 503(b)(3)(D), the Court may award an administrative expense claim if a creditor makes a "substantial contribution in a case under chapter 9 or 11 of this title". The Fifth Circuit established the elements of a substantial contribution claim in *In re DP Partners, Ltd. Pshp.,* 106 F.3d 667 (5th Cir. 1997), as follows:

> …[S]ection 503 patently states that a creditor is entitled to actual and necessary expenses "incurred … in making a substantial contribution in a case under chapter 9 or 11." Finding no statutory definition and nothing in the entire statutory scheme or legislative history to indicate a contrary intent, we abide by the canon that words in a statute are to be given their "ordinary, everyday" meaning. Thus, the phrase "substantial contribution" in section 503 means a contribution that is "considerable in amount, value or worth."
> …
>
> The development of a more concrete standard of substantial contribution is best left on a case-by-case basis. At a minimum, however, the court should weigh the cost of the claimed fees and expenses against the benefits conferred upon the estate which flow directly from those actions. Benefits flowing to only a portion of the

estate or to limited classes of creditors are necessarily diminished in weight. Finally, to aid the district and appellate courts in the review process, bankruptcy judges should make specific and detailed findings on the substantial contribution issue.

*Id.* at 673.

7.      GL Eden submits that if is forced to do the Debtors' job and fulfill their statutory obligations to clean-up and remove the hazardous waste it will have made such a "substantial contribution" and should be compensated with an administrative expense claim under Section 503(b)(3)(D), in the alternative to an expense under the "actual, necessary costs and expenses of preserving the estate" standard of Section 503(b)(1)(A).   Such a remediation effort clearly will be "considerable in amount, value or worth" (the preliminary estimate for the work is $391,368.00, as discussed above). Because the expense is the responsibility of the estates or the Plan Administrator under federal and state law and cannot be avoided, GL Eden's incurrence of the expense confers an equal and direct benefit to the entire estate.

8.      One exception to the benefit requirement noted *supra* is torts committed by the trustee or debtor-in-possession while operating the business.[2]   Commonly known as the *Reading* exception, it is an "exception to the requirement that there be an actual benefit to the estate before a claim can be accorded administrative priority [when] torts [are] committed by the trustee or debtor-in-possession during the course of a chapter 11 proceeding."[3]   "Generally, when a tort is committed post-petition, the two important factors in determining whether a claimant qualifies for the Reading exception in the Fifth Circuit are: (1) the wrongful nature of the trustee's, or debtor-in-possession's, act; and (2) whether the act was committed in the course of operating the debtor's

---

[2] *Reading Co. v. Brown*, 391 U.S. 471, 485, 88 S. Ct. 1759, 20 L. Ed. 2d 751 (1968).
[3] *In re Krisu Hosp., LLC*, No. 19-20347-rlj11, 2021 Bankr. LEXIS 788, at *9 (Bankr. N.D. Tex. Mar. 26, 2021) quoting *In re ATP Oil & Gas Corp.*, No. 12-36187, 2014 Bankr. LEXIS 1050, 2014 WL 1047818, at *9 (Bankr. S.D. Tex. Mar. 18, 2014).

business."[4]    Here, the act in question was the Debtors' post-petition abandonment of hazardous waste and industrial solid waste on GL Eden's property despite being aware of Debtors' obligations for cataloguing, removal, disposal, remediation, and clean-up of said waste, and as supported by the actions of the Secured Lenders to aid in said abandonment.

9.    Further, since GL Eden paid the obligation of the Debtors to remove, dispose, remediate, and clean up the waste that the Debtors improperly abandoned on GL Eden's real property, GL Eden is equitably subrogated to the rights of the Debtor and should receive payment for its administrative expense claim for the costs of that effort to decontaminate the site. "Equitable subrogation applies in every instance in which one person, not acting voluntarily, has paid a debt for which another was primarily liable and which in equity should have been paid by the latter. Thus, a party seeking equitable subrogation must show it involuntarily paid a debt primarily owed by another in a situation that favors equitable relief."[5]    The purpose of equitable subrogation "is to prevent the unjust enrichment of the debtor who owed that debt that is paid."[6] Here, GL Eden has paid $391,368.00 to date to deal with the decontamination and clean-up of their real property and removal of its wastes that was the responsibility of the Debtors.    It did so involuntarily.    Forcing GL Eden to bear that cost while allowing the Debtors to simply walk away from it, and while also allowing the Secured Lenders who seek to receive the monies held in reserve for the purpose of such removal, disposal, remediation and clean-up of hazardous waste and industrial solid waste would unjustly enrich the Debtors and/or Secured Lenders.    The Court

