| | |
|---|---|
| Robert Lapowsky<br>PA Bar No. 30991<br>**STEVENS & LEE, P.C.**<br>620 Freedom Business Center, Suite 200<br>King of Prussia, Pennsylvania 19406<br>(215) 751-2866<br>robert.lawpowsky@stevenslee.com | Joe E. Marshall<br>Texas Bar No. 13031100<br>**MARSHALL LAW**<br>2626 Cole Avenue, Suite 300<br>Dallas, Texas 75204<br>(214) 579-9173<br>jmarshall@marshalllaw.net |

*Attorneys for NewSpring Mezzanine Capital III,*
*L.P. and Southfield Mezzanine Capital, L.P.*

# IN THE UNITED STATES BANKRUPTCY COURT
# FOR THE NORTHERN DISTRICT OF TEXAS
# FORT WORTH DIVISION

| | |
|---|---|
| In re:<br><br>FORE MACHINE, LLC, *et al.*,[1]<br><br>Debtors. | ) Chapter 11<br>)<br>) Case No. 22-40487<br>)<br>)<br>) (Jointly Administered)<br>) |

## SECOND SUR-REPLY TO RESPONSE TO OBJECTION TO APPLICATION TO APPROVE PAYMENT OF ADMINISTRATIVE EXPENSE CLAIM[2]

**TO THE HONORABLE MARK X. MULLIN, U.S. BANKRUPTCY JUDGE:**

NewSpring Mezzanine Capital III, L.P. and Southfield Mezzanine Capital, L.P. (collectively, the "**Secured Lenders**"), by and through their undersigned counsel, file this *Second Sur-Reply to the Response to Objection to the Application to Approve Payment of Administrative Expense Claim* (the "**GL Eden Response**") [Docket No. 665] filed on behalf of GL Eden, LLC ("**GL Eden**"), and in support thereof would respectfully show the following:

---

[1] The Debtors are Fore Machine, LLC (1850)("Fore Machine"), Fore Aero Holdings, LLC (2671) and Fore Capital Holding, LLC (2920) (together, the "Liquidating Debtors"). The service address for the Liquidating Debtors is c/o Stretto, as Plan Administrator, 410 Exchange, Suite 100, Irvine, CA 92602.

[2] This sur-reply is also intended as an objection to the newly asserted claims in the Second Amended Application, defined below.

**Background**

1.  On February 24, 2023, GL Eden filed its Second Amended Application to Approve Payment of Administrative Claim (the "**Second Amended Application**") [Docket No. 772].

2.  Pursuant to the Second Amended Application, the administrative claim asserted by GL Eden has exploded from about $391,000 to over $1,700,000 and GL Eden has added three brand new grounds for liability.

3.  For reasons which will be discussed, the new claims asserted in the Second Amended Application are without merit. But, before addressing the new claims, it is important to understand that the filing of the Second Amended Application tests the borders of good faith.

4.  On December 6, 2022, this Court entered a scheduling order in this contested matter (the "**Original Scheduling Order**") [Docket No. 656]. The Original Scheduling Order was entered by consent of both the Secured Lenders and GL Eden. Among other things, the Original Scheduling Order required that any amendments to GL Eden's original application for allowance of an administrative expense (the "**Original Administrative Expense Application**")[Docket No 531] be filed by December 16, 2022 with any further amendments required to be filed prior to January 6, 2023.[3] And, importantly, the Original Scheduling Order required that any amendment filed after December 16, 2022 had to be <u>based solely on newly discovered facts</u>. (*See*. Original Scheduling Order, ¶2).

5.  The January 6, 2023 final deadline for amendments was included in the Original Scheduling Order at the Secured Lender's request because the trial was set for March 6, 2023 (*See*. Original Scheduling Order, ¶13) and it was important to the Secured Lenders that they understand

---

[3] An obvious error in the Original Scheduling Order caused this date to appear as January 6, 2022.

exactly what grounds and what damages were being asserted by GL Eden prior to engaging in discovery.

6. On December 16, 2022, GL Eden filed its *First Amended Application to Approve Payment of Administrative Expense Claim* (the "**First Amended Application**") [Docket No. 666] pursuant to which GL Eden sought allowance of an administrative claim of about $391,000, a significant but not unexpected increase from the $45,000 claim asserted in the Original Application.