---

[4] *Id*. at *10.
[5] *Northrup v. Wiggins* (In re Kelly), Nos. 12-80534-G3-7, 13-8001, 2013 Bankr. LEXIS 5319, at*9-10 (Bankr. S.D. Tex. Dec. 19, 2013); see also *Frymire Eng'g Co. ex rel. Lib Mutu. Ins. Co. v. Jomar Int'l, Ltd*., 259 S.W.3d 140, 142 (Tex. 2008).
[6] *First Nat'l Bank v. O'Dell*, 856 S.W.2d 410, 415 (Tex. 1993).

should find that the doctrine of equitable subrogation applies here, and should thus approve payment of the administrative expense claim for that reason.

10.    Additionally, GL Eden is also subrogated to the rights of the State of Texas (including via the Texas Commission on Environmental Quality and/or any other subdivision of the State) and/or the federal government.   As covered above, both the laws of the State of Texas and the United States impose duties on the Debtors, including to catalog and properly dispose of waste.   In addition, the law provides such governmental entities with the ability to bill a debtor's estate for an administrative claim to perform such duties if a debtor does not.   As described above, and in GL Eden's other documents in this case, GL Eden, not acting voluntarily, performed the Debtors' duties and paid for the same (a debt for which the Debtors were primarily liable to the government for and which, in equity, should have been paid by the Debtors), and thus equity favors equitable subrogation to the rights of the State of Texas and the Federal Government here.

11.    Also, it is important to note that since Debtors abandoned the hazardous waste and industrial solid waste on the subject real property, and left the classification, packing, removal, disposal, remediation, and clean-up effort as an expense for GL Eden to bear, it has been making every effort to restore the real property to the condition it enjoyed prior to Debtor's lease, occupation, and use of the site, and to be in compliance with federal and Texas law.   However, since the Debtors' rejection of the lease and abandonment of the aforementioned hazardous waste and industrial solid waste on the site, GL Eden has found it impossible to rent the property to any other lessee.   Where rent is lost due to contamination by "hazardous substances" on the property, courts have found that payment of those lost rents is an "entitlement" to which the damaged party is due.[7]   Since GL Eden has been unable to earn rents on the real property due to the state in which

---

[7] See e.g. *Sunnyside Dev. Co., LLC v. Chartis Specialty Ins. Co.*, 2012 U.S. Dist. LEXIS 9392, at *18 (S.D.N.Y. Jan. 26, 2012)

Debtors abandoned it, GL Eden should likewise be entitled to recovery of its lost rents, which as of the date of filing of this pleading amount to $537,355.03

12.     Further, as a result of Debtors' abandonment of hazardous waste and industrial solid waste on the real property, the property has experienced a diminution in value which has similarly damaged GL Eden.   This reduced value can be directly attributed to the contamination left on site by Debtors, since parties that were potentially interested in occupying the site have lost interest upon being notified of such contamination and the presence of such waste.   Regardless of whether their fears are rational or irrational, "if fear of a hazard would affect the price a knowledgeable and prudent buyer would pay to a similarly well-informed seller, diminution in value caused by the fear may be recoverable as part of just compensation."[8]   Because the value of GL Eden's real property has been reduced due to concerns about the Debtors' hazardous waste and industrial solid waste being dumped on site, and because of Debtor's walking away from its waste, GL Eden should be justly compensated for the diminution in value of its real property.   As of the date of filing of this pleading, that diminution in value has been determined to amount to $803,736.00.

13.     Finally, pursuant to 11 U.S.C. § 503(b)(4), the Court is required to award reasonable compensation for professional services rendered by an attorney that the Court determines to be "allowable" as reimbursement for "actual, necessary expenses incurred by such attorney[.]"[9]   Such expenses are "allowable" when a creditor makes a "substantial contribution" (as was addressed *supra*) in a Chapter 11 bankruptcy case such as the instant case.[10]   Here, GL

---

[8] *Baker v. Baker Hughes Oilfield Operations, Inc.*, No. 3:16-cv-038 JWS, 2018 U.S. Dist. LEXIS 120238, at *4 (D. Alaska July 16, 2018).   See also *United States v. 14.38 Acres of Land*, 80 F.3d 1074, 1079 (5th Cir. 1996); *Mt. Valley Pipeline, LLC v. 1.23 Acres of Land Owned by Eagle's Nest Ministries, Inc.*, Civil Action No. 7:18-cv-00610, 2019 U.S. Dist. LEXIS 231344, at *13 (W.D. Va. July 12, 2019); *United States v. 760.807 Acres of Land*, 731 F.2d 1443, 1447 (9th Cir. 1984).
[9] 11 U.S.C. § 503(b)(4).
[10] 11 U.S.C. § 503(b)(3)(D).