7. Subsequent to filing of the First Amended Application, GL Eden simply ignored the January 31, 2023 deadline stated in the Original Scheduling Order for provision of expert reports on issues for which a party bore the burden of proof. (*See*. Original Scheduling Order, ¶8). Instead of providing such expert reports, GL Eden filed notices of designation of expert witnesses (the "**GL Eden Expert Witness Designation**") [Docket No. 734].[4]

8. One of the expert witnesses identified in the GL Eden Expert Witness Designation was Ingenium Group ("**Ingenium**"). Ingenium was to serve as an expert on environmental waste and related topics. However, rather incredibly, subsequent to the filing of the GL Eden Expert Witness Designation, it was disclosed that GL Eden had never actually engaged Ingenium to serve as an expert witness and that Ingenium was unwilling to so serve.

9. At the status conference held in this matter on February 16, 2023, GL Eden advised the Court that it was in the process of hiring a new expert to replace Ingenium and needed some

---

[4] At the status conference on February 16, 2023, counsel to GL Eden argued that the expert witness report deadline did not apply to any of GL Eden's expert witnesses because they were "non-retained experts." That argument was and remains nonsense. First, the Federal Rules of Bankruptcy Procedure do not make any reference to "non-retained experts." Further, to the extent there is even any such thing as a non-retained expert, the Original Scheduling Order made no such distinction. Rather, it required that <u>all expert reports</u> be provided by January 31, 2023 for any issue on which a party bears the burden of proof. GL Eden simply ignored that requirement.

3

additional time to complete discovery. GL Eden then requested entry of a new scheduling order that would relieve it of its failures to comply with the Original Scheduling Order.

10. In response, the Secured Lenders argued that all difficulties being experienced by GL Eden were self-inflicted and opposed any revision of the Original Scheduling Order other than to accommodate a short delay in the completion of the Ingenium deposition. However, the Court made clear its intention to provide one last extension of the deadlines. Counsel to the Secured Lenders then questioned whether that meant that the time to further amend the GL Eden claim (which had long since expired) would also be extended. Counsel to GL Eden responded that they were contemplating an amendment and asked for a short period of time to file. But, GL Eden's counsel failed to advise the Court or the Secured Lenders that the contemplated amendments would add three brand new substantive liability grounds and quadruple the amount of the claim notwithstanding that counsel had to have been aware of those facts at the time. And, it should be noted that neither the new grounds for recovery nor the new damages were based on newly discovered facts as previously agreed by the parties and ordered by the Court.

11. On February 21, 2023, the Court entered the revised scheduling order (the "**Revised Scheduling Order**")[Docket No. 770] pursuant to which, among other things, the deadline for amending the GL Eden claim was extended to February 24, 2023 and the trial was set to begin on April 16, 2023.

12. The Secured Lenders believe that, had the Court been made aware at the February 16 status conference that the amended claim would assert three brand new substantive liability grounds and quadruple the amount of the claim, it would not have relieved GL Eden of the long-passed deadline for amending its claim, particularly in the absence of any newly discovered facts. That belief is based on the following, (a) by the time of the status conference, the deadlines for discovery under the Original Scheduling Order had all passed and, unsurprisingly, the Secured

Lenders had already taken substantial discovery (none of which, for obvious reasons, addressed the new legal grounds or tested the massive amount of newly asserted damages), and (b) the new trial date was being set for April 16, 2023 with only a short amount of time for additional discovery (for example, all written discovery has to be served by March 6, 2023).

13. However, the Court was not given the opportunity to consider the possibility that any further amendment of the claim would be so substantial. So, whether the Secured Lenders are correct in their belief regarding what would have happened if the Court had been fully apprised will remain unknown. But, the highly suspect nature of the amendments to GL Eden's claim must be noted.

14. Nor is the most recent amendment to the GL Eden claim the only example of its questionable behavior. On February 23, 2023, GL Eden filed *GL Eden, LLC's Motion to Vacate or Modify Order Granting Abandonment Motion Pursuant to Fed. R. Civ. P. 60(b)* (the "**Abandonment Reconsideration Motion**") [Docket No. 771] in which it asks this Court to vacate or modify the order it entered eight months ago approving abandonment of the Debtors' assets (the "**Abandonment Order**") [Docket No. 500]. The Abandonment Reconsideration Motion lacks any basis and the Secured Lenders will respond separately to that motion. However, for current purposes, this Court should consider that the parties have been litigating the GL Eden claim since August, 2022 and the potential relevance of the Abandonment Order has been obvious from the start. Yet GL Eden never mentioned at the February 16, 2023 status conference that it was planning to seek reconsideration of that order. When parties are before a court specifically to discuss revisions to a scheduling order in advance of an impending trial, it is expected that counsel will disclose anticipated material filings which could materially affect the dates and deadlines being established. GL Eden failed to meet that very basic expectation.