Second Amended Application to Approve Payment of Administrative Expense Claim
Page 8

Eden's attorneys' fees and costs were rendered reasonable and necessary when Debtors, as supported by Secured Lenders, sought to force GL Eden to bear the costs of Debtors' and/or Secured Lenders' removal, disposal, remediation, and clean-up obligation.   As of the filing of this pleading, GL Eden's attorneys' fees and costs amount to at least $35,000.00, and continue to increase.

14.     Based on the above authorities, and given the facts and circumstances of this case, GL Eden, through its principal member David Fong, hereby requests approval of payment of its estimated post-petition administrative expenses in the amount of $391,368.00 to be used for hazardous waste and industrial solid waste removal, subject to further amendment as the actual cost of such removal becomes clearer.   GL Eden also requests that it be compensated for lost rents in the amount of $537,355.03, and for diminution in value of the real property in the amount of $803,736.00 which are both direct results of the Debtors' abandonment of hazardous waste and industrial solid waste on GL Eden's real property.   GL Eden further requests its reasonable and necessary attorneys' fees and costs in the amount of $35,000.00.   The aggregate amount that GL Eden seeks, and to which it is entitled, is $1,767,459.03.

WHEREFORE, PREMISES CONSIDERED, GL Eden requests the Court to enter an order approving this Application and granting it a post-petition administrative expense claim in this case in the aggregate amount of $1,767,459.03, subject to further amendment to reflect actual costs as they arise, and for such other and further relief to which it may be justly entitled.

DATED: February 24, 2023.

Respectfully submitted,

   */s/ Joyce W. Lindauer*
Joyce W. Lindauer
State Bar No. 21555700
Joyce W. Lindauer Attorney, PLLC
1412 Main St., Suite 500
Dallas, Texas 75202
Telephone: (972) 503-4033
Facsimile: (972) 503-4034
Email: joyce@joycelindauer.com
ATTORNEYS FOR GL EDEN, LLC

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that on February 24, 2023, a true and correct copy of the foregoing document was served via email pursuant to the Court's ECF system upon the parties receiving electronic notice in this case.

   */s/ Joyce W. Lindauer*
Joyce W. Lindauer

# Sales Order

Ingenium Group, LLC
955 W Mission Ave.
Escondido, CA 92025
760.745.8780

| Date | S.O. No. |
|------|----------|
| 11/15/2022 | 41015 |

| Name / Address | Ship To |
|----------------|---------|
| GL Eden, LLC. | GL Eden, LLC |
| Accounts Payable | Carissa Hale |
| 5933 Eden Dr. | 5933 Eden Dr. |
| Haltom City, TX 76117 | Haltom City, TX 76117 |

| Rep | PO # | Project # |
|-----|------|-----------|
| LS-N | N/A | N/A |

| Item | Description | Ordered | Rate | Amount |
|------|-------------|---------|------|--------|
| MiscService | DISPOSAL of waste around site (Miscellaneous waste & variety container size) | 1 | 127,690.00 | 127,690.00 |
| MiscService | DISPOSAL & Transportation Alkaline & Acidic Totes | 1 | 33,108.00 | 33,108.00 |
| MiscService | DISPOSAL & Transportation Bulk Wastewater | 1 | 10,820.00 | 10,820.00 |
| MiscService | DISPOSAL - & Transportation Cyanide | 1 | 65,945.00 | 65,945.00 |
| MiscService | DISPOSAL – Lab Waste | 1 | 6,130.00 | 6,130.00 |
| MiscService | Container Transportation | 1 | 32,025.00 | 32,025.00 |
| MiscService | Equipment/Supplies | 1 | 37,800.00 | 37,800.00 |
| MiscService | Labor & Consulting Services | 1 | 77,850.00 | 77,850.00 |
| | Subtotal (11.5% Assessment) | | | 391,368.00 |
| | | | | |
| | 45% Deposit Due Up Front ($176,115.60) | | | |
| | Sales Tax | | 8.25% | 0.00 |

| **Total** | **$391,368.00** |
|-----------|-----------------|

# EXHIBIT "A"