**Response to New Liability Grounds and New Claims
Asserted in Second Amended Application**

15. In the Second Amended Application, GL Eden adds claims (the "**Additional Claims**") totaling over $1,400,000, consisting of over $537,000 for lost rents, over $800,000 for diminution in value of the Leased Premises and $35,000 for attorney's fees.

16. In the Second Amended Application, GL Eden also asserts three new grounds allegedly supporting allowance of an administrative claim. Specifically, GL Eden argues that it is entitled to an administrative expense priority claim (a) based on the reasoning in *Reading Co. v. Brown*, 391 U.S. 471, 88 S. Ct. 1759, 20 L.Ed. 751 (1968) (the "**Reading Ground**")(*See* Second Amended Application ¶8), (b) because it is equitably subrogated to the claims of the Debtors (the "**Debtor Subrogation Ground** ")(*See* Second Amended Application ¶9), and (c) because it is equitably subrogated to the claims of the State of Texas and the United States of America (the "**Governmental Entity Subrogation Ground**" and, together with the Reading Ground and the Debtor Subrogation Ground, the "**New Liability Grounds**") (*See* Second Amended Application ¶10)

*The New Liability Grounds and the Additional Claims are Time-Barred*

17. The bar date for administrative claims (the "**Administrative Claims Bar Date**") was October 25, 2022. *See* order confirming the Liquidating Debtors' Plan, (the "**Confirmation Order**") [Docket No. 402], ¶16 (b) and *Notice of: (A) Effective Date of First Amended Joint Chapter 11 Plan of Reorganization for Debtors Fore Aero Holdings, LLC, Fore Machine, LLC and Fore Capital Holding, LLC., and (B) Deadlines to File (I) Professional Claims, (II) Other Administrative Claims, and (III) Rejection Damage Claims*, (the "**Effective Date Notice**") [Docket No.599].

18. The Second Amended Application was filed after the Administrative Claims Bar Date. However, bankruptcy courts have discretion to allow amendments to proofs of claim after an applicable bar date. *PHL Mortgage Corporation v. Johnson*, 563 F. Supp. 627 (S.D. Tex. 2021). The factors considered in determining whether to allow such an amendment were stated by the court in *PHL Mortgage Corporation v. Johnson* as follows: "Courts thus consider various equitable factors when determining whether to allow an amended claim, including **undue delay**, bad faith, repeated failure to cure deficiencies, **undue prejudice to the opposing party**, and the futility of the amendment." *Id.* at 631. (*emphasis added*).

19. In addition, as noted in *Matter of Alliance Operating Corp.,* 60 F. 3d 1174, 1175 (5th Cir. 1995), "Bar dates… are not to be vitiated by amendments, and the courts must ensure that the amendments do not introduce wholly new grounds of liability." *Also see*, *In re Kolstad* 928 F. 2d 171, 175 (5th Cir. 1991)("Amendments do not vitiate the role of bar dates: indeed, courts that authorize amendments must ensure that corrections or adjustments do not set forth wholly new grounds of liability.").

20. In *Kolstad*, the 5th Circuit cited with approval to two cases in which amendments to proofs of claim were disallowed because they stated new grounds for liability, *United States v. Owens*, 84 B.R. 361 (Bankr. E.D. Pa. 1988)(holding that an IRS claim for related to one tax year was not based on the same grounds at one for a different tax year) and *In re Norris Grain Co*. 81 B.R. 103 (Bankr. M.D. Fla. 1987)(holding that an IRS claims for interest on a claim from one year was not based on the same grounds as a claim for corporate taxes from a different year).

21. The Second Amended Application introduces entirely new grounds for liability (*i.e.,* post-petition tort and equitable subrogation) from the grounds stated in the Original Administrative Expense Application and the First Amended Application. In fact, pursuant to the Debtor Subrogation Ground and the Governmental Entity Subrogation Ground, GL Eden not only

7

advances new grounds for recovery but, actually, seeks to assert by way of subrogation claims that, assuming they ever existed (which they did not) originally belonged to others (*i.e.,* the Debtors and the governmental entities.)

22. Because the claims asserted in the Second Amended Application introduce new grounds for liability, they should be treated as time-barred.

23. However, even if that were not the case, the claims asserted in the Second Amended Application are time-barred because of the undue delay in their filing and the undue prejudice that would result if they were permitted to be asserted. And the circumstances in this case justify an even more strict application of the restrictions on amendments since the parties agreed and the court previously ordered that amendments to their application must be based on newly discovered facts.

24. GL Eden offers no explanation in the Second Amended Application why (i) they ignored the limited conditions under which an amendment could be filed, and (ii) the claims asserted therein could not have been raised much sooner. In fact, there is no explanation. And, the prejudice to the Secured Lenders is obvious.

25. The parties have been litigating this contested matter for months. Further, as noted, the deadlines for discovery under the Original Scheduling Order had all passed before the Revised Scheduling Order was entered. And, while the Secured Lenders have taken substantial discovery, as also noted, none of that discovery has focused on the New Liability Grounds or tested the massive amount of the Additional Claims. Finally, the hearing on this matter is set for April 16, 2023, leaving only a short amount of time for additional discovery (for example, all written discovery has to be served by March 6, 2023).

26. Further, it is significant that, not only is GL Eden seeking to amend its claim after the Administrative Claims Bar Date but, also, after the Liquidating Debtor Plan has been

confirmed and gone effective. *See Confirmation Order* and *Effective Date Notice*. As noted by the Eleventh Circuit in *In re Winn-Dixie Stores, Inc.* 639 F.3d 1053, 1056-1057 (11th Cir. 2011) "Although amendment should be freely granted prior to confirmation—under the guidance of *International Horizons*—amendment of a creditor's claim after confirmation of a plan can render a plan infeasible or alter the distribution to other creditors. Therefore, we hold that post-confirmation amendment—while not prohibited—is not favored, and only the most compelling circumstances justify it."

27. Fore Machine has reserved approximately $460,000 to cover possible GL Eden administrative claims. When the Liquidating Debtors Plan went effective on October 4, 2022, the only administrative claim that had been asserted by GL Eden totaled $45,000. *See* Original Administrative Expense Application. Clearly, no plan feasibility issues were implicated by the potential $45,000 administrative claim. Nor, given the amount of the reserve, was plan feasibility an issue when the GL Eden claim was increased to $391,000. However, if the GL Eden administrative claim is allowed in an amount much in excess of $500,000, Fore Machine will be administratively insolvent and its case will likely have to be converted to chapter 7. That is the precise problem that caused the court in *Winn-Dixie* to require compelling circumstances to justify a post-confirmation claim amendment. Here, no circumstances (let alone, compelling circumstances) justify allowing GL Eden to amend its administrative claim to add the New Liability Grounds or the Additional Claims.

28. Finally, in considering whether to exercise its discretion to allow GL Eden to amend its administrative claim to add the claims asserted in the Second Amended Application notwithstanding the passage of the Administrative Claims Bar Date, this Court should consider the circumstances (described in the Background section above) pursuant to which the deadline for amendments to the GL Eden claim (which had expired) was revived pursuant to the Revised

9

Scheduling Order. As noted, the Secured Lenders believe that, had this Court been apprised regarding the massively increased scope of the claims that would be asserted if GL Eden were permitted to further amend its claim, such leave would not have been granted.

29. While the Additional Claims and the New Liability Grounds should be treated as time-barred, if they are not, then they fail on the merits.

*The Reading Ground has no Merit*

30. In *Reading Co. v. Brown*, the Supreme Court established an exception to the otherwise applicable requirement that, in order to be treated as an administrative expense, a claim must result from actions by a trustee or debtor-in-possession that benefited the estate. However, that exception was narrow. It required (a) a wrongful act on the part of the trustee or debtor-in-possession[5], and (b) that the wrongful act have been "committed in the continued operation of the debtor's business so as to improve the position of existing creditors." *In the Matter of Jack/Wade Drilling, Inc.* 258 F.3d 385, 390 (5th Cir. 2001). And, the already narrow *Reading* exception is strictly construed in the Fifth Circuit. *Id.* at 391 ("We recognize that we have strictly construed the *Reading* exception.")

31. Here, GL Eden flunks both prongs of the *Reading* exception by a wide margin.

32. First, there was no wrongful act by the Debtors. The only act identified by GL Eden as supporting a finding that the Debtors committed a wrongful act is the post-petition abandonment by the Debtors of allegedly hazardous and industrial waste located on GL Eden's property. *See* Second Amended Application ¶8. However, even accepting that the material abandoned on the GL Eden property was hazardous and industrial waste (which the Secured Lenders do not concede),

---

[5] *Reading* was decided under the Bankruptcy Act and the party who was administering the debtor's estate was a receiver appointed under Chapter XI of the Bankruptcy Act. However, it has been consistently held to apply to cases under the Bankruptcy Code.

how such abandonment could possibly be considered "wrongful" is not addressed by GL Eden. And, of course, it was not wrongful. To the contrary, the abandonment was done pursuant to an order (the Abandonment Order) entered by this Court pursuant to a motion (to which GL objected) and after a hearing (at which GL Eden appeared). In other words, GL Eden advances the absurd proposition that Fore Machine acted wrongfully in doing exactly what this Court authorized it to do, after notice and a hearing. That argument should be summarily rejected.

33. Second, even if, somehow, abandoning property of a debtor pursuant to a court order could be considered "wrongful," the Debtors were not operating a business on the GL Eden property when the abandonment occurred. To the contrary, the abandonment did not occur until the Debtors had rejected the GL Eden Lease at which point, not only were they not operating a business on the premises but, in fact, they were not even in possession of the premises. And, while not really relevant, the Debtors did not operate a business at the GL Eden property at any time during the bankruptcy case. Rather, the Fore Machine business shut down well before the Petition Date and all that occurred on the GL Eden property during the bankruptcy proceedings and prior to rejection of the GL Eden Lease was liquidation of equipment and inventory and efforts to vacate the property. *See In re Jack/Wade Drilling, Inc.,* 258 F.3d at 390 (denying administrative expense application and noting, "The trustee acted neither wrongfully <u>nor in the course of operating the business of the debtor so as to attempt to improve the position of the general creditors</u>")(*emphasis supplied*).

*The Debtor Subrogation Ground has no Merit*

34. The Debtor Subrogation Ground has no merit. In fact, it is impossible to even understand.

35. "Equitable subrogation is the legal fiction through which a person or entity, the subrogee, is substituted, or subrogated, to the rights and remedies of another by virtue of having

11

fulfilled an obligation for which [another] was responsible." *Universal Truckload, Inc. v. Dalton Logistics, Inc.*, 946 F.3d 689, 701–02 (5th Cir. 2020)(quoting *Gen. Star Indem. Co. v. Vesta Fire Ins*. 173 F.3d 946, 949 (5th Cir. 1999)).

36. So, apparently, GL Eden is making the nonsensical argument that it (as subrogee) should be entitled to step into the shoes of the Debtors and then should be able to assert claims that the Debtors have against themselves. But, of course, the Debtors do not have claims against themselves, let alone the claims that GL Eden is asserting.[6]

37. Further, even if one were to entertain the fiction that the Debtors have claims against themselves, GL Eden would have to have paid those claims in order to be equitably subrogated to them. Of course, no such payment has occurred or ever will occur.

*38.* The Debtor Subrogation Ground, to the extent it can be understood at all, provides no basis for a GL Eden administrative claim.

*The Governmental Entity Subrogation Ground has no Merit*

39. While the Governmental Entity Subrogation Ground has no merit either, at least it is understandable.

40. Here, GL Eden is arguing that it should be "equitably subrogated" to claims that either the State of Texas or the United States of American has against the Liquidating Debtors. *See* Second Amended Application ¶10).

41. The most glaring problem with the Governmental Entity Subrogation Ground is that GL Eden does not (and cannot) assert that it has paid a claim of any governmental entity

---

[6] For what it is worth, any claims of one Debtor against another were released pursuant to the Liquidating Debtors Plan. *See* Liquidating Debtors Plan, Article III(C)((5) [Docket No. 330]. And, even if they had not been released, no administrative expense claim has been filed by any Debtor and the Administrative Claims Bar Date has passed.

12

against any of the Debtors. That, alone, dooms the Governmental Entity Subrogation Ground. But, there is more.

42. A second major problem with the Governmental Entity Subrogation Ground is that no governmental entity has filed an administrative claim against any of the Debtors and the Administrative Claims Bar Date has passed. Nor, to the extent applicable, did GL Eden file an administrative claim on behalf of the Debtors or any governmental entity under Federal Rule of Bankruptcy Procedure 3005 within the required thirty days after the expiration of the Administrative Claims Bar Date. Fed. R. Bankr. P. 3005. So, even if GL Eden had paid a claim of a governmental entity against a Debtor and even if GL Eden could be subrogated to the rights of such governmental entity, such claim would be time-barred.

43. A third problem with the Governmental Entity Subrogation Ground is that subrogation rights cannot exist unless the claim that was paid was the primary liability of another. *See Frymire Eng'g Co., Inc. ex rel. Liberty Mut. Ins. Co. v. Jomar Int'l, Ltd*., 259 S.W.3d 140 (Tex. 2008). Now that the GL Eden Lease has been rejected and the allegedly hazardous waste has been abandoned, to the extent the Debtors were ever obligated to effect removal, that obligation has been terminated. To the contrary, as it has conceded, GL Eden, as owner of the leased premises, is responsible for removal. *See* First Amended Application, ¶4. And it gets the entire benefit of the removal. Therefore, even if a governmental entity existed that had filed a timely claim for the disposal of the property that was abandoned and even if GL Eden satisfied that claim, it would not be entitled to subrogation. *See In re Northstar Offshore Group, LLC* 628 B.R. 286 (Bankr. S.D. Tex. 2020).

*The Additional Claims are not Entitled to Administrative Expense Priority*

44. The Additional Claims, totaling over $1,400,000, are for lost rents, diminution in value of the leased premises and attorney's fees.

45. Putting aside whether such claims are valid, GL Eden does not even attempt to explain how or why they would be entitled to administrative expense priority, and they are not.

46. In order for a claim to be entitled to an administrative priority, there must have been some benefit to the debtor's estate. *In the Matter of Jack/Wade Drilling, Inc.*, 258 F.3d at 385.

47. The only theory asserted by GL Eden in support of the conclusion that the Additional Claims resulted in a benefit to a Liquidating Debtor's estate is that, absent removal of the abandoned property by GL Eden, the State of Texas would have compelled Fore Machine to facilitate and pay for the removal. While for reasons stated in the Secured Lenders' *Sur-Reply to the Response to Objection to the Application to Approve Payment of Administrative Expense Claim* [Docket No. 686] GL Eden's theory has no merit, even if it did, it cannot possibly extend to the Additional Claims for lost rents, diminution in value to of the leased premises or its attorney's fees. That is because, obviously, none of those expenses could ever be asserted as claims by the State of Texas. As a result, even if the claims for lost rents, diminution in value to of the leased premises and attorney's fees are valid, they are not entitled to an administrative expense priority.

## CONCLUSION

48. Prior to the filing of the Second Amended Application GL Eden had not asserted any legitimate basis for allowance of any of its claims as administrative. Nothing in the Second Amended Application changes that conclusion.

49. In fact, if anything, GL Eden's position has been further eroded since the filing of the First Amended Administrative Expense Application. That is because, on February 1, 2023 this Court entered its *Order Disallowing Administrative Expense* in the *Rockall Energy Holdings, LLC* case. *In re: Rockall Energy Holdings, LLC*, et. al. Bankr. N.D. Tex. 22-90000 [Docket No. 905]. Among other things, in that order this Court denied an application for allowance of a claim for environmental clean-up costs asserted by a private party and, in doing so, noted that "Neither party

has cited, and this Court has not found, any cases where a private person – as opposed to a state or federal agency – sought an administrative claim for environmental clean-up response costs." *Id* at p. 13. Of course, in this case GL Eden, a private party, is seeking an administrative claim for environmental clean-up costs. And, for the same reasons that this Court denied the administrative claim in *Rockall* (and the other reasons stated by the Secured Lenders)*,* it should do the same here.

**WHEREFORE**, the Secured Lenders respectfully request that this Court deny the relief requested in the Second Amended Application, enter an order disallowing the administrative expense requested by GL Eden and grant the Secured Lenders such other and further relief as the Court deems appropriate under the circumstances.

Dated: March 3, 2023

/s/*Joe E. Marshall*
Joe E. Marshall
Marshall Law
2626 Cole Ave., Suite 300
Dallas, Texas 75204
(214) 579-9173
Jmarshall@MarshallLaw.net

-and-

Robert Lapowsky
STEVENS & LEE, P.C.
620 Freedom Business Center, Suite 200
King of Prussia, PA. 19406
Tel. (215) 751-2866
Fax (610) 371-7958
robert.lapowsky@stevenslee.com

*Attorneys for NewSpring Mezzanine Capital III, L.P. and Southfield Mezzanine Capital, L.P.*

## Certificate of Service

The undersigned hereby certifies that on March 3, 2023, he caused a copy of the foregoing Sur-Reply to be served by the Electronic Case Filing System for the United States Bankruptcy Court for the Northern District of Texas.

*/s/Joe Marshall*
Joe Marshall
